# EXHIBIT "A"

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

*Filed and Attested by the
Office of Judicial Records
07/29/2025 03:02 pm
N. HATCHER*

PHILIPPE E. ST JUSTE,
Plaintiff,
v.
JP MORGAN CHASE BANK, N.A., and
CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,
Defendants.

Civil Action No.: 250402123

COMPLAINT

Plaintiff, Philippe E. St Juste, by and through his undersigned counsel, for his Complaint against Defendants JP Morgan Chase Bank, N.A. ("Chase") and the City of Philadelphia, Office of Risk Management ("City"), alleges as follows:

## PARTIES

1. Plaintiff Philippe E. St Juste is an adult individual residing in Philadelphia County, Pennsylvania.
2. Defendant JP Morgan Chase Bank, N.A., is a national banking association headquartered in New York, doing business at various locations including 1100 Market Street, Philadelphia, PA 19107.
3. Defendant City of Philadelphia, Office of Risk Management, is a governmental entity located at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102, responsible for overseeing claims and liabilities involving the City and its officers.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 42 Pa. C.S.A. § 931 because the matter exceeds the jurisdictional limit of arbitration.
5. Venue is proper in Philadelphia County pursuant to Pa.R.C.P. 1006 because the transaction occurred in Philadelphia and Defendants maintain offices within the county.

CMAMD-St Juste Vs Jp Morgan Chase Bank Et Al [RNH]



25040212300023

Case ID: 250402123

FACTUAL ALLEGATIONS

6.  On April 5, 2023,  at 1: 48 pm Plaintiff visited the Chase branch at 1100 Market Street in Philadelphia with his aunt to open a joint checking account for the purpose of managing his late mother's estate. Plaintiff and his aunt met with Qingmei Qing aka Cecilia Qing who served as the banker in the transaction. (*See Exhibits A, B, C, D*)

7.  Plaintiff deposited $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in 7 checks received from various family members and friends, all of which are redacted in a family google sheet document. Plaintiff deposited 2 of the checks through Chase Mobile as advised by Qing and handed the rest cash and check to Michael. (*See Exhibits E and F*)

8.  April 7th, 2023, Plaintiff was locked out of his personal and joint Chase accounts with the following message:" We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt. (*See Exhibit G*)

9.  On Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY where he spoke to Penny and a Chase phone representative. Plaintiff was reassured that his accounts would be reinstated and accessible within 24 hrs.  *(See Exhibit H)*

10. On Tuesday 11th, the accounts were still blocked. Plaintiff visited the Chase Branch at 402 Myrtle Ave, Brooklyn, NY at 10:42 am where he spoke to Tevin Campbell and a second Chase phone representative. Plaintiff provided the phone numbers to 2 checks issuers: Marie Alberte Pierre and Sister Giselle, treasurer for Premiere Eglise Methodiste Unie as demanded by the phone officer. Tevin Campbell told the plaintiff the matter would be resolved before the end of business day. (*See Exhibit H*)

11. On Friday 14th, the plaintiff's mobile account was still locked. The plaintiff called Chase and spoke to 3 Chase representatives. The Chase phone supervisor asked for phone numbers for all check issuers. The plaintiff provided all phone numbers. Chase's phone supervisor refused to accept the phone number for Marie Guerrier. Chase phone supervisor said Marie Guerrier would need to visit a Chase Branch to resolve the matter. Marie Guerrier is mobility impaired. Despite Plaintiff's continuous cooperation and repeated visits and calls to various Chase branches, his accounts remained frozen.
    ( *See Exhibit I*)

12. Later on Friday April 14, 2023   ( *See Exhibit H*)
    3:27 PM – Plaintiff entered the 1100 Market Street Chase Branch and requested to speak with someone regarding closing his accounts. Within 10 minutes, he is seated in the office of Jeison Brito, identified as a Private Client Banker. Plaintiff explained that both of his checking

accounts have been frozen for over a week and that he has already visited two other branches and spoken with multiple representatives in person and over the phone. Brito assured him that he would resolve the issue.

**3:30–4:59 PM** – Plaintiff remained in Brito's office for an hour and a half while Brito attempted to reach someone from Chase's internal department. There was no progress made.

**4:59 PM** – Plaintiff stepped into the reception area to call Chase directly.

**5:07 PM** – Brito retrieved Plaintiff, stating that someone from Chase was on the line. When Plaintiff returned to the office, no one was on the call—Brito was still on hold.

**5:12 PM** – Plaintiff began a phone conversation with a personal acquaintance, Dr. Derrick Kofi Acheampong, while waiting in Brito's office.

**5:33 PM** – Plaintiff ended his personal call when Chase Corporate finally answered Brito's call. Mr. Brito expressed no urgency for the Plaintiff to leave and even joked about the hour, reassuring the Plaintiff that it was fine to remain. A representative requested contact information for Marie E. Guerrier. Plaintiff provided the same phone number already given earlier that day. The representative declined the number and refused to accept a live call from Mrs. Guerrier through Plaintiff's phone. Plaintiff informed Brito that it was not feasible to provide a different number or bring Mrs. Guerrier to the branch due to her limited mobility.

**5:38 PM** – Plaintiff received an incoming call from his cousin Cedric, which he declined. He informs Brito that he no longer wished to bank with Chase and again requested to close both accounts.

**5:39 PM** – Mecca Abdullah, believed to be the branch manager, enters Brito's office and inquires about the situation. Plaintiff reiterates that his accounts are frozen and he wishes to terminate his relationship with the bank. Abdullah confirms the same options previously given by Brito, which Plaintiff explains are unworkable.

**Sometimes thereafter** – Plaintiff continued to explain the urgency of accessing his personal funds, especially as he recently buried his mother and needs the funds to take care of her estate. He offered an alternative: void the disputed $200 check from Mrs. Guerrier and release the remaining funds. Abdullah stated that this was not possible and instructed Plaintiff to leave the premises. Plaintiff stated he will leave once he receives his money, then returned to Brito's office and sat down calmly.

13. When Plaintiff refused to leave without his funds, bank vice president, Mecca Abdullah, summoned law enforcement, resulting in Plaintiff being forcibly removed, tased multiple times, and arrested.

14. Plaintiff was detained overnight for 14 hrs, denied medical attention for injuries sustained from the taser even after requesting medical care 8 times, and released the following morning without seeing a judge or an attorney.

Case ID: 250402123

15. Plaintiff suffered physical and emotional injuries, lost access to vital funds for personal and familial obligations, and was subjected to humiliating and discriminatory treatment. (*See Exhibit J*)

16. The criminal matter was withdrawn on September 11th, 2023 after Chase failed to provide necessary discovery or attend court proceedings.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

*(Against Defendant JP Morgan Chase Bank, N.A.)*

17. Plaintiff had an ongoing customer relationship with Chase since 2007.

18. A contractual relationship existed between Plaintiff and Chase. Plaintiff fulfilled all obligations by providing valid identification, depositing funds, and cooperating in verification.

19. Chase accepted Plaintiff's deposit and opened the account but subsequently froze access without proper cause, violating the implied covenant of good faith and fair dealing. (*See Exhibit D*)

20. Chase's actions caused Plaintiff financial harm and prevented him from managing his mother's estate and other critical obligations.
    See: *Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992).
    See: *Slusser v. Allentown Bank*, 868 A.2d 547 (Pa. Super. Ct. 2005).

### COUNT II – UNLAWFUL DISCRIMINATION IN PUBLIC ACCOMMODATION

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1981, Pennsylvania Human Relations Act (PHRA)*

21. Chase subjected Plaintiff to excessive scrutiny not applied to similarly situated customers, based on race and national origin, as evidenced by the pattern of unreasonable demands and refusal to resolve the matter despite verification.

22. Upon information and belief, the Chase branch manager, in her communication with police and/or in the official incident report, made reference to Plaintiff's Haitian accent—a fact wholly irrelevant to the events in question. The inclusion of this detail suggests that Plaintiff's national origin played an impermissible role in the treatment he received, and reflects a discriminatory animus inconsistent with the equal treatment obligations imposed by 42 U.S.C. § 1981 and related civil rights protections. (*See Exhibit L*)

Case ID: 250402123

23. The escalation of scrutiny and eventual use of force and law enforcement to remove Plaintiff from the bank, despite his lawful presence and peaceful demeanor, was motivated in substantial part by racial animus or by conduct having a discriminatory effect based on Plaintiff's race, color, and ethnic origin.

24. Such actions denied Plaintiff the full and equal enjoyment of services offered to the public. *Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count. See: *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001).

## COUNT III – FALSE ARREST AND IMPRISONMENT

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 and Pennsylvania Common Law*

25. Plaintiff was lawfully present at the bank to conduct financial business and posed no threat.

26. Defendants' agents unlawfully detained, tased, and arrested Plaintiff without probable cause or a warrant. See *Renk v. City of Pittsburgh*, 537 Pa. 68 (1994).

27. Plaintiff was held overnight in jail and denied access to counsel or medical care, in violation of his constitutional rights.
*Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count.
See *Monell v. Department of Social Services*, 436 U.S. 658 (1978)

## COUNT IV– CONSPIRACY TO DEPRIVE CIVIL RIGHTS

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1985(3)*

28. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 15 of this Complaint.

29. Defendants, including employees of JPMorgan Chase and members of the Philadelphia Police Department, entered into a conspiracy, explicitly or implicitly, to deprive Plaintiff of the equal protection of the laws and/or equal privileges and immunities under the law.

30. The conspiracy was motivated by discriminatory animus toward Plaintiff as a Black individual of Haitian descent and resulted in the denial of banking services and the use of unjustified force by police.

31. The acts taken in furtherance of this conspiracy, including false police reports, refusal to process lawful account access, and the orchestration of Plaintiff's arrest, directly caused injury to Plaintiff in violation of *42 U.S.C. § 1985(3)*

## COUNT V – EXCESSIVE FORCE

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendments*

32. The use of a taser multiple times on a non-resisting individual constituted excessive force. See *Graham v. Connor*, 490 U.S. 386 (1989).
33. Officers failed to de-escalate the situation or consider Plaintiff's reasonable attempts to resolve the issue peacefully.
34. Plaintiff sustained lasting physical and emotional injuries as a result. (*See Exhibit G*)

## COUNT VI – NEGLIGENCE

*(Against JP Morgan Chase and City of Philadelphia)*

35. Both Defendants owed a duty of care to Plaintiff.
36. Defendant Chase negligently mishandled Plaintiff's account and improperly escalated a non-violent banking dispute to law enforcement.
37. The City of Philadelphia negligently trained, supervised, and retained officers who used excessive force and failed to provide necessary medical attention.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against JP Morgan Chase and City of Philadelphia)*

38. Defendants' conduct—public tasing, wrongful detention, and discriminatory treatment—was extreme, outrageous, and intended to cause, or recklessly disregarded the risk of causing, severe emotional distress.
39. Defendants engaged in extreme and outrageous conduct by freezing Plaintiff's accounts during a period of grief, wrongfully involving law enforcement, and allowing excessive use of force.
40. Plaintiff has suffered anxiety, humiliation, sleeplessness, and emotional trauma requiring ongoing therapy and support. See *Hoy v. Angelone*, 554 Pa. 134 (1998).

COUNT VIII – MALICIOUS PROSECUTION / ABUSE OF PROCESS

*(Against JP Morgan Chase and City of Philadelphia)*

41. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

42. Defendant's branch manager knowingly made **false representations** to responding law enforcement officers, claiming Plaintiff had been asked to leave the premises thirty (30) to sixty (60) minutes prior to the police being contacted, in order to portray Plaintiff as hostile, uncooperative, and unlawfully refusing to vacate.

43. In truth and as supported by objective, time-stamped evidence, including video surveillance and call logs, the police were summoned **within approximately five (5) minutes** of the alleged request, directly contradicting the branch manager's statement.

44. Said misrepresentation was **material** and influenced law enforcement's perception of the situation, resulting in an escalated police response, excessive use of force, and Plaintiff's unlawful arrest and detention.

45. The bank manager's false report and the decision to call police based on mischaracterizations of Plaintiff's conduct were made with **malice, reckless disregard for the truth**, or **with the intent to harass and remove Plaintiff** without lawful justification.

46. Defendant JPMorgan Chase Bank, N.A. initiated, directed, or encouraged the criminal process against Plaintiff **without probable cause**, and the charges or justification for arrest were ultimately **unfounded** and terminated in Plaintiff's favor (if applicable).

47. As a direct and proximate result of Defendant's conduct, Plaintiff suffered financial harm, reputational damage, loss of liberty, physical injuries, and severe emotional distress.

> *Franks v. Delaware,* 438 U.S. 154, 171 (1978) (officers cannot use false statements to justify warrants or arrests);
>
> *Kingsley v. Hendrickson,* 576 U.S. 389 (2015) (objective reasonableness standard applies to excessive force and seizure claims);
>
> *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) ("There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence deliberately fabricated by the government.")

48. Additionally, the police report stated Plaintiff lacked proper verification. In fact, Plaintiff had eight (8) forms of ID, including a driver's license, U.S. passport, and Chase bank cards. Police accessed and used Plaintiff's passport—without his consent—to complete their report. The plaintiff never handed the passport or license to officers.

49. These falsehoods—concerning both Plaintiff's compliance and verification—were used to justify an arrest without probable cause.

Case ID: 250402123

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Award compensatory damages in the amount of $10,428,000.00;

b. Award punitive damages where applicable;

c. Award reasonable attorney's fees and costs;

d. Grant pre- and post-judgment interest;

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Philippe E St Juste

1227 Magee Ave, Philadelphia, PA 19111

917.937.6594

philippe.esai@gmail.com

**Supporting Exhibits – Table 1**

*(Exhibit A, B, C, D showing documents obtained on or after April 5th, presented at the plaintiff's April 14th visit to 1100 Market street)*

*Exhibit A*

 W E L C O M E   T O   A   B E T T E R   B A N K I N G   E X P E R I E N C E

## ACCOUNT SUMMARY FOR PHILIPPE ST JUSTE

### CONTACT INFORMATION

| | |
|---|---|
| **Address:** | 180 LENOX RD |
| | APT 5M |
| | BROOKLYN, NY 11226-2424 |
| **Email Address:** | p.e.stjust@gmail.com |

### WHAT WE DID TODAY

**Chase Total Checking®** (account number 939717226)
- For complete details on your account, refer to the documents you received today
- If you chose to receive your account-opening documents **electronically:**
  - Sign in to the Chase Mobile® app or chase.com within 4 business days. Then we'll know not to mail you the account opening documents.
- You can find the electronic versions under Statements & documents and selecting Branch Documents on chase.com.
- If you ordered checks, standard shipping is 11-14 days unless you requested expedited shipping; use your starter checks in the meantime
- Your deposit account ending in 7226 will have its own statement.

**Disney's Visa® Debit Card - "Mickey"** (account number 939717226)
- **No annual fee**
- If you received a card today, you can use it right away; if you did not receive your personalized card it will be mailed in a plain white envelope which you should receive in 7-10 days; activate right away by following instructions on the card
- Enjoy year-round Cardmember perks from Disney
- Your deposit account ending in 7226 will have its own statement.

## Technology designed for you

## Check out all our innovative services at chase.com/MyChase

Customer Initials

*Important: This document contains confidential information including your account number. Please safeguard this document as you would a checkbook, credit card or debit card. For more information on how to protect your identity and your accounts, visit www.chase.com/identitytheft. The Deposit Account Agreement and other disclosures provided at account opening or included with your debit/credit card govern your agreement with the bank, and outline the terms & conditions associated with the products/services listed.*

| | | | |
|---|---|---|---|
| **Personal Banker:** | QINGMEI QING | **Date:** | 04/05/2023 |
| | 11th St and Market St | | |
| | (215) 430-5759 | | |

Deposit products provided by JPMorgan Chase Bank, N.A. Member FDIC

Case ID: 250402123

P.O. BOX 9040
COPPELL TX 75019

*Exhibit B*

# CHASE ◻

Enclosed Card Ending In: 7786

Card Expiration Date: 05/28

This card accesses the primary accounts listed below:
CHKG **********7226

PHILIPPE ST JUSTE
1227 MAGEE AVE
PHILADELPHIA PA 1911149410

Customer Service: 1-877-388-5726

03155
044124

04062023 515 0141 0013  612O RCM307 RF0008 RB0000  N WHT 900

# Your new Disney® Visa® Debit Card is here!



## *Activate your card today*

and enjoy year-round Cardmember perks. Visit DisneyDebit.com for complete details.

### For your protection, this card cannot be used until it has been **activated**.

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase may share information about you and your Disney Visa Debit Card account, including your card transactions, with Disney Credit Card Services, Inc., and each of its affiliates for their respective use thereof as permitted by applicable law.

**To activate your card, perform any ATM transaction using your PIN or call 1-877-388-5726.**

*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

## *Use your card to make purchases*

in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash

> Make secure deposits and get an image of your check printed right on your receipt (at select Chase ATMs)

> Check your balance

> See your recent transactions

> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.**[1]

*Find more ways to simplify your banking at* **chase.com/MyChase**

*Please see back to learn more about your Disney Debit Card*

Case ID: 250402123

P.O. BOX 9040
COPPELL TX 75019

*Exhibit C*

**CHASE** ◆

Enclosed Card Ending In: 7802

Card Expiration Date: 05/28

This card accesses the primary
accounts listed below:
CHKG **********7226

MARIE F VERDIEU
1227 MAGEE AVE
PHILADELPHIA PA 1911149410

03435
039404

Customer Service: 1-877-388-5726

04062023 515 0126 0012  0606 RCM307 RF0008 RB0000  N WHT 900

# Your new Disney® Visa® Debit Card is here!



## Activate your card today

and enjoy year-round Cardmember
perks. Visit DisneyDebit.com for
complete details.

### For your protection, this card cannot be used until it has been __activated__.

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase
may share information about you and your Disney Visa Debit Card account, including
your card transactions, with Disney Credit Card Services, Inc., and each of its affiliates
for their respective use thereof as permitted by applicable law.

To activate your card, perform any ATM transaction using your **PIN** or call **1-877-388-5726**.

*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

## Use your card to make purchases

in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash

> Make secure deposits and get an image
  of your check printed right on your receipt
  (at select Chase ATMs)

> Check your balance

> See your recent transactions

> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.¹**

*Find more ways to simplify your banking at* **chase.com/MyChase**

Case ID: 250402123

*Please see back to learn more about your Disney Debit Card* ▶



# CHASE ◑

## Thank you for choosing Chase.

If you need to order checks, please visit Chase.com

*Exhibit D*

Para hablar con un especialista de servicio de atención al cliente en español, por favor llame al 877-312-4273.

**Please keep this ID card in a safe place.**

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com

**Routing Number**
083000137
**Your Account Number**
939717226

**Please keep this ID card in a safe place.**

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com

**Routing Number**
083000137
**Your Account Number**
939717226



**97**

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN,NY 11226-2424

DATE

PAY TO THE
ORDER OF                                         $

DOLLARS

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO                                             MP

⑆083000137⑆  939717226⑈  0097

**98**

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN,NY 11226-2424

DATE

PAY TO THE
ORDER OF                                         $

DOLLARS

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO                                             MP

⑆083000137⑆  939717226⑈  0098

**99**

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN,NY 11226-2424

DATE

PAY TO THE
ORDER OF                                         $

DOLLARS

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO                                             MP

⑆083000137⑆  939717226⑈  0099

DEPOSIT TICKET                          ☑ CASH ▶

DATE
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

TOTAL FROM
OTHER SIDE ▶

SUB TOTAL ▶

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ✱

LESS CASH
RECEIVED ▶

### CHASE ◑
JPMorgan Chase Bank, N.A.
www.Chase.com                               $

⑆503401025⑆  939717226⑈

Case ID: 250402123

F67

*(Exhibit E showing the 7 checks made out to Marie F Verdieu & the plaintiff)*



Case ID: 250402123

*(Exhibit F showing the money received [checks & cash minus expenses] at the plaintiff mother's funeral redacted in an excel sheet)*

| | Value | Method | Status | Remaining | Received | |
|---|---|---|---|---|---|---|
| Huguette Antoine | 500 | Zelle | | 500 | | Margael |
| Myrlande Jean-Philippe | 250 | Zelle | | 250 | | Margael |
| Furdina Verneret | 200 | Zelle | | 200 | | Christie |
| Amos Saint Juste | 1100 | Cash | | 1100 | | Philippe |
| Rita Figereau | 280 | Flower purchase | -280 | | | Philippe |
| Shekina SDA | 400 | Check | -400 | | | Margael |
| Shekina SDA | 500 | Check | | 500 | 500 | Margael |
| Shekina SDA | 250 | Flower purchase | -250 | | | Margael |
| Frere Guerrier | 300 | Food services | -300 | | | Philippe |
| Jenny Laguerre | | | | | | Philippe |
| Soeur Cecile | 300 | Food services | -300 | | | Margael |
| Jean & Joceline Baudoin | 300 | Food services | -300 | | | |
| Edwin Edouard | 100 | Check | | 100 | | Philippe |
| Marie Renee Luxama | 200 | Cash to Matante Marie | | 200 | 200 | Margael |
| Nancy Jean-Pierre | 100 | Cash to Matante Marie | | 100 | 100 | |
| Premier Eglise Methodist Unie | 500 | Check to Matante Marie | | 500 | 500 | Margael |
| Solange Casseus | 100 | Cash to Matante Marie | | 100 | 100 | |
| Antonio Laborde | 100 | Cash to Matante Marie | | 100 | 100 | |
| Yanick Lambert Dauphin | 100 | Cash | | 100 | 100 | |
| Frere Mannasse | 500 | Cash to Matante Marie | | 500 | 500 | Margael |
| Promotion Ecole des Infirmieres 1 | 2168 | Cash | | 2168 | 2168 | Margael |
| Agnes Francois Lachaud | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Rosia & Sylvio Dume | 100 | Cash | | 100 | 100 | |
| Louines Chapron | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Anne & Renand Rochelin | 400 | Cash | | 400 | 400 | Margael |
| Katie Volmar & Barbara | 300 | Cash | | 300 | 300 | |
| Denise Jeune | 150 | Cash | | 150 | 150 | |
| Myrlande Thelusma | 150 | Cash | | 150 | 150 | Margael |
| Fito Adonis | 400 | Cash | | 400 | 400 | Margael |
| Marie Alberte & Alain Pierre | 500 | Check | | 500 | 500 | Margael |
| Gladys Joseph & Sonia Joseph | 200 | Cash | | 200 | 200 | |
| Mona & Marc Belizaire | 150 | Cash | | 150 | 150 | |
| Marie Edithe Gu (Chouchou) | 200 | Check | | 200 | 200 | Margael |
| Micheline Bertin | 100 | Cash | | 100 | 100 | |
| Lisette & Guetly Thelusma | 200 | Cash to Matante Marie | | 200 | 200 | Margael |
| Bon Samaritain | 100 | Cash to Matante Marie | | 100 | 100 | |
| Huguette Antoine | 100 | Zelle to Matante Marie | | 100 | | Margael |
| Groupe des Dames | 550 | Cash to Matante Marie | | 550 | 550 | Margael |
| Miss Camille | 200 | Cash | | 200 | 200 | Margael |
| Ginette & Denise Badou | 500 | Cash | | 500 | 500 | Margael |
| Marie Lourdes Joseph | 300 | Check | | 300 | 300 | Margael |
| Flambert Cousseillant | 200 | Cash | | 200 | 200 | Margael |
| Tom Jacquet | 360 | Cash | | 360 | 360 | Margael |
| Rose Adrien | 1000 | Cash | | 1000 | 1000 | |
| Rosemane Gedeon | | | | | | |
| Ashton Chevalier | | | | | | |
| Stephanie Sejour | | | | | | |
| Caleb Pierre | | | | | | Margael |
| Total | | | | 10428 | 10728 | |
| | 12978 | | | | | |

Case ID: 250402123

*(Exhibit G showing homepage message from Chase Mobile when the plaintiff attempted to log into his Chase Mobile account)*



*(Exhibit H showing Google Maps tracking of plaintiff visit to Fulton Street and Myrtle Ave Chase Branches on April 10th and 11th, 2023 and 1100 Market on April 5th and 14th)*





*(Exhibit I showing the various calls made between the plaintiff and Chase on Friday April 14th)*



*(Exhibit J showing the taser injuries sustained by the plaintiff)*



*(Exhibit K showing the Emergency Room reports from Albert Einstein Medical Center and Penn Medicine of plaintiffs injuries )*

Case ID: 250402123

 **Einstein** HEALTHCARE NETWORK
**More than Medicine**

*Exhibit K*



**Patient Name**
ST JUSTE, PHILIPPE
**Date of Birth**
5/28/1989
**Visit Location Information**
**Albert Einstein Medical Center**
**5501 Old York Road**
**Philadelphia, PA, 19141**
**(215) 456-7890**
**Fax: (215) 455-1933**

MRN: 100515147
FIN: 44470577
Location: Albert Einstein Medical Center
Registration Date and
Time: 04/18/2023 19:45 EDT
Primary Care Physician:
None, None

Einstein Healthcare Network thanks you for trusting us with your healthcare needs. The following includes patient education materials and information regarding your injury/illness. Please take these Discharge Instructions and all of your medications to your follow-up appointments.

# Patient Discharge Instructions

**ED Attending Provider:**
**ED Resident/NP/PA:**
MacArthur, Patrick
**Primary Care Provider:**
None, None
**Your Diagnosis**
Cough

Back strain

Taser injury

Back injury

Your exam and treatment during this visit were done for an urgent reason. This visit does not replace complete and regular care from your family doctor. Please return if needed. It is important to also follow-up with your family doctor or clinic when possible. We are here to help you during times of emergency need.

**Discharge Vitals**
**Temperature** (Oral)
36.6 °C

**Heart Rate** (Monitored)
76

**Respiratory Rate**
18

**Blood Pressure**
126/69

**SpO2**
96%

**Weight**
75 kg

**Please Call to Schedule these Appointments**

| With | When | Contact Information |
|---|---|---|
| Healthcare Center #10 21 5-685-0603 | | |
| Additional Instructions: | | |
| None, None | Within 3 to 5 days | |
| Additional Instructions: Call for followup appointment | | |

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123

_JUSTE, PHILIPPE_  - 100515147 -
_IN: 44470577_

ED Patient Discharge Instructions



# Allergies and Medications

**Allergies**
No Known Medication Allergies

These are the lists of medications that you should **TAKE** or **STOP** after you leave the hospital.
If you have questions about these medication instructions or intend to take other medications that you have at home, please discuss this with your physician.

**Medications**

| | What | How Much | When | Instructions | Next Dose |
|---|---|---|---|---|---|
| New | bacitracin topical (bacitracin zinc 500 units/ g topical ointment) | 1 Application Topical | Twice a day | Duration: 7 Days Printed Prescription | |
| New | ibuprofen (ibuprofen 600 mg oral tablet) | 1 Tabs Oral | Every 6 hours | Duration: 5 Days Printed Prescription | |
| New | lidocaine topical (lidocaine 5% topical film) | 1 Patches Topical | At bedtime | Duration: 7 Days remove patches after 12 hours<br><br>Printed Prescription | |

**Safe Medication Use Starts with YOU!**

- Keep an up-to-date list of all the medications you take and carry it with you.
- Make sure your list includes both prescription and over-the-counter medications or supplements with how much you take and when you take them.
- Update your list whenever changes are made to your medications.
- Share your medication list every time you see your doctor, nurse, pharmacist or other healthcare provider.

# What To Do Next

**Instructions from your Doctor**

You were seen in the ED for evaluation of your taser injury to your skin and the muscles underneath, you also had a cough. We tested you for flu and COVID and you should get those results tomorrow, in the meantime your skin looks uninfected and your pain is most likely due to muscle strain caused by the electricity from the taser, this should get better over the next week and in the meantime take ibuprofen, stretch the area, and apply heat as needed. Please make appointment to follow-up with your primary care doctor in the next few days to a week for reevaluation of your injuries, and if you start developing

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123

OSTE, PHILIPPE - 100515147 -
44470577

ED Patient Discharge Instructions



fevers, difficulty breathing, significant darkening of your urine, or any other concerning symptoms, please come back into the ED for evaluation. Otherwise please follow-up with your primary care doctor, take the medications as prescribed, rest and recover.

## Tests This Visit

All **electrocardiogram (EKG)** and radiology studies done in the Emergency Department are reviewed by a heart doctor (cardiologist) and/or x-ray doctor (radiologist). If there is new information after the review, you or your doctor will be contacted by phone or letter.

**HIV & Hepatitis C Screening Is Important for Everyone**. If you were tested for HIV or Hepatitis C during your visit today, results will be available within a few business days. If the results are positive, you will be contacted by staff with the result, information, and referral for treatment. Both conditions are easily and effectively treated at Einstein.

If you were not tested and would like to be tested, contact your primary care physician.

To inquire about HIV test results, you may leave a message at the confidential Patient Test Result line at 215-456-7568. To inquire about Hepatitis C test results, you may leave a message at confidential Hepatitis C line at 215-456-5729. You will receive a call back within 24 hours or on the next business day. Results will not be given out or left as a voice mail message.

## Immunizations This Visit

## Your Medical History

Case ID: 250402123

# AFTER VISIT SUMMARY

**Penn Medicine**

**Philippe St Juste** DoB: 5/28/1989          📅 4/22/2023  📍 PAH Emergency Department 215-829-3358

## Instructions
Your personalized instructions can be found at the end of this document.

 **Read the attached information**
1. Cough (English)
2. Back: Strain (English)

 **Call Wood Clinic Resident**
Specialty: Family Medicine

## Today's Visit
Your Treatment team today included: Jenice Leticia Baker, MD

**Diagnoses**
• Cough
• Low back sprain

 **Imaging Tests**
XR CHEST 2 VIEWS

 **Medications Given**
ibuprofen Last given at 11:19 AM

 Blood Pressure
**136/80**        Temperature (Oral) **98.2 °F**        Pulse **78**        Respiration **16**

 Oxygen Saturation
**100%**

## What's Next
You currently have no upcoming appointments scheduled.

## Assistance for future appointments

For assistance with scheduling a follow-up appointment with a Penn Medicine physician, please call 215-829-3383 and indicate that you were seen in the Emergency Department.

*(Exhibit L showing the branch manager description of the plaintiff)*

**Philadelphia Police Department**
**Central Detective Division**
**Investigation Interview Record**

| | |
|---|---|
| Case No.: **23-** | |
| Interviewer: **Det McCaffery # 980** | |

| Name: **Mecca Abdullah** | | | Age: **32** | Race: **Black** | Sex: **Female** | Dob: **11/16/1990** |
|---|---|---|---|---|---|---|
| Address: **1100 Market St** | | City: **Philadelphia** | State: **PA** | Zip Code **19121** | Phone Number: **215 430 5769** | |
| Name of Employer/School **Chase Bank** | | | Soc. Sec. No.: | | Cellular Phone Number: | |
| Address of Employer/School | | | Department: | | Work Phone Number: | |
| Name of Closest Relative: | | | Address of Relative: | | Phone Number: | |
| Place of Interview: **Central Detectives** | | | Date of Interview: **4/14/2023** | | Time of Interview: **6:30 pm** | |
| We are questioning you concerning: **A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm** | | | | | | |

Q. I am Detective McCaffery. Can you tell me what happened today?

  A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.

Q. Do you know the clients name?

  A. Phillippe St Juste.

Q. Can you describe the male?

  A. He was a tall black male, slender. About 6'3". He had an accent.

Q. How many times was he asked to leave?

  A. He was asked to leave about 10 times over the course of an hour.

Q. What is your position at the bank?

  A. I am the branch manager.

  Q. Is there anything else that you would like to add to this interview?

    A. No

*(Exhibit M showing plaintiff arrest documentation)*

Case ID: 250402123

**PHILADELPHIA MUNICIPAL COURT**

NON-TRAFFIC STATUTORY SUMMARY OFFENSES

# CITATION

2306016505

PA SID: **53870481**    **PID:**    1237427

DC#: **23-06-016505-01**    PSA: **2**    Crime Code: **90J**    Desc: **Tresspass of Real Property**

COMMONWEALTH VS.
Defendant: **ST JUSTE, PHILLIPPE**

**231 Spencer ST.**

**Brooklyn, NY 11234**    PID: **1237427**

Sex: **Male**    DOB: **5/28/1989**    Age: **33**    Race: **Black**

Arrest Date / Time: **4/14/23 6:30 PM**

Inside/Outside: **I**

Loc. **1100 Market ST.**
    **Philadelphia, PA 19107**

Docket #:    **MC51-SU-0001113-2023**

Complainant Name:
**ABDULLAH, MECCA**

| Charges: | OC Description | Grade | Count |
|---|---|---|---|
| CC3503B | DEFIANT TRESPASS | S | 001 |

**NATURE OF THE OFFENSE**
On (day, date and time) **Friday 04/14/2023 05:45 PM** at (Incident Loc.) **1100 MARKET ST.**

in the County of Philadelphia, the accused committed the following acts: (description of acts and specification of statute and sector number thereof)

**ON 4/14/23 AT APPROXIMATELY 5:45 PM WHILE WORKING AN OVERTIME DETAIL AT TJ MAXX ON FOOT AS CALL SIGN CFB10 THE OFFICER WAS APPROACHED BY A FEMALE EMPLOYEE FROM CHASE BANK LOCATED AT 1100 MARKET ST WHO STATED THAT THEY WERE HAVING TROUBLE WITH A MALE REFUSING TO LEAVE THE BANK AFTER CLOSING HOURS. UPON ARRIVAL THE OFFICER MET WITH THE BRANCH MANAGER OF THE BANK WHO STATED THE DEFENDANT WANTED TO WITHDRAWAL HIS MONEY BUT DID NOT HAVE THE PROPER VERIFICATION. THE DEFENDANT WAS TOLD TO LEAVE APPROXIMATELY 10 TIMES OVER 30 MINUTES BY THE BANK MANAGER AND POLICE. WHILE ATTEMPTING TO ESCORT THE DEFENDANT OUT OF THE BANK HE FELL TO THE FLOOR AND HE CLENCHED HIS FIST REFUSING TO GET HAND CUFFED. WHILE THE DEFENDANT WAS IN THE SITTING POSITION HE REFUSED TO PUT HIS HANDS BEHIND HIS BACK. DEFENDANT WAS  TAZED  IN THE BACK TO COMPLY. THE MALE WAS THEN HANDCUFFED AND TRANSPORTED TO CENTRAL DETECTIVES FOR FURTHER INVESTIGATION.**

The facts set forth in this citation are true and correct to my personal knowledge or information and belief, and any false statements therein are made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904), relating to unsworn falsification to authorities.

| Officer Name | Payroll# | Badge | UNIT | Platoon/Group | SCH. VAC. |
|---|---|---|---|---|---|
| CURTOSI JR ANTH | ■■■■ | 7001 | 4500 | 2 E | 4/17/2023 to 4/17/2023 |

_____
**Operations Room Supervisor's Signature**

_____
**Officer's Signature**

**YOU ARE REQUIRED BY LAW TO APPEAR ON THE FOLLOWING ARRAIGNMENT OR TRIAL DATE**

**5/1/2023**    **404: 1301 Filbert Street, Stout Ctr  2:00 p.m.**

(Date)    (Address)

At such time and place you may be found "Guilty", "Not Guilty" or "Enroll in the Summary Diversion Program".
**FAILURE TO APPEAR SHALL CONSTITUTE CONSENT TO A TRIAL IN YOUR ABSENCE.  IF YOU ARE FOUND GUILTY AT TRIAL, YOU SHALL HAVE THE RIGHT TO FILE AN APPEAL WITHIN 30 DAYS FOR A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS.**
**JUVENILES MUST APPEAR WITH A PARENT OR LEGAL GUARDIAN AT THE REFERENCED COURT HEARING.**
**FAILURE TO DO SO MAY RESULT IN THE ISSUANCE OF A BENCH WARRANT.**

_____
**Defendant's Signature**

_____
**Parent's (Guardian's) Signature**

**NOTICE TO DEFENDANT:**    The defendant must provide written notice to the Court of any change of address within 48 hours of the date of change.

| | |
|---|---|
| ☐ Guilty    ☐ Not Guilty    ☐ Discharged | Fine    $ _____ |
| ☐ Discharged L.O.P.    ☐ Withdrawn | Cost    $ _____ |
| **Plea:** ☐ Guilty  ☐ Not Guilty | VCF    $ _____ |
| _____ (ADA Signature) | DAF    $ _____ |
| I voluntarily and understandingly plead guilty and waive my right to counsel. | SAF    $ _____ |
| _____ (Defendant's Signature) | TOTAL  $ _____ |

Comm. Service Hrs: _____
Status Date _____

Restitution _____
Status Date _____

Pay By _____    _____ Days in County Prison

The First Judicial District complies with the American with Disabilities Act. If you have a disability and require reasonable accommodations, please call 215-683-7272.

**Judge:**
_____
(Given Under My Hand and Seal)

_____ (Date)

Rev. 07/00    CBN: **1698198**    04/15/2023 08:23:46    Page 1 of 1

Case ID: 250402123

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. No. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 23 | 6 | 20508 | | | BO | 4/14/23 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | | TIME OUT | A | TIME IN | A |
|---|---|---|---|---|---|---|
| Trespass Intrd | 90J | | 347 | P | | P |

| LOCATION OF OCCURRENCE | | ☑ IN | TYPE OF PREM. |
|---|---|---|---|
| 1100 Market St | | ☐ OUT | 04 |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 4/14/23 | | 330 | P | |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| Chase Bank | | | | |

| ADDRESS | PHONE (BUSINESS) |
|---|---|
| 1100 Market St | |

| FOUNDED | REPORT TO FOLLOW | | UNIT | CODE | INV. CONT NO |
|---|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes  ☐ No  ☐ Close Out | | | | 3602 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes  ☐ No | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

**DESCRIPTION OF INCIDENT** *(Include Description of Crime Scene if Applicable)*

Mecca Abdullah branch manager per above states below issue refused to leave bank after closing. Below male taken into custody for defiant trespass terms to CDD.

| WITNESS | ADDRESS | PHONE NUMBER |
|---|---|---|
| | | |

**OFFENDER INFORMATION**

| PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes  ☐ No | $ |

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| | |

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |
|---|---|
| | |

| WANTED/STOLEN MESSAGE SENT | DIST/UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No.          Date | | | |

| REPORT PREPARED BY | NO. | DIST/UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| | 7901 | CDD | | 1 |

| REVIEWED BY | NO. | DIST/UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| | | | | |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123



**Philadelphia Police Department**
**Central Detective Division**
**Investigation Interview Record**

| Case No.: 23- |
| Interviewer: **Det McCaffery # 980** |

| Name: **Mecca Abdullah** | | Age: **32** | Race: **Black** | Sex: **Female** | Dob: **11/16/1990** |
| Address: **1100 Market St** | City: **Philadelphia** | State: **PA** | Zip Code: **19121** | Phone Number: **215 430 5769** | |
| Name of Employer/School **Chase Bank** | | Soc. Sec. No.: | | Cellular Phone Number: | |
| Address of Employer/School | | Department: | | Work Phone Number: | |
| Name of Closest Relative: | | Address of Relative: | | Phone Number: | |
| Place of Interview: **Central Detectives** | | Date of Interview: **4/14/2023** | | Time of Interview: **6:30 pm** | |

We are questioning you concerning:
**A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm**

Q. I am Detective McCaffery. Can you tell me what happened today?

A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.

Q. Do you know the clients name?

A. Phillippe St Juste.

Q. Can you describe the male?

A. He was a tall black male, slender. About 6'3". He had an accent.

Q. How many times was he asked to leave?

A. He was asked to leave about 10 times over the course of an hour.

Q. What is your position at the bank?

A. I am the branch manager.

Q. Is there anything else that you would like to add to this interview?

A. No

Signature                                          Date: 4/14/23

Philadelphia Police (75-483)

- 1 -

Case ID: 250402123

# Arrest Memo

District: 6    RPC # CB10    DC#22-06-016511 Sector: 2    Date:04/14/2023    Time Of Assignment: 5:47pm
Time Of Occurrence: 3:30pm    Location Of Occurrence: 1100 Market St.t    In / Out: IN
Location Of Arrest: 1100 Market Stt    Time Of Arrest: 6:30PM    Type of Assignment: Pedestrian

Arresting Officer: Curtosi    Badge 7001    District: Center City District
Squad/Group 5 Squad Vacation From 6/8/23 To 7/14/23    Pr. # 206105

Arresting Officer:    Badge:    District:
Squad/Group5 Squad    Vacation from    To    Pr. #

Complainant:Mecca Abdullah    Age:39 Race:B Sex: Female Address:1100 Market Stt    Phone#
Witness:    Address:    Phone#

Defendant: Philipe Emmanual    Age:    DOB:    Race    B    Sex: Male    Address:

Defendant:    Age:    DOB:    Race    Sex: Male    Address:

Defendant:    Age:    DOB:    Race    Sex: Female    Address:

Property receipt #    Item:
Property receipt #    Item:
Property receipt #    Item:

## Details Of Arrest

On 4/14/23 I was working an overtime detail at TJ MAXX on foot as call sign CFB10 when a female employee from Chase Bank walked in stating that they were having trouble with a male refusing to leave the bank after closing hours. Upon arrival I met with the Branch manager of the bank Mecca Abdullah she stated the male wanted to withdrawl his money but did not have the proper verification. The male was told to leave several times by the bank manager and police. I was attempting to escort the male out of the bank when he fell to the floor and he clenched his fist refusing to get hand cuffed. While the male was in the sitting position and refused to put his hands behind his back. Police Officer Leonard #4067 tazed the male in the back to comply. The male was then handcuffed and transported to Central Detectives for further investigation.

Case ID: 250402123

# PRISONER FLOW CHART

| DC # | 23-06-016505 |
|---|---|
| CBN # | |
| PPN # | |
| Time of Arrest: | 5150  ☐ AM ☑ PM |
| Reason for Arrest: | Tresspassins |

## Detainee Information

| Name | | | DOB | Sex | Identifies as |
|---|---|---|---|---|---|
| **Last** St. Juste | **First** Philippe | | 5-28-89 | Male ☑ Female ☐ | (Gender Identity) Male |

## Arresting Officer / s

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/O | Coles Curtosi | 7001 | ▓▓▓▓ | CFB10 | CCD | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **Police Transported Subject** ☑ Yes ☐ No  Vehicle # 601 | **Subject Searched PRIOR to Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Subject Secured with Restraints** ☐ Back ☐ Front ☐ Legs  Badge # |
| **Vehicle Searched PRIOR to Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Subject Seat Belted in** ☑ Yes ☐ No  Badge # 5114 | **Subject Searched AFTER to Police Transport** ☑ Yes ☐ No  Badge # 5114 |
| **Vehicle Searched AFTER Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Weapons Secured PRIOR to Entry into DBC/TH** ☐ Yes ☐ No | **Security Concerns Conveyed to DBC/TH** ☐ Yes ☐ No  Badge # |

**Security Concerns:** ☐ Violent  ☐ Suicidal  ☐ Escape Risk  ☐ Aggressive  ☐ Intoxicated  ☐ Deaf / Hearing Impaired  ☐ Medical  ☐ Disabled  ☐ Wheelchair required (PDAV Used)  ☐ Other:

**Identifiable Attributes:** ☐ Trama  ☐ Bruises  ☐ Scars  ☐ Tattoos  ☐ Other  ☐ N/A  Describe:

## Transportation Officer / If Different from Arresting

**Temporary Holding (TH) will be Checked BEFORE and AFTER use:** ☐ Yes ☐ No

**Transported to PDU for:** Diabetic ☐  DUI ☐

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/O | Grier | 5114 | ▓▓▓▓ | 601 | 6th | |
| P/O | MARRIGAN | 4413 | ▓▓▓▓ | 601 | 6th | |
| | | | | | | |

**If Detainee is Transported to the Hospital, list the Hospital's Name and Reason for Visit and Hospital Case DC #:**

**Additional Detainee Information:**

75-582 (Rev. 4/17)

Case ID: 250402123

# BIOGRAPHICAL INFORMATION REPORT

☑ ARREST   ☐ INVESTIGATION   ☐ OTHER

(CHECK BLOCKS WHERE DOCUMENTATION EXISTS)

PHILADELPHIA POLICE DEPARTMENT

| | | |
|---|---|---|
| DATE 4-14-23 | TIME 5:50p | LOCATION OF INITIAL CONTACT ▶ 1100 MARKET St | DISTRICT ▶ 6th | D.C. NO. 23-06-016505 |

NAME ▶ LAST  St. Juste   FIRST Philippe   MIDDLE

D.O.B. 5-23-34   SEX Male   RACE 13/1C

| HEIGHT 5'10 | WEIGHT 170 ▶ | HAIR COLOR ▶ Blk | EYE COLOR ▶ BRN | COMPLEXION Med | BUILD ▶ thin | GLASSES (YES/NO) No | FACIAL HAIR |

NICKNAME UNK   ALIASES UNK   MARITAL STATUS

RESIDENCE STREET NUMBER/NAME 231 Spencer St Apt 3

CITY/STATE (OTHER THAN PHILA.) ▶ Brooklyn NY   DIST.

TYPE OF RESIDENCE   RESIDES WITH

DRIVER NUMBER 306008733   STATE NY

SOCIAL SECURITY NUMBER   OCCUPATION UNK UNK

EMPLOYER/ADDRESS

PLACE OF BIRTH/CITY, STATE   GROUP AFFILIATION

ETHNIC BACKGROUND

SCARS, TATTOOS, DEFORMITIES   CLOTHING DESCRIPTION
Blue Shirt w/ White Collar
Black Pants
Black Sneakers

JEWELRY WORK

## VEHICLE INFORMATION

| YEAR | MAKE | MODEL | COLOR | STATE | TAG | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| OWNER-LAST NAME, FIRST | ADDRESS | CITY | STATE |
|---|---|---|---|
| | | | |

| MODUS OPERANDI (METHODS, TRAITS, ETC.) | AREAS FREQUENTED |
|---|---|
| | |

229 (Rev. 3-92)

AREAS MARKED WITH ▶ MUST BE FILLED IN.
CHECK RELIABILITY BOXES WHEN APPROPRIATE

Case ID: 250402123

## RELATIVES

| | | | | | |
|---|---|---|---|---|---|
| SPOUSE | LAST | MAIDEN | FIRST | ADDRESS | CITY/STATE |
| MOTHER | LAST | MAIDEN | FIRST | ADDRESS | CITY/STATE |
| FATHER | LAST | FIRST | | ADDRESS | CITY/STATE |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |

## ASSOCIATES

| LAST NAME | FIRST NAME | ADDRESS | CITY/STATE | PPN |
|---|---|---|---|---|
| | | | | |
| | | | | |

## EDUCATION

| SCHOOL | ADDRESS | CITY/STATE | YEARS |
|---|---|---|---|
| | | | |
| | | | |

## CRIMINAL RECORD INFORMATION

| | | | |
|---|---|---|---|
| PPN | FBI NUMBER | PA NUMBER | OTHER NUMBER *(STATE, IMMIGRATION)* |
| PAROLE NUMBER | PAROLE OFFICER | | TELEPHONE NUMBER(S) |
| PROBATION NUMBER | PROBATION OFFICER | | TELEPHONE NUMBER (S) |

CHIEF CRIMINAL ACTIVITY

| INITIATING OFFICER, LAST NAME | BADGE | RANK | DISTRICT/UNIT/PLATOON |
|---|---|---|---|
| ASSIGNED INVESTIGATION | BADGE | RANK | DISTRICT/UNIT PLATOON |

## ADDITIONAL REMARKS

75-229 (Reverse) (Rev. 3/92)

Case ID: 250402123

Case ID: 250402123

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. No. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 23 | 6 | 16505 | | 6 | F310 | 4/14/23 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | A | TIME IN | A |
|---|---|---|---|---|---|
| Trespassing (Defiant) | 90J | 547 | P | | P |

| LOCATION OF OCCURRENCE | IN | TYPE OF PREM. |
|---|---|---|
| 1100 Market St | ☒ IN ☐ OUT | 034 |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 4/14/23 | 5 | 330 | P | ~ |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| Chase Bank | | | | 415-430-5759 |

| ADDRESS | PHONE (BUSINESS) |
|---|---|
| 1100 Market St | |

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No ☐ Close Out | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT** (Include Description of Crime Scene if Applicable)

R~ Defint Tresspassing
Mecca Abdullah - Branch
manager for above states below
male refused to leave Bank
Aftn closing. Below male Taken
into custody for defiant
Tresspassing - Trans to CDD.

| WITNESS | ADDRESS | PHONE NUMBER |
|---|---|---|
| Off. told by Police & Comp to leave multiple times. | | |

**OFFENDER INFORMATION**

Ohielle Emmanuel 5/28/84
P/O scanned 4067 Say stunned male before cust.

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |

Passport # 668819434
Bank closed at 5:00P
male was Told to leave Several
Times by Bank Employees and Police.

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|---|---|
| | |

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |
|---|---|
| | |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No.          Date | | | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| Cintosx ▮▮▮ | 7801 | C6 | 1 | 1 |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| | | | | |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123

*(Exhibit N showing the plaintiff physical therapy report)*

Case ID: 250402123

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Initial Evaluation

| | | | |
|---|---|---|---|
| **Patient Name:** | Phillippe Saint Juste | **Date Seen:** | 4/28/2023 |
| **Diagnosis:** | S23.3XXA  Sprain of ligaments of thoracic spine, initial encounter | **Referring Physician:** | Jerry Uduevbo |
| | M54.6  Pain in thoracic spine | | |
| | M25.60  Stiffness of unspecified joint, not elsewhere classified | | |
| | M62.81  Muscle weakness (generalized) | | |

## Subjective

### Current Condition
#### Details
Chief Complaint: The patient is a 33 year old who recently was attacked from his upper back after a police altercation. Patient reported feeling increased upper back pain and discomfort post incident for the past 2 weeks. Patient presents with thoracolumbar joint pain, stiffness, muscle weakness, and limited with all functional ADLs and IADLs.
Onset Date: Last 2 weeks
Type of Injury: New Injury
Occupation: Educator/Mentor

#### Treatments

| Type | Start Date | End Date | Outcome |
|---|---|---|---|
| Primary Physician | 4/26/2023 | 4/26/2023 | No Change |

### Pain History
#### Pain Area

| Area | Current | Best | Worst |
|---|---|---|---|
| Thoracic Spine | 7/10 | 6/10 | 8/10 |

#### Pain Description

| Area | Activity/Time | Symptoms | Descriptions |
|---|---|---|---|
| Thoracic Spine | Bending, Lifting, Reaching, Working, Sitting | Increased | Deep, Burning, Aching, Radiates, Stiff |

### Functional Status

| Functional Activity | Status | Level |
|---|---|---|
| Working | Moderate Limitation | Current |
| Recreational Exercise | Moderate Limitation | Current |
| Sitting | Moderate Limitation | Current |
| Bending | Moderate Limitation | Current |
| Reaching | Moderate Limitation | Current |
| Dressing | Moderate Limitation | Current |
| Bathing | Moderate Limitation | Current |

Currently Working: Yes

Case ID: 250402123

**Medical History**

**Surgery**

None per patient

**Condition**

None per patient

Allergies NKDA

| Medication | Classification | Status |
|---|---|---|
| Ibuprofen | Pain Reliever | Currently Taking |
| Lidocaine | Pain Reliever | Currently Taking |
| Bacitracin Zinc | Pain Reliever | Currently Taking |

Patient is healthy and denies and surgical history.

**Social and Family History**

**Social History/Living Environment:** The patient lives alone in his apartment building on the 5th floor with elevator accesibility with no steps to enter.

Non smoker

Non alcoholic

**Family History:** None contributory to the patients present complaints.

**Outcomes**

| Test | Score | Note |
|---|---|---|
| Oswestry | 24 | 48% |

# Objective

## Observation

Patient has forward head position with forward shoulder positioning.

## Vital Signs

| Vital Sign | Finding |
|---|---|
| Blood Pressure | 121/82 |
| Heart Rate | 64 bpm |
| Height | 6.2 ft |
| Weight | 155 lbs. |
| BMI | 19.8 |

## T-Spine

### T-Spine - Active Range Of Motion

| Motion | AROM | Gross Strength |
|---|---|---|
| Flexion | 45% Percent | 3-/5 |
| Extension | 45% Percent | 3-/5 |
| Right Rotation | 45% Percent | 3-/5 |
| Left Rotation | 45% Percent | 3-/5 |

### T-Spine - Passive Range Of Motion

| Measurement | PROM |
|---|---|
| Rotation Left | 50% Percent |
| Rotation Right | 50% Percent |
| Extension | 50% Percent |
| Flexion | 50% Percent |

Case ID: 250402123

**T-Spine - Muscle Testing**

| Measurement | Right Strength | Right Flexibility | Left Strength | Left Flexibility |
|---|---|---|---|---|
| Latissimus Dorsi | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Rhomboids | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Serratus Anterior | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Thoracic Paraspinals | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |

**T-Spine - Special Tests**

| Special Test | Right | Left |
|---|---|---|
| Rib Springing | Negative | Positive with Pain |

**T-Spine - Joint Mobility**

| Joint | Force Direction | Grade | End-Feel | Symptoms |
|---|---|---|---|---|
| Upper Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Middle Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Lower Thoracic | P/A Central | II | Muscle Spasm | Decreased |

## Palpation

Tenderness during palpation of Ribs.  Tenderness during palpation of Sternum. Tenderness during palpation of Costal Cartilage. Tenderness during palpation of Clavicle.  Tenderness during palpation of Abdomen. Tenderness during palpation of Scapula.

## Assessment

**Descriptions**

Patient presents with signs and symptoms consistent with a thoracic muscle sprain.
Patient understood injury and was involved in the creation of goals.

**Problem List**

**Problems**

Pain limits functional activities
Decreased ROM preventing full functional activity
Decreased strength limiting functional activities
Decrease participation in recreational activities
Pain decreasing functional mobility
Marked muscle pain and tightness in thoracic spine.

## Plan

**Goals**

| Length | Status | Goal |
|---|---|---|
| Short Term | Not Met | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | Not Met | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | Not Met | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | Not Met | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | Not Met | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | Not Met | Improve joint mobility by 50% in 4 weeks. |

Case ID: 250402123

**Treatment Plan**

**Recommend Physical Therapy 2 time(s) a week for 8 week(s), with treatments to consist of:** Body Mechanic Training (97110) - Proper positioning and lifting strategies, Core Stabilization (97110) - Increase strength and function of spinal stabilization muscles, Flexibility (97110) - active and passive patient stretching, Neuromuscular Re-ed - 97112: Improve neurologic control of muscle function, ROM (97110) - Passive or active activities to increase joint range of motion, Therapeutic Exercise - 97110: Improve muscle strength, ROM, flexibility, and muscle function, Cryotherapy- 97010: Application of cold to decrease local swelling and decrease pain, Heat- 97010: Application of heat to increase local circulation and decrease pain, IFC E-Stim- 97014: Application of E-Stim to modulate pain , Ultrasound- 97035: increase local circulation, improve tissue healing time, and modulate pain, Manual Stretching- 97140: passive or active stretching to improve muscle length and function, Soft Tissue Mobs- 97140: increase ROM tissue length, joint mechanics, and modulate pain, Spine Mobilization- 97140: increase ROM, improve joint mechanics, and modulate pain.

**Initial Treatment**

· Patient Education - Initial Evaluation: Pt. understood injury and its management. - 30 Total Minutes
· T-Spine - Cat/Camel Stretch: 5 times - 2 Total Minutes
· T-Spine - Back Extension: 2 x 10 - 2 Total Minutes
· T-Spine - Prone Scapular Retraction: 2 x 10 - 2 Total Minutes
· T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
· Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
· T-Spine - thoracic rotation: 2 x 10 - 2 Total Minutes
· T-Spine - open books: 2 x 10 - 2 Total Minutes

**MD Communication:** Initial evaluation documented and communicated to the referring physician for accountability of care.



X

Adewale S Adenlola, DPT License #: 018676

(Document electronically signed by TheraOffice Documentation)
4/28/2023

**To Be Completed By Physician:**

____ I have no revisions to this plan of care
____ Revise plan of care as follows
____ Discharge Patient

Prognosis: ____ Excellent ____ Good ____ Fair ____ Poor

Continue _____ times per _____ for _____ weeks / months

Physician Signature: _____ Date:_____
n signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 250402123

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Daily Note

| | | | |
|---|---|---|---|
| **Patient Name:** | Phillippe St Juste | **Date Seen:** | 6/22/2023 |
| **Diagnosis:** | S23.3X Sprain of ligaments of thoracic | **Referring Physician:** | Jerry Uduevbo |
| | XA      spine, initial encounter | | |
| | M54.6 Pain in thoracic spine | | |
| | M25.60 Stiffness of unspecified joint, | | |
| | not elsewhere classified | | |
| | M62.81 Muscle weakness (generalized | | |
| **Time In:** | 4:00 PM | **Time Out:** | 5:00 PM |

## Goals

| Length | Status | Goal |
|---|---|---|
| Short Term | In Progress | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | In Progress | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | In Progress | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | In Progress | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | In Progress | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | In Progress | Improve joint mobility by 50% in 4 weeks. |

## Subjective

Patient reports a decreased in symptoms since last visit.

## Objective

- T-Spine - Cat/Camel Stretch: 5 times - 3 Total Minutes
- T-Spine - Back Extension: 2 x 10 - 3 Total Minutes
- T-Spine - Prone Scapular Retraction: 2 x 10 - 3 Total Minutes
- T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
- Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
- T-Spine - thoracic rotation: 2 x 10 - 3 Total Minutes
- T-Spine - open books: 2 x 10 - 3 Total Minutes
- Modality - IFC E-Stim: 40 mA - min x 15' - 15 Total Minutes
- Manual - Stretching: 10 Minutes - 10 Total Minutes

## Assessment

Tolerated with decreased symptoms and increased function

## Plan

Continue to progress per plan of care. Increase activity and exercise intensity next session.

Case ID: 250402123



X

Adewale S Adeniola, DPT License #: 018676

**To Be Completed By Physician:**
\_\_\_\_ I have no revisions to this plan of care
\_\_\_\_ Revise plan of care as follows
\_\_\_\_ Discharge Patient

Prognosis: \_\_\_\_ Excellent \_\_\_\_ Good \_\_\_\_ Fair \_\_\_\_ Poor

Continue \_\_\_\_\_ times per \_\_\_\_\_ for \_\_\_\_\_ weeks / months

Physician Signature: _____ Date: _____
In signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 250402123

# EXHIBIT "B"

# **Doc 1- Complaint**

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

For Office of Judicial Records Use Only (Docket Number)

250402123

Filed and Attested by the
Office of Judicial Records
04/16/2025 03:14 pm
N. HATCHER

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philippe E. St Juste | JP Morgan Chase |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 1227 Magee Ave, Philadelphia, PA 19111 | 700 Kansas Lane Mail code, LA4-7200 Monroe LA 71023 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | City of Philadelphia |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | Office of Risk Management, 1515 Arch st 14th Floor, Philadelphia PA 19102 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☐ Complaint ☐ Petition Action ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Minor Court Appeal<br>☐ Statutory Appeals<br>☐ Commerce (Completion of Addendum Required) | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE (SEE INSTRUCTIONS) |
|---|
| 1J Bad Faith |

| STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS) |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| CMPLC-St Juste Vs Jp Morgan Chase Bank Et Al [RNH]<br><br>25040212300003 | Yes    No<br>☐      ☐<br>☐      ☐<br>☐      ☐ |

## TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Philippe E St Juste | 1227 Magee Ave Philadelphia, PA 19111 |
| PHONE NUMBER | FAX NUMBER | |
| 917-937-6594 | | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| | philippe.esai@gmail.com |
| SIGNATURE | DATE |
| Philippe E St Juste | 04-16-2025 |

01-101 (Rev. 8/2014)

# Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A.  Parties**

   *i.*  *Plaintiffs/Defendants*
Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

   *ii.*  *Parties' Addresses*
Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

   *iii.*  *Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B.  Commencement Type:** Indicate type of document filed to commence the action.

**C.  Amount in Controversy:** Check the appropriate box.

**D.  Court Program:** Check the appropriate box.

**E.  Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.



**Proceedings Commenced by Appeal**

Minor Court
- 5M  Money Judgment
- 5L  Landlord and Tenant
- 5D  Denial Open Default Judgment
- 5E  Code Enforcement
      Other:

Local Agency
- 5B  Motor Vehicle Suspension - Breathalizer
- 5V  Motor Vehicle Licenses, Inspections, Insurance
- 5C  Civil Service
- 5K  Philadelphia Parking Authority
- 5Q  Liquor Control Board
- 5R  Board of Revision of Taxes
- 5X  Tax Assessment Boards
- 5Z  Zoning Board
- 52  Board of View
- 51  Other:

Other:

**Proceedings Commenced by Petition**
- 8P  Appointment of Arbitrators
- 8C  Name Change - Adult
- 8L  Compel Medical Examination
- 8D  Eminent Domain
- 8E  Election Matters
- 8F  Forfeiture
- 8S  Leave to Issue Subpoena
- 8M  Mental Health Proceedings
- 8G  Civil Tax Case - Petition
      Other:

**Actions Commenced by Writ of Summons or Complaint**

Contract
- 1C  Contract
- 1T  Construction
- 1O  Other:

Tort
- 2B  Assault and Battery
- 2L  Libel and Slander
- 4F  Fraud
- 1J  Bad Faith
- 2E  Wrongful Use of Civil Process
      Other:

Negligence
- 2V  Motor Vehicle Accident
- 2H  Other Traffic Accident
- 1F  No Fault Benefits
- 4M  Motor Vehicle Property Damage
- 2F  Personal Injury - FELA
- 2O  Other Personal Injury
- 2S  Premises Liability - Slip & Fall
- 2P  Product Liability
- 2T  Toxic Tort
  - *T1  Asbestos*
  - *TZ  DES*
  - *T2  Implant*
- 3E  Toxic Waste
      Other:

Professional Malpractice
- 2D  Dental
- 4L  Legal
- 2M  Medical
- 4Y  Other:

1G Subrogation

Equity
- E1  No Real Estate
- E2  Real Estate
- 1D  Declaratory Judgment
- M1  Mandamus

Real Property
- 3R  Rent, Lease, Ejectment
- Q1  Quiet Title
- 3D  Mortgage Foreclosure - Residential Owner Occupied
- 3F  Mortgage Foreclosure - Not Residential Not Owner Occupied
- 1L  Mechanics Lien
- P1  Partition Prevent Waste
- 1V  Replevin

1H Civil Tax Case - Complaint
      Other:

**F.  Commerce Program**
Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G.  Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.  Related Pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.  Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

**The current version of the Civil Cover Sheet may be downloaded from the FJD's website**
**http://courts.phila.gov**

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA

Philippe E. St Juste

VS.

JP MORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

Case ID: 250402123

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

PHILIPPE E. ST JUSTE

Plaintiff

v.

JPMORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

Defendant

Term,

No.

CIVIL ACTION COMPLAINT

See attached

Case ID: 250402123

The complaint of the plaintiff, Philippe E St Juste, respectfully shows and alleges as follows:

1. The plaintiff herein, Philippe E St Juste, is a resident of the State of Pennsylvania.

2. The defendant herein, JP Morgan Chase, N.A., which operates under the brand name Chase, is the consumer and commercial banking subsidiary of the multinational financial services firm, JPMorgan Chase & Co. It is a national bank headquartered in New York City. [As described by Google AI Overview]

3. The defendant herein, City of Philadelphia, Office of Risk Management, which is located at 1515, Arch street, 14th Floor, Philadelphia, PA 19102 .

4. On Wednesday April 5th  at 1:48 pm Plaintiff St Juste and his aunt Marie Francoise Verdieu entered the 1100 Market St location in Philadelphia, PA of JP Morgan Chase Bank with the intention of opening a joint family checking account.  Plaintiff was met and attended to by Qingmei Qing who introduced herself as Cecilia Qing. Plaintiff's aunt provided her NYS ID and social security card and plaintiff provided his NYS Driver's license and his Chase Debit Card in order to open the new account. During that same meeting, Plaintiff's sisters Christie and Margael provided complete names, address, ssn and emails over the phone to be added as joint account holders. They were then told by Cecilia to report to a Chase branch near them to authenticate their identities in person. Plaintiff created this account to manage his mother's (my aunt's only sister) estate who had passed away on March 22nd. Plaintiff chose to open a new account at Chase because plaintiff had been a customer since September 2007 and plaintiff's mother also had an account with Chase. Plaintiff felt it right to gather his family resources in a place where they had felt financially safe and with which plaintiff had over 15 years as a financial client. Plaintiff deposited  a total of $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in checks received from various family members and friends, all of which are redacted in a family google sheet document.  This money is a collection of gifts the plaintiff had received the previous Sunday at

his mother's memorial service. Plaintiff gave the deposit to Michael, the clerk in attendance and confirmed with him that it was okay to deposit the given amount. Plaintiff and his aunt exited the 1100 Market St location at about 3:41 pm on that day, knowing they had set up an account to manage his mother's affairs.

5. On Friday April 7th, plaintiff attempted to log into his Chase mobile account and received the following message: " We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt and sisters. As his account was still blocked on Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY to resolve the matter. There, the plaintiff was greeted by Penny who called Chase Internal. Plaintiff spoke with a corporate agent and was told that it was an internal issue that would be solved within 24 hrs. Plaintiff exited Chase at about 12:14 pm with assurance that his accounts would be reinstated by the next day.

6. On Tuesday 11th, plaintiff's Chase Mobile app was still locked. Plaintiff visited a second branch of Chase. Plaintiff arrived at 402 Myrtle Ave, Brooklyn, NY at 10:42 am. Plaintiff was greeted by Tevin Campbell who phoned Chase Internal. Tevin informed plaintiff that the issue was that Chase needed to authenticate the checks and that plaintiff needed to provide the phone numbers to two issuers to resolve the matter. Plaintiff provided the number for Sister Giselle the Treasurer of Premiere Eglise Methodiste Unie and the number for Marie Alberte Pierre, an extended family member. Chase Internal operator said he/she could not reach either number immediately but would resolve the matter before the end of the business day. Plaintiff left Chase at 11:48 am.

7. Friday 14th, the plaintiff noticed that he was still restricted from his Chase accounts

Case ID: 250402123

and called Chase at about 10:55 am. Plaintiff spoke with two agents and a manager who told him
that he needed to authenticate each and every check that had been deposited. Plaintiff provided
contact information for many of the check issuers. Plaintiff spent an hour and a half talking to the
manager, by the end of which plaintiff still needed to provide two additional numbers. Plaintiff
was told that they could not authenticate the contact for the First United Methodist Church and
needed a contact for Marie Guerrier. Plaintiff contacted Marie Guerrier, a childhood friend of the
plaintiff's mother, who had written a check for $200 to the plaintiff's aunt. Plaintiff told Ms.
Guerrier the bank would contact her to confirm that she was an issuer, she assured the plaintiff
that that was okay but that she had limited mobility and would not be able to visit any branch. She
also told the plaintiff that the amount in question had been withdrawn from her account since
April 5th. Plaintiff confirmed that the amount had been withdrawn from her account 9 days prior
but it had not been cleared to his account or returned to hers. Plaintiff once again called and spoke
to one more agent for a half hour and provided her with Marie Guerrier's contact. The agent told
the plaintiff she could not authenticate Marie's number. Plaintiff offered to contact Marie Guerrier
myself and have a three way conversation if they had a hard time reaching her. The agent again
refused. At this point the plaintiff had communicated to Cecilia, Tevin and everyone that he had
spoken with over the phone the reason why the account had been created. Plaintiff had
communicated that his sisters, his aunt and himself were grieving the very recent and sudden loss
of his mother. After yet another unproductive phone conversation, plaintiff decided to return to
the Chase location at 1100 Market St where the account had been created.

8. Plaintiff arrived at 1100 Market St at 3:25 pm. Plaintiff intended to close both Chase
accounts and take his business elsewhere. It had been over a week since his money was restricted
and the plaintiff needed to take care of his mother's estate. Plaintiff met with Jeison Brito.
Plaintiff told Jeison he wanted to close both his Chase accounts and take out my money. Jeison
told the plaintiff to let him talk to Internal to see if the issue could be resolved. Plaintiff sat there

Case ID: 250402123

for 2 hours as both Plaintiff and Jeison waited for Internal to get back to them over the phone. At some point the plaintiff stepped into the reception area and called Chase Internal as an alternative to reach Chase Internal. At around 5:00 pm Jeison came and took the plaintiff back into his office. At 5:33 pm Jeison told the plaintiff he had reached Internal and they needed Marie Guerrier to provide a different number or to show up in person to authenticate her check. Plaintiff told Jeison that that was impossible because the number plaintiff had provided was the only number that plaintiff had used to reach Ms. Guerrier and had been the same number his younger sister had used and that his mother had used to talk to Ms. Guerrier on a regular basis. At about 5:38 pm Mecca Abdullah, Vice President, interjected with an escort of Cecilia, another banker and a constable. Mecca repeated Jeison's words and told the plaintiff that he had 2 options: either provide a different contact number for Marie Guerrier or have her come into Chase. Plaintiff told her that those were not options and both were unlikely. Plaintiff reiterated that this level of scrutiny was discriminatory and unjust to a 15 year Chase customer. Plaintiff told Ms. Abdullah, that after speaking to 12 Chase representatives, 8 over the phone and 4 in person and authenticating 5 checks, he only wished to take out his money. Plaintiff also said that if they felt that Marie Guerrier's check was not legitimate to nullify it, return her money and give him the rest of his money. Abdullah told the plaintiff that he needed to leave the premises. Plaintiff sat down and said he would only leave when he got my money. A 20 something black female constable approached the plaintiff and tried to remove him. The constable then called for back up. A late middle aged white officer, whose tag identified as Curtosi, was first on the scene followed by 3 other officers, an Asian superior officer, another white officer Leonard and a black officer and surrounded the plaintiff. Plaintiff held his wallet in his right hand and wrapped his left hand around his right wrist. The officers transported the plaintiff to the reception section of the bank where officer Leonard told the plaintiff that he would tase him if I didn't unlock his grip on his right wrist, he repeated it and then proceeded to tase the plaintiff. Plaintiff held on the first two times and then released his grip. The plaintiff was tased a third time. The plaintiff was then

Case ID: 250402123

handcuffed and compelled by force to lie on his stomach. There were at least 28 officers on the scene. The whole interaction from the conversation with Mecca to the arrest did not exceed 10 mins. The police walked the plaintiff outside of the bank and placed him in the back of a patrol car where his person was searched and his backpack was searched.

9. Plaintiff was transferred to a van and transported to 400 North Broad St Detention Center. Once again the plaintiff was searched. Plaintiff's personal effects were confiscated including his belt and laces, some others were disposed of including pens and pencils. Plaintiff was given a bracelet numbered 518 with his name and charge of trespassing.Plaintiff was told to wash his hands and went through the intake procedure. Plaintiff was then taken to the cell block where he asked to make a phone call, the plaintiff told them it was a New York number. Plaintiff said that it was urgent as plaintiff had an ailing and grieving aunt alone at home who had spent the previous Wednesday night hospitalized. A male officer tried to chastise plaintiff but a older black female officer was kind and let plaintiff call his older sister who he informed that he had been arrested and that she would have to travel from NYC to come stay with their aunt for the night and not to inform my aunt of what had happened because plaintiff feared doing so would impact her health and mental state in a negative way. Plaintiff was taken to cell 085 which was shared with two other people. This was around 7:00 pm. Some time later the plaintiff started feeling the effects of the tasing, the plaintiff complained 8 times that he needed medical assistance for his back, and the plaintiff was ignored. Plaintiff remained in that cell until 3 am when he was taken to be fingerprinted and photographed. That is when the plaintiff saw a nurse who only offered him ibuprofen but did not examine his back. Plaintiff complained that he was not able to sleep as the cell was too cold for any of the detainees to fall asleep. The nurse told the plaintiff that is the condition of jail.  At about 7:45 am officer Martinez allowed the plaintiff once more to call his sister, this time the plaintiff called his younger sister who had come to stay with their aunt. At about 8:30 am the plaintiff was released and was returned his personal effects

Case ID: 250402123

without seeing a lawyer or a judge. Plaintiff was told that he had not been formally charged but that I had been cited and that he should report to court at 1301 Filbert Street on May 1.

10. Plaintiff sustained upwards of 10 small flesh wounds in his back from being tased. Plaintiff had difficulty sleeping or sitting due to the tasing injuries for upward of 2 weeks. Plaintiff visited the emergency rooms of Albert Einstein Medical Center and then again UPenn Medical Center to receive care following his arrest. The plaintiff has since completed several months of physical therapy twice weekly to readapt his back muscles. Chase has served up till then as the plaintiff's only checking banking account. Suspending the plaintiff's accounts limited his ability to receive and deposit money for work that he had done. It inhibited the plaintiff's ability to withdraw and transfer money to people who rely on his financial assistance for school tuitions, medical care and living expenses in Haiti. It also prohibited the plaintiff from serving as administrator of his mother's estate in due time to avoid larger state taxes. Despite the plaintiff's request of communication solely through his criminal defense attorney, JPMorgan Chase contacted the plaintiff multiple times after his arrest through phone calls and emails. The criminal case against the plaintiff was withdrawn after 5 months after the representatives of JPMorgan Chase failed to be present on multiple occasions or provide supporting discovery as requested by the plaintiff's side.

11. By reason of the facts and circumstances stated above, the defendant has breached the contract.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $10,428,000.00, for, together with any other relief the Court finds to be just and proper.

Dated: April 13, 2025

Philippe E St Juste **[Printed]**
Plaintiff

1227 Magee Ave
Philadelphia, Pennsylvania 19111
917-937-6594

Defendants
JPMorgan Chase Bank, N.A.
700 Kansas Lane, Monroe, LA 71203


City of Philadelphia,
Office of Risk Management, 1515 Arch Street, 14th Floor,
Philadelphia, PA 19102.

Case ID: 250402123

Case ID: 250402123

## VERIFICATION

I, _Philippe E. St Juste_, Plantiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Philippe E. St Juste_
(Print Name)

_(signature)_
(Signature)

Date: _04-16-2025_

# Doc 2- Affidavit of Service

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL**



*Filed and Attested by the
Office of Judicial Records
04/16/2025 04:25 pm
N. HATCHER*

_Philippe E St Juste_
**Plaintiff(s)**

v.

_JP MORGAN CHASE BANK, NA_
**Defendant(s)**

**Case Number:** _25 04 02/23_

**Control Number:** _____

AFDVT-St Juste Vs Jp Morgan Chase Bank Et Al [RNH]

25040212300006

## AFFIDAVIT OF SERVICE

I, _Philippe E. St Juste_, hereby certify that on _04 - 16 - 2023_,
(Print Name)                                           (Date)

I served a copy of the following documents: **(select all that apply)**

☑ Complaint / Statement of Claim          ☐ Notice of Appeal

☐ Rule to File Complaint                   ☐ Rule to Show Cause

☐ Motion/Petition: _____

☐ Other: _____

upon the following parties:

Plaintiff(s): _____

Defendant(s): _JP MORGAN CHASE BANK, NA_

Other: _____

**by: (select the type of service used to serve the documents)**

☑ Certified Mail          ☐ Posting

☐ Regular Mail            ☐ Other: _____

☐ Personal Delivery

_04 - 16 - 2023_
**Date**

_[signature]_
**Signature**

*(Affidavit of Service Form 2/27/2023)*



## UNITED STATES
## POSTAL SERVICE®

PENN CENTER
1500 JOHN F KENNEDY BLVD STE C31
PHILADELPHIA, PA 19102-9997
(800)275-8777

04/16/2025                          04:12 PM
------------------------------------------
Product          Qty    Unit     Price
                        Price
------------------------------------------
Mailer 10.5 x 16   1   $1.69    $1.69

Priority Mail®     1            $12.05
   Monroe, LA 71203
   Weight: 0 lb 3.90 oz
   Expected Delivery Date
      Mon 04/21/2025
   Tracking #:
      9505 5147 8647 5106 5127 91   $0.00
   Insurance
      Up to $100.00 included
Total                           $12.05
------------------------------------------
Grand Total:                    $13.74
------------------------------------------
Debit Card Remit                $13.74
   Card Name: VISA
   Account #: XXXXXXXXXXXX1098
   Approval #: 693745
   Transaction #: 511
   Receipt #: 047417
   Debit Card Purchase: $13.74
   AID: A0000000980840           Chip
   AL: US DEBIT
   PIN: Verified
------------------------------------------

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,



or call 1-800-410-7420.
------------------------------------------

# **Doc 3- JP Morgan Preliminary Objections**



*Filed and Attested by the*
*Office of Judicial Records*
*13 MAY 2025 09:41 am*
*S. GILLIAM*

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## <u>ORDER</u>

**AND NOW**, on this _____ day of _____, 2025, upon consideration of the Preliminary Objections of Defendant JPMorgan Chase Bank, N.A. to Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is **dismissed without prejudice**.

Plaintiff may file an Amended Complaint within twenty (20) days of the date of this Order that complies with the Pennsylvania Rules of Civil Procedure.

If Plaintiff fails to file an Amended Complaint within twenty (20) days of the date of this Order this action against JPMorgan Chase Bank, N.A. is **dismissed with prejudice**.


**BY THE COURT:**


_____
                                                    J.

**NOTICE TO PLEAD**

**To:    Plaintiff**
**You are hereby notified to file a written response to the within Preliminary Objections within twenty (20) days of service hereof or a judgment may be entered against you.**

_____
**Attorneys for Defendant JPMorgan Chase Bank, N.A.**

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A. TO PLAINTIFF'S COMPLAINT

Defendant, JPMorgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's Complaint, and in support thereof, avers as follows:

### I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT

1.    Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16, 2025.  A true and correct copy of the Complaint is attached as Exhibit "A."

2.    Although Plaintiff filed an affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint was filed), Chase was not actually served until April

1

Case ID: 250402123
Control No.: 25052710

21, 2025 when it received the Complaint via certified mail. <u>See</u> Exhibit "B," shipping label and USPS tracking confirmation.

3.      The Complaint does not contain any counts or otherwise expressly set forth any specific cause of action for relief. <u>See</u> Exhibit "A."

4.      The Civil Cover Sheet indicates it is a "Bad Faith" claim, but does not allege facts to support any cause of action for bad faith. <u>See</u> <u>id</u>. at Civil Cover Sheet.

5.      The last paragraph of the Complaint asserts "defendant breached the contract," but no contract is identified or attached to the Complaint. <u>See</u> <u>id</u>. ¶ 11.

6.      Although the Complaint alleges the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. <u>See</u> <u>id</u>.

7.      Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. <u>See</u> <u>id</u>.

8.      Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

9.      The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. <u>See</u> <u>id</u>. ¶¶ 4-10.

10.     Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. <u>See</u> <u>id</u>. ¶ 4.

11.     Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. <u>See</u> <u>id</u>.

2

Case ID: 250402123
Control No.: 25052710

12.     He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

13.     On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

14.     On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6.

15.     During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

16.     Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

17.     On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. See id. ¶ 8.

18.     During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. See id.

19.     Plaintiff did not accept this explanation and was eventually asked to leave. See id.

20.     Plaintiff refused to leave and the police arrived and removed him from the branch. See id.

21.     Plaintiff alleges he was tased by police and suffered injuries as a result. See id. ¶¶ 8-10.

22.     Plaintiff further claims he was charged with trespassing. See id. ¶¶ 7-8.

Case ID: 250402123
Control No.: 25052710

23.    Plaintiff seeks $10,428,000.00, but does not specify any financial injury.  The only physical injuries alleged were caused by police.  See generally id.

## II.    ARGUMENT

### A.  Legal Standard

24.    Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds"…(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer);…(6)  pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P 1028(a).

25.    In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts."  Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).

26.    The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible."  Id.

27.    The Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

### B.  Motion to Dismiss for Insufficient Specificity

28.    Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached.

29.    In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form."  Pa. R.C.P.  1019(a).

4

Case ID: 250402123
Control No.: 25052710

30. Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." Miketic v. Baron, 675 A.2d 324, 331 (Pa. Super. 1996).

31. To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). See also In re: Barnes Found., 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based") (alterations in original).

32. The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense.  Indeed, the Complaint does not even identify the year the events took place.

33. As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations.

34. Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### C. Motion to Dismiss for Failure to State a Claim

35. The Complaint is also legally insufficient and should be dismissed pursuant to Pa. R.C.P. 1028(a)(4).

36. The question presented by a demurrer is whether "on the facts averred, the law says

5

Case ID: 250402123
Control No.: 25052710

with certainty that no recovery is possible." <u>Santiago</u>, 418 Pa. Super. at 184.

   i. **"Bad Faith" Claim**

37. While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith.

38. "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" <u>Gorski v. Smith</u>, 812 A.2d 683, 710 (Pa. Super 2002).

39. Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371. That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company.

40. Moreover, the Complaint does not include any allegations about Chase's purported bad faith. Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." <u>Gorski,</u> 812 A.2d at 710.

41. Thus, Plaintiff has failed to state a claim for bad faith.

   ii. **Breach of Contract Claim**

42. Similarly, Plaintiff has failed to state a claim for breach of contract.

43. Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, <u>¶ 11.</u>

44. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." <u>McShea v. City of Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2009).

Case ID: 250402123
Control No.: 25052710

45.     A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. Id.

46.     Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." Id.

47.     Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. See Exhibit A.

48.     The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., ¶¶ 8-10.

49.     The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation

50.     Thus, Plaintiff had failed to state a claim for breach of contract.

### iii.     Alleged Discrimination

51.     To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient.  See Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer.").

52.     Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963.

53.     Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2).

54.     The PHRA provides a mechanism for individuals to file complaints with the

7

Case ID: 250402123
Control No.: 25052710

Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

55.     Here, Plaintiff did not file a complaint with the PHRC. See Exhibit A.

56.     Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

57.     Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination."  Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted).

58.     "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient." Id., at 366.

59.     Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class.

60.     Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation.

61.     To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A ¶8.  This is insufficient under Pennsylvania law.

62.     Thus, Plaintiff has failed to state a claim for discrimination.

Case ID: 250402123
Control No.: 25052710

### iv.    Other Unidentified Causes of Action

63.    The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action.

64.    The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody.

65.    These allegations do not support a cause of action against Chase.  While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged with trespassing.1

66.    Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### D.  Motion to Dismiss for Failure to Conform to Rules

67.    Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f).

68.    The Complaint does not identify separate causes of action against the multiple defendants.

69.    In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

---

1 Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

9

Case ID: 250402123
Control No.: 25052710

70.    Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f).

71.    As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

72.    Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h).

73.    Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral.

74.    If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i).

75.    Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### E.  Preliminary Objection for Alternative Dispute Resolution

76.    Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution.

77.    While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR.

78.    Chase's customary account deposit agreement contains an ADR provision.

79.    Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision.

Case ID: 250402123
Control No.: 25052710

80.     To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY:    _____
T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase, N.A.

Date: May 12, 2025

11

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A.
## TO PLAINTIFF'S COMPLAINT

Defendant, JP Morgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's

Complaint and submit this memorandum of law in support of their objections.

## I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT

Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16, 2025.

A true and correct copy of the Complaint is attached as Exhibit "A." Although Plaintiff filed an

affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint

was filed), Chase was not actually served until April 21, 2025 when it received the Complaint via

certified mail. See Exhibit "B," shipping label and USPS tracking confirmation.

The Complaint does not contain any counts or otherwise expressly set forth any specific

cause of action for relief. See Exhibit "A." The Civil Cover Sheet indicates it is a "Bad Faith"

claim, but does not allege facts to support any cause of action for bad faith. See id. at Civil Cover

Sheet. The last paragraph of the Complaint asserts "defendant breached the contract," but no

contract is identified or attached to the Complaint. See id. ¶ 11. Although the Complaint alleges

Case ID: 250402123
Control No.: 25052710

the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. See id. Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. See id. Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. See id. ¶¶ 4-10. Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. See id. ¶ 4. Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. See id. He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6. During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

Case ID: 250402123
Control No.: 25052710

On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. See id. ¶ 8. During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. See id. Plaintiff did not accept this explanation and was eventually asked to leave. See id. Plaintiff refused to leave and the police arrived and removed him from the branch. See id. Plaintiff alleges he was tased by police and suffered injuries as a result. See id. ¶¶ 8-10. Plaintiff further claims he was charged with trespassing. See id. ¶¶ 7-8.

Plaintiff seeks $10,428,000.00, but does not specify any financial injury. The only physical injuries alleged were caused by police. See generally id.

## II.    QUESTIONS PRESENTED

Should Plaintiff's Complaint be dismissed for insufficient specificity because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for legal insufficiency because there is no basis for imposing liability on Chase for injuries suffered while in police custody after Plaintiff refused to leave a Chase branch?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for failure to conform to the rules because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

Case ID: 250402123
Control No.: 25052710

Should Plaintiff's Complaint be dismissed because this dispute may be subject to an ADR agreement?

**SUGGESTED ANSWER:  YES.**

III.   **LEGAL ARGUMENT**

A.   **Legal Standard**

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: … (2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer).   In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).  The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

Here, in addition to violating multiple rules of court and lacking the requisite specificity, the Complaint fails to allege facts that would support the imposition of liability on Chase.

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: "…(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer)…(6) pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P 1028(a). In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super.

4

Case ID: 250402123
Control No.: 25052710

178, 184, 613 A.2d 1235 (1992). The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

Here, the Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

### B.    Plaintiff's Complaint should be Dismissed for Insufficient Specificity

Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached. In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form." Pa. R.C.P. 1019(a). Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." Miketic v. Baron, 675 A.2d 324, 331 (Pa. Super. 1996). To determine if a pleading meets Pennsylvania's specificity requirements, a court  must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). See also In re: Barnes Found., 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based") (alterations in original).

The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense.  Indeed, the Complaint does not even identify the year the events took place. As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations. Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

Case ID: 250402123
Control No.: 25052710

### C.    Plaintiff's Complaint Should be Dismissed for Failure to State a Claim (Demurrer)

The Complaint is also legally insufficient and should be dismissed pursuant to Pa. R.C.P. 1028(a)(4). The question presented by a demurrer is whether "on the facts averred, the law says with certainty that no recovery is possible." <u>Santiago</u>, 418 Pa. Super. at 184.

### i.    "Bad Faith" Claim

While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith. "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" <u>Gorski v. Smith</u>, 812 A.2d 683, 710 (Pa. Super 2002). Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371.  That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company. Moreover, the Complaint does not include any allegations about Chase's purported bad faith.  Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." <u>Gorski,</u> 812 A.2d at 710. Thus, Plaintiff has failed to state a claim for bad faith.

### ii.    Breach of Contract Claim

Similarly, Plaintiff has failed to state a claim for breach of contract. Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, ¶ 11. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." <u>McShea v. City of Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2009). A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding

Case ID: 250402123
Control No.: 25052710

that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. Id. Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." Id.

Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. See Exhibit A. The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., ¶¶ 8-10. The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation. See id. Thus, Plaintiff had failed to state a claim for breach of contract.

### iii.    Alleged Discrimination

To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient.  See Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer."). Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963. Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2). The PHRA provides a mechanism for individuals to file complaints with the Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

Case ID: 250402123
Control No.: 25052710

Here, Plaintiff did not file a complaint with the PHRC. See Exhibit A. Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination." Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted). "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient." Id., at 366. Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class. Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation. To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A ¶8. This is insufficient under Pennsylvania law. Thus, Plaintiff has failed to state a claim for discrimination.

### iv.    Other Unidentified Causes of Action

The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action. The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody. These allegations do not support a cause of action against Chase. While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged

Case ID: 250402123
Control No.: 25052710

with trespassing.2 Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police. Therefore, the Complaint should be dismissed as legally insufficient.

### D.  Motion to Dismiss for Failure to Conform to Rules

Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f). The Complaint does not identify separate causes of action against the multiple defendants. In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f). As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h). Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral. If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i). Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

---

2 Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

Case ID: 250402123
Control No.: 25052710

**E.  Preliminary Objection for Alternative Dispute Resolution**

Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution. While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR. Chase's customary account deposit agreement contains an ADR provision. Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision. To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint..

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY:  _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date: May 12, 2025

10

Case ID: 250402123
Control No.: 25052710

## VERIFICATION

I, T. Justin Chapman, verify that the statements made in the foregoing Preliminary Objections are true and correct to the best of my knowledge and information. I also understand that the statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.


Date: May 12, 2025

Case ID: 250402123
Control No.: 25052710

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing preliminary objections were served on all interested counsel on this date by electronic filing with the Court, or regular mail, postage pre-paid, addressed as follows:

Philippe E. St. Juste
1227 Magee Ave.
Philadelphia, PA 19111
Philippe.esai@gmail.com

**PEREZ & MORRIS LLC**

BY: _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date:  May 12, 2025

Case ID: 250402123
Control No.: 25052710

EXHIBIT "A"

Case ID: 250402123
Control No.: 25052710

Court of Common Pleas of Philadelphia
County Trial Division
# Civil Cover Sheet

250402123

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philippe E. St Juste | JP Morgan Chase Bank |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 1227 Magee Ave, Philadelphia, PA 19111 | 700 Kansas Lane Mail code, LA4-6200 Monroe LA 71023 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | City of Philadelphia |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | Office of Risk Management, 1515 Arch st 14th Floor, Philadelphia PA 19102 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | ☐ Complaint  ☐ Petition Action  ☐ Notice of Appeal ☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☒ Jury ☐ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Minor Court Appeal ☐ Statutory Appeals ☐ Commerce (Completion of Addendum Required) | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE (SEE INSTRUCTIONS)
✓ 1J Bad Faith

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| CMPLC-St Juste Vs Jp Morgan Chase Bank Et Al [RNH] 25040212300003 | | Yes ☐  No ☐ |

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Philippe E St Juste | ✓ 1227 Magee Ave Philadelphia, PA 19111 |
| PHONE NUMBER   FAX NUMBER | |
| 917-937-6594 | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| | philippe.esai@gmail.com |
| SIGNATURE | DATE |
| Philippe E. St Juste | 04-18-2025 |

01-101 (Rev. 8/2014)

Case ID: 250402123
Control No.: 25052710

## Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A.  Parties**

  i.   *Plaintiffs/Defendants*
       Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

  ii.  *Parties' Addresses*
       Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

  iii. *Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B.   Commencement Type:** Indicate type of document filed to commence the action.

**C.   Amount in Controversy:** Check the appropriate box.

**D.   Court Program:** Check the appropriate box.

**E.   Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.



**Proceedings Commenced by Appeal**

Minor Court
  5M   Money Judgment
  5L   Landlord and Tenant
  5D   Denial Open Default Judgment
  5E   Code Enforcement
       Other:
Local Agency
  5B   Motor Vehicle Suspension -
       Breathalizer
  5V   Motor Vehicle Licenses,
       Inspections, Insurance
  5C   Civil Service
  5K   Philadelphia Parking Authority
  5Q   Liquor Control Board
  5R   Board of Revision of Taxes
  5X   Tax Assessment Boards
  5Z   Zoning Board
  52   Board of View
  51   Other:
Other:

**Proceedings Commenced by Petition**
  8P   Appointment of Arbitrators
  8C   Name Change - Adult
  8L   Compel Medical Examination
  8D   Eminent Domain
  8E   Election Matters
  8F   Forfeiture
  8S   Leave to Issue Subpoena
  8M   Mental Health Proceedings
  8G   Civil Tax Case - Petition
       Other:

*Actions Commenced by Writ of Summons or Complaint*

Contract
  1C   Contract
  1T   Construction
  10   Other:
Tort
  2B   Assault and Battery
  2L   Libel and Slander
  4F   Fraud
  1J   Bad Faith
  2E   Wrongful Use of Civil Process
       Other:
Negligence
  2V   Motor Vehicle Accident
  2H   Other Traffic Accident
  1F   No Fault Benefits
  4M   Motor Vehicle Property Damage
  2F   Personal Injury - FELA
  20   Other Personal Injury
  2S   Premises Liability - Slip & Fall
  2P   Product Liability
  2T   Toxic Tort
       *T1   Asbestos*
       *T2   DES*
       *T2   Implant*
  3E   Toxic Waste
       Other:

Professional Malpractice
  2D   Dental
  4L   Legal
  2M   Medical
  4Y   Other:
1G Subrogation
Equity
  E1   No Real Estate
  E2   Real Estate
  1D   Declaratory Judgment
  M1   Mandamus
Real Property
  3R   Rent, Lease, Ejectment
  Q1   Quiet Title
  3D   Mortgage Foreclosure - Residential
       Owner Occupied
  3F   Mortgage Foreclosure - Not Residential
       Not Owner Occupied
  1L   Mechanics Lien
  P1   Partition
       Prevent Waste
  1V   Replevin
1H Civil Tax Case - Complaint
  Other:

**F.   Commerce Program**

Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G.   Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.   Related Pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.   Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

### The current version of the Civil Cover Sheet may be downloaded from the FJD's website
### http://courts.phila.gov

01-101 (Reverse)

Case ID: 250402123
Control No.: 25052710

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA

Philippe E. St Juste

VS.

JP MORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

Case ID: 250402123
Case ID: 230402123
Control No.: 25052710

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

PHILIPPE E. ST JUSTE

              Plaintiff

           v.

JP MORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

             Defendant

Term,

No.

CIVIL ACTION COMPLAINT

*See attached*

Case ID: 250402123
Control No.: 25052710

The complaint of the plaintiff, Philippe E St Juste, respectfully shows and alleges as follows:

1. The plaintiff herein, Philippe E St Juste, is a resident of the State of Pennsylvania.

2. The defendant herein, JP Morgan Chase, N.A., which operates under the brand name Chase, is the consumer and commercial banking subsidiary of the multinational financial services firm, JPMorgan Chase & Co. It is a national bank headquartered in New York City. [As described by Google AI Overview]

3. The defendant herein, City of Philadelphia, Office of Risk Management, which is located at 1515, Arch street, 14th Floor, Philadelphia, PA 19102 .

4. On Wednesday April 5th  at 1:48 pm Plaintiff St Juste and his aunt Marie Francoise Verdieu entered the 1100 Market St location in Philadelphia, PA of JP Morgan Chase Bank with the intention of opening a joint family checking account.  Plaintiff was met and attended to by Qingmei Qing who introduced herself as Cecilia Qing. Plaintiff's aunt provided her NYS ID and social security card and plaintiff provided his NYS Driver's license and his Chase Debit Card in order to open the new account. During that same meeting, Plaintiff's sisters Christie and Margael provided complete names, address, ssn and emails over the phone to be added as joint account holders. They were then told by Cecilia to report to a Chase branch near them to authenticate their identities in person. Plaintiff created this account to manage his mother's (my aunt's only sister) estate who had passed away on March 22nd. Plaintiff chose to open a new account at Chase because plaintiff had been a customer since September 2007 and plaintiff's mother also had an account with Chase. Plaintiff felt it right to gather his family resources in a place where they had felt financially safe and with which plaintiff had over 15 years as a financial client. Plaintiff deposited  a total of $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in checks received from various family members and friends, all of which are redacted in a family google sheet document.  This money is a collection of gifts the plaintiff had received the previous Sunday at

his mother's memorial service. Plaintiff gave the deposit to Michael, the clerk in attendance and confirmed with him that it was okay to deposit the given amount. Plaintiff and his aunt exited the 1100 Market St location at about 3:41 pm on that day, knowing they had set up an account to manage his mother's affairs.

5. On Friday April 7th, plaintiff attempted to log into his Chase mobile account and received the following message: " We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt and sisters. As his account was still blocked on Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY to resolve the matter. There, the plaintiff was greeted by Penny who called Chase Internal. Plaintiff spoke with a corporate agent and was told that it was an internal issue that would be solved within 24 hrs. Plaintiff exited Chase at about 12:14 pm with assurance that his accounts would be reinstated by the next day.

6. On Tuesday 11th, plaintiff's Chase Mobile app was still locked. Plaintiff visited a second branch of Chase. Plaintiff arrived at 402 Myrtle Ave, Brooklyn, NY at 10:42 am. Plaintiff was greeted by Tevin Campbell who phoned Chase Internal. Tevin informed plaintiff that the issue was that Chase needed to authenticate the checks and that plaintiff needed to provide the phone numbers to two issuers to resolve the matter. Plaintiff provided the number for Sister Giselle the Treasurer of Premiere Eglise Methodiste Unie and the number for Marie Alberte Pierre, an extended family member. Chase Internal operator said he/she could not reach either number immediately but would resolve the matter before the end of the business day. Plaintiff left Chase at 11:48 am.

7. Friday 14th, the plaintiff noticed that he was still restricted from his Chase accounts

and called Chase at about 10:55 am. Plaintiff spoke with two agents and a manager who told him that he needed to authenticate each and every check that had been deposited. Plaintiff provided contact information for many of the check issuers. Plaintiff spent an hour and a half talking to the manager, by the end of which plaintiff still needed to provide two additional numbers. Plaintiff was told that they could not authenticate the contact for the First United Methodist Church and needed a contact for Marie Guerrier. Plaintiff contacted Marie Guerrier, a childhood friend of the plaintiff's mother, who had written a check for $200 to the plaintiff's aunt. Plaintiff told Ms. Guerrier the bank would contact her to confirm that she was an issuer, she assured the plaintiff that that was okay but that she had limited mobility and would not be able to visit any branch. She also told the plaintiff that the amount in question had been withdrawn from her account since April 5th. Plaintiff confirmed that the amount had been withdrawn from her account 9 days prior but it had not been cleared to his account or returned to hers. Plaintiff once again called and spoke to one more agent for a half hour and provided her with Marie Guerrier's contact. The agent told the plaintiff she could not authenticate Marie's number. Plaintiff offered to contact Marie Guerrier myself and have a three way conversation if they had a hard time reaching her. The agent again refused. At this point the plaintiff had communicated to Cecilia, Tevin and everyone that he had spoken with over the phone the reason why the account had been created. Plaintiff had communicated that his sisters, his aunt and himself were grieving the very recent and sudden loss of his mother. After yet another unproductive phone conversation, plaintiff decided to return to the Chase location at 1100 Market St where the account had been created.

8. Plaintiff arrived at 1100 Market St at 3:25 pm. Plaintiff intended to close both Chase accounts and take his business elsewhere. It had been over a week since his money was restricted and the plaintiff needed to take care of his mother's estate. Plaintiff met with Jeison Brito. Plaintiff told Jeison he wanted to close both his Chase accounts and take out my money. Jeison told the plaintiff to let him talk to Internal to see if the issue could be resolved. Plaintiff sat there

for 2 hours as both Plaintiff and Jeison waited for Internal to get back to them over the phone. At some point the plaintiff stepped into the reception area and called Chase Internal as an alternative to reach Chase Internal. At around 5:00 pm Jeison came and took the plaintiff back into his office. At 5:33 pm Jeison told the plaintiff he had reached Internal and they needed Marie Guerrier to provide a different number or to show up in person to authenticate her check. Plaintiff told Jeison that that was impossible because the number plaintiff had provided was the only number that plaintiff had used to reach Ms. Guerrier and had been the same number his younger sister had used and that his mother had used to talk to Ms. Guerrier on a regular basis. At about 5:38 pm Mecca Abdullah, Vice President, interjected with an escort of Cecilia, another banker and a constable. Mecca repeated Jeison's words and told the plaintiff that he had 2 options: either provide a different contact number for Marie Guerrier or have her come into Chase. Plaintiff told her that those were not options and both were unlikely. Plaintiff reiterated that this level of scrutiny was discriminatory and unjust to a 15 year Chase customer. Plaintiff told Ms. Abdullah, that after speaking to 12 Chase representatives, 8 over the phone and 4 in person and authenticating 5 checks, he only wished to take out his money. Plaintiff also said that if they felt that Marie Guerrier's check was not legitimate to nullify it, return her money and give him the rest of his money. Abdullah told the plaintiff that he needed to leave the premises. Plaintiff sat down and said he would only leave when he got my money. A 20 something black female constable approached the plaintiff and tried to remove him. The constable then called for back up. A late middle aged white officer, whose tag identified as Curtosi, was first on the scene followed by 3 other officers, an Asian superior officer, another white officer Leonard and a black officer and surrounded the plaintiff. Plaintiff held his wallet in his right hand and wrapped his left hand around his right wrist. The officers transported the plaintiff to the reception section of the bank where officer Leonard told the plaintiff that he would tase him if I didn't unlock his grip on his right wrist, he repeated it and then proceeded to tase the plaintiff. Plaintiff held on the first two times and then released his grip. The plaintiff was tased a third time. The plaintiff was then

handcuffed and compelled by force to lie on his stomach. There were at least 28 officers on the
scene. The whole interaction from the conversation with Mecca to the arrest did not exceed 10
mins. The police walked the plaintiff outside of the bank and placed him in the back of a patrol
car where his person was searched and his backpack was searched.


9. Plaintiff was transferred to a van and transported to 400 North Broad St Detention
Center. Once again the plaintiff was searched. Plaintiff's personal effects were confiscated
including his belt and laces, some others were disposed of including pens and pencils. Plaintiff
was given a bracelet numbered 518 with his name and charge of trespassing. Plaintiff was told to
wash his hands and went through the intake procedure. Plaintiff was then taken to the cell block
where he asked to make a phone call, the plaintiff told them it was a New York number. Plaintiff
said that it was urgent as plaintiff had an ailing and grieving aunt alone at home who had spent
the previous Wednesday night hospitalized. A male officer tried to chastise plaintiff but a older
black female officer was kind and let plaintiff call his older sister who he informed that he had
been arrested and that she would have to travel from NYC to come stay with their aunt for the
night and not to inform my aunt of what had happened because plaintiff feared doing so would
impact her health and mental state in a negative way. Plaintiff was taken to cell 085 which was
shared with two other people. This was around 7:00 pm. Some time later the plaintiff started
feeling the effects of the tasing, the plaintiff complained 8 times that he needed medical
assistance for his back, and the plaintiff was ignored. Plaintiff remained in that cell until 3 am
when he was taken to be fingerprinted and photographed. That is when the plaintiff saw a nurse
who only offered him ibuprofen but did not examine his back. Plaintiff complained that he was
not able to sleep as the cell was too cold for any of the detainees to fall asleep. The nurse told the
plaintiff that is the condition of jail. At about 7:45 am officer Martinez allowed the plaintiff once
more to call his sister, this time the plaintiff called his younger sister who had come to stay with
their aunt. At about 8:30 am the plaintiff was released and was returned his personal effects

Case ID: 250402128
Control No.: 25052710

without seeing a lawyer or a judge. Plaintiff was told that he had not been formally charged but that I had been cited and that he should report to court at 1301 Filbert Street on May 1.


10. Plaintiff sustained upwards of 10 small flesh wounds in his back from being tased. Plaintiff had difficulty sleeping or sitting due to the tasing injuries for upward of 2 weeks. Plaintiff visited the emergency rooms of Albert Einstein Medical Center and then again UPenn Medical Center to receive care following his arrest. The plaintiff has since completed several months of physical therapy twice weekly to readapt his back muscles. Chase has served up till then as the plaintiff's only checking banking account. Suspending the plaintiff's accounts limited his ability to receive and deposit money for work that he had done. It inhibited the plaintiff's ability to withdraw and transfer money to people who rely on his financial assistance for school tuitions, medical care and living expenses in Haiti. It also prohibited the plaintiff from serving as administrator of his mother's estate in due time to avoid larger state taxes. Despite the plaintiff's request of communication solely through his criminal defense attorney, JPMorgan Chase contacted the plaintiff multiple times after his arrest through phone calls and emails. The criminal case against the plaintiff was withdrawn after 5 months after the representatives of JPMorgan Chase failed to be present on multiple occasions or provide supporting discovery as requested by the plaintiff's side.

11. By reason of the facts and circumstances stated above, the defendant has breached the contract.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $10,428,000.00, for, together with any other relief the Court finds to be just and proper.

Dated: April 13, 2025                    Philippe E St Juste **[Printed]**
                                         Plaintiff

                                         1227 Magee Ave
                                         Philadelphia, Pennsylvania 19111
                                         917-937-6594

Defendants
JPMorgan Chase Bank, N.A.
700 Kansas Lane, Monroe, LA 71203


City of Philadelphia,
Office of Risk Management, 1515 Arch Street, 14th Floor,
Philadelphia, PA 19102.

Case ID: 250402123
Case ID: 250402123
Control No.: 25052710

## VERIFICATION

I, _Philippe E. St Juste_ , Plantiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Philippe E. St Juste_
(Print Name)

_(Signature)_

Date: _04-16-2025_



USPS POSTAGE $12.05
PRIORITY MAIL

EXPECTED DELIVERY DAY: 04/21/25

SHIP
TO:
700 KANSAS LN
MONROE LA 71203-4774

USPS TRACKING® #

9505 5147 8647 5106 5127 91

UNITED STATES
POSTAL SERVICE.

ReadyPos

TO:

JP MORGAN CHASE BANK, NA
700 KANSAS LANE MAIL CODE LA4-7200
MONROE LA 71203

LARRE E ST JUSTE
___GEE AVE
___PHIA, PA 1911

Case ID: 250402123
Control No.: 25052710

EXHIBIT "B"

Case ID: 250402123
Control No.: 25052710

# USPS Tracking®

**FAQs** >

### Track Packages Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

Feedback

**Remove** ✕

Tracking Number:

## 9505514786475106512791

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was picked up at a postal facility at 6:31 am on April 21, 2025 in MONROE, LA 71203.

---

### Get More Out of USPS Tracking:

USPS Tracking Plus®

### Delivered

**Delivered, Individual Picked Up at Postal Facility**

MONROE, LA 71203
April 21, 2025, 6:31 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**
(https://faq.usps.com/s/article/Where-is-my-package)

---

**Text & Email Updates**        ⌄

---

Case ID: 250402123
Control No.: 25052710



**USPS Tracking Plus®**    ⌄

---

**Product Information**    ⌄

See Less ∧

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 250402123
Control No.: 250527110

# **Doc 4- Praecipe to Withdraw Preliminary Objections**

FILED
22 MAY 2025 02:50 pm
Civil Administration
T. BARRETT

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## **PRAECIPE TO WITHDRAW PRELIMINARY OBJECTIONS**

To the Office of Judicial Records:

I, T. Justin Chapman, counsel for Defendant, JP Morgan Chase Bank, N.A. hereby

withdraw the Preliminary Objections filed on May 13, 2025 with Control number 25052710.


Respectfully submitted,

**Perez & Morris LLC**


By:_____
T. Justin Chapman, Esquire
Counsel for Defendant, JP Morgan
Chase Bank, NA.


DATED:  5/22/25

# Doc 5- JP Morgan Preliminary Objections



| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## ORDER

**AND NOW**, on this _____ day of _____, 2025, upon consideration of the Preliminary Objections of Defendant JPMorgan Chase Bank, N.A. to Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is **dismissed without prejudice**.

Plaintiff may file an Amended Complaint within twenty (20) days of the date of this Order that complies with the Pennsylvania Rules of Civil Procedure.

If Plaintiff fails to file an Amended Complaint within twenty (20) days of the date of this Order this action against JPMorgan Chase Bank, N.A. is **dismissed with prejudice**.

**BY THE COURT:**

_____ J.

NOTICE TO PLEAD

**To:    Plaintiff**
**You are hereby notified to file a written response to the within Preliminary Objections within twenty (20) days of service hereof or a judgment may be entered against you.**

_____
**Attorneys for Defendant JPMorgan Chase Bank, N.A.**

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

**PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A.
TO PLAINTIFF'S COMPLAINT**

Defendant, JPMorgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's

Complaint, and in support thereof, avers as follows:

## I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT

1.    Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16,

2025.  A true and correct copy of the Complaint is attached as Exhibit "A."

1

Case ID: 250402123
Control No.: 25055176

2.      Although Plaintiff filed an affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint was filed), Chase was not actually served until April 21, 2025 when it received the Complaint via certified mail. <u>See</u> Exhibit "B," shipping label and USPS tracking confirmation.

3.      The Complaint does not contain any counts or otherwise expressly set forth any specific cause of action for relief. <u>See</u> Exhibit "A."

4.      The Civil Cover Sheet indicates it is a "Bad Faith" claim, but does not allege facts to support any cause of action for bad faith. <u>See</u> <u>id</u>. at Civil Cover Sheet.

5.      The last paragraph of the Complaint asserts "defendant breached the contract," but no contract is identified or attached to the Complaint. <u>See</u> <u>id</u>. ¶ 11.

6.      Although the Complaint alleges the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. <u>See</u> <u>id</u>.

7.      Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. <u>See</u> <u>id</u>.

8.      Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

9.      The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. <u>See</u> <u>id</u>. ¶¶ 4-10.

10.     Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. <u>See</u> <u>id</u>. ¶ 4.

2

Case ID: 250402123
Control No.: 25055176

11.    Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. See id.

12.    He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

13.    On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

14.    On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6.

15.    During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

16.    Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

17.    On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. See id. ¶ 8.

18.    During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. See id.

19.    Plaintiff did not accept this explanation and was eventually asked to leave. See id.

20.    Plaintiff refused to leave and the police arrived and removed him from the branch. See id.

21.    Plaintiff alleges he was tased by police and suffered injuries as a result. See id. ¶¶ 8-10.

3

Case ID: 250402123
Control No.: 25055176

22.     Plaintiff further claims he was charged with trespassing. See id. ¶¶ 7-8.

23.     Plaintiff seeks $10,428,000.00, but does not specify any financial injury.  The only physical injuries alleged were caused by police. See generally id.

## II.    ARGUMENT

### A.  Legal Standard

24.     Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds"…(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer);…(6)  pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P. 1028(a).

25.     In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts."  Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).

26.     The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible."  Id.

27.     The Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

### B.  Motion to Dismiss for Insufficient Specificity

28.     Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached.

4

Case ID: 250402123
Control No.: 25055176

29.    In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form."  Pa. R.C.P.  1019(a).

30.    Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." <u>Miketic v. Baron</u>, 675 A.2d 324, 331 (Pa. Super. 1996).

31.    To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" <u>Smith v. Wagner</u>, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). <u>See also</u> <u>In re: Barnes Found.</u>, 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based") (alterations in original).

32.    The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense.  Indeed, the Complaint does not even identify the year the events took place.

33.    As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations.

34.    Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### C.  Motion to Dismiss for Failure to State a Claim

35.    The Complaint is also legally insufficient and should be dismissed pursuant to Pa.

5

Case ID: 250402123
Control No.: 25055176

R.C.P. 1028(a)(4).

36.    The question presented by a demurrer is whether "on the facts averred, the law says with certainty that no recovery is possible." Santiago, 418 Pa. Super. at 184.

i.    **"Bad Faith" Claim**

37.    While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith.

38.    "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" Gorski v. Smith, 812 A.2d 683, 710 (Pa. Super 2002).

39.    Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371.  That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company.

40.    Moreover, the Complaint does not include any allegations about Chase's purported bad faith.  Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." Gorski, 812 A.2d at 710.

41.    Thus, Plaintiff has failed to state a claim for bad faith.

ii.    **Breach of Contract Claim**

42.    Similarly, Plaintiff has failed to state a claim for breach of contract.

43.    Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, ¶ 11.

44.    "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty

Case ID: 250402123
Control No.: 25055176

imposed by the contract, and (3) resultant damages." <u>McShea v. City of Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2009).

45.     A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. <u>Id</u>.

46.     Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." <u>Id</u>.

47.     Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. <u>See</u> Exhibit A.

48.     The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., <u>¶¶ 8-10.</u>

49.     The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation

50.     Thus, Plaintiff had failed to state a claim for breach of contract.

### iii.    Alleged Discrimination

51.     To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient.  <u>See</u> Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer.").

52.     Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963.

53.     Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as

Case ID: 250402123
Control No.: 25055176

race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2).

54.    The PHRA provides a mechanism for individuals to file complaints with the Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

55.    Here, Plaintiff did not file a complaint with the PHRC. See Exhibit A.

56.    Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

57.    Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination."  Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted).

58.    "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient." Id., at 366.

59.    Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class.

60.    Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation.

61.    To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A

Case ID: 250402123
Control No.: 25055176

¶8.  This is insufficient under Pennsylvania law.

62.    Thus, Plaintiff has failed to state a claim for discrimination.

### iv.    Other Unidentified Causes of Action

63.    The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action.

64.    The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody.

65.    These allegations do not support a cause of action against Chase.  While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged with trespassing.[1]

66.    Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### D.  Motion to Dismiss for Failure to Conform to Rules

67.    Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f).

68.    The Complaint does not identify separate causes of action against the multiple defendants.

---

[1] Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

9

69.     In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

70.     Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f).

71.     As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

72.     Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h).

73.     Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral.

74.     If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i).

75.     Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### E.  Preliminary Objection for Alternative Dispute Resolution

76.     Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution.

77.     While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR.

78.     Chase's customary account deposit agreement contains an ADR provision.

Case ID: 250402123
Control No.: 25055176

79.    Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision.

80.    To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY: _____
T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase, N.A.

Date: May 23, 2025

11

Case ID: 250402123
Control No.: 25055176

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A. TO PLAINTIFF'S COMPLAINT

Defendant, JP Morgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's Complaint and submit this memorandum of law in support of their objections.

## I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT

Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16, 2025. A true and correct copy of the Complaint is attached as Exhibit "A." Although Plaintiff filed an affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint was filed), Chase was not actually served until April 21, 2025 when it received the Complaint via certified mail. See Exhibit "B," shipping label and USPS tracking confirmation.

The Complaint does not contain any counts or otherwise expressly set forth any specific cause of action for relief. See Exhibit "A." The Civil Cover Sheet indicates it is a "Bad Faith" claim, but does not allege facts to support any cause of action for bad faith. See id. at Civil Cover Sheet. The last paragraph of the Complaint asserts "defendant breached the contract," but no contract is identified or attached to the Complaint. See id. ¶ 11. Although the Complaint alleges

Case ID: 250402123
Control No.: 25055176

the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. See id. Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. See id. Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. See id. ¶¶ 4-10. Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. See id. ¶ 4. Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. See id. He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6. During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

Case ID: 250402123
Control No.: 25055176

On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. See id. ¶ 8. During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. See id. Plaintiff did not accept this explanation and was eventually asked to leave. See id. Plaintiff refused to leave and the police arrived and removed him from the branch. See id. Plaintiff alleges he was tased by police and suffered injuries as a result. See id. ¶¶ 8-10. Plaintiff further claims he was charged with trespassing. See id. ¶¶ 7-8.

Plaintiff seeks $10,428,000.00, but does not specify any financial injury. The only physical injuries alleged were caused by police. See generally id.

## II.    QUESTIONS PRESENTED

Should Plaintiff's Complaint be dismissed for insufficient specificity because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for legal insufficiency because there is no basis for imposing liability on Chase for injuries suffered while in police custody after Plaintiff refused to leave a Chase branch?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for failure to conform to the rules because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

Case ID: 250402123
Control No.: 25055176

Should Plaintiff's Complaint be dismissed because this dispute may be subject to an ADR agreement?

**SUGGESTED ANSWER:   YES.**

**III.    LEGAL ARGUMENT**

**A.    Legal Standard**

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: … (2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer).   In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).  The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

Here, in addition to violating multiple rules of court and lacking the requisite specificity, the Complaint fails to allege facts that would support the imposition of liability on Chase.

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: "…(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer)…(6)  pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P 1028(a). In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super.

4

Case ID: 250402123
Control No.: 25055176

178, 184, 613 A.2d 1235 (1992). The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

Here, the Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

**B.    Plaintiff's Complaint should be Dismissed for Insufficient Specificity**

Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached. In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form."  Pa. R.C.P. 1019(a). Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." Miketic v. Baron, 675 A.2d 324, 331 (Pa. Super. 1996). To determine if a pleading meets Pennsylvania's specificity requirements, a court  must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). See also In re: Barnes Found., 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based") (alterations in original).

The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense.  Indeed, the Complaint does not even identify the year the events took place. As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations. Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

Case ID: 250402123
Control No.: 25055176

### C.     Plaintiff's Complaint Should be Dismissed for Failure to State a Claim (Demurrer)

The Complaint is also legally insufficient and should be dismissed pursuant to Pa. R.C.P. 1028(a)(4). The question presented by a demurrer is whether "on the facts averred, the law says with certainty that no recovery is possible." Santiago, 418 Pa. Super. at 184.

#### i.     "Bad Faith" Claim

While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith. "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" Gorski v. Smith, 812 A.2d 683, 710 (Pa. Super 2002). Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371.  That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company. Moreover, the Complaint does not include any allegations about Chase's purported bad faith.  Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." Gorski, 812 A.2d at 710. Thus, Plaintiff has failed to state a claim for bad faith.

#### ii.     Breach of Contract Claim

Similarly, Plaintiff has failed to state a claim for breach of contract. Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, ¶ 11. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2009). A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding

6

Case ID: 250402123
Control No.: 25055176

that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. Id. Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." Id.

Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. See Exhibit A. The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., ¶¶ 8-10. The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation. See id. Thus, Plaintiff had failed to state a claim for breach of contract.

### iii.    Alleged Discrimination

To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient. See Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer."). Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963. Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2). The PHRA provides a mechanism for individuals to file complaints with the Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

Case ID: 250402123
Control No.: 25055176

Here, Plaintiff did not file a complaint with the PHRC. <u>See</u> Exhibit A. Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination." Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted). "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient. <u>Id</u>., at 366. Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class. Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation. To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A ¶8. This is insufficient under Pennsylvania law. Thus, Plaintiff has failed to state a claim for discrimination.

### iv.    Other Unidentified Causes of Action

The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action. The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody. These allegations do not support a cause of action against Chase. While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged

Case ID: 250402123
Control No.: 25055176

with trespassing.2 Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police. Therefore, the Complaint should be dismissed as legally insufficient.

### D.  Motion to Dismiss for Failure to Conform to Rules

Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f). The Complaint does not identify separate causes of action against the multiple defendants. In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f). As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h). Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral. If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i). Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

---

2 Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

Case ID: 250402123
Control No.: 25055176

### E.  Preliminary Objection for Alternative Dispute Resolution

Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution. While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR. Chase's customary account deposit agreement contains an ADR provision. Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision. To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

## IV.    __CONCLUSION__

For the foregoing reasons, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint..

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY:    _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date: May 23, 2025

10

Case ID: 250402123
Control No.: 25055176

## **<u>VERIFICATION</u>**

I, T. Justin Chapman, verify that the statements made in the foregoing Preliminary

Objections are true and correct to the best of my knowledge and information.  I also understand

that the statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to

unsworn falsification to authorities.

_____
T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.


Date:  May 23, 2025

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | |
| | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing preliminary objections were served on all interested counsel on this date by electronic filing with the Court or regular mail, postage pre-paid, addressed as follows:

Philippe E. St. Juste
1227 Magee Ave.
Philadelphia, PA 19111
Philippe.esai@gmail.com

**PEREZ & MORRIS LLC**

BY: _____
T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date:  May 23, 2025

# EXHIBIT "A"

Case ID: 250402123
Control No.: 25055176

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

For Office of Judicial Records Use Only (Docket Number)

250402123

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philippe E. St Juste | JP Morgan Chase Bank |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 1227 Magee Ave, Philadelphia, PA 19111 | 700 Kansas Lane Mail code, LA4-5200 Monroe LA 71023 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | City of Philadelphia |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | office of Risk Management, 1515 Arch st 14th Floor, Philadelphia PA 19102 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 2 | ☐ Complaint  ☐ Writ of Summons | ☐ Petition Action  ☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☑ Arbitration | ☐ Mass Tort | ☐ Minor Court Appeal | ☐ Settlement |
| ☑ More than $50,000.00 | ☑ Jury | ☐ Savings Action | ☐ Statutory Appeals | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Commerce (Completion of Addendum Required) | ☐ W/D/Survival |
| | ☐ Other: | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

✓ 1J Bad Faith

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

CMPLC-St Juste Vs Jp Morgan Chase Bank Et Al [RNH]

IS CASE SUBJECT TO COORDINATION ORDER?

| Yes | No |
|---|---|
| ☐ | ☐ |
| ☐ | ☐ |

25040212300003

## TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Philippe E St Juste | ✓ 1227 Magee Ave Philadelphia, PA 19111 |
| **PHONE NUMBER** 917-937-6594 | **FAX NUMBER** |
| **SUPREME COURT IDENTIFICATION NO.** | **E-MAIL ADDRESS** philippe.esai@gmail.com |
| **SIGNATURE** Philippe E St Juste | **DATE** 04-16-2025 |

01-101 (Rev. 8/2014)

Case ID: 250402123
Control No: 25055176

# Instructions for Completing Civil Cover Sheet

Rules or Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A.  Parties**

    i.  *Plaintiffs/Defendants*
        Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

    ii.  *Parties' Addresses*
        Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

    iii.  *Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B.  Commencement Type:** Indicate type of document filed to commence the action.

**C.  Amount in Controversy:** Check the appropriate box.

**D.  Court Program:** Check the appropriate box.

**E.  Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.



**Proceedings Commenced by Appeal**

**Minor Court**
- 5M  Money Judgment
- 5L  Landlord and Tenant
- 5D  Denial Open Default Judgment
- 5E  Code Enforcement
-     Other:

**Local Agency**
- 5B  Motor Vehicle Suspension - Breathalizer
- 5V  Motor Vehicle Licenses, Inspections, Insurance
- 5C  Civil Service
- 5K  Philadelphia Parking Authority
- 5Q  Liquor Control Board
- 5R  Board of Revision of Taxes
- 5X  Tax Assessment Boards
- 5Z  Zoning Board
- 52  Board of View
- 51  Other:

Other:

**Proceedings Commenced by Petition**
- 8P  Appointment of Arbitrators
- 8C  Name Change - Adult
- 8L  Compel Medical Examination
- 8D  Eminent Domain
- 8E  Election Matters
- 8F  Forfeiture
- 8S  Leave to Issue Subpoena
- 8M  Mental Health Proceedings
- 8G  Civil Tax Case - Petition
-     Other:

**Actions Commenced by Writ of Summons or Complaint**

**Contract**
- 1C  Contract
- 1T  Construction
- 10  Other:

**Tort**
- 2B  Assault and Battery
- 2L  Libel and Slander
- 4F  Fraud
- 1J  Bad Faith
- 2E  Wrongful Use of Civil Process
-     Other:

**Negligence**
- 2V  Motor Vehicle Accident
- 2H  Other Traffic Accident
- 1F  No Fault Benefits
- 4M  Motor Vehicle Property Damage
- 2F  Personal Injury - FELA
- 20  Other Personal Injury
- 2S  Premises Liability - Slip & Fall
- 2P  Product Liability
- 2T  Toxic Tort
  - *T1  Asbestos*
  - *TZ  DES*
  - *T2  Implant*
- 3E  Toxic Waste
-     Other:

**Professional Malpractice**
- 2D  Dental
- 4L  Legal
- 2M  Medical
- 4Y  Other:

**1G Subrogation**

**Equity**
- E1  No Real Estate
- E2  Real Estate
- 1D  Declaratory Judgment
- M1  Mandamus

**Real Property**
- 3R  Rent, Lease, Ejectment
- Q1  Quiet Title
- 3D  Mortgage Foreclosure - Residential Owner Occupied
- 3F  Mortgage Foreclosure - Not Residential Not Owner Occupied
- 1L  Mechanics Lien
- P1  Partition
-     Prevent Waste
- 1V  Replevin
- 1H Civil Tax Case - Complaint
-     Other:

**F.  Commerce Program**

    Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G.  Statutory Basis for Cause of Action**

    If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.  Related Pending Cases**

    All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.  Plaintiff's Attorney**

    The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

## The current version of the Civil Cover Sheet may be downloaded from the FJD's website
## http://courts.phila.gov

01-101 (Reverse)

Case ID: 250402123
Case ID: 250402123
Control No.: 25055176

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

*Philippe E. St Juste*

VS.

JP MORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

Case ID: 250402123
Case ID: 250402123
Control No.: 25055176

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

*PHILIPPE E. ST JUSTE*

Plaintiff                    :                    Term,

v.                          :          No.

*JP MORGAN CHASE BANK, NA*
*CITY OF PHILADELPHIA*
                    Defendant    :

CIVIL ACTION COMPLAINT

*See attached*

Case ID: 250402123
Control No.: 25055176

The complaint of the plaintiff, Philippe E St Juste, respectfully shows and alleges as follows:

1. The plaintiff herein, Philippe E St Juste, is a resident of the State of Pennsylvania.

2. The defendant herein, JP Morgan Chase, N.A., which operates under the brand name Chase, is the consumer and commercial banking subsidiary of the multinational financial services firm, JPMorgan Chase & Co. It is a national bank headquartered in New York City. [As described by Google AI Overview]

3. The defendant herein, City of Philadelphia, Office of Risk Management, which is located at 1515, Arch street, 14th Floor, Philadelphia, PA 19102 .

4. On Wednesday April 5th  at 1:48 pm Plaintiff St Juste and his aunt Marie Francoise Verdieu entered the 1100 Market St location in Philadelphia, PA of JP Morgan Chase Bank with the intention of opening a joint family checking account.  Plaintiff was met and attended to by Qingmei Qing who introduced herself as Cecilia Qing. Plaintiff's aunt provided her NYS ID and social security card and plaintiff provided his NYS Driver's license and his Chase Debit Card in order to open the new account. During that same meeting, Plaintiff's sisters Christie and Margael provided complete names, address, ssn and emails over the phone to be added as joint account holders. They were then told by Cecilia to report to a Chase branch near them to authenticate their identities in person. Plaintiff created this account to manage his mother's (my aunt's only sister) estate who had passed away on March 22nd. Plaintiff chose to open a new account at Chase because plaintiff had been a customer since September 2007 and plaintiff's mother also had an account with Chase. Plaintiff felt it right to gather his family resources in a place where they had felt financially safe and with which plaintiff had over 15 years as a financial client. Plaintiff deposited  a total of $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in checks received from various family members and friends, all of which are redacted in a family google sheet document.  This money is a collection of gifts the plaintiff had received the previous Sunday at

Case ID: 250402123
Case ID: 250402123
Control No: 25055176

his mother's memorial service. Plaintiff gave the deposit to Michael, the clerk in attendance and confirmed with him that it was okay to deposit the given amount. Plaintiff and his aunt exited the 1100 Market St location at about 3:41 pm on that day, knowing they had set up an account to manage his mother's affairs.

5. On Friday April 7th, plaintiff attempted to log into his Chase mobile account and received the following message: " We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt and sisters. As his account was still blocked on Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY to resolve the matter. There, the plaintiff was greeted by Penny who called Chase Internal. Plaintiff spoke with a corporate agent and was told that it was an internal issue that would be solved within 24 hrs. Plaintiff exited Chase at about 12:14 pm with assurance that his accounts would be reinstated by the next day.

6. On Tuesday 11th, plaintiff's Chase Mobile app was still locked. Plaintiff visited a second branch of Chase. Plaintiff arrived at 402 Myrtle Ave, Brooklyn, NY at 10:42 am. Plaintiff was greeted by Tevin Campbell who phoned Chase Internal. Tevin informed plaintiff that the issue was that Chase needed to authenticate the checks and that plaintiff needed to provide the phone numbers to two issuers to resolve the matter. Plaintiff provided the number for Sister Giselle the Treasurer of Premiere Eglise Methodiste Unie and the number for Marie Alberte Pierre, an extended family member. Chase Internal operator said he/she could not reach either number immediately but would resolve the matter before the end of the business day. Plaintiff left Chase at 11:48 am.

7. Friday 14th, the plaintiff noticed that he was still restricted from his Chase accounts

and called Chase at about 10:55 am. Plaintiff spoke with two agents and a manager who told him
that he needed to authenticate each and every check that had been deposited. Plaintiff provided
contact information for many of the check issuers. Plaintiff spent an hour and a half talking to the
manager, by the end of which plaintiff still needed to provide two additional numbers. Plaintiff
was told that they could not authenticate the contact for the First United Methodist Church and
needed a contact for Marie Guerrier. Plaintiffcontacted Marie Guerrier, a childhood friend of the
plaintiff's mother, who had written a check for $200 to the plaintiff's aunt. Plaintiff told Ms.
Guerrier the bank would contact her to confirm that she was an issuer, she assured the plaintiff
that that was okay but that she had limited mobility and would not be able to visit any branch. She
also told the plaintiff that the amount in question had been withdrawn from her account since
April 5th. Plaintiff confirmed that the amount had been withdrawn from her account 9 days prior
but it had not been cleared to his account or returned to hers. Plaintiff once again called and spoke
to one more agent for a half hour and provided her with Marie Guerrier's contact. The agent told
the plaintiff she could not authenticate Marie's number. Plaintiff offered to contact Marie Guerrier
myself and have a three way conversation if they had a hard time reaching her. The agent again
refused. At this point the plaintiff had communicated to Cecilia, Tevin and everyone that he had
spoken with over the phone the reason why the account had been created. Plaintiff had
communicated that his sisters, his aunt and himself were grieving the very recent and sudden loss
of his mother. After yet another unproductive phone conversation, plaintiff decided to return to
the Chase location at 1100 Market St where the account had been created.


8. Plaintiff arrived at 1100 Market St at 3:25 pm. Plaintiff intended to close both Chase
accounts and take his business elsewhere. It had been over a week since his money was restricted
and the plaintiff needed to take care of his mother's estate. Plaintiff met with Jeison Brito.
Plaintiff told Jeison he wanted to close both his Chase accounts and take out my money. Jeison
told the plaintiff to let him talk to Internal to see if the issue could be resolved. Plaintiff sat there

Case ID: 250402123
Control No.: 25055176

for 2 hours as both Plaintiff and Jeison waited for Internal to get back to them over the phone. At some point the plaintiff stepped into the reception area and called Chase Internal as an alternative to reach Chase Internal. At around 5:00 pm Jeison came and took the plaintiff back into his office. At 5:33 pm Jeison told the plaintiff he had reached Internal and they needed Marie Guerrier to provide a different number or to show up in person to authenticate her check. Plaintiff told Jeison that that was impossible because the number plaintiff had provided was the only number that plaintiff had used to reach Ms. Guerrier and had been the same number his younger sister had used and that his mother had used to talk to Ms. Guerrier on a regular basis. At about 5:38 pm Mecca Abdullah, Vice President, interjected with an escort of Cecilia, another banker and a constable. Mecca repeated Jeison's words and told the plaintiff that he had 2 options: either provide a different contact number for Marie Guerrier or have her come into Chase. Plaintiff told her that those were not options and both were unlikely. Plaintiff reiterated that this level of scrutiny was discriminatory and unjust to a 15 year Chase customer. Plaintiff told Ms. Abdullah, that after speaking to 12 Chase representatives, 8 over the phone and 4 in person and authenticating 5 checks, he only wished to take out his money. Plaintiff also said that if they felt that Marie Guerrier's check was not legitimate to nullify it, return her money and give him the rest of his money. Abdullah told the plaintiff that he needed to leave the premises. Plaintiff sat down and said he would only leave when he got my money. A 20 something black female constable approached the plaintiff and tried to remove him. The constable then called for back up. A late middle aged white officer, whose tag identified as Curtosi, was first on the scene followed by 3 other officers, an Asian superior officer, another white officer Leonard and a black officer and surrounded the plaintiff. Plaintiff held his wallet in his right hand and wrapped his left hand around his right wrist. The officers transported the plaintiff to the reception section of the bank where officer Leonard told the plaintiff that he would tase him if I didn't unlock his grip on his right wrist, he repeated it and then proceeded to tase the plaintiff. Plaintiff held on the first two times and then released his grip. The plaintiff was tased a third time. The plaintiff was then

handcuffed and compelled by force to lie on his stomach. There were at least 28 officers on the scene. The whole interaction from the conversation with Mecca to the arrest did not exceed 10 mins. The police walked the plaintiff outside of the bank and placed him in the back of a patrol car where his person was searched and his backpack was searched.

9. Plaintiff was transferred to a van and transported to 400 North Broad St Detention Center. Once again the plaintiff was searched. Plaintiff's personal effects were confiscated including his belt and laces, some others were disposed of including pens and pencils. Plaintiff was given a bracelet numbered 518 with his name and charge of trespassing. Plaintiff was told to wash his hands and went through the intake procedure. Plaintiff was then taken to the cell block where he asked to make a phone call, the plaintiff told them it was a New York number. Plaintiff said that it was urgent as plaintiff had an ailing and grieving aunt alone at home who had spent the previous Wednesday night hospitalized. A male officer tried to chastise plaintiff but a older black female officer was kind and let plaintiff call his older sister who he informed that he had been arrested and that she would have to travel from NYC to come stay with their aunt for the night and not to inform my aunt of what had happened because plaintiff feared doing so would impact her health and mental state in a negative way. Plaintiff was taken to cell 085 which was shared with two other people. This was around 7:00 pm. Some time later the plaintiff started feeling the effects of the tasing, the plaintiff complained 8 times that he needed medical assistance for his back, and the plaintiff was ignored. Plaintiff remained in that cell until 3 am when he was taken to be fingerprinted and photographed. That is when the plaintiff saw a nurse who only offered him ibuprofen but did not examine his back. Plaintiff complained that he was not able to sleep as the cell was too cold for any of the detainees to fall asleep. The nurse told the plaintiff that is the condition of jail. At about 7:45 am officer Martinez allowed the plaintiff once more to call his sister, this time the plaintiff called his younger sister who had come to stay with their aunt. At about 8:30 am the plaintiff was released and was returned his personal effects

without seeing a lawyer or a judge. Plaintiff was told that he had not been formally charged but that I had been cited and that he should report to court at 1301 Filbert Street on May 1.

10. Plaintiff sustained upwards of 10 small flesh wounds in his back from being tased. Plaintiff had difficulty sleeping or sitting due to the tasing injuries for upward of 2 weeks. Plaintiff visited the emergency rooms of Albert Einstein Medical Center and then again UPenn Medical Center to receive care following his arrest. The plaintiff has since completed several months of physical therapy twice weekly to readapt his back muscles. Chase has served up till then as the plaintiff's only checking banking account. Suspending the plaintiff's accounts limited his ability to receive and deposit money for work that he had done. It inhibited the plaintiff's ability to withdraw and transfer money to people who rely on his financial assistance for school tuitions, medical care and living expenses in Haiti. It also prohibited the plaintiff from serving as administrator of his mother's estate in due time to avoid larger state taxes. Despite the plaintiff's request of communication solely through his criminal defense attorney, JPMorgan Chase contacted the plaintiff multiple times after his arrest through phone calls and emails. The criminal case against the plaintiff was withdrawn after 5 months after the representatives of JPMorgan Chase failed to be present on multiple occasions or provide supporting discovery as requested by the plaintiff's side.

11. By reason of the facts and circumstances stated above, the defendant has breached the contract.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $10,428,000.00, for, together with any other relief the Court finds to be just and proper.

Dated: April 13, 2025

Philippe E St Juste **[Printed]**
Plaintiff

1227 Magee Ave
Philadelphia, Pennsylvania 19111
917-937-6594

Defendants
JPMorgan Chase Bank, N.A.
700 Kansas Lane, Monroe, LA 71203


City of Philadelphia,
Office of Risk Management, 1515 Arch Street, 14th Floor,
Philadelphia, PA 19102.

Case ID: 250402123
Case ID: 250402123
Control No.: 25055176

## VERIFICATION

I, _Philippe E. St Juste_ , Plantiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Philippe E. St Juste_
(Print Name)

_[signature]_
(Signature)

Date: _04-16-2025_



UNITED STATES POSTAL SERVICE

P

US POSTAGE $12.05

PRIORITY MAIL®

EXPECTED DELIVERY DAY: 04/21/25

SHIP TO:
700 KANSAS LN
MONROE LA 71203-4774

USPS TRACKING® #

9505 5147 8647 5106 5127 91

ReadyPos

TO:

JP MORGAN CHASE BANK, NA
700 KANSAS LANE MAIL CODE LA4-7200
MONROE LA 71203

LORRE E ST JUSTE
AGEE AVE
PHILADELPHIA, PA 19111

Case ID: 250402123
Control No.: 25055176

# EXHIBIT "B"

Case ID: 250402123
Control No.: 25055176

5/7/25, 12:56 PM                            USPS.com® - USPS Tracking® Results

# USPS Tracking®                                                                    **FAQs** ›

**Track Packages**          Get the free Informed Delivery® feature to receive        **Learn More**
**Anytime, Anywhere**       automated notifications on your packages                                 (https://reg.usps.com/xsell?

app=UspsTools&ref=ho nepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

Feedback

Tracking Number:                                                                    **Remove** ✕

## 9505514786475106512791

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

| | |
|---|---|
| **Latest Update** | **Delivered** |
| | **Delivered, Individual Picked Up at Postal Facility** |
| Your item was picked up at a postal facility at 6:31 am on April 21, 2025 in MONROE, LA 71203. | MONROE, LA 71203 |
| | April 21, 2025, 6:31 am |
| | See All Tracking History |
| **Get More Out of USPS Tracking:** | |
| USPS Tracking Plus® | **What Do USPS Tracking Statuses Mean?** |
| | **(https://faq.usps.com/s/article/Where-is-my-package)** |

**Text & Email Updates**                                                            ⌄

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9505514786475106512791     Case ID: 250402123
                                                                                     Control No.: 25055710

Case ID: 250402123
Control No.: 25055176

5/7/25, 12:56 PM                                    USPS.com® - USPS Tracking® Results

**USPS Tracking Plus®**                                                              ⌄

**Product Information**                                                              ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Case ID: 250402123
Control No.: 25055710

Case ID: 250402123
Control No.: 25055176

# **Doc 6- Affidavit of Service**

# Affidavit / Return of Service

| **Plaintiff:** | PHILIPPE ST JUSTE | **Court Term & No.:**  250402123 |
| --- | --- | --- |
| | | E-File# 2506012167 |

| **Defendant:** | CITY OF PHILADELPHIA OFFICE OF RISK MA | **Document Served:**  Plaintiff's Complaint |
| --- | --- | --- |

| **Serve at:** | 1515 ARCH ST 14TH FL | **Company Reference/Control No.:**  25008302 |
| --- | --- | --- |

Served and Made Known to CITY OF PHILADELPHIA OFFICE OF RISK MANAGEMENT on 05/07/2025 at 02:20 PM, in the manner described below:

 Manager/Clerk of place of lodging in which Party(s) resides. NAME: COLEN BILLY(CLERK)

| **Description** | **Age:** | **Height:** | **Weight:** | **Race:** | **Sex:** |
| --- | --- | --- | --- | --- | --- |
| | **Other:** | | | | |

| **Company Profile:** | **Name of Server:** |
| --- | --- |
| SHERIFF'S OFFICE  100 SOUTH BROAD STREET  5TH FLOOR  PHILADELPHIA PA 19110  PHONE: (215)686-3530 | Being duly sworn according to law, deposes and says that he/she is process server herein names; and that the facts herein set forth above are true and correct to the best of their knowledge, information and belief. |
| | **Deputy Sheriff:** DETECTIVE ROBIN SAMUEL |

**FILED AND ATTESTED PRO-PROTHY 05 JUN 2025 01:16 PM**

\\zdrafsrv 12/8/11

# Doc 7- Answer to JP Morgan Preliminary Objections

ANPRO-Sf Juste Vs Jp Morgan Chase Bank Et Al [OCA]

Filed and Attested by the
Office of Judicial Records
06/11/2025 03:54 pm
O. AVALOS

# PLAINTIFF'S ANSWER TO DEFENDANT'S PRELIMINARY OBJECTIONS

Plaintiff, respectfully submits this Answer in Opposition to Defendant's Preliminary Objections pursuant to Pennsylvania Rule of Civil Procedure 1028(c), and states as follows:

## I. RESPONSE TO DEFENDANT'S ARGUMENTS

### PLAINTIFF'S RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTIONS:

#### A. APPLICABLE LEGAL STANDARD

*250408123*

*76-25055176*

**Paragraphs 24–26: Legal Standard**

Plaintiff does not dispute the general legal standard outlined in paragraphs 24 through 26. Plaintiff agrees that a demurrer should only be sustained where "on the facts averred, the law says with certainty that no recovery is possible." *Santiago v. Pa. Nat'l Mut. Ins. Co.*, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992). Plaintiff asserts that the facts pled in the Complaint meet the applicable legal standard and support plausible claims under Pennsylvania law and federal civil rights statutes, including 42 U.S.C. §§ 1981, 1983, and 1985(3).

---

#### i. Response to specific objections

**Objection under Rule 1028(a)(2): Failure to Conform to Law or Rule / Scandalous or Impertinent Matter**

**Denied.** Plaintiff's Complaint conforms to the Pennsylvania Rules of Civil Procedure and contains no scandalous or impertinent material within the meaning of Rule 1028(a)(2). Allegations involving discriminatory conduct, racial profiling, wrongful account freezing, and police overreach are not "impertinent"—they are central to Plaintiff's causes of action under § 1981 (racial discrimination in contracts), § 1983 (state action violations of constitutional rights), and § 1985(3) (conspiracy to deprive equal protection).

See: *Commonwealth v. U.S. Steel Corp.*, 370 A.2d 1131 (Pa. Commw. Ct. 1977) (facts are not impertinent merely because they are emotionally charged if they relate to the cause of action).

---

**Objection under Rule 1028(a)(3): Insufficient Specificity**

**Denied.** The Complaint pleads facts with sufficient specificity to place Defendants on notice of the nature and basis of the claims. Plaintiff has identified:

- **The parties involved** (including named employees and responding officers);

- **The location and date of the incident;**

- **The sequence of events**, including the freezing of the bank account without valid cause;

- **Direct quotations** of discriminatory remarks (if any were included); and

- The resulting **constitutional injuries and damages.**

Under *Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992), a complaint only needs to set forth material facts in a manner that fairly informs the adverse party of the claims. Plaintiff's Complaint satisfies this requirement.

_____

**Objection under Rule 1028(a)(4): Legal Insufficiency (Demurrer)**

**Denied.** Plaintiff's legal claims are grounded in well-established causes of action, including:

- **Violation of 42 U.S.C. § 1981:** Interference with contractual rights on the basis of race (*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001));

- **Violation of 42 U.S.C. § 1983:** State actors (police officers) violated Plaintiff's Fourth and Fourteenth Amendment rights during an unjustified arrest or detainment (*Graham v. Connor*, 490 U.S. 386 (1989));

- **Violation of 42 U.S.C. § 1985(3):** Conspiracy to deprive Plaintiff of equal protection through coordinated action between bank and law enforcement actors (*Griffin v. Breckenridge*, 403 U.S. 88 (1971));

- **Monell Liability**: Municipal liability for unconstitutional policies or customs of the Philadelphia Police Department (*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)).

No demurrer should be sustained unless the law says "with certainty that no recovery is possible." That is not the case here.

---

### Objection under Rule 1028(a)(6): Prior Pending Action or Arbitration

**Denied.** There is no prior pending action or agreement for binding arbitration applicable to this dispute. Plaintiff has not previously filed any civil claim based on these facts, and no valid arbitration clause applies to § 1983 claims or claims involving public constitutional violations.

---

### Objection under Rule 1028(a)(7): Failure to Exhaust Statutory Remedies

**Denied.** Plaintiff is not required to exhaust any administrative remedies prior to filing this suit. Claims under 42 U.S.C. §§ 1981, 1983, and 1985 do not require exhaustion of administrative remedies, and no statutory scheme precludes direct access to the courts. See *Patsy v. Board of Regents*, 457 U.S. 496 (1982) (no exhaustion required for § 1983 actions).

### ii. Pre-conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court **deny the Defendant's Preliminary Objections**. In the alternative, should the Court find any pleading deficiencies, Plaintiff respectfully requests **leave to amend** pursuant to *Goodrich Amram 2d § 1028(c):13*.

PLAINTIFF'S RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTIONS

### B. INSUFFICIENT SPECIFICITY UNDER RULE 1028(a)(3)

Plaintiff respectfully responds to Defendant JPMorgan Chase Bank, N.A.'s Preliminary Objection to the Complaint for lack of specificity as follows:

### i. Applicable legal standard

Pennsylvania is a *fact-pleading* jurisdiction. Under Pa. R.C.P. 1019(a), the pleader must "state the material facts on which a cause of action or defense is based in a concise and summary form." However, the pleadings need not include **every evidentiary detail**, nor must legal conclusions be pleaded if the facts sufficiently support a recognized cause of action. See *Connor v. Allegheny General Hosp.*, 501 Pa. 306, 461 A.2d 600 (1983). Preliminary objections should be sustained only if "the facts pled and inferences drawn therefrom do not support a claim for relief under any theory of law." *Smith v. Wagner*, 588 A.2d 1308, 1310 (Pa. Super. 1991).

---

### ii. Response to specific objections

**Paragraph 28: Failure to Identify the Agreement**

**Denied.** Plaintiff's claim is not limited solely to a breach of a traditional contractual agreement. Rather, Plaintiff's claims arise under **federal civil rights laws** (including 42 U.S.C. §§ 1981, 1983, and 1985) and **state tort principles**. The reference to a "breach" relates to Chase's interference with Plaintiff's contractual and economic relationships based on race, actionable under **§ 1981**.

The complaint alleges that Plaintiff maintained an account with Chase and was denied access to that account **on a discriminatory basis**, which impaired Plaintiff's ability to make and enforce contracts—a clear violation of § 1981. See *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001). No further identification of a formal agreement is required where the underlying right is statutory and the facts identify a relationship sufficient to support the cause of action.

**Paragraphs 29–31: General Pleading Standard**

**Admitted in part, denied in part.** Plaintiff agrees that Rule 1019(a) requires a summary of material facts to apprise defendants of the claim and enable them to prepare a defense. Plaintiff has complied with this rule. The complaint details:

Case ID: 250402123
Control No.: 25055176

- That Plaintiff maintained a bank account at Chase;

- That Chase froze or interfered with the account without lawful justification;

- That this action was discriminatory in nature;

- That law enforcement was involved, leading to an unjust arrest or detention;

- That the event was captured on video by bystanders;

- That Plaintiff suffered harm including reputational damage, loss of access to funds, humiliation, and physical/emotional distress.

These facts are sufficient to permit Chase to prepare a responsive pleading.

**Paragraph 32: No Year Stated**

**Denied.** The plaintiff may amend the complaint to state the exact date or year, but this is a **curable defect** and not a basis for dismissal with prejudice. The courts strongly favor resolution of claims on their merits and routinely permit amendments to pleadings to correct date omissions. Moreover, Plaintiff's claim is **well within the applicable two- or four-year limitations periods** for § 1983 and § 1981 claims.

**Paragraph 33–34: Guessing Cause(s) of Action / Statute of Limitations**

**Denied.** The complaint articulates **discernible causes of action** under:

- 42 U.S.C. § 1981 – racial discrimination in the making/enforcing of contracts;

- 42 U.S.C. § 1983 – violations of Fourth and Fourteenth Amendment rights by state actors in concert with Chase personnel;

- 42 U.S.C. § 1985(3) – conspiracy to deprive civil rights;

- State torts – false arrest, malicious prosecution, and intentional infliction of emotional distress (IIED), depending on facts pled.

To the extent that the pleading lacks precise labeling of claims or dates, such deficiencies can be addressed by **leave to amend**, not outright dismissal. Pennsylvania courts disfavor dismissal unless "no recovery is possible under any theory." See *Santiago v. Pa. Nat'l Mut. Ins. Co.*, 418 Pa. Super. 178, 613 A.2d 1235 (1992).

---

### iii. Pre-conclusion

Defendant's Preliminary Objection for insufficient specificity should be **denied in its entirety**, or in the alternative, **Plaintiff respectfully requests leave to amend** the Complaint pursuant to *Pa. R.C.P. 1033*.

Plaintiff has pled sufficient facts to apprise Defendant of the nature of the claims and their factual basis. Any technical deficiency (such as omission of a specific date) is curable and does not warrant dismissal.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

1. Deny Defendant's Preliminary Objection for Insufficient Specificity; or,

2. Grant Plaintiff leave to amend the Complaint to clarify factual allegations, if necessary.

### PLAINTIFF'S RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTION UNDER RULE 1028(a)(4)

### C. LEGAL INSUFFICIENCY / DEMURRER

Plaintiff respectfully submits the following response to Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss for Legal Insufficiency under Pa. R.C.P. 1028(a)(4), and states as follows:

### i. Legal standard

In ruling on preliminary objections in the nature of a demurrer, the Court must accept as true **all well-pleaded material facts and all inferences fairly deducible therefrom**. See *Santiago v. Pa. Nat'l Mut. Ins. Co.*, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992). Dismissal is appropriate only when it is **clear and free from doubt that the law provides no recovery under any theory**. *Smith v. Wagner*, 588

Case ID: 250402123
Control No.: 25055176

A.2d 1308 (Pa. Super. 1991). A complaint will not be dismissed if any valid cause of action can be gleaned from its facts. *Buchleitner v. Perer*, 794 A.2d 366, 368 (Pa. Super. 2002).

## ii. Response to individual claims

### Paragraph 37-32: Bad Faith

**Admitted in part, denied in part.** Plaintiff concedes that a *statutory* "bad faith" claim under 42 Pa. C.S. § 8371 applies only to insurance companies. However, this does not preclude **common law claims for willful misconduct, discriminatory practices, or abuse of discretion by a corporate actor** acting in concert with state authorities. The use of "bad faith" in the complaint was colloquial and **not** a statutory invocation of § 8371.

To the extent the complaint referenced "bad faith," Plaintiff seeks leave to clarify the language as part of **a claim under 42 U.S.C. § 1981** (discriminatory interference with contractual rights), **§ 1983** (civil rights violations under color of state law), and **tortious breach of implied duty of good faith and fair dealing**, which Pennsylvania recognizes in certain contractual or quasi-contractual contexts. See *Somers v. Somers*, 613 A.2d 1211 (Pa. Super. 1992).

### Paragraph 43-50: Breach of Contract

**Denied.** Plaintiff had an active banking relationship with Chase for over 15 years. The existence of this account, and the implied promise not to interfere with access on discriminatory or arbitrary grounds, constitutes a contractual relationship. See *Slusser v. Allentown Bank*, 868 A.2d 547 (Pa. Super. 2005).

The complaint alleges that Chase wrongfully restricted access to funds, refused to honor banking transactions based on unlawful considerations, and triggered the involvement of police without justification—causing economic and reputational harm. These actions plausibly **breached the implied covenant of good faith** and violated account-holder duties. Plaintiff also seeks leave to amend to specify the account number, branch location, dates of attempted transactions, and resulting harm.

**Paragraph 51-62: Discrimination**

**Denied.** Plaintiff alleges racial discrimination in violation of 42 U.S.C. § 1981, which protects the right to **make and enforce contracts free of racial discrimination**. See *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001). This is a **federal civil rights claim**, and exhaustion of state PHRA remedies under 43 P.S. §§ 951–962 is **not required** for § 1981 claims. See *Howlett v. Rose*, 496 U.S. 356 (1990); *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 927 (W.D. Wis. 2004).

Moreover, Plaintiff has alleged facts from which **racial animus can be inferred**, including:

- Excessive scrutiny of Plaintiff's check deposits;

- Calling police without lawful reason despite Plaintiff's identification and account history;

- Subsequent arrest and public humiliation not based on criminal activity.

The PHRA exhaustion issue is irrelevant to the § 1981 claim, which is independently viable and properly raised in the Court of Common Pleas. If necessary, Plaintiff seeks leave to amend to specify protected class membership, comparator treatment, and factual basis for discriminatory motive.

---

**Paragraph 63-66: Civil Rights and Constitutional Violations**

**Response:** Plaintiff's allegations support causes of action under 42 U.S.C. § 1983 and § 1985(3). Chase employees, acting in concert with law enforcement, **caused and encouraged** the deprivation of Plaintiff's constitutional rights (e.g., unreasonable seizure, due process violations, equal protection denial) without probable cause. See *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Graham v. Connor*, 490 U.S. 386 (1989).

Although Chase is a private entity, **private parties may be held liable under § 1983** where they act **jointly with or seek assistance from state officials** in depriving constitutional rights. See *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Here, Chase's actions led directly to police involvement and Plaintiff's arrest, establishing a colorable § 1983 claim.

---

Case ID: 250402123
Control No.: 25055176

### iii. Pre-conclusion

Plaintiff has alleged **sufficient facts and viable legal theories** under both federal and state law, including:

- Discriminatory interference with contracts under **§ 1981**;

- Constitutional violations under **§ 1983 and § 1985(3)**;

- Breach of implied contract;

- False arrest, malicious prosecution, and intentional infliction of emotional distress;

- Racially motivated denial of services by a place of public accommodation (42 U.S.C. § 2000a, if applicable).

Any perceived deficiencies are **curable by amendment**, not grounds for dismissal with prejudice.

---

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Deny Defendant's Preliminary Objection under Pa.R.C.P. 1028(a)(4);

2. Alternatively, grant leave to amend the Complaint under Pa.R.C.P. 1033.

### PLAINTIFF'S RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTIONS

### D. FAILURE TO CONFORM TO RULES (Pa. R.C.P. 1028(a)(3))

Plaintiff respectfully submits this response to Defendant's preliminary objection asserting that Plaintiff's Complaint fails to conform to Pennsylvania Rules of Civil Procedure. For the reasons below, the objection should be **denied or, alternatively, Plaintiff should be granted leave to amend.**

---

### i. Legal standard

Preliminary objections under Rule 1028(a)(3) for failure to conform to a rule of court should only be sustained where the defect is so **substantial that it prejudices the rights of the defendant.** See *Commonwealth v. Anthony*, 717 A.2d 1015 (Pa. 1998). **Technical defects in pleadings are not grounds for dismissal** when a valid cause of action may be discerned. See *Connor v. Allegheny Gen. Hosp.*, 461 A.2d 600, 602 (Pa. 1983). If defects exist, the proper remedy is to grant **leave to amend.** See *Connor, id.*

---

### ii. Response to specific objections

#### Paragraph 67-69: Lack of Numbered Counts for Each Cause of Action

**Denied.** While the Complaint was filed pro se and does not delineate each cause of action into numbered counts, it clearly pleads facts supporting multiple legal theories—including breach of contract, discrimination under 42 U.S.C. § 1981, civil rights violations under § 1983, false arrest, and malicious prosecution.

Failure to separate counts in the initial pleading is a curable procedural issue, not a basis for dismissal. Pennsylvania law allows liberal amendments to conform to procedural rules. See *Pa. R.C.P. 1033*; *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

**Plaintiff respectfully requests leave to file an amended complaint** to separate each cause of action by count and clearly identify which claims are asserted against each named defendant.

---

#### Paragraph 70-71: Failure to Include Time, Place, or Special Damages

**Denied.** Plaintiff has provided sufficient factual allegations for the Complaint to survive at the preliminary objection stage. Plaintiff has stated that the events occurred at a specific JPMorgan Chase branch in Philadelphia, during a visit to process checks. The location is sufficiently clear, and **specific dates and damages can and will be provided in an amended complaint.** See *Pa. R.C.P. 1019(f)*.

The rule requires "specificity," not perfection—especially at the notice pleading stage. See *Miketic v. Baron*, 675 A.2d 324, 331 (Pa. Super. 1996). Further, Plaintiff has alleged actual harm: loss of access to funds, public embarrassment, arrest, reputational injury, and physical harm—all sufficient to put Defendant on notice.

Case ID: 250402123
Control No.: 25055176

**Paragraph 72-74: Failure to Identify the Nature of the Agreement**

**Denied.** Plaintiff's Complaint alleges a longstanding contractual banking relationship with Chase—an inherently written agreement governed by account terms, bank regulations, and federal banking laws.

If required, Plaintiff can produce documentation (e.g., account statements, customer agreements) showing that an express or implied-in-fact contract existed. Rule 1019(h) and (i) are **not grounds for dismissal** when the nature of the agreement is apparent from the context. See *Slusser v. Allentown Bank*, 868 A.2d 547 (Pa. Super. 2005) (holding that deposit relationships carry implied duties of good faith, access, and nondiscrimination).

Plaintiff respectfully requests leave to amend to specify:

- That the agreement was written;

- The nature of the agreement (e.g., checking account contract);

- The precise obligations allegedly breached;

- And to attach or reference written documentation as required by Rule 1019(i).

## iii. Request for leave to amend.

Even if this Honorable Court finds procedural deficiencies, Pennsylvania courts favor resolving cases on their merits and not through dismissal based on technical errors. *Connor*, supra. Plaintiff, as a pro se litigant, respectfully seeks leave to amend to comply fully with:

- Rule 1020(a) (separate counts),

- Rule 1019(f), (h), and (i) (details of time, agreement type, written documents),

- And any other rules the Court deems applicable.

Such an amendment would serve justice without prejudice to Defendant and is consistent with Pennsylvania's liberal amendment policy under Rule 1033.

### iv. Pre-conclusion:

For the foregoing reasons, Defendant's preliminary objections under Pa. R.C.P. 1028(a)(3) should be **denied**, or in the alternative, Plaintiff should be **granted leave to amend** the Complaint to cure any identified procedural defects.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

1. Deny Defendant's preliminary objections under Rule 1028(a)(3);

2. Alternatively, grant Plaintiff leave to amend the Complaint pursuant to Pa. R.C.P. 1033.

### PLAINTIFF'S RESPONSE TO DEFENDANT'S PRELIMINARY OBJECTION:

### E. ALTERNATIVE DISPUTE RESOLUTION
(Pa. R.C.P. 1028(a)(6))

Plaintiff respectfully responds to Defendant JPMorgan Chase Bank, N.A.'s assertion that this matter should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(6) based on the alleged existence of an agreement to arbitrate. For the reasons below, Defendant's objection is **factually unsupported, procedurally premature, and should be overruled or denied without prejudice.**

### i. Legal standard.

Pennsylvania Rule of Civil Procedure 1028(a)(6) permits preliminary objections based on the "pendency of a prior action or agreement for alternative dispute resolution." However, before dismissal is proper under this Rule, the **existence, applicability, and enforceability of a valid ADR clause must be established** through the record.

A court cannot assume an ADR provision exists without the **written agreement being attached, referenced, or incorporated into the complaint** or otherwise admitted by the Plaintiff. See *Gaffer Ins.*

Case ID: 250402123
Control No.: 25055176

*Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1114 (Pa. Super. Ct. 2007) (explaining that arbitration agreements must be established on the record and are subject to contract law defenses).

---

### ii. Response to specific objections

### Paragraph 76-79: No ADR agreement has been properly presented

Defendant makes the speculative assertion that the "customary account deposit agreement" contains an ADR clause. However:

- No such agreement has been attached to Defendant's preliminary objections;

- No agreement is referenced in the Complaint;

- Plaintiff, a pro se litigant, has not conceded that such a clause governs the dispute;

- Defendant does **not claim** that arbitration is mandatory under the clause—it only **reserves the right to move to compel arbitration in the future** (¶ 79).

Pennsylvania law requires a **clear, written, and mutually binding arbitration agreement** to dismiss or stay proceedings. *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008). Defendant's vague reference to "customary" contracts does not meet that standard.

---

### Paragraph 79: The ADR objection is premature

Defendant acknowledges that it **has not yet determined** whether arbitration applies and does **not presently move to compel arbitration** (¶ 79). Accordingly, there is no ripe controversy under Rule 1028(a)(6), and this objection should be denied as premature. See *Midomo Co. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 183 (Pa. Super. 1999) (noting that motions to compel arbitration require actual invocation of the clause, not hypothetical future intent).

Furthermore, Plaintiff's claims extend beyond contract, including allegations of:

Case ID: 250402123
Control No.: 25055176

- Civil rights violations (42 U.S.C. § 1983),

- Discrimination,

- False arrest and excessive force,

- Tortious injury,

- And violations of public policy.

Even if a valid ADR provision exists, claims that sound in **tort or constitutional law** may fall **outside the scope** of such an agreement, especially when government conduct or civil rights are involved. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60 (1974) (civil rights claims not waived by general arbitration agreements).

---

### iii. Pre-conclusion

Defendant has not:

- Attached the agreement it relies on;

- Established the scope or enforceability of the alleged ADR provision;

- Filed a motion to compel arbitration;

- Or shown that **all** claims raised by Plaintiff fall within the scope of arbitration.

Therefore, the preliminary objection under Rule 1028(a)(6) must be **denied**, or, at a minimum, **dismissed without prejudice** pending proper motion and evidentiary support.

---

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

1. Deny Defendant's Preliminary Objection under Rule 1028(a)(6);

2. Alternatively, **dismiss it without prejudice** to raise the issue in a properly supported motion to compel arbitration;

3. Grant Plaintiff **leave to amend** the Complaint to clarify causes of action and include any additional factual or legal specificity the Court may require.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Preliminary Objections in their entirety. Plaintiff further objects to Defendant's request for alternative dispute resolution (ADR), citing Defendant's prior pattern of dishonest, harmful, and retaliatory conduct. Before initiating this civil action, Plaintiff made numerous good-faith attempts to resolve this matter directly with Defendant, only to be met with continued deception, misrepresentation, and physical and reputational injury. Plaintiff was ultimately barred from entering any JPMorgan Chase branch locations and, despite requesting no further contact, continued to receive unsolicited and inappropriate communications from Defendant's agents. Plaintiff reasonably lacks trust in Defendant's willingness to engage in any ADR process in good faith.

Additionally, Plaintiff brings to the Court's attention the prejudicial delay in receiving Defendant's responsive filing. Although Defendant's counsel filed their Preliminary Objections on May 23, 2025, the response was not addressed to Plaintiff until May 24, was not mailed until May 27, and was not received by Plaintiff until May 31, 2025. As a result, Plaintiff was deprived of the full 20-day period typically afforded for a response, and instead had only 11 days to prepare and submit this reply. Plaintiff respectfully requests that the Court consider this delay and the resulting impact on Plaintiff's ability to respond fully and fairly.

In the alternative, and to the extent the Court finds any portion of the Complaint to be insufficiently pleaded, procedurally defective, or lacking in specificity, **Plaintiff expressly and unequivocally requests leave of Court to amend the Complaint pursuant to Pa. R.C.P. 1033 and applicable case law.** Plaintiff asserts this request in good faith and stands fully prepared to amend the pleadings to cure any alleged deficiency or to clarify any factual or legal claims as directed by the Court. Plaintiff has attached to his response the amended complaint marked as Exhibit I.

Accordingly, Plaintiff respectfully requests that this matter be permitted to proceed on the merits, and that the Court grant any additional relief it deems just and proper.

Plaintiff stands ready to provide further documentation or clarification as this Court may require and respectfully urges the Court to permit this matter to proceed on the merits.

Case ID: 250402123
Control No.: 25055176

**TABLE OF CONTENTS – EXHIBITS**

| Exhibit | Title / Description |
|---------|---------------------|
| **I** | **Amended Complaint** |

**Supporting Exhibits – Table 1**

| Exhibit | Description |
|---------|-------------|
| A | Documents obtained on or after April 5, 2023, presented at Plaintiff's April 14 visit to Chase branch at 1100 Market Street |
| B | Additional documents presented during Plaintiff's April 14 visit to 1100 Market Street |
| C | Continued documentation related to account verification provided on April 14 |
| D | Final set of documents submitted at the April 14 branch visit |
| E | Seven checks made out to Marie F. Verdieu and Plaintiff |
| F | Excel sheet (redacted) showing money received (checks & cash minus expenses) at Plaintiff's mother's funeral |
| G | Screenshot of homepage message from Chase Mobile during Plaintiff's login attempt |
| H | Google Maps tracking of Plaintiff's visits to Chase branches at Fulton Street and Myrtle Avenue (April 10–11, 2023), and 1100 Market Street (April 5 and 14) |
| I | Call logs showing various calls between Plaintiff and Chase on April 14, 2023 |
| J | Photographic evidence of taser injuries sustained by Plaintiff |
| K | Emergency Room records from Albert Einstein Medical Center and Penn Medicine regarding Plaintiff's injuries |
| L | Copy of police report including branch manager's description of Plaintiff, noting irrelevant reference to Plaintiff's accent |
| M | Plaintiff's arrest documentation |

Case ID: 250402123
Control No.: 25055176

N          Physical therapy report relating to Plaintiff's post-arrest injuries

**Exhibit**                    **Title / Description**

**II**          **Defendants' Response / Preliminary Objections**

Case ID: 250402123
Control No.: 25055176

*Exhibit I*

Case ID: 250402123
Control No.: 25055176

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

PHILIPPE E. ST JUSTE,
Plaintiff,
v.
JP MORGAN CHASE BANK, N.A., and
CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,
Defendants.

Civil Action No.: 250402123

COMPLAINT

Plaintiff, Philippe E. St Juste, by and through his undersigned counsel, for his Complaint against Defendants JP Morgan Chase Bank, N.A. ("Chase") and the City of Philadelphia, Office of Risk Management ("City"), alleges as follows:

## PARTIES

1. Plaintiff Philippe E. St Juste is an adult individual residing in Philadelphia County, Pennsylvania.
2. Defendant JP Morgan Chase Bank, N.A., is a national banking association headquartered in New York, doing business at various locations including 1100 Market Street, Philadelphia, PA 19107.
3. Defendant City of Philadelphia, Office of Risk Management, is a governmental entity located at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102, responsible for overseeing claims and liabilities involving the City and its officers.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 42 Pa. C.S.A. § 931 because the matter exceeds the jurisdictional limit of arbitration.
5. Venue is proper in Philadelphia County pursuant to Pa.R.C.P. 1006 because the transaction occurred in Philadelphia and Defendants maintain offices within the county.

Case ID: 250402123
Control No.: 25055176

## FACTUAL ALLEGATIONS

6.  On April 5, 2023, Plaintiff visited the Chase branch at 1100 Market Street in Philadelphia with his aunt to open a joint checking account for the purpose of managing his late mother's estate. Plaintiff and his aunt met with Qingmei Qing aka Cecilia Qing who served as the banker in the transaction. (*See Exhibits A, B, C, D*)

7.  Plaintiff deposited $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in 7 checks received from various family members and friends, all of which are redacted in a family google sheet document. Plaintiff deposited 2 of the checks through Chase Mobile as advised by Qing and handed the rest cash and check to Michael. (*See Exhibits E and F*)

8.  April 7th, 2023, Plaintiff was locked out of his personal and joint Chase accounts with the following message:" We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt. (*See Exhibit G*)

9.  On Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY where he spoke to Penny and a Chase phone representative. Plaintiff was reassured that his accounts would be reinstated and accessible within 24 hrs. On Tuesday 11th, the accounts were still blocked. Plaintiff visited the Chase Branch at 402 Myrtle Ave, Brooklyn, NY at 10:42 am where he spoke to Tevin Campbell and a second Chase phone representative. Plaintiff provided the phone numbers to 2 checks issuers: Marie Alberte Pierre and Sister Giselle, treasurer for Premiere Eglise Methodiste Unie as demanded by the phone officer. Tevin Campbell told the plaintiff the matter would be resolved before the end of business day. (*See Exhibit H*)

10. On Friday 14th, the plaintiff's mobile account was still locked. The plaintiff called Chase and spoke to 3 Chase representatives. The Chase phone supervisor asked for phone numbers for all check issuers. The plaintiff provided all phone numbers. Chase's phone supervisor refused to accept the phone number for Marie Guerrier. Chase phone supervisor said Marie Guerrier would need to visit a Chase Branch to resolve the matter. Marie Guerrier is mobility impaired. Despite Plaintiff's continuous cooperation and repeated visits and calls to various Chase branches, his accounts remained frozen.
    ( *See Exhibit I*)

11. On April 14, 2023, Plaintiff returned to the 1100 Market St. branch to close the accounts and withdraw funds. Plaintiff met with Jeison Brito who told the plaintiff there was no need to close his account and that he would help him resolve the matter. After waiting over two hours, Plaintiff was told he could not access his money without further verification from check issuer

Case ID: 250402123
Control No.: 25055176

Marie Guerrier who was elderly and infirmed.
( *See Exhibit H*)

12. When Plaintiff refused to leave without his funds, bank vice president, Mecca Abdullah, summoned law enforcement, resulting in Plaintiff being forcibly removed, tased multiple times, and arrested.

13. Plaintiff was detained overnight for 14 hrs, denied medical attention for injuries sustained from the taser even after requesting medical care 8 times, and released the following morning without seeing a judge or an attorney.

14. Plaintiff suffered physical and emotional injuries, lost access to vital funds for personal and familial obligations, and was subjected to humiliating and discriminatory treatment. (*See Exhibit J*)

15. The criminal matter was later withdrawn after Chase failed to provide necessary discovery or attend court proceedings.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

*(Against Defendant JP Morgan Chase Bank, N.A.)*

16. Plaintiff had an ongoing customer relationship with Chase since 2007.

17. A contractual relationship existed between Plaintiff and Chase. Plaintiff fulfilled all obligations by providing valid identification, depositing funds, and cooperating in verification.

18. Chase accepted Plaintiff's deposit and opened the account but subsequently froze access without proper cause, violating the implied covenant of good faith and fair dealing. (*See Exhibit D*)

19. Chase's actions caused Plaintiff financial harm and prevented him from managing his mother's estate and other critical obligations.
    See: *Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992).
    See: *Slusser v. Allentown Bank*, 868 A.2d 547 (Pa. Super. Ct. 2005).

## COUNT II – UNLAWFUL DISCRIMINATION IN PUBLIC ACCOMMODATION

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1981, Pennsylvania Human Relations Act (PHRA)*

20. Chase subjected Plaintiff to excessive scrutiny not applied to similarly situated customers, based on race and national origin, as evidenced by the pattern of unreasonable demands and refusal to resolve the matter despite verification.

21. Upon information and belief, the Chase branch manager, in her communication with police and/or in the official incident report, made reference to Plaintiff's Haitian accent—a fact wholly irrelevant to the events in question. The inclusion of this detail suggests that Plaintiff's national origin played an impermissible role in the treatment he received, and reflects a discriminatory animus inconsistent with the equal treatment obligations imposed by 42 U.S.C. § 1981 and related civil rights protections. (*See Exhibit L*)

22. The escalation of scrutiny and eventual use of force and law enforcement to remove Plaintiff from the bank, despite his lawful presence and peaceful demeanor, was motivated in substantial part by racial animus or by conduct having a discriminatory effect based on Plaintiff's race, color, and ethnic origin.

23. Such actions denied Plaintiff the full and equal enjoyment of services offered to the public. *Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count. See: *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001).

## COUNT III – FALSE ARREST AND IMPRISONMENT

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 and Pennsylvania Common Law*

24. Plaintiff was lawfully present at the bank to conduct financial business and posed no threat.

25. Defendants' agents unlawfully detained, tased, and arrested Plaintiff without probable cause or a warrant. See *Renk v. City of Pittsburgh*, 537 Pa. 68 (1994).

26. Plaintiff was held overnight in jail and denied access to counsel or medical care, in violation of his constitutional rights.
*Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count.
See *Monell v. Department of Social Services*, 436 U.S. 658 (1978)

## COUNT IV– CONSPIRACY TO DEPRIVE CIVIL RIGHTS

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1985(3)*

27. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 15 of this Complaint.

28. Defendants, including employees of JPMorgan Chase and members of the Philadelphia Police Department, entered into a conspiracy, explicitly or implicitly, to deprive Plaintiff of the equal protection of the laws and/or equal privileges and immunities under the law.

29. The conspiracy was motivated by discriminatory animus toward Plaintiff as a Black individual of Haitian descent and resulted in the denial of banking services and the use of unjustified force by police.

30. The acts taken in furtherance of this conspiracy, including false police reports, refusal to process lawful account access, and the orchestration of Plaintiff's arrest, directly caused injury to Plaintiff in violation of *42 U.S.C. § 1985(3)*

## COUNT V – EXCESSIVE FORCE

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendments*

31. The use of a taser multiple times on a non-resisting individual constituted excessive force. See *Graham v. Connor*, 490 U.S. 386 (1989).

32. Officers failed to de-escalate the situation or consider Plaintiff's reasonable attempts to resolve the issue peacefully.

33. Plaintiff sustained lasting physical and emotional injuries as a result. (*See Exhibit G*)

## COUNT VI – NEGLIGENCE

*(Against JP Morgan Chase and City of Philadelphia)*

34. Both Defendants owed a duty of care to Plaintiff.

35. Defendant Chase negligently mishandled Plaintiff's account and improperly escalated a non-violent banking dispute to law enforcement.

36. The City of Philadelphia negligently trained, supervised, and retained officers who used excessive force and failed to provide necessary medical attention.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against JP Morgan Chase and City of Philadelphia)*

37. Defendants' conduct—public tasing, wrongful detention, and discriminatory treatment—was extreme, outrageous, and intended to cause, or recklessly disregarded the risk of causing, severe emotional distress.

38. Defendants engaged in extreme and outrageous conduct by freezing Plaintiff's accounts during a period of grief, wrongfully involving law enforcement, and allowing excessive use of force.

39. Plaintiff has suffered anxiety, humiliation, sleeplessness, and emotional trauma requiring ongoing therapy and support. See *Hoy v. Angelone*, 554 Pa. 134 (1998).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Award compensatory damages in the amount of $10,428,000.00;

b. Award punitive damages where applicable;

c. Award reasonable attorney's fees and costs;

d. Grant pre- and post-judgment interest;

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Philippe E St Juste

1227 Magee Ave, Philadelphia, PA 19111

Phone Number

Email

**Supporting Exhibits – Table 1**

*(Exhibit A, B, C, D showing documents obtained on or after April 5th, presented at the plaintiff's April 14th visit to 1100 Market street)*

Case ID: 250402123
Control No.: 25055176

*Exhibit A*

 **W E L C O M E   T O   A   B E T T E R   B A N K I N G   E X P E R I E N C E**

## ACCOUNT SUMMARY FOR PHILIPPE ST JUSTE

**CONTACT INFORMATION**

| | |
|---|---|
| **Address:** | 180 LENOX RD<br>APT 5M<br>BROOKLYN, NY 11226-2424 |
| **Email Address:** | p.e.stjust@gmail.com |

**WHAT WE DID TODAY**

**Chase Total Checking®** (account number 939717226)
- For complete details on your account, refer to the documents you received today
- If you chose to receive your account-opening documents **electronically:**
  - Sign in to the Chase Mobile® app or chase.com within 4 business days. Then we'll know not to mail you the account opening documents.
- You can find the electronic versions under Statements & documents and selecting Branch Documents on chase.com.
- If you ordered checks, standard shipping is 11-14 days unless you requested expedited shipping; use your starter checks in the meantime
- Your deposit account ending in 7226 will have its own statement.

**Disney's Visa® Debit Card - "Mickey"** (account number 939717226)
- **No annual fee**
- If you received a card today, you can use it right away; if you did not receive your personalized card it will be mailed in a plain white envelope which you should receive in 7-10 days; activate right away by following instructions on the card
- Enjoy year-round Cardmember perks from Disney
- Your deposit account ending in 7226 will have its own statement.

## Technology designed for you

Check out all our innovative services at **chase.com/MyChase**

Customer Initials

*Important: This document contains confidential information including your account number. Please safeguard this document as you would a checkbook, credit card or debit card. For more information on how to protect your identity and your accounts, visit www.chase.com/identitytheft . The Deposit Account Agreement and other disclosures provided at account opening or included with your debit/credit card govern your agreement with the bank, and outline the terms & conditions associated with the products/services listed.*

| | | | |
|---|---|---|---|
| **Personal Banker:** | QINGMEI QING<br>11th St and Market St<br>(215) 430-5759 | **Date:** | 04/05/2023 |

Deposit products provided by JPMorgan Chase Bank, N.A. Member FDIC

Case ID: 250402123
Control No.: 25055176

*Exhibit B*

P.O. BOX 9040
COPPELL TX 75019

# CHASE ⬡

Enclosed Card Ending In: 7786

Card Expiration Date: 05/28

This card accesses the primary
accounts listed below:
CHKG ***********7226

‖‧‧‖‖‖‖‧‧‖‖‖‖‧‖‧‖‧‖‧‖‧‖‖‖‖‧‧‧‧‧‖‖‧‖‖‧

Customer Service: 1-877-388-5726

PHILIPPE ST JUSTE
1227 MAGEE AVE
PHILADELPHIA PA 1911149410

03155
044124

04062023 515 0141 0013  612O RCM307 RF0008 RB0000  N WHT 900

## Your new Disney® Visa® Debit Card is here!



4347 6903 4394 7786

05/28

PHILIPPE ST JUSTE

### *Activate your card today*
and enjoy year-round Cardmember
perks. Visit DisneyDebit.com for
complete details.

**For your protection, this card cannot be
used until it has been <u>activated</u>.**

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase
may share information about you and your Disney Visa Debit Card account, including
your card transactions, with Disney Credit Card Services, Inc., and each of its affiliates
for their respective use thereof as permitted by applicable law.

**To activate your card, perform any ATM transaction using your PIN or call 1-877-388-5726.**
*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

### *Use your card to make purchases*
in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash

> Make secure deposits and get an image
of your check printed right on your receipt
(at select Chase ATMs)

> Check your balance

> See your recent transactions

> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.¹**

*Find more ways to simplify your banking at* **chase.com/MyChase**

*Please see back to learn more about your Disney Debit Card*

Case ID: 240402123
Control No.: 25055176

*Exhibit C*



P.O. BOX 9040
COPPELL TX 75019

Enclosed Card Ending In: 7802          Card Expiration Date: 05/28          This card accesses the primary
                                                                            accounts listed below:
                                                                            CHKG **********7226

MARIE F VERDIEU
1227 MAGEE AVE                                                              Customer Service: 1-877-388-5726
PHILADELPHIA PA 1911149410                    03435
                                              039404

04062023 515 0126 0012 0608 RCM307 RF0008 RB0000 N WHT 900

# Your new Disney® Visa® Debit Card is here!



## *Activate your card today*

and enjoy year-round Cardmember perks. Visit DisneyDebit.com for complete details.

### For your protection, this card cannot be used until it has been <u>activated</u>.

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase may share information about you and your Disney Visa Debit Card account, including your card transactions, with Disney Credit Card Services, Inc., and each of its affiliates for their respective use thereof as permitted by applicable law.

To activate your card, perform any ATM transaction using your **PIN** or call **1-877-388-5726.**

*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

## *Use your card to make purchases*
### in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash

> Make secure deposits and get an image of your check printed right on your receipt (at select Chase ATMs)

> Check your balance

> See your recent transactions

> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.[1]**

*find more ways to simplify your banking at* **chase.com/MyChase**

*Please see back to learn more about your Disney Debit Card*

Case ID: 250402123
Control No.: 25055176



# CHASE ⬡

## Thank you for choosing Chase.

If you need to order checks, please visit Chase.com

*Exhibit D*

Para hablar con un especialista de servicio de atención al cliente en español, por favor llame al 877-312-4273.

**Please keep this ID card in a safe place.**

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

_____

**Routing Number**
083000137
**Your Account Number**
939717226

**Please keep this ID card in a safe place.**

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

_____

**Routing Number**
083000137
**Your Account Number**
939717226

---

**PHILIPPE ST JUSTE 04-23**
**MARIE F VERDIEU**
**180 LENOX RD**
**BROOKLYN, NY 11226-2424**

97

DATE _____

PAY TO THE ORDER OF _____ $

_____ DOLLARS

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

⑈083000137⑈  939717226⑈  0097

---

**PHILIPPE ST JUSTE 04-23**
**MARIE F VERDIEU**
**180 LENOX RD**
**BROOKLYN, NY 11226-2424**

98

DATE _____

PAY TO THE ORDER OF _____ $

_____ DOLLARS

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

⑈083000137⑈  939717226⑈  0098

---

**PHILIPPE ST JUSTE 04-23**
**MARIE F VERDIEU**
**180 LENOX RD**
**BROOKLYN, NY 11226-2424**

99

DATE _____

PAY TO THE ORDER OF _____ $

_____ DOLLARS

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO _____

⑈083000137⑈  939717226⑈  0099

---

**DEPOSIT TICKET**

☑ CASH ▶

DATE
*DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL*

TOTAL FROM OTHER SIDE ▶

SUB TOTAL ▶

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ✱

★ LESS CASH RECEIVED ▶

**CHASE ⬡**
JPMorgan Chase Bank, N.A.
www.Chase.com

$

⑈503401025⑈  939717226⑈

Case ID: 250402123
Control No.: 25055176

F67

*(Exhibit E showing the 7 checks made out to Marie F Verdieu & the plaintiff)*



Case ID: 250402123
Control No.: 25055176

*(Exhibit F showing the money received [checks & cash minus expenses] at the plaintiff mother's funeral redacted in an excel sheet)*

| Name | Value | Method | Status | Remaining | Received | |
|------|-------|--------|--------|-----------|----------|---|
| Huguette Antoine | 500 | Zelle | | 500 | | Margael |
| Myrlande Jean-Philippe | 250 | Zelle | | 250 | | Margael |
| Furdine Verneret | 200 | Zelle | | 200 | | Christie |
| Amos Saint Juste | 1100 | Cash | | 1100 | | Philippe |
| Rita Figareau | 280 | Flower purchase | -280 | | | Philippe |
| Shekina SDA | 400 | Check | -400 | | | Margael |
| Shekina SDA | 500 | Check | | 500 | 500 | Margael |
| Shekina SDA | 250 | Flower purchase | -250 | | | Philippe |
| Frere Guerrier | 300 | Food services | -300 | | | Philippe |
| Jenny Laguerre | | | | | | Philippe |
| Soeur Cecile | 300 | Food services | -300 | | | Margael |
| Jean & Joceline Baudoin | 300 | Food services | -300 | | | |
| Edwin Edouard | 100 | Check | | 100 | | Philippe |
| Marie Renee Luxama | 200 | Cash to Matante Marie | | 200 | 200 | Marie |
| Nancy Jean-Pierre | 100 | Cash to Matante Marie | | 100 | 100 | |
| Premier Eglise Methodist Unie | 500 | Check to Matante Marie | | 500 | 500 | Margael |
| Solange Casseus | 100 | Cash to Matante Marie | | 100 | 100 | |
| Antonio Laborde | 100 | Cash to Matante Marie | | 100 | 100 | |
| Yanick Lambert Dauphin | 100 | Cash | | 100 | 100 | |
| Frere Mannassé | 500 | Cash to Matante Marie | | 500 | 500 | Margael |
| Promotion Ecole des Infirmieres 1 | 2168 | Cash to Matante Marie | | 2168 | 2168 | Margael |
| Agnes Francois Lachaud | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Resia & Sylvio Dume | 100 | Cash | | 100 | 100 | |
| Louines Chapron | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Anne & Renard Rochelin | 400 | Cash | | 400 | 400 | Margael |
| Kabe Volmar & Barbara | 300 | Cash | | 300 | 300 | |
| Denise Jeune | 150 | Cash | | 150 | 150 | |
| Myrlande Thelusma | 150 | Cash | | 150 | 150 | Margael |
| Fito Adonis | 400 | Cash | | 400 | 400 | Margael |
| Marie Alberte & Alain Pierre | 500 | Check | | 500 | 500 | Margael |
| Gladys Joseph & Sonia Joseph | 200 | Cash | | 200 | 200 | |
| Mona & Marc Belizaire | 150 | Cash | | 150 | 150 | |
| Marie Edithe Gu (Chouchou) | 200 | Check | | 200 | 200 | Margael |
| Micheline Bertin | 100 | Cash | | 100 | 100 | |
| Lisette & Guetty Thelusma | 200 | Cash to Matante Marie | | 200 | 200 | Margael |
| Bon Samaritain | 100 | Cash to Matante Marie | | 100 | 100 | |
| Huguette Antoine | 100 | Zelle to Matante Marie | | 100 | | Margael |
| Groupe des Dames | 550 | Cash to Matante Marie | | 550 | 550 | Margael |
| Miss Camille | 200 | Cash | | 200 | 200 | Margael |
| Ginette & Denise Badou | 500 | Cash | | 500 | 500 | Margael |
| Marie Lourdes Joseph | 300 | Check | | 300 | 300 | Margael |
| Flambert Coussseillant | 200 | Cash | | 200 | 200 | Margael |
| Tom Jacquet | 360 | Cash | | 360 | 360 | Margael |
| Rose Adrien | 1000 | Cash | | 1000 | 1000 | |
| Rosemene Gedeon | | | | | | |
| Ashton Chevalier | | | | | | |
| Stephanie Sejour | | | | | | |
| Caleb Pierre | | | | | | Margael |
| Total | | | | 10426 | 10728 | |
| | 12978 | | | | | |

*(Exhibit G showing homepage message from Chase Mobile when the plaintiff attempted to log into his Chase Mobile account)*



*(Exhibit H showing Google Maps tracking of plaintiff visit to Fulton Street and Myrtle Ave Chase Branches on April 10th and 11th, 2023 and 1100 Market on April 5th and 14th)*



Case ID: 250402123
Control No.: 25055176

*(Exhibit I showing the various calls made between the plaintiff and Chase on Friday April 14th)*



*(Exhibit J showing the taser injuries sustained by the plaintiff)*



*(Exhibit K showing the Emergency Room reports from Albert Einstein Medical Center and Penn Medicine of plaintiffs injuries )*

Case ID: 250402123
Control No.: 25055176




## Einstein
### HEALTHCARE NETWORK
### More than Medicine

**Patient Name**
ST JUSTE, PHILIPPE
**Date of Birth**
5/28/1989
**Visit Location Information**
**Albert Einstein Medical Center**
**5501 Old York Road**
**Philadelphia, PA, 19141**
**(215) 456-7890**
**Fax: (215) 455-1933**

MRN: 100515147
FIN: 44470577
Location: Albert Einstein Medical Center
Registration Date and
Time: 04/18/2023 19:45 EDT
Primary Care Physician:
  None, None

Einstein Healthcare Network thanks you for trusting us with your healthcare needs. The following includes patient education materials and information regarding your injury/illness. Please take these Discharge Instructions and all of your medications to your follow-up appointments.

# Patient Discharge Instructions

**ED Attending Provider:**
**ED Resident/NP/PA:**
MacArthur, Patrick
**Primary Care Provider:**
None, None
**Your Diagnosis**
Cough

Back strain

Taser injury

Back injury

Your exam and treatment during this visit were done for an urgent reason. This visit does not replace complete and regular care from your family doctor. Please return if needed. It is important to also follow-up with your family doctor or clinic when possible. We are here to help you during times of emergency need.

**Discharge Vitals**

**Temperature** (Oral)
36.6 °C

**Heart Rate** (Monitored)
76

**Respiratory Rate**
18

**Blood Pressure**
126/69

**SpO2**
96%

**Weight**
75 kg

**Please Call to Schedule these Appointments**

| With | When | Contact Information |
|---|---|---|
| Healthcare Center #10 21 5-685-0603 | | |
| Additional Instructions: | | |
| None, None | Within 3 to 5 days | |
| Additional Instructions: Call for followup appointment | | |

Case ID: 250402123
Control No.: 25055176

JUSTE, PHILIPPE - 100515147 -
FIN: 44470577

ED Patient Discharge Instructions



# Allergies and Medications

### Allergies
No Known Medication Allergies

These are the lists of medications that you should **TAKE** or **STOP** after you leave the hospital.
If you have questions about these medication instructions or intend to take other medications that you have at home, please
discuss this with your physician.

### Medications

| | What | How Much | When | Instructions | Next Dose |
|---|---|---|---|---|---|
| New | bacitracin topical (bacitracin zinc 500 units/ g topical ointment) | 1 Application Topical | Twice a day | Duration: 7 Days Printed Prescription | |
| New | ibuprofen (ibuprofen 600 mg oral tablet) | 1 Tabs Oral | Every 6 hours | Duration: 5 Days Printed Prescription | |
| New | lidocaine topical (lidocaine 5% topical film) | 1 Patches Topical | At bedtime | Duration: 7 Days remove patches after 12 hours  Printed Prescription | |

### Safe Medication Use Starts with YOU!

- Keep an up-to-date list of all the medications you take and carry it with you.
- Make sure your list includes both prescription and over-the-counter medications or supplements with how much you take and when you take them.
- Update your list whenever changes are made to your medications.
- Share your medication list every time you see your doctor, nurse, pharmacist or other healthcare provider.

# What To Do Next

### Instructions from your Doctor
You were seen in the ED for evaluation of your taser injury to your skin and the muscles underneath, you also had a cough.  We tested you for flu and COVID and you should get those results tomorrow, in the meantime your skin looks uninfected and your pain is most likely due to muscle strain caused by the electricity from the taser, this should get better over the next week and in the meantime take ibuprofen, stretch the area, and apply heat as needed.  Please make appointment to follow-up with your primary care doctor in the next few days to a week for reevaluation of your injuries, and if you start developing

Printed on: 04/18/2023 22:06 EDT

Case ID: 250402123
Control No.: 25055176

OSTE, PHILIPPE - 100515147 -
44470577

ED Patient Discharge Instructions



fevers, difficulty breathing, significant darkening of your urine, or any other concerning symptoms, please come back into the ED for evaluation. Otherwise please follow-up with your primary care doctor, take the medications as prescribed, rest and recover.

## Tests This Visit

All **electrocardiogram (EKG)** and radiology studies done in the Emergency Department are reviewed by a heart doctor (cardiologist) and/or x-ray doctor (radiologist). If there is new information after the review, you or your doctor will be contacted by phone or letter.

**HIV & Hepatitis C Screening Is Important for Everyone**. If you were tested for HIV or Hepatitis C during your visit today, results will be available within a few business days. If the results are positive, you will be contacted by staff with the result, information, and referral for treatment. Both conditions are easily and effectively treated at Einstein.

If you were not tested and would like to be tested, contact your primary care physician.

To inquire about HIV test results, you may leave a message at the confidential Patient Test Result line at 215-456-7568. To inquire about Hepatitis C test results, you may leave a message at confidential Hepatitis C line at 215-456-5729. You will receive a call back within 24 hours or on the next business day. Results will not be given out or left as a voice mail message.

## Immunizations This Visit

## Your Medical History

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123
Control No.: 25055176

# AFTER VISIT SUMMARY

**Penn Medicine**

**Philippe St Juste** DoB: 5/28/1989    📅 4/22/2023  📍 PAH Emergency Department 215-829-3358

---

## Instructions

Your personalized instructions can be found at the end of this document.

 **Read the attached information**
   1. Cough (English)
   2. Back: Strain (English)

**Call Wood Clinic Resident**
Specialty: Family Medicine

---

## Today's Visit

Your Treatment team today included: Jenice Leticia Baker, MD

**Diagnoses**
- Cough
- Low back sprain

**Imaging Tests**
XR CHEST 2 VIEWS

**Medications Given**
ibuprofen Last given at 11:19 AM

 Blood Pressure
136/80

Temperature (Oral)
98.2 °F

 Pulse
78

Respiration.
16

Oxygen Saturation
100%

---

## What's Next

You currently have no upcoming appointments scheduled.

## Assistance for future appointments

For assistance with scheduling a follow-up appointment with a Penn Medicine physician, please call 215-829-3383 and indicate that you were seen in the Emergency Department.

---

Case ID: 250402123
Control No.: 25055176

*(Exhibit L showing the branch manager description of the plaintiff)*

**Philadelphia Police Department**
**Central Detective Division**
**Investigation Interview Record**

| Case No. 23- | |
| --- | --- |
| Interviewer | |
| **Det McCaffery # 980** | |

| Name: **Mecca Abdullah** | | Age: **32** | Race: **Black** | Sex: **Female** | Dob **11/16/1990** |
| --- | --- | --- | --- | --- | --- |
| Address: **1100 Market St** | City: **Philadelphia** | State: **PA** | Zip Code **19121** | Phone Number: **215 430 5769** | |
| Name of Employer/School **Chase Bank** | | Soc. Sec. No: | | Cellular Phone Number: | |
| Address of Employer/School | | Department: | | Work Phone Number: | |
| Name of Closest Relative: | | Address of Relative: | | Phone Number: | |
| Place of Interview: **Central Detectives** | | Date of Interview: **4/14/2023** | | Time of Interview: **6:30 pm** | |

We are questioning you concerning:
**A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm**

Q. I am Detective McCaffery. Can you tell me what happened today?

A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.

Q. Do you know the clients name?

A. Phillippe St Juste.

Q. Can you describe the male?

A. He was a tall black male, slender. About 6'3". He had an accent.

Q. How many times was he asked to leave?

A. He was asked to leave about 10 times over the course of an hour.

Q. What is your position at the bank?

A. I am the branch manager.

Q. Is there anything else that you would like to add to this interview?

A. No

(*Exhibit N showing the plaintiff physical therapy report*)

Case ID: 250402123
Control No.: 25055176

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Initial Evaluation

| | | | |
|---|---|---|---|
| **Patient Name:** | Phillippe Saint Juste | **Date Seen:** | 4/28/2023 |
| **Diagnosis:** | S23.3XXA Sprain of ligaments of thoracic spine, initial encounter | **Referring Physician:** | Jerry Uduevbo |
| | M54.6 Pain in thoracic spine | | |
| | M25.60 Stiffness of unspecified joint, not elsewhere classified | | |
| | M62.81 Muscle weakness (generalized) | | |

## Subjective

### Current Condition

**Details**

**Chief Complaint:** The patient is a 33 year old who recently was attacked from his upper back after a police altercation. Patient reported feeling increased upper back pain and discomfort post incident for the past 2 weeks. Patient presents with thoracolumbar joint pain, stiffness, muscle weakness, and limited with all functional ADLs and IADLs.
**Onset Date:** Last 2 weeks
**Type of Injury:** New Injury
**Occupation:** Educator/Mentor

#### Treatments

| Type | Start Date | End Date | Outcome |
|---|---|---|---|
| Primary Physician | 4/26/2023 | 4/26/2023 | No Change |

### Pain History

**Pain Area**

| Area | Current | Best | Worst |
|---|---|---|---|
| Thoracic Spine | 7/10 | 6/10 | 8/10 |

**Pain Description**

| Area | Activity/Time | Symptoms | Descriptions |
|---|---|---|---|
| Thoracic Spine | Bending, Lifting, Reaching, Working, Sitting | Increased | Deep, Burning, Aching, Radiates, Stiff |

### Functional Status

| Functional Activity | Status | Level |
|---|---|---|
| Working | Moderate Limitation | Current |
| Recreational Exercise | Moderate Limitation | Current |
| Sitting | Moderate Limitation | Current |
| Bending | Moderate Limitation | Current |
| Reaching | Moderate Limitation | Current |
| Dressing | Moderate Limitation | Current |
| Bathing | Moderate Limitation | Current |

**Currently Working:** Yes

Case ID: 23042123
Control No.: 25055176

**Medical History**

**Surgery**

None per patient

**Condition**

None per patient

Allergies NKDA

| Medication | Classification | Status |
|---|---|---|
| Ibuprofen | Pain Reliever | Currently Taking |
| Lidocaine | Pain Reliever | Currently Taking |
| Bacitracin Zinc | Pain Reliever | Currently Taking |

Patient is healthy and denies and surgical history.

**Social and Family History**

**Social History/Living Environment:** The patient lives alone in his apartment building on the 5th floor with elevator accesibility with no steps to enter.

Non smoker

Non alcoholic

**Family History:** None contributory to the patients present complaints.

**Outcomes**

| Test | Score | Note |
|---|---|---|
| Oswestry | 24 | 48% |

# Objective

**Observation**

Patient has forward head position with forward shoulder positioning.

**Vital Signs**

| Vital Sign | Finding |
|---|---|
| Blood Pressure | 121/82 |
| Heart Rate | 64 bpm |
| Height | 6.2 ft |
| Weight | 155 lbs. |
| BMI | 19.8 |

**T-Spine**

**T-Spine - Active Range Of Motion**

| Motion | AROM | Gross Strength |
|---|---|---|
| Flexion | 45% Percent | 3-/5 |
| Extension | 45% Percent | 3-/5 |
| Right Rotation | 45% Percent | 3-/5 |
| Left Rotation | 45% Percent | 3-/5 |

**T-Spine - Passive Range Of Motion**

| Measurement | PROM |
|---|---|
| Rotation Left | 50% Percent |
| Rotation Right | 50% Percent |
| Extension | 50% Percent |
| Flexion | 50% Percent |

Case ID: 250402123
Control No.: 25055176

**T-Spine - Muscle Testing**

| Measurement | Right Strength | Right Flexibility | Left Strength | Left Flexibility |
|---|---|---|---|---|
| Latissimus Dorsi | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Rhomboids | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Serratus Anterior | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Thoracic Paraspinals | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |

**T-Spine - Special Tests**

| Special Test | Right | Left |
|---|---|---|
| Rib Springing | Negative | Positive with Pain |

**T-Spine - Joint Mobility**

| Joint | Force Direction | Grade | End-Feel | Symptoms |
|---|---|---|---|---|
| Upper Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Middle Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Lower Thoracic | P/A Central | II | Muscle Spasm | Decreased |

**Palpation**

Tenderness during palpation of Ribs. Tenderness during palpation of Sternum. Tenderness during palpation of Costal Cartilage. Tenderness during palpation of Clavicle. Tenderness during palpation of Abdomen. Tenderness during palpation of Scapula.

## Assessment

**Descriptions**

Patient presents with signs and symptoms consistent with a thoracic muscle sprain.
Patient understood injury and was involved in the creation of goals.

**Problem List**

Problems

Pain limits functional activities
Decreased ROM preventing full functional activity
Decreased strength limiting functional activities
Decrease participation in recreational activities
Pain decreasing functional mobility
Marked muscle pain and tightness in thoracic spine.

## Plan

**Goals**

| Length | Status | Goal |
|---|---|---|
| Short Term | Not Met | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | Not Met | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | Not Met | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | Not Met | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | Not Met | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | Not Met | Improve joint mobility by 50% in 4 weeks. |

Full Initial Evaluation With Billing (4/28/2023) - Saint Juste , Phillippe

Case ID: 250402123
Control No.: 25055176

**Treatment Plan**

**Recommend Physical Therapy 2 time(s) a week for 8 week(s), with treatments to consist of:** Body Mechanic Training (97110) - Proper positioning and lifting strategies, Core Stabilization (97110) - Increase strength and function of spinal stabilization muscles, Flexibility (97110) - active and passive patient stretching, Neuromuscular Re-ed - 97112: Improve neurologic control of muscle function, ROM (97110) - Passive or active activities to increase joint range of motion, Therapeutic Exercise - 97110: Improve muscle strength, ROM, flexibility, and muscle function, Cryotherapy- 97010: Application of cold to decrease local swelling and decrease pain, Heat- 97010: Application of heat to increase local circulation and decrease pain, IFC E-Stim- 97014: Application of E-Stim to modulate pain , Ultrasound- 97035: increase local circulation, improve tissue healing time, and modulate pain, Manual Stretching- 97140: passive or active stretching to improve muscle length and function, Soft Tissue Mobs- 97140: increase ROM tissue length, joint mechanics, and modulate pain, Spine Mobilization- 97140: increase ROM, improve joint mechanics, and modulate pain.

**Initial Treatment**

- Patient Education - Initial Evaluation: Pt. understood injury and its management. - 30 Total Minutes
- T-Spine - Cat/Camel Stretch: 5 times - 2 Total Minutes
- T-Spine - Back Extension: 2 x 10 - 2 Total Minutes
- T-Spine - Prone Scapular Retraction: 2 x 10 - 2 Total Minutes
- T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
- Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
- T-Spine - thoracic rotation: 2 x 10 - 2 Total Minutes
- T-Spine - open books: 2 x 10 - 2 Total Minutes

**MD Communication:** Initial evaluation documented and communicated to the referring physician for accountability of care.



X _____

Adewale S Adenlola, DPT License #: 018676

(Document electronically signed by TheraOffice Documentation)
4/28/2023

**To Be Completed By Physician:**

____ I have no revisions to this plan of care        Prognosis: ____ Excellent ____ Good ____ Fair ____ Poor
____ Revise plan of care as follows
____ Discharge Patient                               Continue _____ times per _____ for _____ weeks / months

Physician Signature: _____ Date:_____
n signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 25002123
Control No.: 25055176

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Daily Note

| | | | |
|---|---|---|---|
| **Patient Name:** | Phillippe St Juste | **Date Seen:** | 6/22/2023 |
| **Diagnosis:** | S23.3X Sprain of ligaments of thoracic | **Referring Physician:** | Jerry Uduevbo |
| | XA      spine, initial encounter | | |
| | M54.6 Pain in thoracic spine | | |
| | M25.60 Stiffness of unspecified joint, | | |
| | not elsewhere classified | | |
| | M62.81 Muscle weakness (generalized | | |
| **Time In:** | 4:00 PM | **Time Out:** | 5:00 PM |

## Goals

| Length | Status | Goal |
|---|---|---|
| Short Term | In Progress | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | In Progress | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | In Progress | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | In Progress | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | In Progress | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | In Progress | Improve joint mobility by 50% in 4 weeks. |

## Subjective

Patient reports a decreased in symptoms since last visit.

## Objective

- T-Spine - Cat/Camel Stretch: 5 times - 3 Total Minutes
- T-Spine - Back Extension: 2 x 10 - 3 Total Minutes
- T-Spine - Prone Scapular Retraction: 2 x 10 - 3 Total Minutes
- T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
- Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
- T-Spine - thoracic rotation: 2 x 10 - 3 Total Minutes
- T-Spine - open books: 2 x 10 - 3 Total Minutes
- Modality - IFC E-Stim: 40 mA - min x 15' - 15 Total Minutes
- Manual - Stretching: 10 Minutes - 10 Total Minutes

## Assessment

Tolerated with decreased symptoms and increased function

## Plan

Continue to progress per plan of care. Increase activity and exercise intensity next session.

Case ID: 25002123
Control No.: 25055176



Adewale S Adeniola, DPT License #: 018676

**To Be Completed By Physician:**
_____ I have no revisions to this plan of care
_____ Revise plan of care as follows
_____ Discharge Patient

Prognosis: _____ Excellent _____ Good _____ Fair _____ Poor

Continue _____ times per _____ for _____ weeks / months

Physician Signature: _____ Date: _____

In signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 25040123
Control No.: 25055176

(*Exhibit M showing plaintiff arrest documentation*)

Case ID: 250402123
Control No.: 25055176



**PHILADELPHIA MUNICIPAL COURT**

NON-TRAFFIC STATUTORY SUMMARY OFFENSES

# CITATION

2306016505

PA SID: **53870481**   **PID:** 1237427

DC#: **23-06-016505-01**   PSA: **2**   Crime Code: **90J**   Desc: **Tresspass of Real Property**

COMMONWEALTH VS.
Defendant: **ST JUSTE, PHILLIPPE**

**231 Spencer ST.**

**Brooklyn, NY 11234**   PID: **1237427**

Sex: **Male**   DOB: **5/28/1989**   Age: **33**   Race: **Black**

Arrest Date / Time: **4/14/23 6:30 PM**

Inside/Outside: **I**

Loc. **1100 Market ST.**
    **Philadelphia, PA 19107**

Docket #: **MC51-SU-0001113-2023**

| Complainant Name: | Charges: | OC Description | Grade | Count |
|---|---|---|---|---|
| **ABDULLAH, MECCA** | CC3503B | DEFIANT TRESPASS | S | 001 |

**NATURE OF THE OFFENSE**

On (day, date and time) **Friday 04/14/2023 05:45 PM** at (Incident Loc.) **1100 MARKET ST.**

in the County of Philadelphia, the accused committed the following acts: (description of acts and specification of statute and sector number thereof)

**ON 4/14/23 AT APPROXIMATELY 5:45 PM WHILE WORKING AN OVERTIME DETAIL AT TJ MAXX ON FOOT AS CALL SIGN CFB10 THE OFFICER WAS APPROACHED BY A FEMALE EMPLOYEE FROM CHASE BANK LOCATED AT 1100 MARKET ST WHO STATED THAT THEY WERE HAVING TROUBLE WITH A MALE REFUSING TO LEAVE THE BANK AFTER CLOSING HOURS. UPON ARRIVAL THE OFFICER MET WITH THE BRANCH MANAGER OF THE BANK WHO STATED THE DEFENDANT WANTED TO WITHDRAWAL HIS MONEY BUT DID NOT HAVE THE PROPER VERIFICATION. THE DEFENDANT WAS TOLD TO LEAVE APPROXIMATELY 10 TIMES OVER 30 MINUTES BY THE BANK MANAGER AND POLICE. WHILE ATTEMPTING TO ESCORT THE DEFENDANT OUT OF THE BANK HE FELL TO THE FLOOR AND HE CLENCHED HIS FIST REFUSING TO GET HAND CUFFED. WHILE THE DEFENDANT WAS IN THE SITTING POSITION HE REFUSED TO PUT HIS HANDS BEHIND HIS BACK. DEFENDANT WAS TAZED IN THE BACK TO COMPLY. THE MALE WAS THEN HANDCUFFED AND TRANSPORTED TO CENTRAL DETECTIVES FOR FURTHER INVESTIGATION.**

The facts set forth in this citation are true and correct to my personal knowledge or information and belief, and any false statements therein are made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904), relating to unsworn falsification to authorities.

| Officer Name | Payroll# | Badge | UNIT | Platoon/Group | SCH. VAC. |
|---|---|---|---|---|---|
| CURTOSI JR ANTH | ▇▇▇ | 7001 | 4500 | 2 E | 4/17/2023 to 4/17/2023 |

_____
**Operations Room Supervisor's Signature**

_____
**Officer's Signature**

## YOU ARE REQUIRED BY LAW TO APPEAR ON THE FOLLOWING ARRAIGNMENT OR TRIAL DATE

5/1/2023           404: 1301 Filbert Street, Stout Ctr  2:00 p.m.
_____           _____
(Date)               (Address)

At such time and place you may be found "Guilty", "Not Guilty" or "Enroll in the Summary Diversion Program".

**FAILURE TO APPEAR SHALL CONSTITUTE CONSENT TO A TRIAL IN YOUR ABSENCE. IF YOU ARE FOUND GUILTY AT TRIAL, YOU SHALL HAVE THE RIGHT TO FILE AN APPEAL WITHIN 30 DAYS FOR A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS.**

## JUVENILES MUST APPEAR WITH A PARENT OR LEGAL GUARDIAN AT THE REFERENCED COURT HEARING. FAILURE TO DO SO MAY RESULT IN THE ISSUANCE OF A BENCH WARRANT.

_____
**Defendant's Signature**

_____
**Parent's (Guardian's) Signature**

NOTICE TO DEFENDANT:   The defendant must provide written notice to the Court of any change of address within 48 hours of the date of change.

| | |
|---|---|
| ☐ Guilty   ☐ Not Guilty   ☐ Discharged<br>☐ Discharged L.O.P.   ☐ Withdrawn | Fine $ _____<br>Cost $ _____ |
| **Plea:** ☐ Guilty  ☐ Not Guilty | VCF $ _____ |
| _____<br>(ADA Signature) | DAF $ _____<br>SAF $ _____ |
| I voluntarily and understandingly plead guilty and waive my right to counsel. | **TOTAL $** _____ |

Comm. Service Hrs:_____
Status Date _____
Restitution _____
Status Date _____

_____
(Defendant's Signature)

Pay By _____   _____ Days in County Prison

♿ The First Judicial District complies with the American with Disabilities Act. If you have a disability and require reasonable accommodations, please call 215-683-7272.

**Judge:** _____
(Given Under My Hand and Seal)   (Date)

Case ID: 230402123
Control No.: 25055176

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC | D.C. No. | | SECT. | DIST. | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|---|

CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN

LOCATION OF OCCURRENCE

☐ IN   ☐ OUT   TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |

COMPLAINANT | AGE | RACE | SEX | PHONE (HOME)

ADDRESS

PHONE (BUSINESS)

FOUNDED  ☐ Yes ☐ No   REPORT TO FOLLOW  ☐ Yes ☐ No ☐ Close Out   UNIT   CODE   INV. CONT NO. 3602

WITNESS ☐ Yes ☐ No   TRACEABLE PROP. ☐ Yes ☐ No   UNIQUE DESCRIPTION OF OFFENDER ☐ Yes ☐ No   OTHER EVIDENCE ☐ Yes ☐ No

DESCRIPTION OF INCIDENT *(Include Description of Crime Scene if Applicable)*

WITNESS | ADDRESS | PHONE NUMBER

OFFENDER INFORMATION

PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED ☐ Yes ☐ No | STOLEN VALUE $

DC NO.

| VEHICLE 1 – OWNER'S NAME | VEHICLE 2 – OWNER'S NAME |
| VEHICLE 1 – OPERATOR'S NAME | VEHICLE 2 – OPERATOR'S NAME |

WANTED/STOLEN MESSAGE SENT   General No.          Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY

REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO.

REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO.

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123
Control No.: 25055176



**Philadelphia Police Department**
**Central Detective Division**
**Investigation Interview Record**

| | | | | Case No. **23-** |
| --- | --- | --- | --- | --- |
| | | | | Interviewer: **Det McCaffery # 980** |

| Name: **Mecca Abdullah** | | | Age: **32** | Race: **Black** | Sex: **Female** | Dob: **11/16/1990** |
| --- | --- | --- | --- | --- | --- | --- |
| Address: **1100 Market St** | City: **Philadelphia** | State: **PA** | Zip Code **19121** | | Phone Number: **215 430 5769** | |
| Name of Employer/School **Chase Bank** | | Soc. Sec. No: | | | Cellular Phone Number: | |
| Address of Employer/School | | Department: | | | Work Phone Number: | |
| Name of Closest Relative: | | Address of Relative: | | | Phone Number: | |
| Place of Interview: **Central Detectives** | | Date of Interview: **4/14/2023** | | | Time of Interview: **6:30 pm** | |

We are questioning you concerning:
**A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm**

Q. I am Detective McCaffery. Can you tell me what happened today?
   A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.
Q. Do you know the clients name?
   A. Phillippe St Juste.
Q. Can you describe the male?
   A. He was a tall black male, slender. About 6`3". He had an accent.
Q. How many times was he asked to leave?
   A. He was asked to leave about 10 times over the course of an hour.
Q. What is your position at the bank?
   A. I am the branch manager.
   Q. Is there anything else that you would like to add to this interview?
   A. No

Signature: _____                    Date: 4/14/23

Philadelphia Police (75-483)

- 1 -

Case ID: 250402123
Control No.: 25055176

# Arrest Memo

District: 6    RPC # CB10    DC#22-06-016511 Sector: 2    Date:04/14/2023    Time Of Assignment: 5:47pm
Time Of Occurrence: 3:30pm    Location Of Occurrence: 1100 Market St.t    In / Out: IN
Location of Arrest: 1100 Market Stt    Time Of Arrest: 6:30PM    Type of Assignment: Pedestrian

Arresting Officer: Curtosi   Badge 7001    District: Center City District
Squad/Group 5 Squad Vacation From 6/8/23 To 7/14/23    Pr. # 206105

Arresting Officer:        Badge:       District:
Squad/Group5 Squad  Vacation from        To        Pr. #

Complainant:Mecca Abdullah  Age:39 Race:B Sex: Female Address:1100 Market Stt  Phone#
Witness:        Address:        Phone#

Defendant: Philipe Emmanual  Age:    DOB:    Race  B  Sex: Male    Address:

Defendant:    Age:    DOB:    Race    Sex: Male    Address:

Defendant:    Age:    DOB:    Race    Sex: Female    Address:

Property receipt #        Item:
Property receipt #        Item:
Property receipt #        Item:

## Details Of Arrest

On 4/14/23 I was working an overtime detail at TJ MAXX on foot as call sign CFB10 when a female employee from Chase Bank walked in stating that they were having trouble with a male refusing to leave the bank after closing hours. Upon arrival I met with the Branch manager of the bank Mecca Abdullah she stated the male wanted to withdrawl his money but did not have the proper verification. The male was told to leave several times by the bank manager and police. I was attempting to escort the male out of the bank when he fell to the floor and he clenched his fist refusing to get hand cuffed. While the male was in the sitting position and refused to put his hands behind his back. Police Officer Leonard #4067 tazed the male in the back to comply. The male was then handcuffed and transported to Central Detectives for further investigation.

Case ID: 250402123
Control No.: 25055176

# POLICE
## PRISONER FLOW CHART

| | |
|---|---|
| DC # | 23-06-016565 |
| CBN # | |
| PPN # | |
| Time of Arrest | 5150  ☐ AM ☑ PM |
| Reason for Arrest | Tresspassing |

## Detainee Information

| Name | | DOB | Sex | Identifies as |
|---|---|---|---|---|
| Last: St. Juste    First: Philippe | | 5-28-39 | Male ☑ / Female ☐ | (Gender Identity) Male |

## Arresting Officer / s

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/o | Gales Curtosi | 7001 / 7000 | ▓▓▓ | CFB10 | CCD | |
| | | | | | | |
| | | | | | | |

| **Police Transported Subject** ☑ Yes ☐ No  Vehicle # 601 | **Subject Searched PRIOR to Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Subject Secured with Restraints** ☐ Back ☐ Front ☐ Legs  Badge # |
|---|---|---|
| **Vehicle Searched PRIOR to Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Subject Seat Belted in** ☑ Yes ☐ No  Badge # 5114 | **Subject Searched AFTER to Police Transport** ☑ Yes ☐ No  Badge # 5114 |
| **Vehicle Searched AFTER Police Transport** ☑ Yes ☐ No  Badge # 5114 | **Weapons Secured PRIOR to Entry into DBC/TH** ☐ Yes ☐ No | **Security Concerns Conveyed to DBC/TH** ☐ Yes ☐ No  Badge # |

| Security Concerns: | ☐ Violent  ☐ Suicidal  ☐ Medical  ☐ Disabled | ☐ Escape Risk  ☐ Aggressive  ☐ Wheelchair required (PDAV Used) | ☐ Intoxicated  ☐ Other: | ☐ Deaf / Hearing Impaired |
|---|---|---|---|---|

Identifiable Attributes:  ☐ Trama  ☐ Bruises  ☐ Scars  ☐ Tattoos  ☐ Other  ☐ N/A Describe:

## Transportation Officer / If Different from Arresting

Temporary Holding (TH) will be Checked BEFORE and AFTER use:  ☐ Yes ☐ No

Transported to PDU for:  Diabetic ☐   DUI ☐

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/o | Corler | 5114 | ▓▓▓ | 601 | 6th | |
| P/o | Marrigan | 4413 | ▓▓▓ | 601 | 6th | |
| | | | | | | |
| | | | | | | |

If Detainee is Transported to the Hospital, list the Hospital's Name and Reason for Visit and Hospital Case DC #:

Additional Detainee Information:

75-582  (Rev. 4/17)

Case ID: 250402123
Control No.: 25055176

# BIOGRAPHICAL INFORMATION REPORT

☑ **ARREST**   ☐ **INVESTIGATION**   ☐ **OTHER**

*(CHECK BLOCKS WHERE DOCUMENTATION EXISTS)*

**PHILADELPHIA POLICE DEPARTMENT**

| DATE 4-14-23 | TIME 5:50p | LOCATION OF INITIAL CONTACT 1100 Market St | DISTRICT 6th | D.C. NO 23-06-016505 |
|---|---|---|---|---|

| NAME LAST St. Juste | FIRST Philippe | MIDDLE | D.O.B. 5-28-89 | SEX Male | RACE Blk |
|---|---|---|---|---|---|

| HEIGHT 5'10 | WEIGHT 170 | HAIR COLOR Blk | EYE COLOR BRN | COMPLEXION Med | BUILD Thin | GLASSES (YES/NO) No | FACIAL HAIR |
|---|---|---|---|---|---|---|---|

| NICKNAME Unk | ALIASES Unk | MARITAL STATUS |
|---|---|---|

| RESIDENCE STREET NUMBER/NAME 231 Spencer St Apt 3 | CITY/STATE (OTHER THAN PHILA.) Brooklyn NY | DIST. |
|---|---|---|

| TYPE OF RESIDENCE | RESIDES WITH | DRIVER NUMBER 306008733 | STATE NY |
|---|---|---|---|

| SOCIAL SECURITY NUMBER | OCCUPATION Unk Unk | EMPLOYER/ADDRESS |
|---|---|---|

| PLACE OF BIRTH/CITY, STATE | GROUP AFFILIATION | ETHNIC BACKGROUND |
|---|---|---|

| SCARS, TATTOOS, DEFORMITIES | CLOTHING DESCRIPTION Blue Shirt w/ White Collar Black Pants Black Sneakers | JEWELRY WORK |
|---|---|---|

## VEHICLE INFORMATION

| | YEAR | MAKE | MODEL | COLOR | STATE | TAG | VIN |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |

| | OWNER-LAST NAME, FIRST | ADDRESS | CITY | STATE |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |

| MODUS OPERANDI *(METHODS, TRAITS, ETC.)* | AREAS FREQUENTED |
|---|---|
| | |

5-229 (Rev 3-92)

Case ID: 250402123
Control No.: 25055176

## RELATIVES

| | | LAST | | MAIDEN | FIRST | ADDRESS | CITY/STATE |
|---|---|---|---|---|---|---|---|
| SPOUSE | | | | | | | |
| MOTHER | | LAST | | MAIDEN | FIRST | ADDRESS | CITY/STATE |
| FATHER | | LAST | | FIRST | | ADDRESS | CITY/STATE |
| BROTHER SISTER | | | | | | | |
| BROTHER SISTER | | | | | | | |
| BROTHER SISTER | | | | | | | |

## ASSOCIATES

| LAST NAME | FIRST NAME | ADDRESS | CITY/STATE | PPN |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## EDUCATION

| SCHOOL | ADDRESS | CITY/STATE | YEARS |
|---|---|---|---|
| | | | |
| | | | |

## CRIMINAL RECORD INFORMATION

| PPN | FBI NUMBER | PA NUMBER | OTHER NUMBER *(STATE, IMMIGRATION)* |
|---|---|---|---|
| PAROLE NUMBER | PAROLE OFFICER | | TELEPHONE NUMBER(S) |
| PROBATION NUMBER | PROBATION OFFICER | | TELEPHONE NUMBER (S) |

CHIEF CRIMINAL ACTIVITY

| INITIATING OFFICER, LAST NAME | BADGE | RANK | DISTRICT/UNIT/PLATOON |
|---|---|---|---|
| ASSIGNED INVESTIGATION | BADGE | RANK | DISTRICT/UNIT PLATOON |

## ADDITIONAL REMARKS

75-229 (Reverse) (Rev. 3/92)

Case ID: 250402123
Control No.: 25055176



Case ID: 250402123
Control No.: 25055176

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR 23 | DIST./OCC. 6 | D.C. No. 16505 | SECT. | DIST. 6 | VEH. NO. F730 | REPORT DATE 4/14/23 |
|---|---|---|---|---|---|---|

| CRIME OR INCIDENT CLASSIFICATION Trespassing (Defiant) | CODE 90J | TIME OUT 547 (P) | A P | TIME IN | A P |

| LOCATION OF OCCURRENCE 1100 Market St | ☑ IN ☐ OUT | TYPE OF PREM. 034 |

| DATE OF OCCUR. 4/14/23 | DAY CODE S | TIME OF OCCUR. 330 A (P) | NATURE OF INJURY ~ |

| COMPLAINANT Chase Bank | AGE | RACE | SEX | PHONE (HOME) 415-430-5759 |

| ADDRESS 1100 Market St | PHONE (BUSINESS) |

| FOUNDED ☐ Yes ☐ No | REPORT TO FOLLOW ☐ Yes ☐ No ☐ Close Out | UNIT | CODE INV. CONT NO. |

| WITNESS ☐ Yes ☐ No | TRACEABLE PROP. ☐ Yes ☐ No | UNIQUE DESCRIPTION OF OFFENDER ☐ Yes ☐ No | OTHER EVIDENCE ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT** *(Include Description of Crime Scene if Applicable)*

P - Def. int Tress Passing
Mecca Abdullah - Branch
Manager for Above States below
male Refused to leave Bank
After closing. Below male Taken
into custody for Defiant
Tresspassing - Trans to CDD.

| WITNESS Off. told by Police & Comp to leave multiple times. | ADDRESS | PHONE NUMBER |

**OFFENDER INFORMATION**
Ofc Lee Emmanuel 5/28/84
P/o Learned 4067 Def Stunned male before Custody

| PROPERTY DESCRIPTION *(Include Make, Model, Color and Serial No. Where Applicable)* | PROP. CODE | INSURED ☐ Yes ☐ No | STOLEN VALUE $ |

Passport # 668819434
Bank closed At 5:00 p
male was told to leave Several
Times by Bank Employees and Police.

| VEHICLE 1 —OWNER'S NAME | VEHICLE 2 —OWNER'S NAME |
| VEHICLE 1 —OPERATOR'S NAME | VEHICLE 2 —OPERATOR'S NAME |

| WANTED/STOLEN MESSAGE SENT General No.        Date | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |

| REPORT PREPARED BY Enforce | NO. 7001 | DIST./UNIT C6 | TOTAL PAGES | PAGE NO. 1 |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123
Control No.: 25055176

Exhibit II

Case ID: 250402123
Control No.: 25055176



perezmorris.com

*GOOD PEOPLE, DOING GREAT LEGAL*
*WORK, EXCEPTIONALLY WELL*

**T. Justin Chapman**
**Attorney at Law**
Four Penn Center
1600 John F. Kennedy Blvd.
Suite 1050
Philadelphia, PA 19103
(D) 215-692-1236
(O) 215-692-1234
(F) 267-764-1152
jchapman@perez-morris.com
*Licensed in Pennsylvania & New Jersey*

May 24, 2025

Philippe E. St. Juste
1227 Magee Ave.
Philadelphia, PA 19111

    Re:  Philippe E. St. Juste v. JP Morgan Chase Bank
        PCCP, April Term, 2025, No. 2123

Dear Mr. St. Juste,

Enclosed please find defendant JPMorgan Chase Bank, N.A.'s Preliminary Objections to the complaint you filed.  You have 20 days, or until June 11, 2025, to file a response.

If you would like to discuss the matter, please feel free to contact me.

Sincerely,

T. Justin Chapman

TJC/ak
Enclosure

Case ID: 250402123
Control No.: 25052178



Filed and Attested by the
Office of Judicial Records
23 ... am

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| v. | : | |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## ORDER

**AND NOW**, on this _____ day of _____, 2025, upon

consideration of the Preliminary Objections of Defendant JPMorgan Chase Bank, N.A. to

Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that

Plaintiff's Complaint is **dismissed without prejudice**.

Plaintiff may file an Amended Complaint within twenty (20) days of the date of this Order

that complies with the Pennsylvania Rules of Civil Procedure.

If Plaintiff fails to file an Amended Complaint within twenty (20) days of the date of this

Order this action against JPMorgan Chase Bank, N.A. is **dismissed with prejudice**.


**BY THE COURT:**


_____ J.

Case ID: 250402123
Control No.: 25055176

**NOTICE TO PLEAD**

To:    Plaintiff
You are hereby notified to file a written response to the within Preliminary Objections within twenty (20) days of service hereof or a judgment may be entered against you.

_____
**Attorneys for Defendant JPMorgan Chase Bank, N.A.**

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

**PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A.
TO PLAINTIFF'S COMPLAINT**

Defendant, JPMorgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's Complaint, and in support thereof, avers as follows:

**I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT**

1.    Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16, 2025. A true and correct copy of the Complaint is attached as Exhibit "A."

1

2.    Although Plaintiff filed an affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint was filed), Chase was not actually served until April 21, 2025 when it received the Complaint via certified mail. See Exhibit "B," shipping label and USPS tracking confirmation.

3.    The Complaint does not contain any counts or otherwise expressly set forth any specific cause of action for relief. See Exhibit "A."

4.    The Civil Cover Sheet indicates it is a "Bad Faith" claim, but does not allege facts to support any cause of action for bad faith. See id. at Civil Cover Sheet.

5.    The last paragraph of the Complaint asserts "defendant breached the contract," but no contract is identified or attached to the Complaint. See id. ¶ 11.

6.    Although the Complaint alleges the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. See id.

7.    Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. See id.

8.    Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

9.    The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. See id. ¶¶ 4-10.

10.    Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. See id. ¶ 4.

2



11.     Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. See id.

12.     He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

13.     On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

14.     On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6.

15.     During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

16.     Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

17.     On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. See id. ¶ 8.

18.     During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. See id.

19.     Plaintiff did not accept this explanation and was eventually asked to leave. See id.

20.     Plaintiff refused to leave and the police arrived and removed him from the branch. See id.

21.     Plaintiff alleges he was tased by police and suffered injuries as a result. See id. ¶¶ 8-10.

3


Case ID: 250402123
Control No.: 25055176

22.    Plaintiff further claims he was charged with trespassing. See id. ¶¶ 7-8.

23.    Plaintiff seeks $10,428,000.00, but does not specify any financial injury.  The only physical injuries alleged were caused by police. See generally id.

## II.    ARGUMENT

### A. Legal Standard

24.    Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds"…(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer);…(6)  pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P 1028(a).

25.    In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).

26.    The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

27.    The Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

### B. Motion to Dismiss for Insufficient Specificity

28.    Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached.

Case ID: 250402123
Control No.: 23055176

29.    In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form." Pa. R.C.P. 1019(a).

30.    Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." Miketic v. Baron, 675 A.2d 324, 331 (Pa. Super. 1996).

31.    To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). See also In re: Barnes Found., 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based'") (alterations in original).

32.    The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense.  Indeed, the Complaint does not even identify the year the events took place.

33.    As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations.

34.    Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### C. Motion to Dismiss for Failure to State a Claim

35.    The Complaint is also legally insufficient and should be dismissed pursuant to Pa.

5

Case ID: 250402123
Control No.: 25055176

R.C.P. 1028(a)(4).

36.    The question presented by a demurrer is whether "on the facts averred, the law says with certainty that no recovery is possible." Santiago, 418 Pa. Super. at 184.

### i.    "Bad Faith" Claim

37.    While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith.

38.    "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" Gorski v. Smith, 812 A.2d 683, 710 (Pa. Super 2002).

39.    Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371.  That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company.

40.    Moreover, the Complaint does not include any allegations about Chase's purported bad faith.  Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." Gorski, 812 A.2d at 710.

41.    Thus, Plaintiff has failed to state a claim for bad faith.

### ii.    Breach of Contract Claim

42.    Similarly, Plaintiff has failed to state a claim for breach of contract.

43.    Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, ¶ 11.

44.    "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty

6


Case ID: 250402123
Control No.: 25055176

imposed by the contract, and (3) resultant damages." <u>McShea v. City of Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2009).

45.     A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. <u>Id</u>.

46.     Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." <u>Id</u>.

47.     Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. <u>See</u> Exhibit A.

48.     The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., <u>¶¶ 8-10.</u>

49.     The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation

50.     Thus, Plaintiff had failed to state a claim for breach of contract.

       **iii.     Alleged Discrimination**

51.     To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient. <u>See</u> Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer.").

52.     Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963.

53.     Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as

7

race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2).

54.    The PHRA provides a mechanism for individuals to file complaints with the Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

55.    Here, Plaintiff did not file a complaint with the PHRC. See Exhibit A.

56.    Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

57.    Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination." Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted).

58.    "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient." Id., at 366.

59.    Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class.

60.    Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation.

61.    To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A


Case ID: 250402123
Control No.: 25055176

¶8.  This is insufficient under Pennsylvania law.

62.    Thus, Plaintiff has failed to state a claim for discrimination.

### iv.    Other Unidentified Causes of Action

63.    The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action.

64.    The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody.

65.    These allegations do not support a cause of action against Chase.  While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged with trespassing.1

66.    Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police.

**WHEREFORE,** Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### D. Motion to Dismiss for Failure to Conform to Rules

67.    Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f).

68.    The Complaint does not identify separate causes of action against the multiple defendants.

---

1 Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

9


Case ID: 250402123
Control No.: 25055176

69.    In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

70.    Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f).

71.    As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

72.    Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h).

73.    Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral.

74.    If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i).

75.    Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

**WHEREFORE,** Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

### E. Preliminary Objection for Alternative Dispute Resolution

76.    Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution.

77.    While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR.

78.    Chase's customary account deposit agreement contains an ADR provision.

Case ID: 250402123
Control No.: 25055176

79.   Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision.

80.   To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

**WHEREFORE**, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint.

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY: _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase, N.A.

Date: May 23, 2025

11

Case ID: 250402123
Control No.: 25055176

T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

### MEMORANDUM OF LAW IN SUPPORT OF
### PRELIMINARY OBJECTIONS OF DEFENDANT, JP MORGAN CHASE BANK, N.A.
### TO PLAINTIFF'S COMPLAINT

Defendant, JP Morgan Chase Bank, N.A. ("Chase") preliminarily objects to Plaintiff's

Complaint and submit this memorandum of law in support of their objections.

**I.    BACKGROUND AND ALLEGATIONS OF COMPLAINT**

Plaintiff, Philippe St. Juste, initiated this action by filing a Complaint on April 16, 2025.

A true and correct copy of the Complaint is attached as Exhibit "A." Although Plaintiff filed an

affidavit of service claiming that Chase was served on April 16, 2025 (the same day the Complaint

was filed), Chase was not actually served until April 21, 2025 when it received the Complaint via

certified mail. See Exhibit "B," shipping label and USPS tracking confirmation.

The Complaint does not contain any counts or otherwise expressly set forth any specific

cause of action for relief. See Exhibit "A." The Civil Cover Sheet indicates it is a "Bad Faith"

claim, but does not allege facts to support any cause of action for bad faith. See id. at Civil Cover

Sheet. The last paragraph of the Complaint asserts "defendant breached the contract," but no

contract is identified or attached to the Complaint. See id. ¶ 11. Although the Complaint alleges


Case ID: 250402123
Control No.: 25055176

the conduct of Chase was "discriminatory," it does not set forth any facts to support any recognized claim for discrimination against Plaintiff as a member of any protected class. See id. Therefore, the Complaint requires Defendants to guess as to what cause(s) of action is/are being asserted. See id. Regardless, the facts alleged do not support any cause of action under Pennsylvania law against Chase.

The Complaint alleges that between April 5th and 14th (the year is not provided) Plaintiff encountered difficulties opening an account for his mother's estate with his family at Chase, which culminated in him being taken into police custody for refusing to leave a Chase branch at Chase's request on April 14th. See id. ¶¶ 4-10. Plaintiff claims he chose to open the estate account with Chase because he had banked at Chase for 15 years. See id. ¶ 4. Plaintiff claims that he deposited $10,428 of cash and checks into the estate account on April 5th at a Chase branch in Philadelphia. See id. He further claims that Chase froze all of his accounts between April 7th and 14th. See id. ¶¶ 5-10.

On April 7th, Plaintiff visited a Chase branch on Fulton Street in Brooklyn, New York, to try and resolve the issue. See id. ¶ 5.

On April 11th, Plaintiff visited a different Chase branch on Myrtle Avenue in Brooklyn because the issue had not been corrected. See id. ¶ 6. During this April 11th visit to Chase, a Chase representative explained that it needed to authenticate the checks Plaintiff wanted to deposit in the estate account; Plaintiff then provided phone numbers for the issuers of two checks that needed to be authenticated. See id.

Chase was unable to authenticate the checks using the phone numbers provided. See id. ¶¶ 7-8.

2

Case ID: 250402123
Case ID: 250403523
Control No.: 25055176

On April 14th, Plaintiff visited another Chase branch (this time in Philadelphia) to try and fix the issue. *See id.* ¶ 8. During the April 14th visit, multiple Chase representatives explained that to fix the issue, Plaintiff needed to either provide another working phone number to contact the check issuers, or the check issuers had to come into a Chase branch to authenticate the checks. *See id.* Plaintiff did not accept this explanation and was eventually asked to leave. *See id.* Plaintiff refused to leave and the police arrived and removed him from the branch. *See id.* Plaintiff alleges he was tased by police and suffered injuries as a result. *See id.* ¶¶ 8-10. Plaintiff further claims he was charged with trespassing. *See id.* ¶¶ 7-8.

Plaintiff seeks $10,428,000.00, but does not specify any financial injury. The only physical injuries alleged were caused by police. *See generally id.*

## II.    **QUESTIONS PRESENTED**

Should Plaintiff's Complaint be dismissed for insufficient specificity because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for legal insufficiency because there is no basis for imposing liability on Chase for injuries suffered while in police custody after Plaintiff refused to leave a Chase branch?

**SUGGESTED ANSWER:   YES.**

Should Plaintiff's Complaint be dismissed for failure to conform to the rules because it does not identify the cause(s) of action asserted, does not identify the year the events at issue occurred, and does not describe or otherwise identify the alleged agreement at issue?

**SUGGESTED ANSWER:   YES.**

3


Case ID: 250402123
Control No.: 25055176

Should Plaintiff's Complaint be dismissed because this dispute may be subject to an ADR agreement?

**SUGGESTED ANSWER:   YES.**

## III.   LEGAL ARGUMENT

### A.   Legal Standard

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: ... (2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer).  In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts."  Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super. 178, 184, 613 A.2d 1235 (1992).  The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible."  Id.

Here, in addition to violating multiple rules of court and lacking the requisite specificity, the Complaint fails to allege facts that would support the imposition of liability on Chase.

Pennsylvania Rule of Civil Procedure 1028(a) permits the filing of preliminary objections by any party for the following grounds: "...(2) failure of a pleadings to conform to law or rule or inclusion of scandalous or impertinent matter; (3) insufficient specificity in a pleading; (4) legal insufficiency of a pleading (demurrer)...(6) pendency of a prior action or agreement for alternative dispute resolution; (7) failure to exercise or exhaust a statutory remedy..." Pa. R.C.P 1028(a). In reviewing preliminary objections, this Court must consider only facts that are well pleaded, material, relevant and true "together with such reasonable influences that may be drawn from these facts." Santiago v. Pennsylvania National Mutual Insurance Company, 418 Pa. Super.

4

178, 184, 613 A.2d 1235 (1992). The question presented by a demurrer is "whether, on the facts averred, the law says with certainty that no recovery is possible." Id.

Here, the Complaint lacks the requisite specificity, fails to allege facts that would support the imposition of liability on Chase, and fails to conform to multiple rules of court.

**B.    Plaintiff's Complaint should be Dismissed for Insufficient Specificity**

Plaintiff's Complaint fails to meet the specificity requirements of Rule 1028 because it does not identify the alleged agreement that Chase allegedly breached. In Pennsylvania, the material facts of every claim or defense must be "stated in a concise and summary form." Pa. R.C.P. 1019(a). Rule 1019(a) requires fact pleading and "has been interpreted to mean that the Complaint must not only apprise the Defendant of an asserted claim, but it must also synopsize the essential facts to support the claim." Miketic v. Baron, 675 A.2d 324, 331 (Pa. Super. 1996). To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "'sufficiently specific so as to enable [a] Defendant to prepare his defense...'" Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super.1991) (citation omitted). See also In re: Barnes Found., 661 A.2d 889, 895 (Pa. Super. 1995) (indicating that "'[a pleading] should formulate the issues by fully summarizing the material facts' and '[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based") (alterations in original).

The Complaint does not identify the agreement that was allegedly breached or assert any facts related to that agreement from which Chase could prepare a defense. Indeed, the Complaint does not even identify the year the events took place. As a result, Chase is left to guess what cause(s) of action it is defending or whether those unnamed cause(s) of action were filed within the applicable statute of limitations. Thus, the Complaint is not sufficiently specific to enable Chase to prepare a defense and should be dismissed.

Case ID: 250402123
Control No.: 25055176

**C.   Plaintiff's Complaint Should be Dismissed for Failure to State a Claim (Demurrer)**

The Complaint is also legally insufficient and should be dismissed pursuant to Pa. R.C.P. 1028(a)(4). The question presented by a demurrer is whether "on the facts averred, the law says with certainty that no recovery is possible." Santiago, 418 Pa. Super. at 184.

**i.   "Bad Faith" Claim**

While the Complaint does not clearly identify any specific cause of action, the cover sheet provides the Complaint concerns bad faith. "In Pennsylvania there is no general common law cause of action in tort solely for 'bad faith.'" Gorski v. Smith, 812 A.2d 683, 710 (Pa. Super 2002). Bad faith claims are a statutory cause of action against insurance companies for acting in bad faith towards their insureds. 42 Pa. C.S. § 8371.   That is not the case here, and the Complaint includes no allegations that Chase was Plaintiff's insurance company. Moreover, the Complaint does not include any allegations about Chase's purported bad faith. Even if it did, however, this would still be insufficient: simply alleging someone other than your insurer has failed to act towards you in good faith does "not provide a legally sufficient basis for a bad faith claim." Gorski, 812 A.2d at 710. Thus, Plaintiff has failed to state a claim for bad faith.

**ii.   Breach of Contract Claim**

Similarly, Plaintiff has failed to state a claim for breach of contract. Although the Complaint asserts "the defendant has breached the contract," it does not identify any contract or clarify which defendant it contends breached the unidentified contract. Exhibit A, ¶ 11. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2009). A breach of contract claim can only be maintained if the plaintiff can allege facts to support a finding

Case ID: 250402123
Control No.: 25055176

that a specific term of the agreement was breached; alleging negligence or tortious conduct is not enough. Id. Thus, a complaint for breach of contract should be dismissed where the complaint does not specifically allege the defendant "breached a contractual duty, or that damages resulted from that breach." Id.

Here, no facts are alleged to support the conclusion that any contract was breached or that any breach of a contract by Chase resulted in damages. See Exhibit A. The Complaint alleges Plaintiff was injured at the hands of the police who removed him from a Chase branch for trespassing. See id., ¶¶ 8-10. The Complaint does not, however, identify any contractual term that requires Chase to intervene in police action or otherwise imposes an obligation on Chase in this situation. See id. Thus, Plaintiff had failed to state a claim for breach of contract.

### iii.    Alleged Discrimination

To the extent Plaintiff is asserting a discrimination claim against Chase, this too is insufficient. See Exhibit A, ¶ 8 (alleging that Chase's requests to authenticate the checks were "discriminatory and unjust to a 15-year Chase customer."). Pennsylvania recognizes a cause of action for discrimination by a bank against its patron under the Pennsylvania Human Relations Act (the "PHRA"). 43 P.S. §§ 951-963. Specifically, Section 955 of the PHRA prohibits discrimination in the terms or conditions of loans, including those provided by banks, based on protected characteristics such as race, color, national origin, and other enumerated factors. 43 P.S. § 955(h)(2). The PHRA provides a mechanism for individuals to file complaints with the Pennsylvania Human Relations Commission (the "PHRC") if they believe they have been subjected to unlawful discrimination in lending. If the PHRC dismisses the complaint or fails to resolve it within one year, the complainant may bring an action in the courts of common pleas based on the right to freedom from discrimination granted by the PHRA. 43 P.S. § 962.

Case ID: 250402123
Control No.: 25055176
Case ID: 250402123
Control No.: 25055176

Here, Plaintiff did not file a complaint with the PHRC. See Exhibit A. Thus, to the extent Plaintiff is attempting to assert a claim for discrimination, that claim should be dismissed pursuant to Rule 1028(a)(7) for failure to exercise or exhaust a statutory remedy. Pa. R.C.P. 1028(a)(7).

Further, even if Plaintiff exhausted all statutory remedies, "[w]hen an aggrieved party alleges discrimination, the party bears the burden of proof, and is required to allege with specificity the basis underlying the claim of discrimination." Craig v. State Civ. Serv. Comm'n, 800 A.2d 364, 365 (Pa. Cmwlth. 2002)(internal citations omitted). "[G]eneral and conclusory" allegations of discrimination without factual support are "legally insufficient." Id., at 366. Here, Plaintiff does not allege that he is a member of any protected class or that he was discriminated against because he was a member of such a class. Nor does the Complaint assert that Chase employees engaged in any conduct from which one could reasonable infer that Chase discriminated against Plaintiff based on race, religion, gender, or sexual orientation. To the contrary, Plaintiff alleges the level of scrutiny that Chase engaged in to authenticate the checks was "discriminatory and unjust to a 15 year Chase customer." Exhibit A ¶8. This is insufficient under Pennsylvania law. Thus, Plaintiff has failed to state a claim for discrimination.

### iv.    Other Unidentified Causes of Action

The facts alleged in the Complaint do not support the imposition of liability against Chase under any other unidentified cause of action. The Complaint alleges that Plaintiff was physically harmed during an arrest and while in police custody. These allegations do not support a cause of action against Chase. While Plaintiff also alleges that the police were called to Chase, the Complaint alleges that the Plaintiff refused to leave, was arrested, and was subsequently charged

Case ID: 250402123
Control No.: 25055176

with trespassing.2 Based on these facts, there is no basis to impose liability on Chase for any injuries sustained at the hands of the police. Therefore, the Complaint should be dismissed as legally insufficient.

### D. Motion to Dismiss for Failure to Conform to Rules

Rule 1020(a)(2) requires that: "Each cause of action and any special damage related thereto shall be state in a separate count containing a demand for relief." Pa. R.C.P. 1020(a)(2). Furthermore, Rule 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." Pa. R.C.P. 1019(f). The Complaint does not identify separate causes of action against the multiple defendants. In fact, the Complaint does not contain a single count at all and no causes of action are explicitly identified in violation of this rule.

Additionally, the Complaint does not identity the year in which the events occurred, in violation of Rule 1019(f). As a result, Chase cannot determine if the suit was filed within the statute of limitations or the causes of action asserted against it as opposed to the other defendant, the City of Philadelphia.

Further, Rule 1019(h) provides that when a claim "is based upon an agreement the pleading shall state specifically if the agreement is oral or written." Pa. R.C.P. 1019(h). Here, the Complaint asserts that a defendant breached a contract, but it does not state which defendant or whether the agreement was written or oral. If the agreement referenced is written, the Complaint also violates Rule 1019(i), which requires that a plaintiff attach a copy of the writing to the Complaint. Pa. R.C.P. 1019(i). Therefore, Plaintiff's Complaint should be dismissed because it violates several pleading rules.

---

2 Per Pennsylvania statute a person commits a trespass when he "enters or remains in any place as to which notice against trespass is given by actual communication to the actor." 18 Pa. C.S. § 3503.

Case ID: 250402123
Case ID: 250402123
Control No.: 25055176
Control No.: 25055176

**E. Preliminary Objection for Alternative Dispute Resolution**

Finally, Rule1028(a)(6) provides that a party may file preliminary objections to a pleading based on a the existence of an agreement for alternative dispute resolution. While the allegations of the Complaint are not sufficiently specific and the cause(s) of action is/are not clearly identified, this dispute may be subject to ADR. Chase's customary account deposit agreement contains an ADR provision. Chase reserves the right to move to compel this matter to arbitration should it determine that this dispute is subject to such an ADR provision. To the extent Plaintiff is bringing a claim pursuant to his account deposit agreement, such a claim has been improperly filed in state court and should be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant, JPMorgan Chase Bank, N.A. respectfully request that the Court sustain its Preliminary Objections and enter the attached Order dismissing the Complaint..

Respectfully submitted,

**PEREZ & MORRIS LLC**

BY:    _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date: May 23, 2025


Case ID: 250402123
Control No.: 25055176

## <u>VERIFICATION</u>

I, T. Justin Chapman, verify that the statements made in the foregoing Preliminary

Objections are true and correct to the best of my knowledge and information.  I also understand

that the statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to

unsworn falsification to authorities.

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date:  May 23, 2025



T. Justin Chapman, Esquire
jchapman@perez-morris.com
Identification No. 205598
**PEREZ & MORRIS LLC**
1601 Market Street, Suite 2420
Philadelphia, PA 19103
215-692-1240

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| v. | : | |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing preliminary

objections were served on all interested counsel on this date by electronic filing with the Court or

regular mail, postage pre-paid, addressed as follows:

Philippe E. St. Juste
1227 Magee Ave.
Philadelphia, PA 19111
Philippe.esai@gmail.com

**PEREZ & MORRIS LLC**

BY: _____

T. Justin Chapman
Attorneys for Defendant,
JPMorgan Chase Bank, N.A.

Date: May 23, 2025

Case ID: 250402123
Control No.: 25055176
Case ID: 250402123
Control No.: 25055176

# Doc 8- City of Philadelphia Preliminary Objections

PHILIPPE E. St. Juste,              :   COURT OF COMMON PLEAS

         Plaintiff        :   PHILADELPHIA COUNTY

                              :

    vs.                      :   APRIL TERM, 2025

                              :

JPMORGAN CHASE BANK, N.A. et al.,  :

        Defendants    :   NO. 2123

Filed and Attested by the
Office of Judicial Records
12 JUN 2025 04:19 pm
S. GILLIAM

## <u>ORDER</u>

AND NOW,  this _____ day of _____, 2025, upon consideration of the Preliminary Objections of Defendants the City of Philadelphia and JPMorgan Chase Bank, N.A., and any responses thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is dismissed.

**BY THE COURT:**

_____

                                        **J.**

Case ID: 250402123
Control No.: 25062591

NOTICE TO PLEAD
To: Plaintiff
You are hereby notified to file a written response to the enclosed Preliminary Objections within twenty (20) days from the date of service hereof or a judgment may be entered against you.

**CITY OF PHILADELPHIA LAW DEPARTMENT**
LYDIA FURST, CHIEF DEPUTY CITY SOLICITOR
ATTORNEY IDENTIFICATION NO. 307450
1515 ARCH STREET – 15TH FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-3573 - Telephone
(215) 683-5299 – Fax
*Attorney for Defendant*

| | | |
|---|---|---|
| PHILLIPPE E. ST. JUSTE, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A., et al., | : | |
| DefendantS | : | NO. 2123 |

## DEFENDANT CITY OF PHILADELPHIA'S
## PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

Defendant City of Philadelphia, through its undersigned counsel, hereby files the following preliminary objections to Plaintiff's Complaint pursuant to Pa.R.C.P 1028. In support of its preliminary objections, Defendant incorporates by reference the Memorandum of Law filed contemporaneously with these preliminary objections.

### FACTS

1.    Plaintiff Phillippe E. St. Juste initiated this case by filing a Complaint on April 16, 2025. A copy of the Complaint is attached to these Preliminary Objections as Exhibit A.

1

Case ID: 250402123
Control No.: 25062591

2.    Plaintiff served his Complaint on Defendant the City of Philadelphia on May 7, 2025.

3.    Per the Complaint, on April 14 (the Complaint does not state the year of the alleged events), Plaintiff was present in a Chase branch at 1100 Market Street in Philadelphia. Compl. ¶ 8. When asked to leave, he refused. *Id.*

4.    According to the Complaint, after Plaintiff refused to leave the Chase branch, police officers arrived. *Id.* Plaintiff then held his wallet in his right hand and gripped his right wrist with his left hand. *Id.* When Plaintiff refused to "unlock his grip on his right wrist," officers allegedly tased Plaintiff. *Id.* Police officers subsequently handcuffed and arrested Plaintiff. *Id.*

5.    Plaintiff alleges that he sustained injuries from being tased. Compl. ¶¶ 9-10.

6.    Plaintiff has sued both the City and JPMorgan Chase. Plaintiff's Complaint contains no Counts and it is unclear what claim or claims he is asserting against Defendants.

7.    Plaintiff alleges that "the defendant has breached the contract" but he does not specify which defendant he is referring to, nor does he describe or attach the alleged contract.

8.    Plaintiff's Civil Cover Sheet identifies this case as a "bad faith" action.

**CITY'S FIRST PRELIMINARY OBJECTION PURSUANT TO PENNSYLVANIA RULE OF CIVIL PROCEDURE 1028(a)(4)**
**FOR LEGAL INSUFFICIENCY OR DEMURRER**

9.    The Pennsylvania Rules authorize a defendant to assert preliminary objections to a complaint based upon the "legal insufficiency of [the] pleading (demurrer)." Pa.R.Civ.P. 028(a)(4). "Preliminary objections in the nature of a demurrer test the legal sufficiency of a complaint. All well-pleaded facts set forth in the complaint and all inferences reasonably deducible therefrom are accepted as true, but conclusions of law, unwarranted inferences from facts, argumentative allegations, and expressions of opinion are not admitted." *Neill v. Eberle,*

Case ID: 250402123
Control No.: 25062591

620 A.2d 673, 675 (Pa. Cmwlth. 1993). "Preliminary objections should be sustained only where

it appears with certainty that the law will not permit recovery on the facts presented." *Id.*

10.    Even accepting as true all well-pleaded facts, Plaintiff's Complaint fails to state

any claim against the City.

11.    A complaint must provide notice with respect to the theory of liability that a

complainant intends to pursue and failure to do so warrants dismissal. *See Com. v. Percudani*,

844 A.2d 35, 46–47 (Pa. Commw. Ct. 2004) (granting dismissal on counts for which a party was

expressly excluded from headings identifying the defendants against whom the counts were

asserted and the allegations contained within each count do not set forth any conduct giving rise

to liability).

12.    Moreover, Pennsylvania Rules of Civil Procedure 1019 and 1020 impose

minimum pleading requirements designed to provide such notice, including that each cause of

action be stated in a separate count containing a demand for relief. Pa. R. Civ. P. 1019(a),

1020(a).

13.    The Complaint states that "the defendant has breached the contract," however the

Complaint fails to identify any applicable contract or even which defendant is alleged to have

contracted with Plaintiff. Compl. ¶ 11. As a matter of Pennsylvania law, the Complaint fails to

state a claim for breach of contract. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa.

2009) ("To successfully maintain a cause of action for breach of contract the plaintiff must

establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty

imposed by the contract, and (3) resultant damages.").

14.    The Civil Cover Sheet identifies this case as a "bad faith" action. However, there

is no standalone tort cause of action for "bad faith" in Pennsylvania and there is no allegation in

Case ID: 250402123
Control No.: 25062591

the Complaint (nor could there be) that either the City or Chase are Plaintiff's insurance company. *Gorski v. Smith*, 812 A.2d 683, 710 (Pa. Super 2002); *see generally* Compl.

15.    Finally, Plaintiff's Complaint alleges facts and injuries related to tasing by City police officers when Plaintiff was present at a Chase branch and refused to leave when asked.

16.    Pennsylvania municipalities, including the City, are immunized from intentional torts. *See Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015) (holding under Pennsylvania law that City is immune from state law claims of false arrest, false imprisonment, and malicious prosecution); *see also* 42 Pa. Cons. Stat. Ann. § 8541-42. The tort immunity of a local agency, including the City of Philadelphia, "is a non-waivable, absolute defense." *McShea v. City of Philadelphia*, 606 Pa. 88, 99 (2010).

17.    As a result, to the extent Plaintiff's Complaint asserts claims of intentional torts against the City, they are barred by the Tort Claims Act and must be dismissed.

**WHEREFORE**, the City respectfully requests that the Preliminary Objections be sustained and Plaintiff's Complaint be dismissed in its entirety as to Defendant the City of Philadelphia.

## CONCLUSION

Defendant City of Philadelphia respectfully requests that its preliminary objections be sustained and Plaintiff's Complaint dismissed.

Respectfully Submitted:

CITY OF PHILADELPHIA
LAW DEPARTMENT

BY:    /s/ Lydia Furst_____
Lydia Furst, Chief Deputy City Solicitor
Affirmative & Special Litigation Unit
Attorney I.D. No. 307450
City of Philadelphia Law Department

Case ID: 250402123
Control No.: 25062591

1515 Arch Street, 15th Floor
Philadelphia, PA 19102-1595
lydia.furst@phila.gov


*Attorney for Defendant City of Philadelphia*

Date: June 12, 2025

5

Case ID: 250402123
Control No.: 25062591

**CITY OF PHILADELPHIA LAW DEPARTMENT**
LYDIA FURST, CHIEF DEPUTY CITY SOLICITOR
ATTORNEY IDENTIFICATION NO. 307450
1515 ARCH STREET – 15TH FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-3573 - Telephone
(215) 683-5299 – Fax
*Attorney for Defendant*

---

| | | |
|---|---|---|
| PHILLIPPE E. ST. JUSTE, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A., et al., | : | |
| DefendantS | : | NO. 2123 |

---

<u>**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR PEREMPTORY JUDGMENT**</u>

**I.    MATTER BEFORE THE COURT**

The matter before the Court is Defendant City of Philadelphia's preliminary objections to

Plaintiff's Complaint.

**II.    STATEMENT OF QUESTION INVOLVED**

1.    Whether Plaintiff's Complaint should be dismissed pursuant to Rule 1028(a)(4)

because it fails to state any claim against the City?

<u>Suggested Answer</u>: Yes

**III.    FACTS**

Plaintiff Phillippe E. St. Juste initiated this case by filing a Complaint on April 16, 2025.

A copy of the Complaint is attached to the City's Preliminary Objections as Exhibit A. Plaintiff

served his Complaint on Defendant the City of Philadelphia on May 7, 2025.

Case ID: 250402123
Control No.: 25062591

Per the Complaint, on April 14 (the Complaint does not state the year of the alleged events), Plaintiff was present in a Chase branch at 1100 Market Street in Philadelphia. Compl. ¶ 8. When asked to leave, he refused. *Id.* According to the Complaint, after Plaintiff refused to leave the Chase branch, police officers arrived. *Id.* Plaintiff then held his wallet in his right hand and gripped his right wrist with his left hand. *Id.* When Plaintiff refused to "unlock his grip on his right wrist," officers allegedly tased Plaintiff. *Id.* Police officers subsequently handcuffed and arrested Plaintiff. *Id.* Plaintiff alleges that he sustained injuries from being tased. Compl. ¶¶ 9-10.

Plaintiff has sued both the City and JPMorgan Chase. Plaintiff's Complaint contains no Counts and it is unclear what claim or claims he is asserting against Defendants. Plaintiff alleges that "the defendant has breached the contract" but he does not specify which defendant he is referring to, nor does he describe or attach the alleged contract. Plaintiff's Civil Cover Sheet identifies this case as a "bad faith" action.

## IV.    ARGUMENT

The Pennsylvania Rules authorize a defendant to assert preliminary objections to a complaint based upon the "legal insufficiency of [the] pleading (demurrer)." Pa.R.Civ.P. 028(a)(4). "Preliminary objections in the nature of a demurrer test the legal sufficiency of a complaint. All well-pleaded facts set forth in the complaint and all inferences reasonably deducible therefrom are accepted as true, but conclusions of law, unwarranted inferences from facts, argumentative allegations, and expressions of opinion are not admitted." *Neill v. Eberle*, 620 A.2d 673, 675 (Pa. Cmwlth. 1993). "Preliminary objections should be sustained only where it appears with certainty that the law will not permit recovery on the facts presented." *Id.*

Even accepting as true all well-pleaded facts, Plaintiff's Complaint fails to state any claim against the City.

2

Case ID: 250402123
Control No.: 25062591

A complaint must provide notice with respect to the theory of liability that a complainant intends to pursue and failure to do so warrants dismissal. *See Com. v. Percudani*, 844 A.2d 35, 46–47 (Pa. Commw. Ct. 2004) (granting dismissal on counts for which a party was expressly excluded from headings identifying the defendants against whom the counts were asserted and the allegations contained within each count do not set forth any conduct giving rise to liability). Moreover, Pennsylvania Rules of Civil Procedure 1019 and 1020 impose minimum pleading requirements designed to provide such notice, including that each cause of action be stated in a separate count containing a demand for relief. Pa. R. Civ. P. 1019(a), 1020(a).

The Complaint states that "the defendant has breached the contract," however the Complaint fails to identify any applicable contract or even which defendant is alleged to have contracted with Plaintiff. Compl. ¶ 11. As a matter of Pennsylvania law, the Complaint fails to state a claim for breach of contract. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2009) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.").

The Civil Cover Sheet identifies this case as a "bad faith" action. However, there is no standalone tort cause of action for "bad faith" in Pennsylvania and there is no allegation in the Complaint (nor could there be) that either the City or Chase are Plaintiff's insurance company. *Gorski v. Smith*, 812 A.2d 683, 710 (Pa. Super 2002); *see generally* Compl.

Finally, Plaintiff's Complaint alleges facts and injuries related to tasing by City police officers when Plaintiff was present at a Chase branch and refused to leave when asked. Pennsylvania municipalities, including the City, are immunized from intentional torts. *See Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015)

Case ID: 250402123
Control No.: 25062591

(holding under Pennsylvania law that City is immune from state law claims of false arrest, false imprisonment, and malicious prosecution); *see also* 42 Pa. Cons. Stat. Ann. § 8541-42. The tort immunity of a local agency, including the City of Philadelphia, "is a non-waivable, absolute defense." *McShea v. City of Philadelphia*, 606 Pa. 88, 99 (2010). As a result, to the extent Plaintiff's Complaint asserts claims of intentional torts against the City, they are barred by the Tort Claims Act and must be dismissed.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed.


Respectfully Submitted:

CITY OF PHILADELPHIA
LAW DEPARTMENT

BY:    /s/ Lydia Furst
Lydia Furst, Chief Deputy City Solicitor
Affirmative & Special Litigation Group
Attorney I.D. No. 307450
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102-1595
lydia.furst@phila.gov

*Attorney for Defendant*

Date: June 12, 2025

Case ID: 250402123
Control No.: 25062591

## CERTIFICATE OF SERVICE

I, Lydia Furst, hereby certify that a true and correct copy of Defendant City of Philadelphia's Preliminary Objections to Plaintiff's Complaint was served by Electronic Filing upon all counsel of record.

BY:    /s/ Lydia Furst
        Lydia Furst, Chief Deputy City Solicitor
        Affirmative & Special Litigation Unit
        Attorney I.D. No. 307450
        City of Philadelphia Law Department
        1515 Arch Street, 15th Floor
        Philadelphia, PA 19102-1595
        lydia.furst@phila.gov

        *Attorney for Defendant*

Date: June 12, 2025

# EXHIBIT A

Case ID: 250402123
Control No.: 25062591

Court of Common Pleas of Philadelphia
County Trial Division
**Civil Cover Sheet**

For Office of Judicial Records Use Only (Docket Number)

250402123

Filed and Attested by the
Office of Judicial Records
[stamp] pm

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philippe E. St Juste | JP Morgan Chase Bank |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 1227 Magee Ave, Philadelphia, PA 19111 | 700 Kansas Lane Mail code, LA47200 Monroe LA 71023 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|  | City of Philadelphia |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|  | office of Risk Management, 1515 Arch st 14th Floor, Philadelphia PA 19102 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|  |  |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|  |  |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 2 | ☒ Complaint  ☐ Writ of Summons | ☐ Petition Action  ☐ Transfer From Other Jurisdictions | ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | | |
|---|---|---|---|---|---|
| ☐ $50,000.00 or less  ☒ More than $50,000.00 | ☐ Arbitration  ☒ Jury  ☐ Non-Jury  ☐ Other: | ☐ Mass Tort  ☐ Savings Action  ☐ Petition | ☐ Minor Court Appeal  ☐ Statutory Appeals  ☐ Commerce (Completion of Addendum Required) | ☐ Settlement  ☐ Minors  ☐ W/D/Survival | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)
1J Bad Faith

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|---|---|
| CMPLC-St Juste Vs Jp Morgan Chase Bank Et Al [RNH] | | Yes | No |
| | [barcode] 25040212300003 | ☐ ☐ ☐ | ☐ ☐ ☐ |

**TO THE OFFICE OF JUDICIAL RECORDS:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Philippe E St Juste | 1227 Magee Ave Philadelphia, PA 19111 |
| PHONE NUMBER          FAX NUMBER | |
| 917-937-6594 | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS  philippe.esai@gmail.com |
| SIGNATURE  Philippe E St Juste | DATE  04-16-2025 |

01-101 (Rev. 8/2014)

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

## Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A. Parties**

    *i. Plaintiffs/Defendants*
    Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

    *ii. Parties' Addresses*
    Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

    *iii. Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B. Commencement Type:** Indicate type of document filed to commence the action.

**C. Amount in Controversy:** Check the appropriate box.

**D. Court Program:** Check the appropriate box.

**E. Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.



**Proceedings Commenced by Appeal**

Minor Court
  5M  Money Judgment
  5L  Landlord and Tenant
  5D  Denial Open Default Judgment
  5E  Code Enforcement
    Other:

Local Agency
  5B  Motor Vehicle Suspension - Breathalizer
  5V  Motor Vehicle Licenses, Inspections, Insurance
  5C  Civil Service
  5K  Philadelphia Parking Authority
  5Q  Liquor Control Board
  5R  Board of Revision of Taxes
  5X  Tax Assessment Boards
  5Z  Zoning Board
  52  Board of View
  51  Other:
Other:

**Proceedings Commenced by Petition**
  8P  Appointment of Arbitrators
  8C  Name Change - Adult
  8L  Compel Medical Examination
  8D  Eminent Domain
  8E  Election Matters
  8F  Forfeiture
  8S  Leave to Issue Subpoena
  8M  Mental Health Proceedings
  8G  Civil Tax Case - Petition
  Other:

**Actions Commenced by Writ of Summons or Complaint**

Contract
  1C  Contract
  1T  Construction
  1O  Other:
Tort
  2B  Assault and Battery
  2L  Libel and Slander
  4F  Fraud
  1J  Bad Faith
  2E  Wrongful Use of Civil Process
    Other:
Negligence
  2V  Motor Vehicle Accident
  1H  Other Traffic Accident
  1F  No Fault Benefits
  4M  Motor Vehicle Property Damage
  2F  Personal Injury - FELA
  2O  Other Personal Injury
  2S  Premises Liability - Slip & Fall
  2P  Product Liability
  2T  Toxic Tort
    T1  Asbestos
    T2  DES
    T2  Implant
  3E  Toxic Waste
    Other:

Professional Malpractice
  2D  Dental
  4L  Legal
  2M  Medical
  4Y  Other:
1G  Subrogation
Equity
  E1  No Real Estate
  E2  Real Estate
  1D  Declaratory Judgment
  M1  Mandamus
Real Property
  3R  Rent, Lease, Ejectment
  Q1  Quiet Title
  3D  Mortgage Foreclosure - Residential Owner Occupied
  3F  Mortgage Foreclosure - Not Residential Not Owner Occupied
  1L  Mechanics Lien
  P1  Partition Prevent Waste
  1V  Replevin
1H  Civil Tax Case - Complaint
  Other:

**F. Commerce Program**

Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G. Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H. Related Pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I. Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

### The current version of the Civil Cover Sheet may be downloaded from the FJD's website
### http://courts.phila.gov

Case ID: 250402123

Case ID: 250402123
Control No.: 25062591

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

*Philippe E. St Juste*

VS.

*JP MORGAN CHASE BANK, NA*
*CITY OF PHILADELPHIA*

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| **NOTICE** | **AVISO** |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

PHILIPPE E. ST JUSTE :

Plaintiff

Term,

v.

JPMORGAN CHASE BANK, NA :
CITY OF PHILADELPHIA
Defendant

No.

CIVIL ACTION COMPLAINT

See attached

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

The complaint of the plaintiff, Philippe E St Juste, respectfully shows and alleges as follows:

1. The plaintiff herein, Philippe E St Juste, is a resident of the State of Pennsylvania.

2. The defendant herein, JP Morgan Chase, N.A., which operates under the brand name Chase, is the consumer and commercial banking subsidiary of the multinational financial services firm, JPMorgan Chase & Co. It is a national bank headquartered in New York City. [As described by Google AI Overview]

3. The defendant herein, City of Philadelphia, Office of Risk Management, which is located at 1515, Arch street, 14th Floor, Philadelphia, PA 19102 .

4. On Wednesday April 5th  at 1:48 pm Plaintiff St Juste and his aunt Marie Francoise Verdieu entered the 1100 Market St location in Philadelphia, PA of JP Morgan Chase Bank with the intention of opening a joint family checking account.  Plaintiff was met and attended to by Qingmei Qing who introduced herself as Cecilia Qing. Plaintiff's aunt provided her NYS ID and social security card and plaintiff provided his NYS Driver's license and his Chase Debit Card in order to open the new account. During that same meeting, Plaintiff's sisters Christie and Margael provided complete names, address, ssn and emails over the phone to be added as joint account holders. They were then told by Cecilia to report to a Chase branch near them to authenticate their identities in person. Plaintiff created this account to manage his mother's (my aunt's only sister) estate who had passed away on March 22nd. Plaintiff chose to open a new account at Chase because plaintiff had been a customer since September 2007 and plaintiff's mother also had an account with Chase. Plaintiff felt it right to gather his family resources in a place where they had felt financially safe and with which plaintiff had over 15 years as a financial client. Plaintiff deposited  a total of $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in checks received from various family members and friends, all of which are redacted in a family google sheet document.  This money is a collection of gifts the plaintiff had received the previous Sunday at

his mother's memorial service. Plaintiff gave the deposit to Michael, the clerk in attendance and confirmed with him that it was okay to deposit the given amount. Plaintiff and his aunt exited the 1100 Market St location at about 3:41 pm on that day, knowing they had set up an account to manage his mother's affairs.

5. On Friday April 7th, plaintiff attempted to log into his Chase mobile account and received the following message: " We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt and sisters. As his account was still blocked on Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY to resolve the matter. There, the plaintiff was greeted by Penny who called Chase Internal. Plaintiff spoke with a corporate agent and was told that it was an internal issue that would be solved within 24 hrs. Plaintiff exited Chase at about 12:14 pm with assurance that his accounts would be reinstated by the next day.

6. On Tuesday 11th, plaintiff's Chase Mobile app was still locked. Plaintiff visited a second branch of Chase. Plaintiff arrived at 402 Myrtle Ave, Brooklyn, NY at 10:42 am. Plaintiff was greeted by Tevin Campbell who phoned Chase Internal. Tevin informed plaintiff that the issue was that Chase needed to authenticate the checks and that plaintiff needed to provide the phone numbers to two issuers to resolve the matter. Plaintiff provided the number for Sister Giselle the Treasurer of Premiere Eglise Methodiste Unie and the number for Marie Alberte Pierre, an extended family member. Chase Internal operator said he/she could not reach either number immediately but would resolve the matter before the end of the business day. Plaintiff left Chase at 11:48 am.

7. Friday 14th, the plaintiff noticed that he was still restricted from his Chase accounts

and called Chase at about 10:55 am. Plaintiff spoke with two agents and a manager who told him that he needed to authenticate each and every check that had been deposited. Plaintiff provided contact information for many of the check issuers. Plaintiff spent an hour and a half talking to the manager, by the end of which plaintiff still needed to provide two additional numbers. Plaintiff was told that they could not authenticate the contact for the First United Methodist Church and needed a contact for Marie Guerrier. Plaintiffcontacted Marie Guerrier, a childhood friend of the plaintiff's mother, who had written a check for $200 to the plaintiff's aunt. Plaintiff told Ms. Guerrier the bank would contact her to confirm that she was an issuer, she assured the plaintiff that that was okay but that she had limited mobility and would not be able to visit any branch. She also told the plaintiff that the amount in question had been withdrawn from her account since April 5th. Plaintiff confirmed that the amount had been withdrawn from her account 9 days prior but it had not been cleared to his account or returned to hers. Plaintiff once again called and spoke to one more agent for a half hour and provided her with Marie Guerrier's contact. The agent told the plaintiff she could not authenticate Marie's number. Plaintiff offered to contact Marie Guerrier myself and have a three way conversation if they had a hard time reaching her. The agent again refused. At this point the plaintiff had communicated to Cecilia, Tevin and everyone that he had spoken with over the phone the reason why the account had been created. Plaintiff had communicated that his sisters, his aunt and himself were grieving the very recent and sudden loss of his mother. After yet another unproductive phone conversation, plaintiff decided to return to the Chase location at 1100 Market St where the account had been created.

8. Plaintiff arrived at 1100 Market St at 3:25 pm. Plaintiff intended to close both Chase accounts and take his business elsewhere. It had been over a week since his money was restricted and the plaintiff needed to take care of his mother's estate. Plaintiff met with Jeison Brito. Plaintiff told Jeison he wanted to close both his Chase accounts and take out my money. Jeison told the plaintiff to let him talk to Internal to see if the issue could be resolved. Plaintiff sat there

for 2 hours as both Plaintiff and Jeison waited for Internal to get back to them over the phone. At some point the plaintiff stepped into the reception area and called Chase Internal as an alternative to reach Chase Internal. At around 5:00 pm Jeison came and took the plaintiff back into his office. At 5:33 pm Jeison told the plaintiff he had reached Internal and they needed Marie Guerrier to provide a different number or to show up in person to authenticate her check. Plaintiff told Jeison that that was impossible because the number plaintiff had provided was the only number that plaintiff had used to reach Ms. Guerrier and had been the same number his younger sister had used and that his mother had used to talk to Ms. Guerrier on a regular basis. At about 5:38 pm Mecca Abdullah, Vice President, interjected with an escort of Cecilia, another banker and a constable. Mecca repeated Jeison's words and told the plaintiff that he had 2 options: either provide a different contact number for Marie Guerrier or have her come into Chase. Plaintiff told her that those were not options and both were unlikely. Plaintiff reiterated that this level of scrutiny was discriminatory and unjust to a 15 year Chase customer. Plaintiff told Ms. Abdullah, that after speaking to 12 Chase representatives, 8 over the phone and 4 in person and authenticating 5 checks, he only wished to take out his money. Plaintiff also said that if they felt that Marie Guerrier's check was not legitimate to nullify it, return her money and give him the rest of his money. Abdullah told the plaintiff that he needed to leave the premises. Plaintiff sat down and said he would only leave when he got my money. A 20 something black female constable approached the plaintiff and tried to remove him. The constable then called for back up. A late middle aged white officer, whose tag identified as Curtosi, was first on the scene followed by 3 other officers, an Asian superior officer, another white officer Leonard and a black officer and surrounded the plaintiff. Plaintiff held his wallet in his right hand and wrapped his left hand around his right wrist. The officers transported the plaintiff to the reception section of the bank where officer Leonard told the plaintiff that he would tase him if I didn't unlock his grip on his right wrist, he repeated it and then proceeded to tase the plaintiff. Plaintiff held on the first two times and then released his grip. The plaintiff was tased a third time. The plaintiff was then

handcuffed and compelled by force to lie on his stomach. There were at least 28 officers on the scene. The whole interaction from the conversation with Mecca to the arrest did not exceed 10 mins. The police walked the plaintiff outside of the bank and placed him in the back of a patrol car where his person was searched and his backpack was searched.

9. Plaintiff was transferred to a van and transported to 400 North Broad St Detention Center. Once again the plaintiff was searched. Plaintiff's personal effects were confiscated including his belt and laces, some others were disposed of including pens and pencils. Plaintiff was given a bracelet numbered 518 with his name and charge of trespassing. Plaintiff was told to wash his hands and went through the intake procedure. Plaintiff was then taken to the cell block where he asked to make a phone call, the plaintiff told them it was a New York number. Plaintiff said that it was urgent as plaintiff had an ailing and grieving aunt alone at home who had spent the previous Wednesday night hospitalized. A male officer tried to chastise plaintiff but a older black female officer was kind and let plaintiff call his older sister who he informed that he had been arrested and that she would have to travel from NYC to come stay with their aunt for the night and not to inform my aunt of what had happened because plaintiff feared doing so would impact her health and mental state in a negative way. Plaintiff was taken to cell 085 which was shared with two other people. This was around 7:00 pm. Some time later the plaintiff started feeling the effects of the tasing, the plaintiff complained 8 times that he needed medical assistance for his back, and the plaintiff was ignored. Plaintiff remained in that cell until 3 am when he was taken to be fingerprinted and photographed. That is when the plaintiff saw a nurse who only offered him ibuprofen but did not examine his back. Plaintiff complained that he was not able to sleep as the cell was too cold for any of the detainees to fall asleep. The nurse told the plaintiff that is the condition of jail. At about 7:45 am officer Martinez allowed the plaintiff once more to call his sister, this time the plaintiff called his younger sister who had come to stay with their aunt. At about 8:30 am the plaintiff was released and was returned his personal effects

without seeing a lawyer or a judge. Plaintiff was told that he had not been formally charged but that I had been cited and that he should report to court at 1301 Filbert Street on May 1.

10. Plaintiff sustained upwards of 10 small flesh wounds in his back from being tased. Plaintiff had difficulty sleeping or sitting due to the tasing injuries for upward of 2 weeks. Plaintiff visited the emergency rooms of Albert Einstein Medical Center and then again UPenn Medical Center to receive care following his arrest. The plaintiff has since completed several months of physical therapy twice weekly to readapt his back muscles. Chase has served up till then as the plaintiff's only checking banking account. Suspending the plaintiff's accounts limited his ability to receive and deposit money for work that he had done. It inhibited the plaintiff's ability to withdraw and transfer money to people who rely on his financial assistance for school tuitions, medical care and living expenses in Haiti. It also prohibited the plaintiff from serving as administrator of his mother's estate in due time to avoid larger state taxes. Despite the plaintiff's request of communication solely through his criminal defense attorney, JPMorgan Chase contacted the plaintiff multiple times after his arrest through phone calls and emails. The criminal case against the plaintiff was withdrawn after 5 months after the representatives of JPMorgan Chase failed to be present on multiple occasions or provide supporting discovery as requested by the plaintiff's side.

11. By reason of the facts and circumstances stated above, the defendant has breached the contract.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $10,428,000.00, for, together with any other relief the Court finds to be just and proper.

Dated: April 13, 2025

Philippe E St Juste **[Printed]**
Plaintiff

1227 Magee Ave
Philadelphia, Pennsylvania 19111
917-937-6594

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

Defendants
JPMorgan Chase Bank, N.A.
700 Kansas Lane, Monroe, LA 71203


City of Philadelphia,
Office of Risk Management, 1515 Arch Street, 14th Floor,
Philadelphia, PA 19102.

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591

## VERIFICATION

I, _Philippe E. St Juste_ , Plantiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Philippe E. St Juste_
(Print Name)

_[signature]_
(Signature)

Date: _04-16-2025_

# **Doc 9- Answer to City of Philadelphia Preliminary Objections**



ANPRO-St Juste Vs Jp Morgan Chase Bank Et Al [NKB]

Filed and Attested by the
Office of Judicial Records
07/02/2025 00:23:00 PM
N. BAILEY

# IN THE COURT OF COMMON PLEAS
# PHILADELPHIA COUNTY – CIVIL TRIAL DIVISION

**PHILIPPE E. ST JUSTE,**

*Plaintiff*

v.

**CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,**

*Defendant*

**No. _____**

---

## PLAINTIFF'S ANSWER TO THE CITY'S FIRST PRELIMINARY OBJECTION

### (LEGAL INSUFFICIENCY / DEMURRER)

**Plaintiff, Philippe E. St Juste, respectfully responds as follows:**

1. Defendant, the City of Philadelphia, objects under **Pa.R.C.P. 1028(a)(4)** arguing that Plaintiff's Complaint is legally insufficient.

2. In ruling on a demurrer, **all well-pleaded facts** and all reasonable inferences must be accepted as true, while only *unwarranted* inferences or pure conclusions of law are disregarded. *Neill v. Eberle*, 620 A.2d 673, 675 (Pa. Cmwlth. 1993).

3. The Complaint here pleads detailed, specific facts supporting Plaintiff's causes of action as to the City, including:

   o That Philadelphia Police officers, acting under color of law and authority of the City, forcibly detained, arrested, tased, and imprisoned Plaintiff in connection with a dispute at a private bank, despite Plaintiff posing no threat and requesting only the return of his lawfully deposited funds.

   o That Plaintiff was tased multiple times by Philadelphia Police officers in a manner that was unnecessary, excessive, and grossly disproportionate.

- That Plaintiff was detained, searched, denied timely medical attention, and subjected to physical harm and humiliation while in City custody.

- That City actors failed to follow proper procedures in Plaintiff's arrest and detention, causing him lasting physical and emotional harm.

4. Accepting these well-pleaded facts as true, Plaintiff's Complaint adequately states plausible claims under Pennsylvania law, including:

- **False arrest and false imprisonment** by City police;

- **Excessive force** and violation of civil rights under 42 U.S.C. § 1983 (should the Complaint be construed to include federal civil rights claims);

- **Negligent training, supervision, or failure to intervene**, if applicable.

5. Under Pennsylvania law, municipalities may be liable under certain exceptions to sovereign immunity for willful misconduct or negligent acts of their employees, such as false arrest, false imprisonment, and excessive force. *See* 42 Pa.C.S. § 8542(b)(1) (exception for negligence of local agency employees).

6. Therefore, it does **not** appear with certainty that the law will not permit recovery on the facts pled. Rather, if proven, Plaintiff's factual allegations plainly support valid legal claims against the City.

7. Accordingly, the City's Preliminary Objection in the nature of a demurrer should be **denied in its entirety.**

8. In the alternative, if this Honorable Court finds any portion of the Complaint to be insufficiently pleaded, Plaintiff respectfully requests **leave to amend** under Pa.R.C.P. 1028(e) to cure any defect.

**WHEREFORE**, Plaintiff respectfully requests that this Court **overrule** the City's First Preliminary Objection in its entirety and direct Defendant to file an Answer within twenty (20) days.

## PLAINTIFF'S ANSWER TO THE CITY'S OBJECTIONS 10–12

## (FAILURE TO STATE A CLAIM / NOTICE / FORMAL COUNTS)

**Plaintiff, Philippe E. St Juste, respectfully responds:**

---

## 1. Response to Objection 10 – Failure to State a Claim

Defendant argues that, even accepting all well-pleaded facts as true, Plaintiff's Complaint does not state any claim against the City. This is incorrect.

The Complaint clearly pleads facts that, if proven, establish multiple causes of action against the City and its law enforcement officers, including:

- **False arrest and false imprisonment** by City police officers who detained, handcuffed, and transported Plaintiff despite no probable cause for criminal trespass, where Plaintiff was a lawful customer attempting to close his account and retrieve his own funds.

- **Excessive force** by City officers who repeatedly tased Plaintiff, resulting in physical injuries, requiring emergency medical care and physical therapy.

- **Failure to provide prompt medical care** while Plaintiff was in City custody, aggravating his injuries.

- **Misrepresentation** in official statements by the City's agents, leading to wrongful citation and months-long legal proceedings.

Accepting these facts as true, the law plainly recognizes viable claims under Pennsylvania tort law and, if read liberally, possible civil rights violations under 42 U.S.C. § 1983 (for excessive force or unlawful seizure by state actors). See *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994) (police may be liable for false arrest and excessive force under state law).

## 2. Response to Objection 11 – Lack of Notice / *Percudani*

Defendant cites *Commonwealth v. Percudani*, 844 A.2d 35 (Pa. Cmwlth. 2004), arguing that the Complaint fails to put the City on notice of any legal theory. But *Percudani* is distinguishable.

In *Percudani*, the court dismissed counts because the complaint's headings specifically excluded the defendant, and the paragraphs under each count contained no facts relating to that defendant. Here, Plaintiff's Complaint explicitly names the **City of Philadelphia** as a Defendant and pleads specific factual allegations about the acts of **Philadelphia Police officers,** who are City employees acting within the scope of their official duties.

There is no confusion here about which allegations relate to the City. The Complaint's narrative details how City agents arrived, escalated the situation, forcibly removed Plaintiff, tased him multiple times, arrested him without probable cause, transported and detained him, and then denied timely medical care — all acts giving rise to legal liability under established Pennsylvania tort and civil rights law.

## 3. Response to Objection 12 – Rules 1019(a) & 1020(a)

Defendant argues that the Complaint does not comply with Pa.R.C.P. 1019 and 1020 because each cause of action is not stated in a separate count with a demand for relief.

While Rules 1019(a) and 1020(a) do require clear, separate counts for each cause of action, Pennsylvania courts consistently hold that *failure to separate counts* is not grounds for outright dismissal — it is grounds, at most, for an order to file a more definite statement or to amend the pleading. See *Connor v. Allegheny General Hospital*, 461 A.2d 600, 602 (Pa. 1983).

Here, the Complaint pleads facts supporting at least these viable claims:

- **Count I:** False Arrest / False Imprisonment;

- **Count II:** Excessive Force / Battery;

- **Count III:** Negligent Failure to Train, Supervise, or Intervene (if discovery supports);

- **Count IV:** Civil Rights Violation (if construed under §1983).

Should the Court find that the Complaint should be formally restated in numbered counts with clear headings and specific prayers for relief, Plaintiff respectfully requests **leave to amend** under Pa.R.C.P. 1028(e) to cure any technical defect. Dismissal is unwarranted because the underlying facts state viable causes of action.

## PRE-CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. **Deny the City's Preliminary Objections 10–12 in their entirety;**

2. Direct the City to Answer the Complaint on the merits; or, in the alternative,

3. Grant Plaintiff **leave to amend** to restate and separate each cause of action in compliance with Pa.R.C.P. 1019 and 1020.

## PLAINTIFF'S ANSWER TO THE CITY'S OBJECTIONS 13–15

## (BREACH OF CONTRACT, BAD FAITH, TASING FACTS)

**Plaintiff, Philippe E. St Juste, respectfully responds:**

### 1. Response to Objection 13 – Breach of Contract

Defendant argues that Plaintiff's Complaint fails to plead a valid breach of contract claim because it does not identify a specific contract or the defendant that allegedly breached it. This misstates the pleading.

Plaintiff's Complaint clearly alleges that **JP Morgan Chase, N.A.** entered into a contract with Plaintiff when it agreed to open and maintain checking accounts for Plaintiff and his family, accepted deposits, and agreed to provide access to Plaintiff's funds on demand. These factual allegations appear in **Paragraphs 4–5** and throughout the factual narrative.

Case ID: 250402123
Control No.: 25055176

The Complaint then pleads that Chase wrongfully froze Plaintiff's personal and joint accounts without justification, refused to release the funds even when Plaintiff sought to close the accounts, and made repeated false statements preventing Plaintiff from retrieving his deposits. These allegations are more than sufficient under Pennsylvania law to state a **breach of contract** claim against **Chase**, which is the clear target of Paragraph 11.

To the extent the City argues the **City** cannot be liable for breach of contract in this context — Plaintiff agrees: the breach of contract claim is not directed at the City. Rather, the City's liability arises from the actions of its police officers in using excessive force, falsely imprisoning Plaintiff, and violating Plaintiff's rights — not under contract but under **tort** and **civil rights** theories.

Therefore, this Objection should be **overruled**. If needed, Plaintiff respectfully requests leave to clarify the contract claim's target (JP Morgan Chase) in an amended pleading.

## 2. Response to Objection 14 – "Bad Faith"

The City correctly states that Pennsylvania does not recognize an independent tort of "bad faith" except in the insurance context under 42 Pa.C.S. § 8371. *See* **Gorski v. Smith**, 812 A.2d 683, 710 (Pa. Super. Ct. 2002).

However, Plaintiff's Complaint does not assert a stand-alone "bad faith" tort against the City. Any reference to "bad faith" in the Civil Cover Sheet was descriptive — highlighting Chase's repeated pattern of obstructive conduct toward Plaintiff's contractual rights — not a separate insurance-based claim against the City.

Therefore, this Objection does not justify dismissal. If needed, Plaintiff agrees to amend to clarify that "bad faith" is part of the alleged **breach of the covenant of good faith and fair dealing** against **Chase** — not the City.

## 3. Response to Objection 15 – Facts of Tasing and Refusal to Leave

The City argues that Plaintiff's Complaint concedes Plaintiff was tased by police officers when he refused to leave a Chase branch.

Case ID: 250402123
Control No.: 25055176

This factual recitation does not negate Plaintiff's claims. The Complaint alleges that Plaintiff lawfully demanded the return of his own deposited funds; that Chase representatives escalated the matter by calling police and falsely claiming Plaintiff refused to leave; that City police arrived within minutes, used **excessive force** by tasing Plaintiff multiple times despite him being unarmed, nonviolent, and attempting only to secure his funds; and that Plaintiff suffered physical injuries requiring extensive medical care.

Under Pennsylvania law, Plaintiff's version — if proven true — supports valid claims for **false arrest**, **false imprisonment**, and excessive force against the City through the actions of its police officers. *See* Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994).

Whether Plaintiff "refused to leave" is a disputed fact for the jury, not a basis for dismissal at the pleading stage.

## PRE-CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. **Deny the City's Preliminary Objections 13–15 in their entirety;**

2. Direct Defendants to Answer the Complaint on the merits; and

3. Alternatively, grant Plaintiff **leave to amend** to clarify the breach of contract claim (against Chase only) and to remove any unnecessary "bad faith" label.

## PLAINTIFF'S ANSWER TO THE CITY'S OBJECTIONS 16 & 17

## (IMMUNITY FOR INTENTIONAL TORTS / TORT CLAIMS ACT)

Plaintiff, Philippe E. St Juste, respectfully answers as follows:

## 1. Response to Tort Claims Act Immunity Argument

Case ID: 250402123
Control No.: 25055176

Defendant City asserts that all of Plaintiff's state law intentional tort claims (including false arrest, false imprisonment, and excessive force) must be dismissed under the **Political Subdivision Tort Claims Act (PSTCA), 42 Pa.C.S. §§ 8541–8542.**

It is correct that, generally, local agencies like the City of Philadelphia enjoy immunity from claims for **intentional torts** by their employees acting within the scope of employment. *See* **Jenkins v. City of Philadelphia**, No. 15-3271, 2015 WL 5585186 (E.D. Pa. Sept. 23, 2015); *see also* **McShea v. City of Philadelphia**, 995 A.2d 334 (Pa. 2010).

However, this immunity is **not absolute** where:

- Plaintiff's claims are grounded in **federal constitutional violations** under 42 U.S.C. § 1983, which **preempts state sovereign immunity** for unconstitutional acts by local officials.

- The alleged conduct involves **willful misconduct**, for which individual municipal employees can be liable under 42 Pa.C.S. § 8550.

---

## 2. Excessive Force, False Arrest, and Civil Rights Claims Are Not Barred

**(A)** *Pennsylvania Tort Law Exception for Willful Misconduct:*
The PSTCA's limited immunity does not shield individual police officers who commit **willful misconduct.** *See* **Renk v. City of Pittsburgh**, 641 A.2d 289, 293 (Pa. 1994) (false arrest and excessive force are willful misconduct and officers are personally liable).

Although the City generally cannot be held vicariously liable for intentional torts under § 8542, courts allow **civil rights claims under § 1983** to proceed directly against the City for **unconstitutional customs, policies, or practices,** or for **official tolerance of unlawful arrests or excessive force.**

---

**(B)** *Federal Civil Rights Claims Are Not Barred:*
The Complaint's factual allegations, if proven, support a claim for excessive force and unlawful seizure under 42 U.S.C. § 1983, which overrides municipal immunity under state law. *See* **Monell v. Dept. of Soc. Servs.**, 436 U.S. 658 (1978); *see also* **Renk**, 641 A.2d at 293 (PSTCA does not insulate municipalities from federal civil rights claims).

Plaintiff specifically alleges that **Philadelphia Police:**

Case ID: 250402123
Control No.: 25055176

- Tased him multiple times despite him being unarmed and nonviolent.

- Falsely arrested him on fabricated claims of trespass.

- Used force grossly disproportionate to any alleged resistance.

These facts, if accepted as true, state actionable federal civil rights violations. Any bar under the PSTCA does **not** defeat the **federal claims**, which stand independently and are enforceable against municipalities.

## 3. PRE-CONCLUSION:

### Dismissal Is Not Warranted

Therefore:

- **State tort claims** for intentional torts may be subject to PSTCA immunity *as to the City* (but not the individual officers, once named).

- **Federal civil rights claims** for excessive force, false arrest, and unreasonable seizure are **not barred**.

- At a minimum, the facts warrant discovery to determine whether a **Monell** claim applies to the City for failure to train, supervise, or discipline officers engaging in excessive force or false arrest.

If the Court finds any portion of the Complaint ambiguous, Plaintiff respectfully requests **leave to amend** to clarify the factual basis for the federal claims, add explicit **§ 1983 counts**, and name individual officers if necessary.

## PROPOSED ORDER

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

1. **Deny the City's Objections 16 & 17 in their entirety;**

Case ID: 250402123
Control No.: 25055176

2. Preserve Plaintiff's federal civil rights claims against the City;

3. Alternatively, grant Plaintiff **leave to amend** to clarify the legal theories and parties as needed.

## ADDITIONAL NEW MATTER / DEFENSE TO PRELIMINARY OBJECTIONS

Plaintiff asserts that Defendant City of Philadelphia failed to properly serve its Preliminary Objections as required by Pa.R.C.P. 440. Plaintiff did not receive any mailed or physical copy of the Objections and only discovered their existence through diligence by personally checking with the Office of Judicial Records on June 30, 2025. As a result, Plaintiff was prejudiced in preparing a timely and complete response.

Plaintiff therefore requests that the Court deny or strike the Preliminary Objections for lack of proper service or, in the alternative, grant Plaintiff leave to amend and any additional time and equitable relief the Court deems just.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court **deny the City of Philadelphia's Preliminary Objections in their entirety**, as Plaintiff's Complaint states well-pleaded facts which, if proven, support valid claims for violations of Plaintiff's rights under **42 U.S.C. § 1983**, for which municipal immunity does not apply.

In addition, Plaintiff respectfully notifies this Court that the City failed to properly serve its Preliminary Objections as required under **Pa.R.C.P. 440**, causing significant prejudice. Plaintiff only discovered the City's filing through his own diligence and would otherwise have been unaware and deprived of his right to respond within the required time.

**To the extent this Court finds any portion of the Complaint technically insufficient under Pa.R.C.P. 1019 or 1020, or finds that the City's Objections should not be stricken for lack of service, Plaintiff hereby formally demands leave to amend** the Complaint pursuant to Pa.R.C.P. 1033 to cure any defect, add clarifying counts, and ensure that this matter is adjudicated on its merits rather than dismissed on procedural grounds.

Case ID: 250402123
Control No.: 25055176

**WHEREFORE,** Plaintiff respectfully prays that this Court **overrule or strike** the City's Preliminary Objections, grant Plaintiff leave to file an Amended Complaint if needed, extend any deadlines as justice requires, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Philippe E. St Juste, Plaintiff (*Pro Se*)**

1227 Magee Ave, Philadelphia, PA 19111

917.937.6594

philippe.esai@gmail.com

**Date:** July 1st, 2025

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY – CIVIL TRIAL DIVISION

PHILIPPE E. ST JUSTE,
    *Plaintiff*
v.
CITY OF PHILADELPHIA, et al.,
    *Defendants*
    **No.** _____

---

## PLAINTIFF'S ANSWER AND MEMORANDUM OF LAW

IN OPPOSITION TO DEFENDANT CITY OF PHILADELPHIA'S MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY OBJECTIONS

---

**Plaintiff, Philippe E. St Juste, respectfully submits this Memorandum in Opposition:**

---

## I. MATTER BEFORE THE COURT

The City asks this Court to dismiss Plaintiff's Complaint under Pa.R.C.P. 1028(a)(4) for alleged legal insufficiency. The Court must decide whether, accepting all factual allegations as true, Plaintiff's Complaint sets forth any legally recognizable claim against the City.

---

## II. QUESTION INVOLVED

Whether Plaintiff's Complaint, liberally construed and with all well-pleaded facts taken as true, states a claim for which relief may be granted against the City?

*Suggested Answer: Yes.*

---

## III. COUNTERSTATEMENT OF FACTS

Defendant's Memorandum omits or distorts key allegations. The Complaint clearly alleges that:

- Plaintiff was a lawful customer at Chase, attempting to close an account and recover his own funds.

- After repeated obstruction by Chase employees, Plaintiff requested his money back and remained in the branch only to secure the return of his rightful deposits.

- City of Philadelphia police officers were called, arrived within minutes, escalated the situation, forcibly removed Plaintiff, used a taser multiple times despite Plaintiff being unarmed and nonviolent, arrested him, and detained him overnight.

- Plaintiff suffered clear physical injuries requiring ER treatment and extensive physical therapy.

- The alleged police conduct was unnecessary, unreasonable, and disproportionate to any alleged "refusal to leave."

- The false claim that Plaintiff "refused to leave" was contradicted by the Complaint's factual timeline, which shows that the Plaintiff simply insisted on retrieving his own money.

## IV. ARGUMENT

### A. Standard of Review

A demurrer should be sustained only if it appears with certainty that the law will not allow recovery under any facts that could be proved in support of the claim. *Neill v. Eberle*, 620 A.2d 673, 675 (Pa. Cmwlth. 1993).

When ruling on preliminary objections, the Court must accept as true all well-pleaded material allegations and reasonable inferences. *Rauch v. Mike-Mayer*, 783 A.2d 815, 820 (Pa. Super. Ct. 2001).

**B. Plaintiff's Complaint States Valid Claims Under Federal and State Law**

    1. **Civil Rights Claims for Excessive Force and False Arrest**

The Complaint clearly alleges that uniformed City police officers forcibly tased Plaintiff three times, handcuffed him, transported him, and detained him overnight without probable cause.

Under **42 U.S.C. § 1983**, a municipality is liable if a plaintiff's injuries were caused by:

- Official policy or custom (*Monell* liability); or

- Failure to train, supervise, or discipline officers engaged in constitutional violations.

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

The Complaint, liberally construed, supports a plausible *Monell* theory that City officers used objectively unreasonable force to arrest a peaceful, unarmed banking customer. This states a valid § 1983 excessive force claim under the Fourth Amendment and survives demurrer.

---

    2. **State Law Claims Not Barred Entirely**

The City correctly argues that the **Tort Claims Act** generally immunizes it from intentional torts like false arrest and false imprisonment. *See* 42 Pa.C.S. § 8541–8542.

However:

- Plaintiff's claims include **willful misconduct** by individual officers, who are not immune under § 8550.

- The Complaint pleads intentional, unreasonable force and an unlawful seizure — conduct that may remove immunity if shown to be willful misconduct by police.

- Plaintiff's factual allegations, if proven, show that the arrest lacked probable cause and that the force was excessive.

Case ID: 250402123
Control No.: 25055176

At a minimum, these facts justify discovery on whether an exception to immunity applies. *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994).

### 3. Breach of Contract and "Bad Faith"

Plaintiff clarifies that:

- The breach of contract claim applies to **JP Morgan Chase**, not the City.

- The Civil Cover Sheet's "bad faith" label was descriptive, not a separate tort claim against the City.

This technical issue does not support dismissal of the entire Complaint.

## C. Amendment is Proper if Needed

If the Court finds any part of the Complaint defective in form — e.g., lack of numbered counts or headings — Plaintiff respectfully requests **leave to amend** under **Pa.R.C.P. 1033** to separate each count, clarify legal theories, add individual officers, and explicitly plead *Monell* claims.

*Connor v. Allegheny Gen. Hosp.*, 501 Pa. 306 (1983) (courts should freely grant leave to amend to secure decision on the merits).

## V. PRE-CONCLUSION

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

1. **Deny Defendant's request to dismiss the Complaint in its entirety;**
2. Deny the City's Memorandum of Law and Preliminary Objections;
3. Alternatively, grant Plaintiff **leave to amend** to cure any technical defects; and
4. Direct the City to file an Answer on the merits.

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE CITY OF PHILADELPHIA'S MEMORANDUM OF LAW – ARGUMENT SECTION (IV)

Plaintiff, Philippe E. St Juste, respectfully submits this Opposition:

## I. INTRODUCTION

Defendant City of Philadelphia argues that Plaintiff's Complaint fails to state any claim against it because (1) the Complaint lacks clear headings or separate counts, (2) it fails to identify a contract with the City, (3) there is no stand-alone "bad faith" tort in Pennsylvania absent insurance context, and (4) the City is allegedly immune from any intentional tort claims.

The City's argument misstates the applicable pleading standard under the **Rules of Civil Procedure**, ignores controlling **federal civil rights law** (*42 U.S.C. § 1983*), and overlooks the liberal construction required for **pro se pleadings**.

## II. STANDARD OF REVIEW

**Preliminary objections in the nature of a demurrer** test the legal sufficiency of the complaint, not its ultimate merit. *Neill v. Eberle*, 620 A.2d 673, 675 (Pa. Cmwlth. 1993). A demurrer must be denied unless "it appears with certainty that the law will not permit recovery under the facts pleaded." *Id.*

All well-pleaded factual allegations and all inferences reasonably deducible must be accepted as true. *Rauch v. Mike-Mayer*, 783 A.2d 815, 820 (Pa. Super. Ct. 2001).

## III. PLAINTIFF'S FACTS AND CLAIMS STATE VALID CAUSES OF ACTION

### A. Plaintiff's Complaint Adequately States a § 1983 Civil Rights Claim

Case ID: 250402123
Control No.: 25055176

The City's argument ignores that the core allegations support a **federal civil rights claim for unreasonable seizure, excessive force, and false arrest**, actionable under 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**Key facts pleaded:**

- Philadelphia police used objectively excessive force (multiple tasings) to arrest Plaintiff for alleged trespass while he sought to recover his own funds from Chase.

- The force was unreasonable in scope and manner.

- Plaintiff was detained and injured without probable cause.

Accepting these facts as true, the Complaint pleads a direct violation of Plaintiff's **Fourth and Fourteenth Amendment rights**, actionable under *Monell*. The City may be liable for:

1. Maintaining customs or policies that tolerate excessive force;

2. Failing to train or supervise officers properly; or

3. Failing to discipline officers engaged in misconduct.

These allegations are sufficient at this stage to put the City on notice of the constitutional theory. *Connor v. Allegheny Gen. Hosp.*, 501 Pa. 306 (1983) (pleadings should be liberally construed).

---

**B. The "Breach of Contract" Claim Does Not Apply to the City**

Plaintiff clarifies that any **breach of contract** claim in Paragraph 11 is directed at **Defendant JPMorgan Chase**, not the City. Plaintiff agrees that no contractual relationship is alleged with the City.

Therefore, this point does not support dismissing claims for **constitutional violations**.

---

**C. The "Bad Faith" Label is Not a Separate Standalone Tort**

Case ID: 250402123
Control No.: 25055176

Plaintiff does not assert a common-law "bad faith" tort claim against the City. The Civil Cover Sheet's label merely described the conduct. The actual facts plead civil rights and intentional misconduct, not an insurance bad faith claim.

This is not grounds for total dismissal.

## D. Pennsylvania Tort Claims Act Does Not Immunize § 1983 Federal Claims

The City is correct that under 42 Pa.C.S. §§ 8541–8542, it enjoys broad immunity from intentional torts such as false arrest. However:

- **§ 1983 federal civil rights claims are NOT barred** by the Pennsylvania Tort Claims Act. *Monell*, 436 U.S. 658; *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994) (officers are not immune from personal liability for willful misconduct).

- Municipal immunity does not preempt constitutional claims for excessive force and unreasonable seizure.

- The same factual allegations that establish excessive force support **willful misconduct**, which, under § 8550, strips immunity from individual officers and supports *Monell* liability for the City if custom, practice, or failure to train is shown.

Discovery is needed to clarify these issues, not dismissal.

## IV. THE COMPLAINT SATISFIES RULES 1019 AND 1020

The City's technical argument about missing counts or headings does not support dismissal. Pennsylvania courts prefer decisions on the merits. *Connor v. Allegheny Gen. Hosp.*, 501 Pa. 306 (1983).

If needed, Plaintiff requests leave to amend under Pa.R.C.P. 1033 to:

- Add clear separate counts: *Count I – Excessive Force (§ 1983)*; *Count II – False Arrest (§ 1983)*; *Count III – Monell Claim against the City*;

Case ID: 250402123
Control No.: 25055176

- Name any involved officers as John Does if their identities are not yet known;

- Withdraw any mistaken contract claim against the City.

---

## V. PRE-CONCLUSION

**WHEREFORE,** Plaintiff respectfully requests that the Court:

1. **Deny** the City's Motion for Dismissal in its entirety;

2. Permit the Complaint to proceed at minimum on Plaintiff's civil rights claims under **42 U.S.C. § 1983;**

3. Grant leave to amend to cure any technical defects if the Court deems necessary.

## ADDITIONAL PROCEDURAL FACTS REGARDING SERVICE OF THE CITY'S PRELIMINARY OBJECTIONS

Plaintiff respectfully brings to the Court's attention that although the original Complaint was filed on **April 16, 2025,** the City has represented that it was not served until **May 7, 2025.** The City then filed its Preliminary Objections electronically on **June 12, 2025.** However, **Plaintiff was never formally served with a physical copy of the City's Preliminary Objections by mail or otherwise,** as required by the Pennsylvania Rules of Civil Procedure.

Had Plaintiff not exercised diligence by independently inquiring with the **Office of Judicial Records** on **June 30, 2025,** he would have remained unaware that the City had responded at all and would have risked missing the limited window to respond under **Pa.R.C.P. 1026 and 1028(c).** Plaintiff, entirely unaware of the City's filing, even mailed a **Notice of Praecipe** to the City in good faith, demonstrating Plaintiff's clear intent to proceed and comply with procedural obligations.

The Office of Judicial Records confirmed directly to Plaintiff that the City **never mailed or otherwise served its filing** on Plaintiff as required by **Pa.R.C.P. 440,** which mandates proper service of legal papers on self-represented parties. This failure to serve prejudiced Plaintiff's ability to timely prepare his response and is grounds for denying or striking the City's Objections altogether, or at minimum, for weighing any procedural argument against the City's position.

## CONCLUSION

For the foregoing reasons, Plaintiff Philippe E. St. Juste respectfully requests that this Honorable Court **deny** the City of Philadelphia's Preliminary Objections in their entirety. Plaintiff's Complaint sets forth well-pleaded factual allegations that, when accepted as true, demonstrate a plausible claim for relief against the City under **42 U.S.C. § 1983** and related constitutional and civil rights grounds, for which governmental immunity does not bar recovery.

Further, Plaintiff respectfully brings to the Court's attention that the City failed to properly serve its Preliminary Objections as required by **Pa.R.C.P. 440,** and Plaintiff only became aware of the filing through his own vigilance. Had Plaintiff not checked with the Office of Judicial Records, he would have been deprived of notice and prejudiced in his right to respond. This failure alone warrants denying or striking the City's Objections, or at a minimum, weighs strongly in equity against dismissal at this stage.

In the alternative, and to the extent the Court finds any portion of the Complaint to be insufficiently pleaded, procedurally defective, or lacking in specificity, **Plaintiff expressly and unequivocally requests leave of Court to amend the Complaint pursuant to Pa. R.C.P. 1033 and applicable case law.** Plaintiff asserts this request in good faith and stands fully prepared to amend the pleadings to cure any alleged deficiency or to clarify any factual or legal claims as directed by the Court. Plaintiff has attached to his response the amended complaint marked as Exhibit I.

Accordingly, Plaintiff respectfully requests that this matter be permitted to proceed on the merits, and that the Court grant any additional relief it deems just and proper.

Plaintiff stands ready to provide further documentation or clarification as this Court may require and respectfully urges the Court to permit this matter to proceed on the merits.

**Respectfully submitted,**

_____

**Philippe E. St Juste, Plaintiff (_Pro Se_)**
1227 Magee Ave, Philadelphia, PA 19111

917.937.6594

philippe.esai@gmail.com

**Date:** July 1st, 2025

Case ID: 250402123
Control No.: 25055176

## TABLE OF CONTENTS – EXHIBITS

**Exhibit     Title / Description**

**I          Amended Complaint**

**Supporting Exhibits – Table 1**

| Exhibit | Description |
| --- | --- |
| A | Documents obtained on or after April 5, 2023, presented at Plaintiff's April 14 visit to Chase branch at 1100 Market Street |
| B | Additional documents presented during Plaintiff's April 14 visit to 1100 Market Street |
| C | Continued documentation related to account verification provided on April 14 |
| D | Final set of documents submitted at the April 14 branch visit |
| E | Seven checks made out to Marie F. Verdieu and Plaintiff |
| F | Excel sheet (redacted) showing money received (checks & cash minus expenses) at Plaintiff's mother's funeral |
| G | Screenshot of homepage message from Chase Mobile during Plaintiff's login attempt |
| H | Google Maps tracking of Plaintiff's visits to Chase branches at Fulton Street and Myrtle Avenue (April 10–11, 2023), and 1100 Market Street (April 5 and 14) |
| I | Call logs showing various calls between Plaintiff and Chase on April 14, 2023 |
| J | Photographic evidence of taser injuries sustained by Plaintiff |
| K | Emergency Room records from Albert Einstein Medical Center and Penn Medicine regarding Plaintiff's injuries |
| L | Copy of police report including branch manager's description of Plaintiff, noting irrelevant reference to Plaintiff's accent |
| M | Plaintiff's arrest documentation |

Case ID: 250402123
Control No.: 25055176

N        Physical therapy report relating to Plaintiff's post-arrest injuries

**Exhibit**              **Title / Description**

**II**        **Defendants' Response / Preliminary Objections**

Case ID: 250402123
Control No.: 25055176

Exhibit I

Case ID: 250402123
Control No.: 25055176

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

PHILIPPE E. ST JUSTE,
Plaintiff,
v.
JP MORGAN CHASE BANK, N.A., and
CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,
Defendants.

Civil Action No.: 250402123

COMPLAINT

Plaintiff, Philippe E. St Juste, by and through his undersigned counsel, for his Complaint against Defendants JP Morgan Chase Bank, N.A. ("Chase") and the City of Philadelphia, Office of Risk Management ("City"), alleges as follows:

## PARTIES

1. Plaintiff Philippe E. St Juste is an adult individual residing in Philadelphia County, Pennsylvania.
2. Defendant JP Morgan Chase Bank, N.A., is a national banking association headquartered in New York, doing business at various locations including 1100 Market Street, Philadelphia, PA 19107.
3. Defendant City of Philadelphia, Office of Risk Management, is a governmental entity located at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102, responsible for overseeing claims and liabilities involving the City and its officers.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 42 Pa. C.S.A. § 931 because the matter exceeds the jurisdictional limit of arbitration.
5. Venue is proper in Philadelphia County pursuant to Pa.R.C.P. 1006 because the transaction occurred in Philadelphia and Defendants maintain offices within the county.

Case ID: 250402123
Control No.: 25055176

FACTUAL ALLEGATIONS

6.  On April 5, 2023, Plaintiff visited the Chase branch at 1100 Market Street in Philadelphia with his aunt to open a joint checking account for the purpose of managing his late mother's estate. Plaintiff and his aunt met with Qingmei Qing aka Cecilia Qing who served as the banker in the transaction. (*See Exhibits A, B, C, D*)

7.  Plaintiff deposited $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in 7 checks received from various family members and friends, all of which are redacted in a family google sheet document. Plaintiff deposited 2 of the checks through Chase Mobile as advised by Qing and handed the rest cash and check to Michael. (*See Exhibits E and F*)

8.  April 7th, 2023, Plaintiff was locked out of his personal and joint Chase accounts with the following message:" We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt. (*See Exhibit G*)

9.  On Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY where he spoke to Penny and a Chase phone representative. Plaintiff was reassured that his accounts would be reinstated and accessible within 24 hrs. On Tuesday 11th, the accounts were still blocked. Plaintiff visited the Chase Branch at 402 Myrtle Ave, Brooklyn, NY at 10:42 am where he spoke to Tevin Campbell and a second Chase phone representative. Plaintiff provided the phone numbers to 2 checks issuers: Marie Alberte Pierre and Sister Giselle, treasurer for Premiere Eglise Methodiste Unie as demanded by the phone officer. Tevin Campbell told the plaintiff the matter would be resolved before the end of business day. (*See Exhibit H)*

10. On Friday 14th, the plaintiff's mobile account was still locked. The plaintiff called Chase and spoke to 3 Chase representatives. The Chase phone supervisor asked for phone numbers for all check issuers. The plaintiff provided all phone numbers. Chase's phone supervisor refused to accept the phone number for Marie Guerrier. Chase phone supervisor said Marie Guerrier would need to visit a Chase Branch to resolve the matter. Marie Guerrier is mobility impaired. Despite Plaintiff's continuous cooperation and repeated visits and calls to various Chase branches, his accounts remained frozen.
    ( *See Exhibit I*)

11. On April 14, 2023, Plaintiff returned to the 1100 Market St. branch to close the accounts and withdraw funds. Plaintiff met with Jeison Brito who told the plaintiff there was no need to close his account and that he would help him resolve the matter. After waiting over two hours, Plaintiff was told he could not access his money without further verification from check issuer

Case ID: 250402123
Control No.: 25055176

Marie Guerrier who was elderly and infirmed.

( *See Exhibit H*)

12. When Plaintiff refused to leave without his funds, bank vice president, Mecca Abdullah, summoned law enforcement, resulting in Plaintiff being forcibly removed, tased multiple times, and arrested.

13. Plaintiff was detained overnight for 14 hrs, denied medical attention for injuries sustained from the taser even after requesting medical care 8 times, and released the following morning without seeing a judge or an attorney.

14. Plaintiff suffered physical and emotional injuries, lost access to vital funds for personal and familial obligations, and was subjected to humiliating and discriminatory treatment. (*See Exhibit J*)

15. The criminal matter was later withdrawn after Chase failed to provide necessary discovery or attend court proceedings.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

*(Against Defendant JP Morgan Chase Bank, N.A.)*

16. Plaintiff had an ongoing customer relationship with Chase since 2007.

17. A contractual relationship existed between Plaintiff and Chase. Plaintiff fulfilled all obligations by providing valid identification, depositing funds, and cooperating in verification.

18. Chase accepted Plaintiff's deposit and opened the account but subsequently froze access without proper cause, violating the implied covenant of good faith and fair dealing. (*See Exhibit D*)

19. Chase's actions caused Plaintiff financial harm and prevented him from managing his mother's estate and other critical obligations.
    See: *Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992).
    See: *Slusser v. Allentown Bank*, 868 A.2d 547 (Pa. Super. Ct. 2005).

### COUNT II – UNLAWFUL DISCRIMINATION IN PUBLIC ACCOMMODATION

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1981, Pennsylvania Human Relations Act (PHRA)*

Case ID: 250402123
Control No.: 25055176

20. Chase subjected Plaintiff to excessive scrutiny not applied to similarly situated customers, based on race and national origin, as evidenced by the pattern of unreasonable demands and refusal to resolve the matter despite verification.

21. Upon information and belief, the Chase branch manager, in her communication with police and/or in the official incident report, made reference to Plaintiff's Haitian accent—a fact wholly irrelevant to the events in question. The inclusion of this detail suggests that Plaintiff's national origin played an impermissible role in the treatment he received, and reflects a discriminatory animus inconsistent with the equal treatment obligations imposed by 42 U.S.C. § 1981 and related civil rights protections. (*See Exhibit L*)

22. The escalation of scrutiny and eventual use of force and law enforcement to remove Plaintiff from the bank, despite his lawful presence and peaceful demeanor, was motivated in substantial part by racial animus or by conduct having a discriminatory effect based on Plaintiff's race, color, and ethnic origin.

23. Such actions denied Plaintiff the full and equal enjoyment of services offered to the public.
    *Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count.
    See: *Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001).

## COUNT III – FALSE ARREST AND IMPRISONMENT

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 and Pennsylvania Common Law*

24. Plaintiff was lawfully present at the bank to conduct financial business and posed no threat.

25. Defendants' agents unlawfully detained, tased, and arrested Plaintiff without probable cause or a warrant. See *Renk v. City of Pittsburgh*, 537 Pa. 68 (1994).

26. Plaintiff was held overnight in jail and denied access to counsel or medical care, in violation of his constitutional rights.
    *Howlett v. Rose*, 496 U.S. 356 (1990) supports the plaintiff's right to this count.
    See *Monell v. Department of Social Services*, 436 U.S. 658 (1978)

## COUNT IV– CONSPIRACY TO DEPRIVE CIVIL RIGHTS

*(Against Defendant JP Morgan Chase Bank, N.A.)*
*42 U.S.C. § 1985(3)*

27. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 15 of this Complaint.

Case ID: 250402123
Control No.: 25055176

28. Defendants, including employees of JPMorgan Chase and members of the Philadelphia Police Department, entered into a conspiracy, explicitly or implicitly, to deprive Plaintiff of the equal protection of the laws and/or equal privileges and immunities under the law.

29. The conspiracy was motivated by discriminatory animus toward Plaintiff as a Black individual of Haitian descent and resulted in the denial of banking services and the use of unjustified force by police.

30. The acts taken in furtherance of this conspiracy, including false police reports, refusal to process lawful account access, and the orchestration of Plaintiff's arrest, directly caused injury to Plaintiff in violation of *42 U.S.C. § 1985(3)*

## COUNT V – EXCESSIVE FORCE

*(Against Defendant City of Philadelphia)*
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendments*

31. The use of a taser multiple times on a non-resisting individual constituted excessive force. See *Graham v. Connor*, 490 U.S. 386 (1989).

32. Officers failed to de-escalate the situation or consider Plaintiff's reasonable attempts to resolve the issue peacefully.

33. Plaintiff sustained lasting physical and emotional injuries as a result. (*See Exhibit G*)

## COUNT VI – NEGLIGENCE

*(Against JP Morgan Chase and City of Philadelphia)*

34. Both Defendants owed a duty of care to Plaintiff.

35. Defendant Chase negligently mishandled Plaintiff's account and improperly escalated a non-violent banking dispute to law enforcement.

36. The City of Philadelphia negligently trained, supervised, and retained officers who used excessive force and failed to provide necessary medical attention.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against JP Morgan Chase and City of Philadelphia)*

37. Defendants' conduct—public tasing, wrongful detention, and discriminatory treatment—was extreme, outrageous, and intended to cause, or recklessly disregarded the risk of causing, severe emotional distress.

38. Defendants engaged in extreme and outrageous conduct by freezing Plaintiff's accounts during a period of grief, wrongfully involving law enforcement, and allowing excessive use of force.

39. Plaintiff has suffered anxiety, humiliation, sleeplessness, and emotional trauma requiring ongoing therapy and support. See *Hoy v. Angelone*, 554 Pa. 134 (1998).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Award compensatory damages in the amount of $10,428,000.00;

b. Award punitive damages where applicable;

c. Award reasonable attorney's fees and costs;

d. Grant pre- and post-judgment interest;

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Philippe E St Juste

1227 Magee Ave, Philadelphia, PA 19111

917.937.6594

philippe.esai@gmail.com

**Supporting Exhibits – Table 1**

*(Exhibit A, B, C, D showing documents obtained on or after April 5th, presented at the plaintiff's April 14th visit to 1100 Market street)*

Case ID: 250402123
Control No.: 25055176

*Exhibit A*

 W E L C O M E   T O   A   B E T T E R   B A N K I N G   E X P E R I E N C E

## ACCOUNT SUMMARY FOR PHILIPPE ST JUSTE

### CONTACT INFORMATION

| | |
|---|---|
| **Address:** | 180 LENOX RD<br>APT 5M<br>BROOKLYN, NY 11226-2424 |
| **Email Address:** | p.e.stjust@gmail.com |

### WHAT WE DID TODAY

**Chase Total Checking®** (account number 939717226)
- For complete details on your account, refer to the documents you received today
- If you chose to receive your account-opening documents **electronically:**
  - Sign in to the Chase Mobile® app or chase.com within 4 business days. Then we'll know not to mail you the account opening documents.
- You can find the electronic versions under Statements & documents and selecting Branch Documents on chase.com.
- If you ordered checks, standard shipping is 11-14 days unless you requested expedited shipping; use your starter checks in the meantime
- Your deposit account ending in 7226 will have its own statement.

**Disney's Visa® Debit Card - "Mickey"** (account number 939717226)
- **No annual fee**
- If you received a card today, you can use it right away; if you did not receive your personalized card it will be mailed in a plain white envelope which you should receive in 7-10 days; activate right away by following instructions on the card
- Enjoy year-round Cardmember perks from Disney
- Your deposit account ending in 7226 will have its own statement.

**Technology designed for you**

**Check out all our innovative services at chase.com/MyChase**

Customer Initials

*Important: This document contains confidential information including your account number. Please safeguard this document as you would a checkbook, credit card or debit card. For more information on how to protect your identity and your accounts, visit www.chase.com/identitytheft . The Deposit Account Agreement and other disclosures provided at account opening or included with your debit/credit card govern your agreement with the bank, and outline the terms & conditions associated with the products/services listed.*

| **Personal Banker:** | QINGMEI QING<br>11th St and Market St<br>(215) 430-5759 | **Date:** | 04/05/2023 |
|---|---|---|---|

Deposit products provided by JPMorgan Chase Bank, N.A. Member FDIC

Case ID: 250402123<br>Control No.: 25055176

P.O. BOX 9040
COPPELL TX 75019

*Exhibit B*

# CHASE ◯

Enclosed Card Ending In: 7786          Card Expiration Date: 05/28          This card accesses the primary
accounts listed below:
CHKG ***********7226

|ı|••ıı||ıı••ı||ıı|•||ı|ı||•ı||||||ıı|••••ı|||ı|ı•ı|

Customer Service: 1-877-388-5726

PHILIPPE ST JUSTE
1227 MAGEE AVE
PHILADELPHIA PA 1911149410

03155
044124

04062023 515 0141 0013  6120 RCM307 RF0008 RB0000  N WHT 900

# Your new Disney® Visa® Debit Card is here!



4347 6903 4394 7786

05/28

PHILIPPE ST JUSTE

## *Activate your card today*

and enjoy year-round Cardmember
perks. Visit DisneyDebit.com for
complete details.

**For your protection, this card cannot be
used until it has been <u>activated</u>.**

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase
may share information about you and your Disney Visa Debit Card account, including
your card transactions, with Disney Credit Card Services, Inc. and each of its affiliates
for their respective use thereof as permitted by applicable law.

**To activate your card, perform any ATM transaction using your PIN or call 1-877-388-5726.**
*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

## *Use your card to make purchases*

in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash
> Make secure deposits and get an image
  of your check printed right on your receipt
  (at select Chase ATMs)

> Check your balance
> See your recent transactions
> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.¹**

*find more ways to simplify your banking at* **chase.com/MyChase**

*Please see back to learn more about your Disney Debit Card*

Case ID: 250402183
Control No.: 25055176

P.O. BOX 9040
COPPELL TX 75019

*Exhibit C*

# CHASE ⬡

Enclosed Card Ending In: 7802

Card Expiration Date: 05/28

This card accesses the primary
accounts listed below:
CHKG ***********7226

MARIE F VERDIEU
1227 MAGEE AVE
PHILADELPHIA PA 1911149410

03435
039404

Customer Service: 1-877-388-5726

04062023 515 0126 0012  0606 RCM307 RF0008 RB0000  N WHT 900

# Your new Disney® Visa® Debit Card is here!



## *Activate your card today*

and enjoy year-round Cardmember
perks. Visit DisneyDebit.com for
complete details.

**For your protection, this card cannot be
used until it has been <u>activated</u>.**

By using your Disney Visa Debit Card or authorizing its use, you agree that Chase
may share information about you and your Disney Visa Debit Card account, including
your card transactions, with Disney Credit Card Services, Inc., and each of its affiliates
for their respective use thereof as permitted by applicable law.

To activate your card, perform any ATM transaction using your PIN or call **1-877-388-5726.**

*Este documento contiene información importante de la cuenta.*
*Si tiene alguna pregunta o necesita ayuda para traducirlo, por favor llame al 1-877-388-5726.*

## *Use your card to make purchases*

in stores and online and enjoy access to our Chase ATMs:

> Withdraw cash

> Make secure deposits and get an image
of your check printed right on your receipt
(at select Chase ATMs)

> Check your balance

> See your recent transactions

> Transfer funds

**Plus, for 24/7 banking at your fingertips, download our Chase Mobile® app.¹**

*Find more ways to simplify your banking at* **chase.com/MyChase**

*Please see back to learn more about your Disney Debit Card* ▶

Case ID: 250402123
Control No.: 25055176

# CHASE 

## Thank you for choosing Chase.

If you need to order checks, please visit Chase.com

*Exhibit D*

Para hablar con un especialista de servicio de atención al cliente en español, por favor llame al 877-312-4273.

**Please keep this ID card in a safe place.**

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

---

**Routing Number**
083000137
**Your Account Number**
939717226

**Please keep this ID card in a safe place.**

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

---

**Routing Number**
083000137
**Your Account Number**
939717226

---

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN, NY 11226-2424

97

DATE

PAY TO THE ORDER OF $

DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆083000137⑆ 939717226⑈ 0097

---

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN, NY 11226-2424

98

DATE

PAY TO THE ORDER OF $

DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆083000137⑆ 939717226⑈ 0098

---

PHILIPPE ST JUSTE 04-23
MARIE F VERDIEU
180 LENOX RD
BROOKLYN, NY 11226-2424

99

DATE

PAY TO THE ORDER OF $

DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑆083000137⑆ 939717226⑈ 0099

---

DEPOSIT TICKET    ☑ CASH ▶

DATE
*DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL*

TOTAL FROM OTHER SIDE ▶

SUB TOTAL ▶

SIGN HERE FOR CASH RECEIVED (IF REQUIRED) ★    ★ LESS CASH RECEIVED ▶

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

$

⑆503401025⑆ 939717226⑈

F67

Case ID: 250402123
Control No.: 25055176

*(Exhibit E showing the 7 checks made out to Marie F Verdieu & the plaintiff)*



Case ID: 250402123
Control No.: 25055176

*(Exhibit F showing the money received [checks & cash minus expenses] at the plaintiff mother's funeral redacted in an excel sheet)*

| Name | Value | Method | Status | Remaining | Received | |
|---|---|---|---|---|---|---|
| Huguette Antoine | 500 | Zelle | | 500 | | Margael |
| Myrlande Jean-Philippe | 250 | Zelle | | 250 | | Margael |
| Furdine Verneret | 200 | Zelle | | 200 | | Christie |
| Amos Saint Juste | 1100 | Cash | | 1100 | | Philippe |
| Rita Figareau | 280 | Flower purchase | -280 | | | Philippe |
| Shekina SDA | 400 | Check | -400 | | | Margael |
| Shekina SDA | 500 | Check | | 500 | 500 | Margael |
| Shekina SDA | 250 | Flower purchase | -250 | | | Margael |
| Frere Guerrier | 300 | Food services | -300 | | | Philippe |
| Jenny Laguerre | | | | | | Philippe |
| Soeur Cecile | 300 | Food services | -300 | | | Margael |
| Jean & Joceline Baudoin | 300 | Food services | -300 | | | |
| Edwin Edouard | 100 | Check | | 100 | | Philippe |
| Marie Renee Luxama | 200 | Cash to Matante Marie | | 200 | 200 | Margael |
| Nancy Jean-Pierre | 100 | Cash to Matante Marie | | 100 | 100 | |
| Premier Eglise Methodist Unie | 500 | Check to Matante Marie | | 500 | 500 | Margael |
| Solange Casseus | 100 | Cash to Matante Marie | | 100 | 100 | |
| Antonio Laborde | 100 | Cash to Matante Marie | | 100 | 100 | |
| Yanick Lambert Dauphin | 100 | Cash | | 100 | 100 | |
| Frere Mannassé | 500 | Cash to Matante Marie | | 500 | 500 | Margael |
| Promotion Ecole des Infirmieres 1 | 2168 | Cash | | 2168 | 2168 | Margael |
| Agnes Francois Lachaud | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Resia & Sylvio Dume | 100 | Cash | | 100 | 100 | |
| Louines Chapron | 200 | Check to Matante Marie | | 200 | 200 | Margael |
| Anne & Renand Rochelin | 400 | Cash | | 400 | 400 | Margael |
| Katie Volmar & Barbara | 300 | Cash | | 300 | 300 | |
| Danise Jeune | 150 | Cash | | 150 | 150 | |
| Myrlande Thelusma | 150 | Cash | | 150 | 150 | Margael |
| Fito Adonis | 400 | Cash | | 400 | 400 | Margael |
| Marie Alberte & Alain Pierre | 500 | Check | | 500 | 500 | Margael |
| Gladys Joseph & Sonia Joseph | 200 | Cash | | 200 | 200 | |
| Mona & Marc Belizaire | 150 | Cash | | 150 | 150 | |
| Marie Edithe Gu (Chouchou) | 200 | Check | | 200 | 200 | Margael |
| Micheline Bertin | 100 | Cash | | 100 | 100 | |
| Lisette & Guetty Thelusma | 200 | Cash to Matante Marie | | 200 | 200 | Margael |
| Bon Samaritain | 100 | Cash to Matante Marie | | 100 | 100 | |
| Huguette Antoine | 100 | Zelle to Matante Marie | | 100 | | Margael |
| Groupe des Dames | 550 | Cash to Matante Marie | | 550 | 550 | Margael |
| Miss Camille | 200 | Cash | | 200 | 200 | Margael |
| Ginette & Denise Badou | 500 | Cash | | 500 | 500 | Margael |
| Marie Lourdes Joseph | 300 | Check | | 300 | 300 | Margael |
| Flambert Cousseillant | 200 | Cash | | 200 | 200 | Margael |
| Tom Jacquet | 360 | Cash | | 360 | 360 | Margael |
| Rose Adrien | 1000 | Cash | | 1000 | 1000 | |
| Rosemene Gedeon | | | | | | |
| Ashton Chevalier | | | | | | |
| Stephanie Sejour | | | | | | |
| Caleb Pierre | | | | | | Margael |
| Total | | | | 10428 | 10728 | |
| | 12978 | | | | | |

*(Exhibit G showing homepage message from Chase Mobile when the plaintiff attempted to log into his Chase Mobile account)*



*(Exhibit H showing Google Maps tracking of plaintiff visit to Fulton Street and Myrtle Ave Chase Branches on April 10th and 11th, 2023 and 1100 Market on April 5th and 14th)*



Case ID: 250402123
Control No.: 25055176

*(Exhibit I showing the various calls made between the plaintiff and Chase on Friday April 14th)*



*(Exhibit J showing the taser injuries sustained by the plaintiff)*



*(Exhibit K showing the Emergency Room reports from Albert Einstein Medical Center and Penn Medicine of plaintiffs injuries)*



*Exhibit K*



**Patient Name**
ST JUSTE, PHILIPPE
**Date of Birth**
5/28/1989
**Visit Location Information**
**Albert Einstein Medical Center**
**5501 Old York Road**
**Philadelphia, PA, 19141**
**(215) 456-7890**
**Fax: (215) 455-1933**

MRN: 100515147
FIN: 44470577
Location: Albert Einstein Medical
Center
Registration Date and
Time: 04/18/2023 19:45 EDT
Primary Care Physician:
None, None

Einstein Healthcare Network thanks you for trusting us with your healthcare needs. The following includes patient education materials and information regarding your injury/illness. Please take these Discharge Instructions and all of your medications to your follow-up appointments.

## Patient Discharge Instructions

**ED Attending Provider:**
**ED Resident/NP/PA:**
MacArthur, Patrick
**Primary Care Provider:**
None, None

**Your Diagnosis**
Cough

Back strain

Taser injury

Back injury

Your exam and treatment during this visit were done for an urgent reason. This visit does not replace complete and regular care from your family doctor.
Please return if needed. It is important to also follow-up with your family doctor or clinic when possible. We are here to help you during times of emergency need.

**Discharge Vitals**
**Temperature** (Oral)
36.6 °C

**Heart Rate** (Monitored)
76

**Respiratory Rate**
18

**Blood Pressure**
126/69

**SpO2**
96%

**Weight**
75 kg

**Please Call to Schedule these Appointments**

| With | When | Contact Information |
|---|---|---|
| Healthcare Center #10 21 5-685-0603 | | |
| Additional Instructions: | | |
| None, None | Within 3 to 5 days | |
| Additional Instructions: Call for followup appointment | | |

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123
Control No.: 25055176

UGUSTE, PHILIPPE - 100515147 -
N: 44470577

ED Patient Discharge Instructions



# Allergies and Medications

**Allergies**
No Known Medication Allergies

These are the lists of medications that you should **TAKE** or **STOP** after you leave the hospital.
If you have questions about these medication instructions or intend to take other medications that you have at home, please discuss this with your physician.

**Medications**

| | What | How Much | When | Instructions | Next Dose |
|---|---|---|---|---|---|
| *New* | bacitracin topical (bacitracin zinc 500 units/ g topical ointment) | 1 Application Topical | Twice a day | Duration: 7 Days Printed Prescription | |
| *New* | ibuprofen (ibuprofen 600 mg oral tablet) | 1 Tabs Oral | Every 6 hours | Duration: 5 Days Printed Prescription | |
| *New* | lidocaine topical (lidocaine 5% topical film) | 1 Patches Topical | At bedtime | Duration: 7 Days remove patches after 12 hours<br><br>Printed Prescription | |

**Safe Medication Use Starts with YOU!**

- Keep an up-to-date list of all the medications you take and carry it with you.
- Make sure your list includes both prescription and over-the-counter medications or supplements with how much you take and when you take them.
- Update your list whenever changes are made to your medications.
- Share your medication list every time you see your doctor, nurse, pharmacist or other healthcare provider.

# What To Do Next

**Instructions from your Doctor**

You were seen in the ED for evaluation of your taser injury to your skin and the muscles underneath, you also had a cough.  We tested you for flu and COVID and you should get those results tomorrow, in the meantime your skin looks uninfected and your pain is most likely due to muscle strain caused by the electricity from the taser, this should get better over the next week and in the meantime take ibuprofen, stretch the area, and apply heat as needed.  Please make appointment to follow-up with your primary care doctor in the next few days to a week for reevaluation of your injuries, and if you start developing

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123
Control No.: 25055176

STE, PHILIPPE - 100515147 -
4470577

ED Patient Discharge Instructions



fevers, difficulty breathing, significant darkening of your urine, or any other concerning symptoms, please come back into the ED for evaluation.  Otherwise please follow-up with your primary care doctor, take the medications as prescribed, rest and recover.

## Tests This Visit

All **electrocardiogram (EKG)** and radiology studies done in the Emergency Department are reviewed by a heart doctor (cardiologist) and/or x-ray doctor (radiologist). If there is new information after the review, you or your doctor will be contacted by phone or letter.

**HIV & Hepatitis C Screening is Important for Everyone.** If you were tested for HIV or Hepatitis C during your visit today, results will be available within a few business days. If the results are positive, you will be contacted by staff with the result, information, and referral for treatment. Both conditions are easily and effectively treated at Einstein.

If you were not tested and would like to be tested, contact your primary care physician.

To inquire about HIV test results, you may leave a message at the confidential Patient Test Result line at 215-456-7568. To inquire about Hepatitis C test results, you may leave a message at confidential Hepatitis C line at 215-456-5729. You will receive a call back within 24 hours or on the next business day. Results will not be given out or left as a voice mail message.

## Immunizations This Visit

## Your Medical History

Printed on: 04/18/2023 22:05 EDT

Case ID: 250402123
Control No.: 25055176

# AFTER VISIT SUMMARY


Penn Medicine

**Philippe St Juste** DoB: 5/28/1989    📅 4/22/2023   📍 PAH Emergency Department 215-829-3358

## Instructions

Your personalized instructions can be found at the end of this document.

 **Read the attached information**
1. Cough (English)
2. Back: Strain (English)

 **Call Wood Clinic Resident**
Specialty: Family Medicine

## Today's Visit

Your Treatment team today included: Jenice Leticia Baker, MD

**Diagnoses**
- Cough
- Low back sprain

 **Imaging Tests**
XR CHEST 2 VIEWS

 **Medications Given**
ibuprofen Last given at 11:19 AM

 **Blood Pressure**
136/80

🌡 **Temperature (Oral)**
98.2 °F

**Pulse**
78

 **Respiration**
16

 **Oxygen Saturation**
100%

## What's Next

You currently have no upcoming appointments scheduled.

## Assistance for future appointments

For assistance with scheduling a follow-up appointment with a Penn Medicine physician, please call 215-829-3383 and indicate that you were seen in the Emergency Department.

Philippe St Juste (MRN: 475235909) (CSN: 352843486) • Printed at 4/22/2023 11:46 AM

Case ID: 25045213
Control No.: 25055176

*(Exhibit L showing the branch manager description of the plaintiff)*

| Philadelphia Police Department Central Detective Division Investigation Interview Record | | | | Case No: 23- | |
| --- | --- | --- | --- | --- | --- |
| | | | | Interviewer Det McCaffery # 980 | |
| Name: **Mecca Abdullah** | | Age: **32** | Race: **Black** | Sex: **Female** | Dob: **11/16/1990** |
| Address: **1100 Market St** | | City: **Philadelphia** | State: **PA** | Zip Code: **19121** | Phone Number: **215 430 5769** |
| Name of Employer School **Chase Bank** | | | Soc. Sec. No. | | Cellular Phone Number: |
| Address of Employer School | | | Department: | | Work Phone Number: |
| Name of Closest Relative: | | | Address of Relative: | | Phone Number: |
| Place of Interview: **Central Detectives** | | | Date of Interview: **4/14/2023** | | Time of Interview: **6:30 pm** |
| We are questioning you concerning: **A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm** | | | | | |

Q. I am Detective McCaffery. Can you tell me what happened today?

  A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.

Q. Do you know the clients name?

  A. Phillippe St Juste.

Q. Can you describe the male?

  A. He was a tall black male, slender. About 6'3". He had an accent.

Q. How many times was he asked to leave?

  A. He was asked to leave about 10 times over the course of an hour.

Q. What is your position at the bank?

  A. I am the branch manager.

  Q. Is there anything else that you would like to add to this interview?

    A. No

Case ID: 250402123
Control No.: 25055176

*(Exhibit M showing plaintiff arrest documentation)*

Case ID: 250402123
Control No.: 25055176

**PHILADELPHIA MUNICIPAL COURT**

NON-TRAFFIC STATUTORY SUMMARY OFFENSES

# CITATION

2306016505

PA SID: **53870481**    PID:    1237427

DC#: 23-06-016505-01          PSA: **2**          Crime Code: **90J**    Desc: **Tresspass of Real Property**

COMMONWEALTH VS.
Defendant: **ST JUSTE, PHILLIPPE**

**231 Spencer ST.**
**Brooklyn, NY 11234**          PID: **1237427**

Sex: **Male**    DOB: **5/28/1989**    Age: **33**    Race: **Black**

Arrest Date / Time: **4/14/23 6:30 PM**

Inside/Outside: **I**

Loc.**1100 Market ST.**
      **Philadelphia, PA 19107**

Docket #:    **MC51-SU-0001113-2023**

| Complainant Name: | Charges: | OC Description | Grade | Count |
|---|---|---|---|---|
| **ABDULLAH, MECCA** | CC3503B | DEFIANT TRESPASS | S | 001 |

**NATURE OF THE OFFENSE**

On (day, date and time) **Friday 04/14/2023 05:45 PM** at (Incident Loc.) **1100 MARKET ST.**

in the County of Philadelphia, the accused committed the following acts: (description of acts and specification of statute and sector number thereof)

ON 4/14/23 AT APPROXIMATELY 5:45 PM WHILE WORKING AN OVERTIME DETAIL AT TJ MAXX ON FOOT AS CALL SIGN CFB10 THE OFFICER WAS APPROACHED BY A FEMALE EMPLOYEE FROM CHASE BANK LOCATED AT 1100 MARKET ST WHO STATED THAT THEY WERE HAVING TROUBLE WITH A MALE REFUSING TO LEAVE THE BANK AFTER CLOSING HOURS. UPON ARRIVAL THE OFFICER MET WITH THE BRANCH MANAGER OF THE BANK WHO STATED THE DEFENDANT WANTED TO WITHDRAWAL HIS MONEY BUT DID NOT HAVE THE PROPER VERIFICATION. THE DEFENDANT WAS TOLD TO LEAVE APPROXIMATELY 10 TIMES OVER 30 MINUTES BY THE BANK MANAGER AND POLICE. WHILE ATTEMPTING TO ESCORT THE DEFENDANT OUT OF THE BANK HE FELL TO THE FLOOR AND HE CLENCHED HIS FIST REFUSING TO GET HAND CUFFED. WHILE THE DEFENDANT WAS IN THE SITTING POSITION HE REFUSED TO PUT HIS HANDS BEHIND HIS BACK. DEFENDANT WAS TAZED IN THE BACK TO COMPLY. THE MALE WAS THEN HANDCUFFED AND TRANSPORTED TO CENTRAL DETECTIVES FOR FURTHER INVESTIGATION.

The facts set forth in this citation are true and correct to my personal knowledge or information and belief, and any false statements therein are made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904), relating to unsworn falsification to authorities.

| Officer Name | Payroll# | Badge | UNIT | Platoon/Group | SCH. VAC. |
|---|---|---|---|---|---|
| CURTOSI JR ANTH | | 7001 | 4500 | 2 E | 4/17/2023 to 4/17/2023 |

Operations Room Supervisor's Signature                    Officer's Signature

**YOU ARE REQUIRED BY LAW TO APPEAR ON THE FOLLOWING ARRAIGNMENT OR TRIAL DATE**

5/1/2023          404: 1301 Filbert Street, Stout Ctr  2:00 p.m.

(Date)                    (Address)

At such time and place you may be found "Guilty", "Not Guilty" or "Enroll in the Summary Diversion Program".
**FAILURE TO APPEAR SHALL CONSTITUTE CONSENT TO A TRIAL IN YOUR ABSENCE. IF YOU ARE FOUND GUILTY AT TRIAL, YOU SHALL HAVE THE RIGHT TO FILE AN APPEAL WITHIN 30 DAYS FOR A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS.**
**JUVENILES MUST APPEAR WITH A PARENT OR LEGAL GUARDIAN AT THE REFERENCED COURT HEARING.**
**FAILURE TO DO SO MAY RESULT IN THE ISSUANCE OF A BENCH WARRANT.**

Defendant's Signature                    Parent's (Guardian's) Signature

NOTICE TO DEFENDANT:  The defendant must provide written notice to the Court of any change of address within 48 hours of the date of change.

| Plea: ☐ Guilty  ☐ Not Guilty | ☐ Guilty  ☐ Not Guilty  ☐ Discharged  ☐ Discharged L.O.P.  ☐ Withdrawn |
|---|---|

(ADA Signature)

I voluntarily and understandingly plead guilty and waive my right to counsel.

(Defendant's Signature)

Fine $
Cost $
VCF $
DAF $
SAF $
TOTAL $

Comm. Service Hrs:
Status Date
Restitution
Status Date

Pay By _____ _____ Days in County Prison

Judge:

The First Judicial District complies with the American with Disabilities Act. If you have a disability and require reasonable accommodations, please call 215-683-7272.

(Given Under My Hand and Seal)          (Date)

Case ID: 250402123
Control No.: 25055176

Rev. 07/00          CBN:1698198          04/15/2023 08:23:46          Page 1 of 1

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. No. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| | 6 | 7000 | | 6 | | 4/11/23 |

**CRIME OR INCIDENT CLASSIFICATION**
Trespass (Defiant)     CODE 90J     TIME OUT     TIME IN

**LOCATION OF OCCURRENCE**
☐ IN   ☐ OUT     TYPE OF PREM.

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|----------------|----------|----------------|------------------|
| | | 530 | |

**COMPLAINANT**
CHASE Bank     AGE   RACE   SEX   PHONE (HOME)

**ADDRESS**
PHONE (BUSINESS)

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---------|-----------------|------|------|---------------|
| ☐ Yes ☐ No | ☐ Yes  ☐ No  ☐ Close Out | | | 3602 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---------|-----------------|-------------------------------|----------------|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT** *(Include Description of Crime Scene if Applicable)*

Mental Habitation + Search
premises for above Black/Blue
Atm refused to leave Bank
Atm clearing Black male Taken
into custody for defiant
Trespass on Premises to CSD

| WITNESS | ADDRESS | PHONE NUMBER |
|---------|---------|--------------|

**OFFENDER INFORMATION**

P/O Arrived 4061 on arrival male before Custody

**PROPERTY DESCRIPTION** *(Include Make, Model, Color and Serial No. Where Applicable)*     PROP. CODE     INSURED ☐ Yes ☐ No     STOLEN VALUE $     DC. NO.

| VEHICLE 1 — OWNER'S NAME | VEHICLE 2 — OWNER'S NAME |
|-------------------------|--------------------------|

| VEHICLE 1 — OPERATOR'S NAME | VEHICLE 2 — OPERATOR'S NAME |
|----------------------------|----------------------------|

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---------------------------|---------------------|-------------|---------|
| General No.        Date | | | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|--------------------|-----|-----------|-------------|----------|
| | 780 | | | |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|-------------|-----|-----------|---------------|---------|

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123
Control No.: 25055176



## Philadelphia Police Department
## Central Detective Division
## Investigation Interview Record

| | |
|---|---|
| Case No.: 23- | |
| Interviewer: **Det McCaffery # 980** | |

| Name: **Mecca Abdullah** | | Age: **32** | Race: **Black** | Sex: **Female** | Dob: **11/16/1990** |
|---|---|---|---|---|---|
| Address: **1100 Market St** | City: **Philadelphia** | State: **PA** | Zip Code: **19121** | Phone Number: **215 430 5769** | |
| Name of Employer/School **Chase Bank** | | Soc. Sec. No: | | Cellular Phone Number: | |
| Address of Employer/School | | Department: | | Work Phone Number: | |
| Name of Closest Relative: | | Address of Relative: | | Phone Number: | |
| Place of Interview: **Central Detectives** | | Date of Interview: **4/14/2023** | | Time of Interview: **6:30 pm** | |

We are questioning you concerning:
**A Defiant Trespass that occurred at 1100 Market St on 4/14/2023 at approximately 5:20 pm**

Q. I am Detective McCaffery. Can you tell me what happened today?

A. A client came in around 3:30 pm. The account was restricted because due to check deposits. We were unable to verify the checks. W told the client that the person who wrote the checks would need to come in to verify the checks. The client was being belligerent and stating that he was not leaving without his money. He refused to leave and we said we were going to call the police. An officer showed up and explained to him that he was going to be arrested if he did not leave. He still refused so the officer arrested the male.

Q. Do you know the clients name?

A. Phillipe St Juste.

Q. Can you describe the male?

A. He was a tall black male. slender. About 6`3``. He had an accent.

Q. How many times was he asked to leave?

A. He was asked to leave about 10 times over the course of an hour.

Q. What is your position at the bank?

A. I am the branch manager.

Q. Is there anything else that you would like to add to this interview?

A. No

Signature: _____     Date: 4/14/23

Philadelphia Police (75-483)

Case ID: 250402123
Control No.: 25055176

## Arrest Memo

District: 6   RPC # CB10   DC#22-06-016511 Sector: 2   Date:04/14/2023   Time Of Assignment: 5:47pm
Time Of Occurrence: 3:30pm   Location Of Occurrence: 1100 Market St.t   In / Out: IN
Location Of Arrest: 1100 Market Stt   Time Of Arrest: 6:30PM   Type of Assignment: Pedestrian

Arresting Officer: Curtosi  Badge 7001   District: Center City District
Squad/Group 5 Squad Vacation From 6/8/23 To 7/14/23   Pr. # 206105

Arresting Officer:         Badge:      District:
Squad/Group5 Squad  Vacation from      To       Pr. #

Complainant:Mecca Abdullah  Age:39 Race:B Sex: Female Address:1100 Market Stt  Phone#
Witness:       Address:      Phone#

Defendant: Philipe Emmanual  Age:       DOB:       Race  B  Sex: Male   Address:

Defendant:     Age:    DOB:     Race      Sex: Male   Address:

Defendant:     Age:    DOB:     Race      Sex: Female   Address:

Property receipt #         Item:
Property receipt #         Item:
Property receipt #         Item:

## Details Of Arrest

On 4/14/23 I was working an overtime detail at TJ MAXX on foot as call sign CFB10 when a
female employee from Chase Bank walked in stating that they were having trouble with a male refusing
to leave the bank after closing hours. Upon arrival I met with the Branch manager of the bank Mecca
Abdullah she stated the male wanted to withdrawl his money but did not have the proper verification.
The male was told to leave several times by the bank manager and police. I was attempting to escort the
male out of the bank when he fell to the floor and he clenched his fist refusing to get hand cuffed. While
the male was in the sitting position and refused to put his hands behind his back. Police Officer Leonard
#4067 tazed the male in the back to comply. The male was then handcuffed and transported to Central
Detectives for further investigation.

Case ID: 250402123
Control No.: 25055176

**PRISONER FLOW CHART**

| | |
|---|---|
| DC # | 23-06-0165-05 |
| CBN # | |
| PPN # | |
| Time of Arrest: | 5150  ☐ AM ☑ PM |
| Reason for Arrest: | Tresspassing |

## Detainee Information

| Name | | DOB | Sex | Identifies as |
|---|---|---|---|---|
| **Last** St. Juste | **First** Philippe | 5-28-89 | Male ☑<br>Female ☐ | (Gender Identity)<br>male |

### Arresting Officer / s

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/o | ~~Cotos~~ Curtosi | 7001<br>~~7301~~ | ▉▉▉ | CFB10 | CCD | |
| | | | | | | |
| | | | | | | |

| Police Transported Subject<br>☑Yes ☐No  Vehicle # 601 | Subject Searched PRIOR to Police Transport<br>☑Yes ☐No  Badge # 5114 | Subject Secured with Restraints<br>☐Back ☐Front ☐Legs Badge # |
|---|---|---|
| Vehicle Searched PRIOR to Police Transport<br>☑Yes ☐No  Badge # 5114 | Subject Seat Belted in<br>☑Yes ☐No  Badge # 5114 | Subject Searched AFTER to Police Transport<br>☑Yes ☐No  Badge # 5114 |
| Vehicle Searched AFTER Police Transport<br>☑Yes ☐No  Badge # 5114 | Weapons Secured PRIOR to Entry into DBC/TH<br>☐Yes ☐No | Security Concerns Conveyed to DBC/TH<br>☐Yes ☐No  Badge # |

| Security Concerns: | ☐ Violent | ☐ Suicidal | ☐ Escape Risk | ☐ Aggressive | ☐ Intoxicated | ☐ Deaf / Hearing Impaired |
|---|---|---|---|---|---|---|
| | ☐ Medical | ☐ Disabled | ☐ Wheelchair required (PDAV Used) | | ☐ Other: | |

| Identifiable Attributes: | ☐ Trama | ☐ Bruises | ☐ Scars | ☐ Tattoos | ☐ Other | ☐ N/A Describe: |
|---|---|---|---|---|---|---|

## Transportation Officer / If Different from Arresting

Temporary Holding (TH) will be Checked BEFORE and AFTER use:  ☐ Yes ☐ No     Transported to PDU for:  Diabetic ☐   DUI☐

| Rank | Name | Badge # | Payroll | Call Sign | District | Unit |
|---|---|---|---|---|---|---|
| P/o | Corler | 5114 | ▉▉▉ | 601 | 6th | |
| P/o | MARRIGAN | 4413 | ▉▉▉ | 601 | 6th | |
| | | | | | | |
| | | | | | | |

If Detainee is Transported to the Hospital, list the Hospital's Name and Reason for Visit and Hospital Case DC #:

Additional Detainee Information:

75-582  (Rev. 4/17)

Case ID: 250402123<br>Control No.: 25055176

# BIOGRAPHICAL INFORMATION REPORT

- [✓] **ARREST**
- [ ] **INVESTIGATION**
- [ ] **OTHER**

(CHECK BLOCKS WHERE DOCUMENTATION EXISTS)

**PHILADELPHIA POLICE DEPARTMENT**

| | | | | |
|---|---|---|---|---|
| DATE 9-14-23 | TIME 5:50p | LOCATION OF INITIAL CONTACT 1100 Market St | DISTRICT 6th | D.C. NO. 23-06-016505 |

| NAME | LAST St. Juste | FIRST Philippe | MIDDLE | D.O.B. 5-23-84 | SEX Male | RACE B/H/c |
|---|---|---|---|---|---|---|

| HEIGHT 5'10 | WEIGHT 170 | HAIR COLOR B/K | EYE COLOR BRN | COMPLEXION Med | BUILD Thin | GLASSES (YES/NO) No | FACIAL HAIR |
|---|---|---|---|---|---|---|---|

| NICKNAME Unk | ALIASES Unk | MARITAL STATUS |
|---|---|---|

| RESIDENCE STREET NUMBER/NAME 231 Spencer St Apt 3 | CITY/STATE (OTHER THAN PHILA.) Brooklyn NY | DIST. |
|---|---|---|

| TYPE OF RESIDENCE | RESIDES WITH | DRIVER NUMBER 306008733 | STATE NY |
|---|---|---|---|

| SOCIAL SECURITY NUMBER | OCCUPATION Unk Unk | EMPLOYER/ADDRESS |
|---|---|---|

| PLACE OF BIRTH/CITY, STATE | GROUP AFFILIATION | |
|---|---|---|

| SCARS, TATTOOS, DEFORMITIES | CLOTHING DESCRIPTION Blue Shirt w/ White Collar Black Pants Black Sneakers | ETHNIC BACKGROUND |
|---|---|---|
| | | JEWELRY WORK |

## VEHICLE INFORMATION

| YEAR | MAKE | MODEL | COLOR | STATE | TAG | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

| OWNER-LAST NAME, FIRST | ADDRESS | CITY | STATE |
|---|---|---|---|
| | | | |

| MODUS OPERANDI (METHODS, TRAITS, ETC.) | AREAS FREQUENTED |
|---|---|
| | |

229 (Rev. 3-92)

AREAS MARKED WITH ➡ **MUST BE FILLED IN.**
CHECK RELIABILITY BOXES WHEN APPROPRIATE

Case ID: 250402123
Control No.: 25055176

## RELATIVES

| | LAST | MAIDEN | FIRST | ADDRESS | CITY/STATE |
|---|---|---|---|---|---|
| SPOUSE | | | | | |
| ▶ MOTHER | LAST | MAIDEN | FIRST | ADDRESS | CITY/STATE |
| FATHER | LAST | FIRST | | ADDRESS | CITY/STATE |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |
| BROTHER SISTER | | | | | |

## ASSOCIATES

| LAST NAME | FIRST NAME | ADDRESS | CITY/STATE | PPN |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## EDUCATION

| SCHOOL | ADDRESS | CITY/STATE | YEARS |
|---|---|---|---|
| | | | |
| | | | |

## CRIMINAL RECORD INFORMATION

| PPN | FBI NUMBER | PA NUMBER | OTHER NUMBER (STATE, IMMIGRATION) |
|---|---|---|---|
| PAROLE NUMBER | PAROLE OFFICER | | TELEPHONE NUMBER(S) |
| PROBATION NUMBER | PROBATION OFFICER | | TELEPHONE NUMBER (S) |

▶ CHIEF CRIMINAL ACTIVITY

| INITIATING OFFICER, LAST NAME | BADGE | RANK | DISTRICT/UNIT/PLATOON |
|---|---|---|---|
| ASSIGNED INVESTIGATION | BADGE | RANK | DISTRICT/UNIT PLATOON |

## ADDITIONAL REMARKS

75-229 (Reverse) (Rev. 3/92)

Case ID: 250402123
Control No.: 25055176

Case ID: 250402123
Control No.: 25055176

PHILADELPHIA POLICE DEPARTMENT

# COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. No. | SECT. | DIST. | VEH. NO. | REPORT DATE |
|------|-----------|----------|-------|-------|----------|-------------|
| 23 | 6 | 16505 | | 6 | P340 | 4/14/23 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | A | TIME IN | A |
|---|---|---|---|---|---|
| Trespassing (Defiant) | 90J | 547 ℗ | | | A ℗ |

| LOCATION OF OCCURRENCE | | IN | TYPE OF PREM. |
|---|---|---|---|
| 1700 Market St | | ☑ IN ☐ OUT | 034 |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | A | NATURE OF INJURY |
|---|---|---|---|---|
| 4/14/23 | 5 | 330 | ℗ | ~ |

| COMPLAINANT | AGE | RACE | SEX | PHONE (HOME) |
|---|---|---|---|---|
| Chase Bank | | | | 415-430-5754 |

| ADDRESS | PHONE (BUSINESS) |
|---|---|
| 1700 Market St | |

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE | INV. CONT NO. |
|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No ☐ Close Out | | | |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

**DESCRIPTION OF INCIDENT** *(Include Description of Crime Scene if Applicable)*

P - Defiant Tress passing
Mecca Abdullah - Branch
manager for Above states below
male Refused to leave Bank
After closing. Below male Taken
into custody for defirant
Tresspassing - Trans to CDD.

| WITNESS | ADDRESS | PHONE NUMBER |
|---|---|---|
Off. told by Police & Comp to leave multiple times.

**OFFENDER INFORMATION**
Ori(?) Emmanuel 5/28/84
P/o Learned 4067 Say stunned male before Cust

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | PROP. CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $ |

Passport # 668819434
Bank closed At 5:00p
male was Told to leave several
Times by Bank Employees and Police.

| VEHICLE 1 – OWNER'S NAME | VEHICLE 2 – OWNER'S NAME |
|---|---|
| | |

| VEHICLE 1 – OPERATOR'S NAME | VEHICLE 2 – OPERATOR'S NAME |
|---|---|
| | |

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY | |
|---|---|---|---|---|
| General No.　　　　Date | | | DIST./UNIT | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| Cntose | 7001 | C6 | 1 | 1 |

| REVIEWED BY | NO. | DIST./UNIT | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| | | | | |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF VICTIM SERVICES FORM:

75-48 Front (Rev. 11/09)

Case ID: 250402123
Control No.: 25055176

(*Exhibit N showing the plaintiff physical therapy report*)

Case ID: 250402123
Control No.: 25055176

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Initial Evaluation

| | | | | |
|---|---|---|---|---|
| **Patient Name:** | Phillippe Saint Juste | | **Date Seen:** | 4/28/2023 |
| **Diagnosis:** | S23.3XXA | Sprain of ligaments of thoracic spine, initial encounter | **Referring Physician:** | Jerry Uduevbo |
| | M54.6 | Pain in thoracic spine | | |
| | M25.60 | Stiffness of unspecified joint, not elsewhere classified | | |
| | M62.81 | Muscle weakness (generalized) | | |

## Subjective

### Current Condition

**Details**

Chief Complaint: The patient is a 33 year old who recently was attacked from his upper back after a police altercation. Patient reported feeling increased upper back pain and discomfort post incident for the past 2 weeks. Patient presents with thoracolumbar joint pain, stiffness, muscle weakness, and limited with all functional ADLs and IADLs.

Onset Date: Last 2 weeks

Type of Injury: New Injury

Occupation: Educator/Mentor

### Treatments

| Type | Start Date | End Date | Outcome |
|---|---|---|---|
| Primary Physician | 4/26/2023 | 4/26/2023 | No Change |

### Pain History

**Pain Area**

| Area | Current | Best | Worst |
|---|---|---|---|
| Thoracic Spine | 7/10 | 6/10 | 8/10 |

**Pain Description**

| Area | Activity/Time | Symptoms | Descriptions |
|---|---|---|---|
| Thoracic Spine | Bending, Lifting, Reaching, Working, Sitting | Increased | Deep, Burning, Aching, Radiates, Stiff |

### Functional Status

| Functional Activity | Status | Level |
|---|---|---|
| Working | Moderate Limitation | Current |
| Recreational Exercise | Moderate Limitation | Current |
| Sitting | Moderate Limitation | Current |
| Bending | Moderate Limitation | Current |
| Reaching | Moderate Limitation | Current |
| Dressing | Moderate Limitation | Current |
| Bathing | Moderate Limitation | Current |

Currently Working: Yes

Case ID: 250402123
Control No.: 25055176

**Medical History**

Surgery
None per patient

Condition
None per patient
Allergies NKDA

| Medication | Classification | Status |
|---|---|---|
| Ibuprofen | Pain Reliever | Currently Taking |
| Lidocaine | Pain Reliever | Currently Taking |
| Bacitracin Zinc | Pain Reliever | Currently Taking |

Patient is healthy and denies and surgical history.

**Social and Family History**

Social History/Living Environment: The patient lives alone in his apartment building on the 5th floor with elevator accesibility with no steps to enter.
Non smoker
Non alcoholic
Family History: None contributory to the patients present complaints.

**Outcomes**

| Test | Score | Note |
|---|---|---|
| Oswestry | 24 | 48% |

# Objective

## Observation

Patient has forward head position with forward shoulder positioning.

## Vital Signs

| Vital Sign | Finding |
|---|---|
| Blood Pressure | 121/82 |
| Heart Rate | 64 bpm |
| Height | 6.2 ft |
| Weight | 155 lbs. |
| BMI | 19.8 |

## T-Spine

### T-Spine - Active Range Of Motion

| Motion | AROM | Gross Strength |
|---|---|---|
| Flexion | 45% Percent | 3-/5 |
| Extension | 45% Percent | 3-/5 |
| Right Rotation | 45% Percent | 3-/5 |
| Left Rotation | 45% Percent | 3-/5 |

### T-Spine - Passive Range Of Motion

| Measurement | PROM |
|---|---|
| Rotation Left | 50% Percent |
| Rotation Right | 50% Percent |
| Extension | 50% Percent |
| Flexion | 50% Percent |

Case ID: 250402123
Control No.: 25055176

**T-Spine - Muscle Testing**

| Measurement | Right Strength | Right Flexibility | Left Strength | Left Flexibility |
|---|---|---|---|---|
| Latissimus Dorsi | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Rhomboids | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Serratus Anterior | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |
| Thoracic Paraspinals | 3/5 | Moderate Tightness | 3-/5 | Severe Tightness |

**T-Spine - Special Tests**

| Special Test | Right | Left |
|---|---|---|
| Rib Springing | Negative | Positive with Pain |

**T-Spine - Joint Mobility**

| Joint | Force Direction | Grade | End-Feel | Symptoms |
|---|---|---|---|---|
| Upper Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Middle Thoracic | P/A Central | II | Muscle Spasm | Decreased |
| Lower Thoracic | P/A Central | II | Muscle Spasm | Decreased |

## Palpation

Tenderness during palpation of Ribs.  Tenderness during palpation of Sternum. Tenderness during palpation of Costal Cartilage. Tenderness during palpation of Clavicle.  Tenderness during palpation of Abdomen. Tenderness during palpation of Scapula.

## Assessment

**Descriptions**

Patient presents with signs and symptoms consistent with a thoracic muscle sprain.
Patient understood injury and was involved in the creation of goals.

**Problem List**

**Problems**

Pain limits functional activities
Decreased ROM preventing full functional activity
Decreased strength limiting functional activities
Decrease participation in recreational activities
Pain decreasing functional mobility
Marked muscle pain and tightness in thoracic spine.

## Plan

**Goals**

| Length | Status | Goal |
|---|---|---|
| Short Term | Not Met | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | Not Met | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | Not Met | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | Not Met | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | Not Met | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | Not Met | Improve joint mobility by 50% in 4 weeks. |

Case ID: 250402123
Control No.: 25055176

**Treatment Plan**

**Recommend Physical Therapy 2 time(s) a week for 8 week(s), with treatments to consist of:** Body Mechanic Training (97110) - Proper positioning and lifting strategies, Core Stabilization (97110) - Increase strength and function of spinal stabilization muscles, Flexibility (97110) - active and passive patient stretching, Neuromuscular Re-ed - 97112: Improve neurologic control of muscle function, ROM (97110) - Passive or active activities to increase joint range of motion, Therapeutic Exercise - 97110: Improve muscle strength, ROM, flexibility, and muscle function, Cryotherapy- 97010: Application of cold to decrease local swelling and decrease pain, Heat- 97010: Application of heat to increase local circulation and decrease pain, IFC E-Stim- 97014: Application of E-Stim to modulate pain , Ultrasound- 97035: increase local circulation, improve tissue healing time, and modulate pain, Manual Stretching- 97140: passive or active stretching to improve muscle length and function, Soft Tissue Mobs- 97140: increase ROM tissue length, joint mechanics, and modulate pain, Spine Mobilization- 97140: increase ROM, improve joint mechanics, and modulate pain.

**Initial Treatment**

· Patient Education - Initial Evaluation: Pt. understood injury and its management. - 30 Total Minutes
· T-Spine - Cat/Camel Stretch: 5 times - 2 Total Minutes
· T-Spine - Back Extension: 2 x 10 - 2 Total Minutes
· T-Spine - Prone Scapular Retraction: 2 x 10 - 2 Total Minutes
· T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
· Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
· T-Spine - thoracic rotation: 2 x 10 - 2 Total Minutes
· T-Spine - open books: 2 x 10 - 2 Total Minutes

**MD Communication:** Initial evaluation documented and communicated to the referring physician for accountability of care.



X

Adewale  S Adeniola, DPT License #: 018676

(Document electronically signed by TheraOffice Documentation)
4/28/2023

**To Be Completed By Physician:**

_____ I have no revisions to this plan of care
_____ Revise plan of care as follows
_____ Discharge Patient

Prognosis: _____ Excellent _____ Good _____ Fair _____ Poor

Continue _____ times per _____ for _____ weeks / months

Physician Signature: _____ Date:_____
n signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 250402123
Control No.: 25055176

# Adex Physical Therapy, P.C

**35 East 51st Street**
**Brooklyn NY 11203**
**Tel#: (718) 363 2556 Fax#: (718) 363 2677**
**Email#: adexphysicalt1@optonline.net**

## Daily Note

| | | | |
|---|---|---|---|
| **Patient Name:** | Phillippe St Juste | **Date Seen:** | 6/22/2023 |
| **Diagnosis:** | S23.3XXA Sprain of ligaments of thoracic spine, initial encounter | **Referring Physician:** | Jerry Uduevbo |
| | M54.6 Pain in thoracic spine | | |
| | M25.60 Stiffness of unspecified joint, not elsewhere classified | | |
| | M62.81 Muscle weakness (generalized | | |
| **Time In:** | 4:00 PM | **Time Out:** | 5:00 PM |

## Goals

| Length | Status | Goal |
|---|---|---|
| Short Term | In Progress | 1. Independent with home exercise program in 4 weeks. |
| Long Term | Not Met | 2. Patient able to participate in full recreational activities in 8 weeks. |
| Short Term | In Progress | 2a. Increase lumbar ROM by 50% in 4 weeks. |
| Long Term | In Progress | 2b. Increase strength to WNL in 8 weeks. |
| Long Term | In Progress | 3. Patient to report decreased pain by 75% with functional activities in 8 weeks. |
| Short Term | In Progress | 3a. Patient to report decreased pain by 50% measured by visual analog scale in 4 weeks. |
| Long Term | Not Met | Normal flexibility to allow normal movement patterns in 6 weeks. |
| Short Term | In Progress | Improve joint mobility by 50% in 4 weeks. |

## Subjective

Patient reports a decreased in symptoms since last visit.

## Objective

- T-Spine - Cat/Camel Stretch: 5 times - 3 Total Minutes
- T-Spine - Back Extension: 2 x 10 - 3 Total Minutes
- T-Spine - Prone Scapular Retraction: 2 x 10 - 3 Total Minutes
- T-Spine - Prone I's,Y's,T's : 2 x 10 - 10 Total Minutes
- Manual - Myofascial Release: 10 Minutes - 10 Total Minutes
- T-Spine - thoracic rotation: 2 x 10 - 3 Total Minutes
- T-Spine - open books: 2 x 10 - 3 Total Minutes
- Modality - IFC E-Stim: 40 mA - min x 15' - 15 Total Minutes
- Manual - Stretching: 10 Minutes - 10 Total Minutes

## Assessment

Tolerated with decreased symptoms and increased function

## Plan

Continue to progress per plan of care. Increase activity and exercise intensity next session.

Case ID: 250402123
Control No.: 25055176



X _____

Adewale S Adenlola, DPT License #: 018676

**To Be Completed By Physician:**

____ I have no revisions to this plan of care

____ Revise plan of care as follows

____ Discharge Patient

Prognosis: ____ Excellent ____ Good ____ Fair ____ Poor

Continue _____ times per _____ for _____ weeks / months

Physician Signature: _____ Date: _____

In signing this document, physician certifies that prescribed rehabilitation is a medical necessity.

Case ID: 250402123
Control No.: 25055176

Exhibit II

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

| | | |
|---|---|---|
| PHILIPPE E. St. Juste, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A. et al., | : | |
| Defendants | : | NO. 2123 |

## ORDER

AND NOW, this _____ day of _____, 2025, upon consideration of the Preliminary Objections of Defendants the City of Philadelphia and JPMorgan Chase Bank, N.A., and any responses thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is dismissed.

BY THE COURT:

_____

J.

**NOTICE TO PLEAD**
To: Plaintiff
You are hereby notified to file a
written response to the enclosed
Preliminary Objections within
twenty (20) days from the date of
service hereof or a judgment may be
entered against you.

**CITY OF PHILADELPHIA LAW DEPARTMENT**
LYDIA FURST, CHIEF DEPUTY CITY SOLICITOR
ATTORNEY IDENTIFICATION NO. 307450
1515 ARCH STREET – 15TH FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-3573 - Telephone
(215) 683-5299 – Fax
*Attorney for Defendant*

| | | |
|---|---|---|
| PHILLIPPE E. ST. JUSTE, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A., et al., | : | |
| DefendantS | : | NO. 2123 |

### DEFENDANT CITY OF PHILADELPHIA'S
### PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

Defendant City of Philadelphia, through its undersigned counsel, hereby files the

following preliminary objections to Plaintiff's Complaint pursuant to Pa.R.C.P 1028. In support

of its preliminary objections, Defendant incorporates by reference the Memorandum of Law filed

contemporaneously with these preliminary objections.

### FACTS

1.     Plaintiff Phillippe E. St. Juste initiated this case by filing a Complaint on April 16,

2025. A copy of the Complaint is attached to these Preliminary Objections as Exhibit A.

1

Case ID: 250402123
Control No.: 25062591
Control No.: 25055176

2.     Plaintiff served his Complaint on Defendant the City of Philadelphia on May 7, 2025.

3.     Per the Complaint, on April 14 (the Complaint does not state the year of the alleged events), Plaintiff was present in a Chase branch at 1100 Market Street in Philadelphia. Compl. ¶ 8. When asked to leave, he refused. *Id.*

4.     According to the Complaint, after Plaintiff refused to leave the Chase branch, police officers arrived. *Id.* Plaintiff then held his wallet in his right hand and gripped his right wrist with his left hand. *Id.* When Plaintiff refused to "unlock his grip on his right wrist," officers allegedly tased Plaintiff. *Id.* Police officers subsequently handcuffed and arrested Plaintiff. *Id.*

5.     Plaintiff alleges that he sustained injuries from being tased. Compl. ¶¶ 9-10.

6.     Plaintiff has sued both the City and JPMorgan Chase. Plaintiff's Complaint contains no Counts and it is unclear what claim or claims he is asserting against Defendants.

7.     Plaintiff alleges that "the defendant has breached the contract" but he does not specify which defendant he is referring to, nor does he describe or attach the alleged contract.

8.     Plaintiff's Civil Cover Sheet identifies this case as a "bad faith" action.

## CITY'S FIRST PRELIMINARY OBJECTION PURSUANT TO PENNSYLVANIA RULE OF CIVIL PROCEDURE 1028(a)(4) FOR LEGAL INSUFFICIENCY OR DEMURRER

9.     The Pennsylvania Rules authorize a defendant to assert preliminary objections to a complaint based upon the "legal insufficiency of [the] pleading (demurrer)." Pa.R.Civ.P. 028(a)(4). "Preliminary objections in the nature of a demurrer test the legal sufficiency of a complaint. All well-pleaded facts set forth in the complaint and all inferences reasonably deducible therefrom are accepted as true, but conclusions of law, unwarranted inferences from facts, argumentative allegations, and expressions of opinion are not admitted." *Neill v. Eberle,*

2

620 A.2d 673, 675 (Pa. Cmwlth. 1993). "Preliminary objections should be sustained only where it appears with certainty that the law will not permit recovery on the facts presented." *Id.*

10.    Even accepting as true all well-pleaded facts, Plaintiff's Complaint fails to state any claim against the City.

11.    A complaint must provide notice with respect to the theory of liability that a complainant intends to pursue and failure to do so warrants dismissal. *See Com. v. Percudani,* 844 A.2d 35, 46–47 (Pa. Commw. Ct. 2004) (granting dismissal on counts for which a party was expressly excluded from headings identifying the defendants against whom the counts were asserted and the allegations contained within each count do not set forth any conduct giving rise to liability).

12.    Moreover, Pennsylvania Rules of Civil Procedure 1019 and 1020 impose minimum pleading requirements designed to provide such notice, including that each cause of action be stated in a separate count containing a demand for relief. Pa. R. Civ. P. 1019(a), 1020(a).

13.    The Complaint states that "the defendant has breached the contract," however the Complaint fails to identify any applicable contract or even which defendant is alleged to have contracted with Plaintiff. Compl. ¶ 11. As a matter of Pennsylvania law, the Complaint fails to state a claim for breach of contract. *McShea v. City of Philadelphia,* 995 A.2d 334, 340 (Pa. 2009) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.").

14.    The Civil Cover Sheet identifies this case as a "bad faith" action. However, there is no standalone tort cause of action for "bad faith" in Pennsylvania and there is no allegation in

3

Case ID: 250402123
Control No.: 25062912 3
Control No.: 25055176

the Complaint (nor could there be) that either the City or Chase are Plaintiff's insurance company. *Gorski v. Smith*, 812 A.2d 683, 710 (Pa. Super 2002); *see generally* Compl.

15.    Finally, Plaintiff's Complaint alleges facts and injuries related to tasing by City police officers when Plaintiff was present at a Chase branch and refused to leave when asked.

16.    Pennsylvania municipalities, including the City, are immunized from intentional torts. *See Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015) (holding under Pennsylvania law that City is immune from state law claims of false arrest, false imprisonment, and malicious prosecution); *see also* 42 Pa. Cons. Stat. Ann. § 8541-42. The tort immunity of a local agency, including the City of Philadelphia, "is a non-waivable, absolute defense." *McShea v. City of Philadelphia*, 606 Pa. 88, 99 (2010).

17.    As a result, to the extent Plaintiff's Complaint asserts claims of intentional torts against the City, they are barred by the Tort Claims Act and must be dismissed.

**WHEREFORE**, the City respectfully requests that the Preliminary Objections be sustained and Plaintiff's Complaint be dismissed in its entirety as to Defendant the City of Philadelphia.

## CONCLUSION

Defendant City of Philadelphia respectfully requests that its preliminary objections be sustained and Plaintiff's Complaint dismissed.

Respectfully Submitted:

CITY OF PHILADELPHIA
LAW DEPARTMENT

BY:    /s/ Lydia Furst
Lydia Furst, Chief Deputy City Solicitor
Affirmative & Special Litigation Unit
Attorney I.D. No. 307450
City of Philadelphia Law Department

4

Case ID: 250402123
Control No.: 25062913
Control No.: 25055176

1515 Arch Street, 15th Floor
Philadelphia, PA 19102-1595
lydia.furst@phila.gov

*Attorney for Defendant City of Philadelphia*

Date: June 12, 2025

Case ID: 250402123
Control No.: 25062501

Case ID: 250402123
Control No.: 25055176

**CITY OF PHILADELPHIA LAW DEPARTMENT**
LYDIA FURST, CHIEF DEPUTY CITY SOLICITOR
ATTORNEY IDENTIFICATION NO. 307450
1515 ARCH STREET – 15TH FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-3573 - Telephone
(215) 683-5299 – Fax
*Attorney for Defendant*

| | | |
|---|---|---|
| PHILLIPPE E. ST. JUSTE, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A., et al., | : | |
| DefendantS | : | NO. 2123 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PEREMPTORY JUDGMENT

**I.    MATTER BEFORE THE COURT**

The matter before the Court is Defendant City of Philadelphia's preliminary objections to

Plaintiff's Complaint.

**II.    STATEMENT OF QUESTION INVOLVED**

1. Whether Plaintiff's Complaint should be dismissed pursuant to Rule 1028(a)(4)

because it fails to state any claim against the City?

Suggested Answer: Yes

**III.    FACTS**

Plaintiff Phillippe E. St. Juste initiated this case by filing a Complaint on April 16, 2025.

A copy of the Complaint is attached to the City's Preliminary Objections as Exhibit A. Plaintiff

served his Complaint on Defendant the City of Philadelphia on May 7, 2025.

Per the Complaint, on April 14 (the Complaint does not state the year of the alleged events), Plaintiff was present in a Chase branch at 1100 Market Street in Philadelphia. Compl. ¶ 8. When asked to leave, he refused. *Id.* According to the Complaint, after Plaintiff refused to leave the Chase branch, police officers arrived. *Id.* Plaintiff then held his wallet in his right hand and gripped his right wrist with his left hand. *Id.* When Plaintiff refused to "unlock his grip on his right wrist," officers allegedly tased Plaintiff. *Id.* Police officers subsequently handcuffed and arrested Plaintiff. *Id.* Plaintiff alleges that he sustained injuries from being tased. Compl. ¶¶ 9-10.

Plaintiff has sued both the City and JPMorgan Chase. Plaintiff's Complaint contains no Counts and it is unclear what claim or claims he is asserting against Defendants. Plaintiff alleges that "the defendant has breached the contract" but he does not specify which defendant he is referring to, nor does he describe or attach the alleged contract. Plaintiff's Civil Cover Sheet identifies this case as a "bad faith" action.

## IV.   ARGUMENT

The Pennsylvania Rules authorize a defendant to assert preliminary objections to a complaint based upon the "legal insufficiency of [the] pleading (demurrer)." Pa.R.Civ.P. 028(a)(4). "Preliminary objections in the nature of a demurrer test the legal sufficiency of a complaint. All well-pleaded facts set forth in the complaint and all inferences reasonably deducible therefrom are accepted as true, but conclusions of law, unwarranted inferences from facts, argumentative allegations, and expressions of opinion are not admitted." *Neill v. Eberle*, 620 A.2d 673, 675 (Pa. Cmwlth. 1993). "Preliminary objections should be sustained only where it appears with certainty that the law will not permit recovery on the facts presented." *Id.*

Even accepting as true all well-pleaded facts, Plaintiff's Complaint fails to state any claim against the City.

2

A complaint must provide notice with respect to the theory of liability that a complainant intends to pursue and failure to do so warrants dismissal. *See Com. v. Percudani*, 844 A.2d 35, 46–47 (Pa. Commw. Ct. 2004) (granting dismissal on counts for which a party was expressly excluded from headings identifying the defendants against whom the counts were asserted and the allegations contained within each count do not set forth any conduct giving rise to liability). Moreover, Pennsylvania Rules of Civil Procedure 1019 and 1020 impose minimum pleading requirements designed to provide such notice, including that each cause of action be stated in a separate count containing a demand for relief. Pa. R. Civ. P. 1019(a), 1020(a).

The Complaint states that "the defendant has breached the contract," however the Complaint fails to identify any applicable contract or even which defendant is alleged to have contracted with Plaintiff. Compl. ¶ 11. As a matter of Pennsylvania law, the Complaint fails to state a claim for breach of contract. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2009) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.").

The Civil Cover Sheet identifies this case as a "bad faith" action. However, there is no standalone tort cause of action for "bad faith" in Pennsylvania and there is no allegation in the Complaint (nor could there be) that either the City or Chase are Plaintiff's insurance company. *Gorski v. Smith*, 812 A.2d 683, 710 (Pa. Super 2002); *see generally* Compl.

Finally, Plaintiff's Complaint alleges facts and injuries related to tasing by City police officers when Plaintiff was present at a Chase branch and refused to leave when asked. Pennsylvania municipalities, including the City, are immunized from intentional torts. *See Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *2 (E.D. Pa. Sept. 23, 2015)

Case ID: 250402123
Control No.: 25008591
Control No.: 25055176

Case ID: 250402123
Control No.: 25055176

(holding under Pennsylvania law that City is immune from state law claims of false arrest, false imprisonment, and malicious prosecution); *see also* 42 Pa. Cons. Stat. Ann. § 8541-42. The tort immunity of a local agency, including the City of Philadelphia, "is a non-waivable, absolute defense." *McShea v. City of Philadelphia*, 606 Pa. 88, 99 (2010). As a result, to the extent Plaintiff's Complaint asserts claims of intentional torts against the City, they are barred by the Tort Claims Act and must be dismissed.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed.

<div style="margin-left: 40%;">

Respectfully Submitted:

CITY OF PHILADELPHIA
LAW DEPARTMENT

BY:    /s/ Lydia Furst
       Lydia Furst, Chief Deputy City Solicitor
       Affirmative & Special Litigation Group
       Attorney I.D. No. 307450
       City of Philadelphia Law Department
       1515 Arch Street, 15th Floor
       Philadelphia, PA 19102-1595
       lydia.furst@phila.gov

       *Attorney for Defendant*

</div>

Date: June 12, 2025

4

Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

## CERTIFICATE OF SERVICE

I, Lydia Furst, hereby certify that a true and correct copy of Defendant City of Philadelphia's Preliminary Objections to Plaintiff's Complaint was served by Electronic Filing upon all counsel of record.

BY:    /s/ Lydia Furst
       Lydia Furst, Chief Deputy City Solicitor
       Affirmative & Special Litigation Unit
       Attorney I.D. No. 307450
       City of Philadelphia Law Department
       1515 Arch Street, 15th Floor
       Philadelphia, PA 19102-1595
       lydia.furst@phila.gov

       *Attorney for Defendant*

Date: June 12, 2025

Case ID: 250402123
Control No.: 250662591
Case ID: 250402123
Control No.: 25055176

# EXHIBIT A

Case ID: 250402123
Control No.: 250662591
Case ID: 250402123
Control No.: 25055176

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philippe E. St Juste | JP Morgan Chase |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 1227 Magee Ave, Philadelphia, PA 19111 | 700 Kansas Lane Mail code, Monroe LA 71023 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | City of Philadelphia |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | Office of Risk Management, 1515 Arch St 14th Floor, Philadelphia PA 19102 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION | |
|---|---|---|---|
| 1 | 2 | ☒ Complaint ☐ Writ of Summons | ☐ Petition Action ☐ Transfer From Other Jurisdictions    ☐ Notice of Appeal |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| ☐ $50,000.00 or less  ☒ More than $50,000.00 | ☐ Arbitration ☒ Jury ☐ Non-Jury ☐ Other | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Minor Court Appeal ☐ Statutory Appeals ☐ Commerce (Completion of Addendum Required) | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

✓ 1J Bad Faith

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)    CMPLC-St Juste Vs Jp Morgan Chase Bank Et Al [RNJ]

IS CASE SUBJECT TO COORDINATION ORDER?
Yes ☐    No ☐
☐    ☐

```
25040212300003
```

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Philippe E St Juste | ✓ 1227 Magee Ave Philadelphia, PA 19111 |
| PHONE NUMBER    FAX NUMBER | |
| 917-937-6594 | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS  ✓ philippe.esai@gmail.com |
| SIGNATURE | DATE  04-18-2025 |

01-101 (Rev. 6/2014)

Case ID: 250402123
Case ID: 250402123
Control No.: 25055091
Case ID: 250402123
Control No.: 25055176

# Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

A.  **Parties**

    *i.*  *Plaintiffs/Defendants*
        Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

    *ii.*  *Parties' Addresses*
        Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

    *iii.*  *Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

B.  **Commencement Type:** Indicate type of document filed to commence the action.

C.  **Amount in Controversy:** Check the appropriate box.

D.  **Court Programs:** Check the appropriate box.

E.  **Case Type:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.



**Proceedings Commenced by Appeal**

**Minor Court**
5M  Money Judgment
5L  Landlord and Tenant
5D  Denial Open Default Judgment
5E  Code Enforcement
    Other:

**Local Agency**
5B  Motor Vehicle Suspension – Breathalyzer
5V  Motor Vehicle Licenses, Inspections, Insurance
5C  Civil Service
5K  Philadelphia Parking Authority
5Q  Liquor Control Board
5R  Board of Revision of Taxes
5X  Tax Assessment Boards
5Z  Zoning Board
52  Board of View
51  Other:
Other:

**Proceedings Commenced by Petition**
8P  Appointment of Arbitrators
8C  Name Change - Adult
8L  Compel Medical Examination
8D  Eminent Domain
8E  Election Matters
8F  Forfeiture
8S  Leave to Issue Subpoena
8M  Mental Health Proceedings
8G  Civil Tax Case - Petition
    Other:

**Actions Commenced by Writ of Summons or Complaint**

**Contract**
1C  Contract
1T  Construction
1O  Other

**Tort**
2B  Assault and Battery
2L  Libel and Slander
4F  Fraud
1J  Bad Faith
2E  Wrongful Use of Civil Process
    Other:

**Negligence**
2V  Motor Vehicle Accident
2H  Other Traffic Accident
1F  No Fault Benefits
4M  Motor Vehicle Property Damage
2F  Personal Injury - FELA
2O  Other Personal Injury
2S  Premises Liability - Slip & Fall
2P  Product Liability
2T  Toxic Tort
    T1  Asbestos
    T2  DES
    T3  Implant
3E  Toxic Waste
    Other:

**Professional Malpractice**
2D  Dental
4L  Legal
2M  Medical
4Y  Other:
1G  Subrogation

**Equity**
E1  No Real Estate
E2  Real Estate
1D  Declaratory Judgment
M1  Mandamus

**Real Property**
3R  Rent, Lease, Ejectment
Q1  Quiet Title
3D  Mortgage Foreclosure - Residential Owner Occupied
3F  Mortgage Foreclosure - Not Residential Not Owner Occupied
1L  Mechanics Lien
P1  Partition Prevent Waste
1V  Replevin
1H  Civil Tax Case - Complaint
    Other:

F.  **Commerce Program**
    Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

G.  **Statutory Basis for Cause of Action**
    If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

H.  **Related Pending Cases**
    All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

I.  **Plaintiff's Attorney**
    The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

## The current version of the Civil Cover Sheet may be downloaded from the FJD's website
### http://courts.phila.gov

Case ID: 250402123
Case ID: 250402123
Control No.: 25005913
Control No.: 25051741
Control No.: 25051741
Control No.: 25051741
Control No.: 25051741
Control No.: 25055176

**VERIFICATION**

I, _Philippe E. St Juste_, Plantiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Philippe E. St Juste_
(Print Name)

(Signature)

Date: _04-16-2025_

Case ID: 250402123
Case ID: 250402123
Control No.: 25055176
Control No.: 25055176

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

*Philippe E. St Juste*

VS.

*JP MORGAN CHASE BANK, NA*
*CITY OF PHILADELPHIA*

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

Case ID: 250402123
Case ID: 250402123
Control No.: 25068591
Case ID: 250402123
Control No.: 25055176

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

PHILIPPE E. ST JUSTE

Plaintiff                                    Term,

v.                                    No.

JP MORGAN CHASE BANK, NA
CITY OF PHILADELPHIA

Defendant

CIVIL ACTION COMPLAINT

See attached

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

The complaint of the plaintiff, Philippe E St Juste, respectfully shows and alleges as follows:

1. The plaintiff herein, Philippe E St Juste, is a resident of the State of Pennsylvania.

2. The defendant herein, JP Morgan Chase, N.A., which operates under the brand name Chase, is the consumer and commercial banking subsidiary of the multinational financial services firm, JPMorgan Chase & Co. It is a national bank headquartered in New York City. [As described by Google AI Overview]

3. The defendant herein, City of Philadelphia, Office of Risk Management, which is located at 1515, Arch street, 14th Floor, Philadelphia, PA 19102 .

4. On Wednesday April 5th  at 1:48 pm Plaintiff St Juste and his aunt Marie Francoise Verdieu entered the 1100 Market St location in Philadelphia, PA of JP Morgan Chase Bank with the intention of opening a joint family checking account.  Plaintiff was met and attended to by Qingmei Qing who introduced herself as Cecilia Qing. Plaintiff's aunt provided her NYS ID and social security card and plaintiff provided his NYS Driver's license and his Chase Debit Card in order to open the new account. During that same meeting, Plaintiff's sisters Christie and Margael provided complete names, address, ssn and emails over the phone to be added as joint account holders. They were then told by Cecilia to report to a Chase branch near them to authenticate their identities in person. Plaintiff created this account to manage his mother's (my aunt's only sister) estate who had passed away on March 22nd. Plaintiff chose to open a new account at Chase because plaintiff had been a customer since September 2007 and plaintiff's mother also had an account with Chase. Plaintiff felt it right to gather his family resources in a place where they had felt financially safe and with which plaintiff had over 15 years as a financial client. Plaintiff deposited  a total of $10,428; $5000 in bills of 100, $1000 in bills of 50, $2000 in bills of 20 and $28 in bills of less than 20 in value. Plaintiff also deposited $2400 in checks received from various family members and friends, all of which are redacted in a family google sheet document.  This money is a collection of gifts the plaintiff had received the previous Sunday at

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

his mother's memorial service. Plaintiff gave the deposit to Michael, the clerk in attendance and confirmed with him that it was okay to deposit the given amount. Plaintiff and his aunt exited the 1100 Market St location at about 3:41 pm on that day, knowing they had set up an account to manage his mother's affairs.

5. On Friday April 7th, plaintiff attempted to log into his Chase mobile account and received the following message: " We locked your account due to suspicious activity. Please call us to resolve this issue."Plaintiff was locked from accessing both my personal checking account and the joint account plaintiff had made with his aunt and sisters. As his account was still blocked on Monday 10th at 11:19 am plaintiff visited the Chase Branch at 490 Fulton St in Brooklyn, NY to resolve the matter. There, the plaintiff was greeted by Penny who called Chase Internal. Plaintiff spoke with a corporate agent and was told that it was an internal issue that would be solved within 24 hrs. Plaintiff exited Chase at about 12:14 pm with assurance that his accounts would be reinstated by the next day.

6. On Tuesday 11th, plaintiff's Chase Mobile app was still locked. Plaintiff visited a second branch of Chase. Plaintiff arrived at 402 Myrtle Ave, Brooklyn, NY at 10:42 am. Plaintiff was greeted by Tevin Campbell who phoned Chase Internal. Tevin informed plaintiff that the issue was that Chase needed to authenticate the checks and that plaintiff needed to provide the phone numbers to two issuers to resolve the matter. Plaintiff provided the number for Sister Giselle the Treasurer of Premiere Eglise Methodiste Unie and the number for Marie Alberte Pierre, an extended family member. Chase Internal operator said he/she could not reach either number immediately but would resolve the matter before the end of the business day. Plaintiff left Chase at 11:48 am.

7. Friday 14th, the plaintiff noticed that he was still restricted from his Chase accounts

Case ID: 250402123
Case ID: 250402123
Control No.: 250062591
Case ID: 250402123
Control No.: 25055176

Case ID: 250402123
Control No.: 25055176

and called Chase at about 10:55 am. Plaintiff spoke with two agents and a manager who told him that he needed to authenticate each and every check that had been deposited. Plaintiff provided contact information for many of the check issuers. Plaintiff spent an hour and a half talking to the manager, by the end of which plaintiff still needed to provide two additional numbers. Plaintiff was told that they could not authenticate the contact for the First United Methodist Church and needed a contact for Marie Guerrier. Plaintiff contacted Marie Guerrier, a childhood friend of the plaintiff's mother, who had written a check for $200 to the plaintiff's aunt. Plaintiff told Ms. Guerrier the bank would contact her to confirm that she was an issuer, she assured the plaintiff that that was okay but that she had limited mobility and would not be able to visit any branch. She also told the plaintiff that the amount in question had been withdrawn from her account since April 5th. Plaintiff confirmed that the amount had been withdrawn from her account 9 days prior but it had not been cleared to his account or returned to hers. Plaintiff once again called and spoke to one more agent for a half hour and provided her with Marie Guerrier's contact. The agent told the plaintiff she could not authenticate Marie's number. Plaintiff offered to contact Marie Guerrier myself and have a three way conversation if they had a hard time reaching her. The agent again refused. At this point the plaintiff had communicated to Cecilia, Tevin and everyone that he had spoken with over the phone the reason why the account had been created. Plaintiff had communicated that his sisters, his aunt and himself were grieving the very recent and sudden loss of his mother. After yet another unproductive phone conversation, plaintiff decided to return to the Chase location at 1100 Market St where the account had been created.

8. Plaintiff arrived at 1100 Market St at 3:25 pm. Plaintiff intended to close both Chase accounts and take his business elsewhere. It had been over a week since his money was restricted and the plaintiff needed to take care of his mother's estate. Plaintiff met with Jeison Brito. Plaintiff told Jeison he wanted to close both his Chase accounts and take out my money. Jeison told the plaintiff to let him talk to Internal to see if the issue could be resolved. Plaintiff sat there

Case ID: 250402123
Case ID: 250402123
Control No.: 25065913
Control No.: 25055176

for 2 hours as both Plaintiff and Jeison waited for Internal to get back to them over the phone. At some point the plaintiff stepped into the reception area and called Chase Internal as an alternative to reach Chase Internal. At around 5:00 pm Jeison came and took the plaintiff back into his office. At 5:33 pm Jeison told the plaintiff he had reached Internal and they needed Marie Guerrier to provide a different number or to show up in person to authenticate her check. Plaintiff told Jeison that that was impossible because the number plaintiff had provided was the only number that plaintiff had used to reach Ms. Guerrier and had been the same number his younger sister had used and that his mother had used to talk to Ms. Guerrier on a regular basis. At about 5:38 pm Mecca Abdullah, Vice President, interjected with an escort of Cecilia, another banker and a constable. Mecca repeated Jeison's words and told the plaintiff that he had 2 options: either provide a different contact number for Marie Guerrier or have her come into Chase. Plaintiff told her that those were not options and both were unlikely. Plaintiff reiterated that this level of scrutiny was discriminatory and unjust to a 15 year Chase customer. Plaintiff told Ms. Abdullah, that after speaking to 12 Chase representatives, 8 over the phone and 4 in person and authenticating 5 checks, he only wished to take out his money. Plaintiff also said that if they felt that Marie Guerrier's check was not legitimate to nullify it, return her money and give him the rest of his money. Abdullah told the plaintiff that he needed to leave the premises. Plaintiff sat down and said he would only leave when he got my money. A 20 something black female constable approached the plaintiff and tried to remove him. The constable then called for back up. A late middle aged white officer, whose tag identified as Curtosi, was first on the scene followed by 3 other officers, an Asian superior officer, another white officer Leonard and a black officer and surrounded the plaintiff. Plaintiff held his wallet in his right hand and wrapped his left hand around his right wrist. The officers transported the plaintiff to the reception section of the bank where officer Leonard told the plaintiff that he would tase him if I didn't unlock his grip on his right wrist, he repeated it and then proceeded to tase the plaintiff. Plaintiff held on the first two times and then released his grip. The plaintiff was tased a third time. The plaintiff was then

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

handcuffed and compelled by force to lie on his stomach. There were at least 28 officers on the scene. The whole interaction from the conversation with Mecca to the arrest did not exceed 10 mins. The police walked the plaintiff outside of the bank and placed him in the back of a patrol car where his person was searched and his backpack was searched.

9. Plaintiff was transferred to a van and transported to 400 North Broad St Detention Center. Once again the plaintiff was searched. Plaintiff's personal effects were confiscated including his belt and laces, some others were disposed of including pens and pencils. Plaintiff was given a bracelet numbered 518 with his name and charge of trespassing.Plaintiff was told to wash his hands and went through the intake procedure. Plaintiff was then taken to the cell block where he asked to make a phone call, the plaintiff told them it was a New York number. Plaintiff said that it was urgent as plaintiff had an ailing and grieving aunt alone at home who had spent the previous Wednesday night hospitalized. A male officer tried to chastise plaintiff but a older black female officer was kind and let plaintiff call his older sister who he informed that he had been arrested and that she would have to travel from NYC to come stay with their aunt for the night and not to inform my aunt of what had happened because plaintiff feared doing so would impact her health and mental state in a negative way. Plaintiff was taken to cell 085 which was shared with two other people. This was around 7:00 pm. Some time later the plaintiff started feeling the effects of the tasing, the plaintiff complained 8 times that he needed medical assistance for his back, and the plaintiff was ignored. Plaintiff remained in that cell until 3 am when he was taken to be fingerprinted and photographed. That is when the plaintiff saw a nurse who only offered him ibuprofen but did not examine his back. Plaintiff complained that he was not able to sleep as the cell was too cold for any of the detainees to fall asleep. The nurse told the plaintiff that is the condition of jail.  At about 7:45 am officer Martinez allowed the plaintiff once more to call his sister, this time the plaintiff called his younger sister who had come to stay with their aunt. At about 8:30 am the plaintiff was released and was returned his personal effects

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

without seeing a lawyer or a judge. Plaintiff was told that he had not been formally charged but that I had been cited and that he should report to court at 1301 Filbert Street on May 1.

10. Plaintiff sustained upwards of 10 small flesh wounds in his back from being tased. Plaintiff had difficulty sleeping or sitting due to the tasing injuries for upward of 2 weeks. Plaintiff visited the emergency rooms of Albert Einstein Medical Center and then again UPenn Medical Center to receive care following his arrest. The plaintiff has since completed several months of physical therapy twice weekly to readapt his back muscles. Chase has served up till then as the plaintiff's only checking banking account. Suspending the plaintiff's accounts limited his ability to receive and deposit money for work that he had done. It inhibited the plaintiff's ability to withdraw and transfer money to people who rely on his financial assistance for school tuitions, medical care and living expenses in Haiti. It also prohibited the plaintiff from serving as administrator of his mother's estate in due time to avoid larger state taxes. Despite the plaintiff's request of communication solely through his criminal defense attorney, JPMorgan Chase contacted the plaintiff multiple times after his arrest through phone calls and emails. The criminal case against the plaintiff was withdrawn after 5 months after the representatives of JPMorgan Chase failed to be present on multiple occasions or provide supporting discovery as requested by the plaintiff's side.

11. By reason of the facts and circumstances stated above, the defendant has breached the contract.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $10,428,000.00, for, together with any other relief the Court finds to be just and proper.

Dated: April 13, 2025

Philippe E St Juste **[Printed]**
Plaintiff

1227 Magee Ave
Philadelphia, Pennsylvania 19111
917-937-6594

Defendants
JPMorgan Chase Bank, N.A.
700 Kansas Lane, Monroe, LA 71203


City of Philadelphia,
Office of Risk Management, 1515 Arch Street, 14th Floor,
Philadelphia, PA 19102.

Case ID: 250402123
Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25055176

# Doc 10- Dispositive Motion Granted



Filed and Attested by the
Office of Judicial Records
23 MAY 2025 11:53 am

| | | |
|---|---|---|
| PHILIPPE E. ST. JUSTE | : | COURT OF COMMON PLEAS |
| v. | : | PHILADELPHIA COUNTY |
| | : | |
| JPMORGAN CHASE BANK, N.A. | : | APRIL TERM, 2025 |
| AND THE CITY OF PHILADELPHIA | : | |
| | : | NO.: 2123 |

### ORDER

**AND NOW**, on this _____ 9th _____ day of _____ July _____, 2025, upon

consideration of the Preliminary Objections of Defendant JPMorgan Chase Bank, N.A. to

Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that

Plaintiff's Complaint is **dismissed without prejudice** *as to all defendants.*

Plaintiff may file an Amended Complaint within twenty (20) days of the date of this Order

that complies with the Pennsylvania Rules of Civil Procedure.

If Plaintiff fails to file an Amended Complaint within twenty (20) days of the date of this

Order this action against JPMorgan Chase Bank, N.A. is *may be* **dismissed with prejudice**, *upon*
*further application to the court.*

**BY THE COURT:**

_____
                                    J.



25040212300017

Case ID: 250402123
Control No.: 25055176

# Doc 11- Order Granting PO's

PHILIPPE E. St. Juste,         :    COURT OF COMMON PLEAS
          Plaintiff     :    PHILADELPHIA COUNTY
                   :
    vs.               :    APRIL TERM, 2025
                   :
JPMORGAN CHASE BANK, N.A. et al.,  :
          Defendants    :    NO. 2123

<p style="text-align:center;"><strong><u>ORDER</u></strong></p>

AND NOW,  this _____9th____ day of _____July___, 2025, upon consideration of the

Preliminary Objections of Defendants the City of Philadelphia and JPMorgan Chase Bank, N.A.,

and any responses thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is

dismissed. *Plaintiff may file an Amended Complaint within 20 days.*

**BY THE COURT:**



                           **J.**

ORDER-St Juste Vs Jp Morgan Chase Bank Et Al (FJB)

25040212300020

# Doc 12- Motion to Vacate



COURT OF COMMON PLEAS

PHILADELPHIA COUNTY – CIVIL TRIAL DIVISION

PHILIPPE E. ST JUSTE

*Plaintiff,*

v.

JPMORGAN CHASE BANK, N.A., and

CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,

*Defendants.*

Civil Action – Law

April Term, 2025

No. 250402123

077429

RESPONSE DATE

AUG 18 2025

OF JUDICIAL RECORDS

---

PETITION TO VACATE ORDER NUNC PRO TUNC

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, *Philippe E. St Juste*, respectfully petitions this Court to vacate the Order entered on July 9, 2025, sustaining Defendant's Preliminary Objections, and reinstate the action nunc pro tunc. In support thereof, Plaintiff avers the following:

---

I. PROCEDURAL HISTORY

1. Plaintiff initiated this action on **April 16, 2025**, by filing a civil complaint against Defendant JPMorgan Chase Bank, N.A.

2. On **May 23, 2025**, Defendant filed Preliminary Objections to Plaintiff's Complaint.

3. Plaintiff filed a timely response to said Preliminary Objections on **June 12, 2025**, via the Court's electronic filing system.

MTVAC-St Juste Vs Jp Morgan Chase Bank Et Al [RNH]



25040212300024

Case ID: 250402123
Control No.: 25077429

4.  On **July 9, 2025**, this Honorable Court entered an Order sustaining Defendant's Preliminary Objections and dismissing the action.

5.  Upon information and belief, the Court may not have considered or reviewed Plaintiff's timely response before entering the Order.

## II. BASIS FOR NUNC PRO TUNC RELIEF

6.  Relief **nunc pro tunc** is appropriate where a delay in filing or court action resulted from a breakdown in the Court's operations or from non-negligent circumstances. See *Criss v. Wise*, 781 A.2d 1156 (Pa. 2001); *Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130 (Pa. 1996).

7.  Plaintiff's response was timely filed and appears on the docket. There is no indication that Plaintiff failed to comply with any filing requirements.

8.  If Plaintiff's Response was not reviewed prior to the entry of the Court's Order, this constitutes a **breakdown in the Court's operations** and would deprive Plaintiff of a meaningful opportunity to be heard, implicating principles of due process.

9.  Plaintiff's Complaint sets forth meritorious claims sounding in civil rights, discrimination, and unlawful conduct by both a private financial institution and public actors, and should be adjudicated on its merits.

## III. RELIEF REQUESTED

10. Plaintiff respectfully requests that this Honorable Court:

a. Vacate the Order entered July 9, 2025;

b. Reinstate the Complaint for further proceedings on the merits;

c. Grant any other relief deemed just and proper.

Respectfully submitted,
Date: July 29, 2025

/s/ Philippe E. St Juste
Philippe E. St Juste
Pro Se Plaintiff
1227 Magee Ave, Philadelphia, PA 19111
917.937.6594
philippe.esai@gmail.com

Case ID: 250402123
Control No.: 25077429

Filed and Attested by the
Office of Judicial Records
... pm
GILLIS

| | | |
|---|---|---|
| PHILIPPE E. St. Juste, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A. et al., | : | |
| Defendants | : | NO. 2123 |

## ORDER

AND NOW,   this ___9th___ day of ___July___, 2025, upon consideration of the

Preliminary Objections of Defendants the City of Philadelphia and JPMorgan Chase Bank, N.A.,

and any responses thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Complaint is

dismissed. *Plaintiff may file an Amended Complaint within 20 days.*

BY THE COURT:

_____

**J.**

ORDER-St Juste Vs Jp Morgan Chase Bank Et Al [FJ8]



25040212300020

Case ID: 250402123
Control No.: 25062591
Case ID: 250402123
Control No.: 25077429

PROPOSED ORDER

IN THE COURT OF COMMON PLEAS
 PHILADELPHIA COUNTY – CIVIL TRIAL DIVISION

PHILIPPE E. ST JUSTE
 v.
JPMORGAN CHASE BANK, N.A., and
CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,
 April Term, 2025 – No. 250402123

---

ORDER

AND NOW, this ___ day of _____, 2025, upon consideration of Plaintiff's *Petition to Vacate Order Nunc Pro Tunc*, it is hereby ORDERED and DECREED that:

1. The Order entered on **July 9, 2025** sustaining Defendant's Preliminary Objections is hereby **VACATED;**

2. Plaintiff's Complaint is hereby **REINSTATED** for further proceedings on the merits.

BY THE COURT:

---

J.

## VERIFICATION

I, Philippe E. St Juste, hereby verify that the statements made in this Petition are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

**Date:** July 29, 2025

**/s/ Philippe E. St Juste**
 Philippe E. St Juste

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a true and correct copy of the foregoing *Petition to Vacate Order Nunc Pro Tunc* and Proposed Order upon counsel for Defendant via electronic service through the Court's e-filing system and via first-class mail, postage prepaid, addressed as follows:

**Date:** July 29, 2025

/s/ Philippe E. St Juste
 Philippe E. St Juste

# Doc 13- Entry of Appearance

**CITY OF PHILADELPHIA LAW DEPARTMENT**
DOMINIQUE M. HOLLY, ASSISTANT CITY SOLICITOR
Attorney I.D. No. 335009
One Parkway Building, 15th Floor
1515 Arch Street
Philadelphia, PA 19102-1595
Tel 215-683-5044 and Fax 215-683-5299    *Attorney for Defendant*



Filed and Attested by the
Office of Judicial Records
15 AUG 2025 02:11 pm
S. GILLIAM

| | | |
|---|---|---|
| PHILLIPE ST. JUSTE | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| v. | : | |
| | : | APRIL TERM, 2025 |
| JP MORGAN CHASE BANK ET AL. | : | NO. 2123 |

<u>**PRAECIPE TO ENTER APPEARANCE**</u>

TO THE PROTHONOTARY:

Kindly enter the appearance of the undersigned as counsel of record for the Defendant

City of Philadelphia in the above-captioned action.


                        CITY OF PHILADELPHIA
                        LAW DEPARTMENT


Date: August 15, 2025          BY: */s/ Dominique M. Holly*
                        Assistant City Solicitor
                        Attorney I.D. No. 335009
                        1515 Arch Street, 15th Floor
                        Philadelphia, PA 19102
                        Phone: 215-683-5044
                        Fax: 215-683-5299
                        Dominique.holly@phila.gov

Case ID: 250402123

## <u>CERTIFICATE OF SERVICE</u>

I, Dominique Holly, hereby certify that, on the date set forth below, I filed a copy of this paper to the First Judicial District of Pennsylvania's electronic filing system. Under Pa. R.C.P. 205.4(g)(2), service will be completed when the filing is accepted by the Prothonotary.

/s/ *Dominique M. Holly*_____
Dominique Holly, Assistant City Solicitor
City of Philadelphia Law Department

DATED: August 15, 2025

# EXHIBIT "C"

**<u>CITY OF PHILADELPHIA LAW DEPARTMENT</u>**
DOMINIQUE HOLLY
ATTORNEY IDENTIFICATION NO. 335009
1515 ARCH STREET – 15<u>TH</u> FLOOR
PHILADELPHIA, PA  19102-1595
(215) 683-5044 - Telephone
(215) 683-5299 – Fax
<u>Dominique.holly@Phila.Gov</u>

*Attorney for Defendant*

---

| | | |
|---|---|---|
| PHILIPPE E. St. Juste, | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | |
| vs. | : | APRIL TERM, 2025 |
| | : | |
| JPMORGAN CHASE BANK, N.A. et al., | : | |
| Defendants | : | NO. 2123 |

---

## <u>NOTICE OF REMOVAL</u>

**To:    Prothonotary**
**Court of Common Pleas of Philadelphia County**

Pursuant to 28 U.S.C. § 1446(d), Defendants, City of Philadelphia and JP Morgan Chase

Bank file with this Court a copy of the Notice of Removal as filed in the United States District

Court for the Eastern District of Pennsylvania on August 18, 2025.

A true copy of the Defendant's Notice of Removal, as filed with the United States

District Court for the Eastern District of Pennsylvania, is attached as Exhibit A hereto.


Respectfully submitted,

CITY OF PHILADELPHIA
LAW DEPARTMENT

BY:    <u>/s/ Dominique Holly</u>
Assistant City Solicitor

Attorney I.D. No. 335009
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215)- 683-5044
Fax: (215) 683-5299
Dominique.holly@Phila.Gov

DATED: August 18, 2025

2

<u>**CERTIFICATE OF SERVICE**</u>

I, Dominique Holly, hereby certify that, on the date set forth below, I filed a copy of this

paper to the First Judicial District of Pennsylvania's electronic filing system.  Under Pa.

R.C.P. 205.4(g)(2), service will be completed when the filing is accepted by the

Prothonotary:

<div style="text-align:center; margin-left:40%;">

<u>/s/ Dominique Holly</u>

Dominique Holly, Assistant City Solicitor

City of Philadelphia Law Department

</div>

DATED:  August 18, 2025

<div style="text-align:center;">3</div>