**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PHILIPPE E. ST. JUSTE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JPMORGAN CHASE BANK, N.A., and CITY OF PHILADELPHIA, OFFICE OF RISK MANAGEMENT,**<br><br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-4742** |

# MEMORANDUM

**HODGE, J.** **July 30, 2026**

Plaintiff Philippe St. Juste brings this action *pro se* against the City of Philadelphia (the "City") and JPMorgan Chase Bank, N.A. ("Chase Bank") (collectively, "Defendants") stemming from his accounts being frozen by Chase Bank escalating to a police encounter and criminal trespass charge, which the City withdrew. Plaintiff brings claims under 42 U.S.C. §§ 1981, 1983, and 1985, the Fourth and Fourteenth Amendments, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and various state law tort and contract claims. (*See* ECF No. 29.) Before the Court are the Motions to Dismiss by the City (ECF No. 30) and Chase Bank (ECF No. 36), Plaintiff's oppositions thereto (ECF Nos. 37, 38), and Chase Bank's reply (ECF No. 39).[1] For the following reasons, the motions are granted.

[1] Plaintiff filed a surreply in response to Chase Bank's reply. (ECF Nos. 40–42.) Pursuant to this Court's Policies and Procedures, a party must seek leave of court prior to filing a surreply. Because Plaintiff did not seek leave to file a surreply, the Court does not consider his surreply. *See Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[W]hile courts have a special obligation to construe the pleadings of pro se litigants liberally, the right of self-representation does not exempt a party from compliance with relevant rules of procedural law." (internal citation omitted)).

# I. BACKGROUND

## A. Factual Background[2]

On April 5, 2023, Plaintiff visited the Chase Bank branch location at 1100 Market Street in Philadelphia. (ECF No. 29 ¶ 6.) He and his aunt opened a joint account to manage his late mother's estate and deposited $10,428 in a combination of cash and checks from friends and family. (*Id.* ¶¶ 6–7.) On April 7, 2023, Plaintiff was locked out of his personal and joint accounts "due to suspicious activity." (*Id.* ¶ 8.) For the next week, he made multiple phone calls and visited two Chase Bank branch locations in New York in an attempt to resolve the issue, but his accounts remained frozen. (*Id.* ¶¶ 8–10.) The issue prompting the accounts being frozen involved a $200 check from Mrs. Marie Guerrier included in his April 5, 2023, deposit of $10,428. (*See id.* ¶ 12.) A Chase Bank employee informed Plaintiff that Mrs. Guerrier would need to visit the bank in person to resolve the issue, but Plaintiff explained that she has impaired mobility and is unable to travel. (*Id.* ¶ 11.) Instead, he offered that she be permitted to resolve the issue over the phone. (*Id.*) The Chase Bank employee rejected the suggestion, would not accept Mrs. Guerrier's phone number, and insisted that she visit a Chase Bank physical location to resolve the matter. (*Id.*)

On April 14, 2023, Plaintiff returned to the 1100 Market Street Chase Bank branch in Philadelphia around 3:30 p.m. to close his accounts and access his funds. (*Id.* ¶ 12.) He provided multiple forms of identification. (*Id.*) Plaintiff then waited for two hours while a Chase Bank employee attempted to reach the corporate office by phone. (*Id.*) Around 5:30 p.m., the issue remained unresolved, and Plaintiff repeated that he wished to terminate his relationship with the bank. (*Id.*) He explained that he needed to access his funds to take care of his late mother's estate

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

and offered to void the disputed $200 check to release the remaining account balance. (*Id.*) That did not happen. Plaintiff was asked to leave, which he refused to do without his funds. (*Id.*)

A Chase Bank employee then called the police, describing Plaintiff as a "tall black male" with an "accent" who refused to leave the bank. (*Id.* ¶ 35; *see id.* at 37.) Plaintiff alleges that the employee falsely told police that Plaintiff would not provide his identification and had been asked to leave an hour ago, when in fact only five minutes had elapsed since the bank employees made this request. (*Id.* ¶¶ 42–43.)

As a result of the call to the police department, twenty-six police officers arrived on the scene. (*Id.* ¶ 47.) Plaintiff was seized by the police after their arrival, during which Officer Leonard tased Plaintiff three times in the back while Plaintiff's arms and legs were restrained by Officer Anthony Curtosi Jr. and another officer. (*Id.* ¶ 14.) Plaintiff was arrested, detained overnight, and held in custody for fourteen hours. (*Id.* ¶ 16.) Throughout his detention, he repeatedly requested and was denied medical care for injuries sustained from the taser. (*Id.*)

In the weeks that followed, Plaintiff closed his account with Chase Bank and instructed the Bank to communicate only through his retained legal counsel. (*Id.* ¶¶ 116–17, 120.) From April 17, 2023, through August 25, 2023, Chase Bank directly contacted Plaintiff, not his attorney, on at least twelve occasions via phone or email. (*Id.* ¶¶ 18, 117.) These messages included alerts that Plaintiff's account was overdrawn even after the account was closed. (*Id.* ¶ 24.)

**B. Procedural History**

Plaintiff filed suit *pro se* on April 16, 2025, in the Philadelphia Court of Common Pleas. (ECF No. 38 at 4.) On July 9, 2025, the Court of Common Pleas dismissed the case in response to preliminary objections from Defendants. (ECF No. 1-1 at 357, 359.) Plaintiff submitted an Amended Complaint on July 29, 2025, which included new federal claims. (*Id.* at 2, 5–7.) On August 18, 2025, Defendants jointly removed the case to the Eastern District of Pennsylvania.

(ECF No. 1 at 1.) Plaintiff filed a Second Amended Complaint on December 22, 2025. (*See* ECF No. 29.)

In the Second Amended Complaint, Plaintiff pleads the following counts against Chase Bank: breach of contract (Count I); unlawful discrimination in public accommodation (Count II); conspiracy to deprive civil rights (Count IV); negligence (Count VI-A); intentional infliction of emotional distress ("IIED") (Count VII); malicious prosecution and abuse of process (Count IX); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count X-B[3]); interference with right to counsel, violation of privacy and intrusion upon seclusion, obstruction, and harassment (Count XI); and harassment, invasion of privacy, and unfair and deceptive practices (Count XII). (*See* ECF No. 29.) Plaintiff pleads the following counts against the City: false arrest and imprisonment (Count III); conspiracy to deprive civil rights (Count IV); excessive force (Count V); negligence (Count VI-B); IIED (Count VII); denial of medical care and unconstitutional conditions of confinement (Count VIII); malicious prosecution and abuse of process (Count IX); and municipal liability (Count X-A). (*See id.*) Defendants move to dismiss all counts. (*See* ECF No. 36; ECF No. 30).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

[3] Because Plaintiff's Amended Complaint contains two counts identified as "Count X," the Court renumbers these counts for clarity as Counts X-A (Municipal Liability) and Counts X-B (Violation of UTPCPL).

statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The Court liberally construes the pleadings of a *pro se* litigant, which are held to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted). The Court shall "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina*, 704 F.3d 239, 244 (3d Cir. 2013). Thus, *pro se* litigants must still allege sufficient facts to state a claim. *Id.* at 245.

## III. DISCUSSION

### A. Claims against Chase Bank

#### 1. Count I: Breach of Contract

The elements of breach of contract in Pennsylvania[4] are "(1) the existence of a contract 'including its essential terms,' (2) breach of a contractual duty, and (3) resultant damages."

---

[4] Pennsylvania law properly applies. The Deposit Account Agreement ("DAA") contains a choice of law provision applying the laws of the state where the customer's account is located. According to the DAA, if a customer applied for their account in person at a Chase Bank branch, the account is located in the state where the customer applied. (ECF No. 36 at 53.) Plaintiff opened his joint bank account in person in Philadelphia. (ECF No. 29 ¶ 6.)

*Philidor Rx Servs. LLC v. Polsinelli PC*, 552 F. Supp. 3d 506, 512 (E.D. Pa. 2021) (quoting *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000)). All contracts impose an implied duty of good faith and fair dealing. *Id.* at 514. This duty "is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term." *Northview Motors v. Chrysler Motors*, 227 F.3d 78, 91 (3d Cir. 2000). "Therefore, even a claim based on the duty of 'good faith' has to anchor itself in the obligations imposed by the contract." *Philidor*, 552 F. Supp. 3d at 514. A plaintiff cannot allege a breach of good faith and fair dealing without identifying specific terms in the contract that the defendants allegedly breached. *Id.*

Plaintiff alleges that "Chase breached the agreement by freezing Plaintiff's accounts without contractual or lawful justification, refusing to release undisputed funds . . . and refusing Plaintiff's request to close the accounts." (ECF No. 29 ¶ 30.) However, under the explicit terms of the contract, Chase Bank had the right to "refuse a deposit, or part of a deposit at any time," and to "decline or prevent any and all transactions to or from [Plaintiff's] account." (ECF No. 36 at 39, 53.)[5] The contract also states that Chase Bank is "not required to close your account at your request if you have pending transactions." (*Id.* at 52.) Plaintiff thus has not identified an express breach of the contract. Similarly, Plaintiff has not pleaded sufficient facts to demonstrate a breach of the duty of good faith because he does not cite any such breach that is "anchor[ed] in the obligations imposed by the contract." *Philidor*, 552 F. Supp. 3d at 514. Count I is dismissed because Plaintiff fails to identify specific terms that Chase Bank allegedly breached.

[5] Courts may consider documents that are integral to the complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). "[T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation modified). Plaintiff's breach of contract claim and other related allegations are inextricably linked to the agreement between the parties. The Court may therefore consider the DAA in its analysis.

Courts are directed to liberally grant leave to amend pleadings unless amendment is futile. *Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016). Amendment may be futile if, for instance, an amended complaint would be nearly identical to prior complaints, the defendant is entitled to absolute immunity, or the plaintiff has failed to exhaust administrative or state law remedies. *Id.* Because amendment of Count I would not be futile, the Court dismisses Count I without prejudice.[6]

**2. Count II: Unlawful Discrimination in Public Accommodation**

Plaintiff brings Count II under both 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act ("PHRA"). Under § 1981, all people within the jurisdiction of the United States have the same right "to make and enforce contracts" and to "full and equal benefit of all laws and proceedings," regardless of race. *See* 42 U.S.C. § 1981(a). While private actors may be sued under the statute's "right to make and enforce contracts" clause, only state actors can be liable under the "full and equal benefit" clause. *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001); *Mahone v. Waddle*, 564 F.2d 1018, 1029 (3d Cir. 1977). A § 1981 claim requires (1) that the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; (3) the discrimination concerned one or more of the activities enumerated in the statute; and that (4) "but for race, [plaintiff] would not have suffered the loss of a legally protected right."

[6] The City argues that because Plaintiff has had two opportunities to amend his pleadings, his Second Amended Complaint should be dismissed with prejudice. (ECF No. 30 at 19.) Plaintiff's initial complaint did not state what claims he was asserting, nor did it make any reference to federal claims. (ECF No. 25 at 1.) That complaint was dismissed by the Court of Common Pleas. (*Id.* at 2.) His first amended complaint included federal claims for the first time. (*Id.*) Plaintiff then filed a motion for leave to file a second amended complaint, after Defendants filed motions to dismiss the first amended complaint. (ECF No. 26.) This Court granted that motion. (ECF No. 28.) While Plaintiff had a preview of arguments raised by Defendants in their earlier motions to dismiss, he did not have an opportunity to amend following any court's analysis of his constitutional claims. Thus, under the liberal standard to grant amendment, the Court finds that amendment may not be futile as Plaintiff will now have more direction regarding the feasibility of his claims.

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *Phillip Morris*, 250 F.3d at 797.

To establish these elements, a plaintiff must allege not only "an abundance of wrongdoing," but also that the alleged conduct was motivated by racial animus. *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716 (3d Cir. 2012). The claim must identify specific facts supporting a reasonable inference of racial discrimination and may not rely solely on bald or conclusory allegations. *Peebles v. Chain IQ Ams.*, 737 F. Supp. 3d 285, 290 (E.D. Pa. 2024).

Notably, a claim under § 1981 must allege discrimination on the basis of race, not national origin. *Broom v. Saints John Neumann & Maria Goretti Catholic High Sch.*, 722 F. Supp. 2d 626, 631 (E.D. Pa. 2010). "Because § 1981 was intended to protect against discrimination based on race, it does not provide a remedy to plaintiffs discriminated against 'solely on the place or nation of [their] origin.'" *Id.* (quoting *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Race and national origin are often difficult to disentangle. *St. Francis Coll.*, 481 U.S. at 613. The Supreme Court has held that national origin is to be construed broadly and that § 1981 protection extends to plaintiffs who have suffered discrimination "because of their ancestry or ethnic characteristics." *Id.*

For this reason, "section 1981 claims based on national origin *plus* ethnicity or ancestry or race are cognizable, whereas claims based on national origin alone or national origin plus other unprotected categories are not." *Mulholland v. Classic Mgmt. Inc.*, No. 09–2525, 2010 WL 2470834, at *3 (E.D. Pa. June 14, 2010); *see id.* at *2 (collecting cases); *see also Dulitzki v. BAE Sys. Shared Servs.*, No. 25-2680, 2026 WL 158821, at *3 (E.D. Pa. Jan. 20, 2026) ("Section 1981 claims *solely* on the basis [of] Plaintiff's birthplace . . . without any allegations that could be construed as pertaining to his race, ethnic characteristics, or ancestry . . . must be dismissed.").

Allegations of mistreatment based on accent alone may constitute national origin discrimination but not race discrimination. *See Mudie v. Phila. Coll. of Osteopathic Med.*, 577 F. Supp. 3d 375, 383–84 (E.D. Pa. 2021); *Kamara v. Horizon House, Inc.*, No. CV 13-6728, 2015 WL 9260031, at *5 (E.D. Pa. Dec. 18, 2021) ("Plaintiff's accent is the result of being born outside the United States, not a result of his ethnic or ancestral origins, and therefore is insufficient to maintain a claim of racial discrimination under Section 1981.").

Here, Plaintiff cites Chase Bank employee's description of him as a "black male . . . with an accent" as evidence that "Chase's actions were infected with bias based on race and national origin." (ECF No. 29 at 37, ¶ 35.) He alleges that "[t]he inclusion of Plaintiff's accent—a characteristic directly tied to his Haitian origin—served no legitimate purpose in identifying him, but instead marked Plaintiff as 'foreign' or 'other.'" (*Id.* ¶ 35.) While it is possible that the reference to Plaintiff's accent constituted national origin discrimination, this alone is insufficient to allege race discrimination under § 1981. *Mudie*, 577 F. Supp. 3d at 383–84. Thus, the claim hinges on the bank employee's statement to police that Plaintiff is Black. It is reasonable and not discriminatory to state a person's race when asked by police for their description.

Plaintiff's remaining allegations of discrimination are conclusory. For instance, he alleges that Chase Bank subjected him "to excessive scrutiny not applied to similarly situated customers, based on race and national origin, as evidenced by the pattern of unreasonable demands and refusal to resolve the matter despite verification." (ECF No. 29 ¶ 34.) There are no allegations as to who are similarly situated customers or how those customers are treated. Therefore, such an allegation is insufficient under the 12(b)(6) standard. *See Children's Health Defense, Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 85 (3d Cir. 2024); *Farmer v. Am. Home Med. Equip. & Servs., Inc.*, No. CV 16-6211, 2018 WL 878367, at *5 n.3 (E.D. Pa. Feb. 14, 2018). In the absence of

other facts suggesting racial animus on the part of Chase Bank, Plaintiff has not demonstrated a plausible claim for racial discrimination and the § 1981 claim is dismissed without prejudice.

Plaintiff's claim also fails under state law. The PHRA guarantees the right to the "privileges of any public accommodation . . . without discrimination because of race, color . . . [or] national origin." Pennsylvania Human Relations Act, 43 P.S. § 953. Before pursuing judicial relief, a plaintiff must exhaust administrative remedies by filing a claim with the Pennsylvania Human Relations Commission within 180 days of the alleged discriminatory event. *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 612 (E.D. Pa. 2001) (citing 43 P.S. §§ 959(a), 962). Plaintiff does not allege that he exhausted administrative remedies before filing the instant suit. Because he must first avail himself of the PHRA's administrative process, the PHRA claim is dismissed without prejudice. *Id.* at 613.

**3. Count IV: Conspiracy to Deprive Civil Rights**

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). Because the statute itself does not create any substantive right, a § 1985(3) claim must specify the right that has allegedly been deprived. *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). The Third Circuit has suggested that discrimination under § 1981 does not independently form the basis for a § 1985(3) action. *Phillip Morris*, 250 F.3d. at 806 (declining to resolve whether a § 1981 claim can give rise to a § 1985(3) claim, but noting that

most precedent suggests that it cannot). Plaintiff's § 1985(3) claim fails because he fails to specify the right that he has allegedly been deprived of as a result of a conspiracy.

Further, to allege a conspiracy under § 1985(3), "it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement." *Gordon v. Lowell*, 95 F. Supp. 2d 264, 270 (E.D. Pa. 2000). Rather, a plaintiff must allege "specific facts to state a plausible claim that an actual agreement existed among the defendants." *Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 396 F. Supp. 3d 490, 504 (E.D. Pa. 2019). Indeed, the Third Circuit upheld the dismissal of a conspiracy claim that "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).

Plaintiff claims that at the pleading stage, he need only allege "circumstantial facts and coordinated conduct" to state a claim under § 1985(3). (ECF No. 37 at 8.) However, the standard requires an allegation of more than the "general terms" of a conspiracy. *Great W. Mining*, 615 F.3d at 179. Plaintiff's assertion that "Chase initiated police involvement over a noncriminal banking dispute" and that police subsequently "acted upon those representations without independent verification" does not rise to the level of "a plausible claim that an actual agreement existed among the defendants." (ECF No. 38 at 8); *Howard*, 396 F. Supp. 3d at 504. Plaintiff further alleges that "the subsequent arrival of more than twenty-six officers, none of whom witnessed any criminal behavior before engaging plaintiff, indicates joint action between Chase personnel and police." (ECF No. 29 ¶ 47.) While the deployment of twenty-six officers in response to a single, unarmed, and nonviolent patron raises questions and arguably appears excessive on its face, it does not support an inference of conspiracy between the police and Chase Bank. Because parallel conduct

and conclusory facts are insufficient to allege a meeting of the minds, even at the pleading stage, Count IV is dismissed without prejudice. *See Great W. Mining*, 615 F.3d at 176–77.

### 4. Count VI-A: Negligence

Under Pennsylvania law, negligence requires "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). A business has a legal duty to protect invitees from risks that can be discovered with reasonable care. *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. Ct. 1998). However, this standard of care does not extend to trespassers, who can only recover if a defendant is guilty of wanton or willful misconduct. *Id.*

Chase Bank argues that a bank's legal obligation to its customers derives only from their contract and not through any social duty. (ECF No. 36 at 21.) Therefore, they assert, this action is barred by the gist of the action doctrine, which "bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort." *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004). In support of this proposition, Chase Bank only cites cases concerning a bank's fiduciary duty to its customers, not its duty to their physical safety in a brick and mortar bank franchise. (ECF No. 36 at 21–22.) However, Plaintiff alleges that Chase Bank's negligence caused him physical injury and emotional distress, "independent of any purely economic or contractual damages," (ECF No. 29 ¶¶ 55, 59–60), but instead "grounded in common-law principles of public safety" and "the obligation of businesses" (*id.* ¶ 55). Indeed, the duty owed to him based on his presence in the store was not solely based on their contractual relationship. Thus, this claim is not barred by the gist of the action doctrine.

Still, the duty that Chase Bank owed Plaintiff as a customer in their store is not breached by the phone call to police. *Wright v. Whitehall Township* is instructive here. *Wright v. Whitehall Twp.*, No. 5:20-cv-02664, 2021 WL 100091, at *10 (E.D. Pa. Jan. 12, 2021). In that case, a high school athletic director called police in response to allegedly disrespectful behavior by a group of Black students. *Id.* Police responded with allegedly excessive force against the students. *Id.* The court held that the athletic director was not liable for harm suffered by the students because he could not have foreseen the officers' use of excessive force. *Id.*; *see also Robinson v. Ebke*, No. 24-347, 2025 WL 1555377, at *5–6 (D. Del. June 2, 2025) (explaining that a business "could not reasonably be expected to foresee how the police would conduct themselves in a subsequent encounter with the [Plaintiff] nor the outcome that resulted," and had no duty to warn customers about the risk "posed by police officers who allegedly use excessive force when policing"). Chase Bank could not reasonably predict that twenty-six officers would respond nor that Plaintiff would be tased three times by police while restrained after the bank placed the 911 call. Therefore, the negligence claim against Chase Bank is dismissed with prejudice.

**5. Count VII: Intentional Infliction of Emotional Distress**

An IIED claim under Pennsylvania law must allege that "(1) Defendant engaged in extreme and outrageous conduct, (2) the conduct was intentional or reckless, (3) the conduct caused emotional distress, and (4) the distress was severe." *Brown v. Am. Airlines, Inc.*, 723 F. Supp. 3d 411, 423 (E.D. Pa. 2024) (internal quotations omitted). The conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)).

The Court recognizes that Plaintiff was grieving the loss of his mother at the time he was arrested. While the experience was distressing to him, Plaintiff has not alleged facts suggesting

that Chase Bank's actions rise to the level of extreme and outrageous conduct as required to state an IIED claim. Viewed in the light most favorable to Plaintiff, Chase Bank's calling the police when Plaintiff remained on the premises past closing may be construed arguably, at most, as unreasonable, but not "utterly intolerable in a civilized community." *Brown*, 723 F. Supp. 3d at 423. Likewise, freezing Plaintiff's accounts, even while he grieved the death of his mother, is not "beyond all possible bounds of decency." *Id.* Even if Chase Bank's conduct was rooted in racial discrimination, this alone "does not meet the extreme and outrageous conduct standard necessary to state a claim for intentional infliction of emotional distress." *Hargraves v. City of Phila.*, No. 05-CV-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007) (internal quotations omitted). The IIED claim against Chase Bank is therefore dismissed without prejudice.

**6. Count IX: Malicious Prosecution/Abuse of Process**

Plaintiff does not specify whether he alleges malicious prosecution under § 1983 or state law, but the elements of the claim are nearly identical in either case. *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). Malicious prosecution in violation of § 1983 requires that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). The elements of this claim are the same under Pennsylvania law, absent the fifth element. *Hartpence v. Madison Twp.*, 617 F. App'x 158, 161 (3d Cir. 2015). Probable cause exists when the known facts and circumstances would lead a reasonable person to believe an individual is committing an offense. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Private actors may only be sued under § 1983 if they acted under color of state law by performing an exclusively government function, acting jointly with the

government, or if their conduct is "fairly attributed to the state itself." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638–39 (3d Cir. 1995).

Plaintiff was charged with criminal trespass in Philadelphia Municipal Court on April 15, 2023. *Com. v. St. Juste*, MC-51-SU-0001113-2023 (Phila. Cnty. Mun. Ct.). The charge was withdrawn on September 11, 2023. *Id.* Plaintiff argues that Chase Bank's liability for malicious prosecution stems from "knowingly ma[king] false representations" in the 911 call, and that the City is liable due to the enormous police response. (ECF No. 29 ¶¶ 78, 80.) The Court accepts Plaintiff's allegation as true that the City initiated "extraordinary police deployment—over twenty-six officers for a single unarmed customer." (*Id.* ¶ 80.) However, there is no evidence that Chase Bank acted under color of state law in any of the alleged actions. *Groman*, 47 F.3d at 638.

Furthermore, claims for malicious prosecution under both § 1983 and state law require that criminal proceedings were initiated without probable cause. *Estate of Smith*, 318 F.3d at 521. Under Pennsylvania law, a person commits criminal trespass if, "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor." 18 Pa. C.S. § 3503(b)(1)(i). Plaintiff's Second Amended Complaint alleges that he was physically present on Chase Bank's property after being asked to leave, which he did not do. (ECF No. 29 ¶¶ 12–13.) His presence itself, as observed by the police upon their arrival, was enough to raise probable cause that he was trespassing. *Orsatti*, 71 F.3d at 482; 18 Pa. C.S. § 3503(b)(1)(i). Therefore, Plaintiff's state and federal claims for malicious prosecution are dismissed with prejudice.

While Plaintiff also titled this claim "Abuse of Process," his alleged facts suggest that he intends to state a claim for wrongful use of process rather than abuse of process. *See Mala v. Crown Bay Marina*, 704 F.3d 239, 244 (3d Cir. 2013) (stating that the court shall "apply the relevant legal

principle even when the [pro se] complaint has failed to name it”).[7] Wrongful use of process occurs when a defendant maliciously institutes civil proceedings against a plaintiff without probable cause and the proceedings terminate in favor of the plaintiff. *Al Hamilton Contracting*, 644 A.2d at 191 (citing 42 Pa. C.S. § 8351). Not only did Defendants initiate *criminal* proceedings against Plaintiff, but Plaintiff again fails to demonstrate that the police or Chase Bank lacked probable cause to believe he was trespassing. To the extent Plaintiff intended to bring a claim for wrongful use of process against Chase Bank, the claim is dismissed with prejudice.

**7. Count X-B: Violation of UTPCPL**

To state a claim under the UTPCPL, a plaintiff must allege that (1) they purchased goods or services for a primarily noncommercial purpose; (2) they suffered an ascertainable loss; (3) the loss occurred as a result of an unfair or deceptive business practice as defined by the UTPCPL; and (4) they reasonably relied upon the unlawful practice. *Gregg v. Ameriprise Fin.*, 245 A.3d 637, 646 (Pa. 2021). Practices declared unlawful by the UTPCPL include, *inter alia*, false representations of goods or services and “fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.” 73 P.S. § 201-2(4)(v-vii), (xxi).

The Court dismisses Count X-B because Plaintiff fails to show that Chase Bank engaged in any conduct prohibited by the UTPCPL. Plaintiff states that the freezing of his accounts left him without access to his own finances, which he needed for essential purposes. (ECF No. 29 ¶ 102.) He further alleges that Chase Bank did not provide him with a copy of the banking contract and

[7] These two torts, while frequently confused, are distinct under Pennsylvania law. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). Abuse of process involves the “perversion of legal process *after it has begun* in order to achieve a result for which the process was not intended.” *Id.* (emphasis added). While Plaintiff states this standard in his opposition (ECF No. 38 at 17), his allegations relate to the initiation of criminal proceedings, not the perversion of legal process that has already begun. If Plaintiff intended to state a claim for abuse of process against Chase Bank, he has inadequately pleaded the elements, and the Court dismisses without prejudice.

sent multiple contradictory or false messages regarding the status of his accounts. (*Id.* ¶¶ 96–97.) While this all may be true, Plaintiff has not sufficiently alleged that the account freeze, closure, or related phone calls and emails constituted fraudulent or deceptive conduct. Count X-B is dismissed without prejudice.

### 8. Counts XI and XII: Interference with Right to Counsel, Violation of Privacy and Intrusion Upon Seclusion, Obstruction, Harassment

Plaintiff alleges that Chase Bank's communication with him during the account freeze and after the account closure gives rise to multiple claims, which he brings under Counts XI and XII. None of these claims provide a viable cause of action.

Plaintiff argues that Chase Bank interfered with his right to counsel by directly phoning him, and not his attorney, on a number of occasions while his account was frozen. (ECF No. 29 ¶ 109.) The Court reads Plaintiff's "interference with right to counsel" claim in Count XI as a claim under § 1983 for denial of a constitutional right to counsel. However, there is no constitutional right to counsel in civil matters. *Fullman v. City of Phila.*, No. 24-969, 2024 WL 3993211, at *4 (E.D. Pa. Aug. 27, 2024) (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). Even if such a right did apply, a plaintiff may only sue a private actor under § 1983 for denial of a constitutional right if the private actor was "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As noted above, private individual acts under color of state law when performing an exclusively government function, acting jointly with the government, or if their conduct is "fairly attributed to the state itself." *Groman*, 47 F.3d at 638–39. There is no reason to believe Chase Bank behaved as a state actor when they contacted Plaintiff during the account freeze or after its closure.[8]

---

[8] Plaintiff cites to three specific factors that a plaintiff must allege to state a claim for private party liability for interference with counsel. (ECF No. 38 at 20.) The Court is unable to identify the source of these factors. Neither of the cases cited by Plaintiff, *Browning* or *Weatherford*, provide

The elements of intrusion upon seclusion[9] under Pennsylvania law are (1) intentional intrusion; (2) upon plaintiff's solitude, seclusion, or private affairs or concerns; (3) the intrusion was substantial; and (4) highly offensive to a reasonable person. *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1186–87 (Pa. Super. Ct. 1988) (citing Restatement (Second) of Torts § 652(B)). Unwanted phone calls may constitute a substantial intrusion if the calls are sufficiently persistent or of outrageous character, but only if they rise to the level of highly offensive to a reasonable person. *Diaz v. D.L. Recovery*, 486 F. Supp. 2d 474, 480 (E.D. Pa. 2007). Examples of highly offensive intrusions include police forcibly entering a hospital room while a patient was partially unclothed and then wheeling her unclothed through the hospital, *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336, 353 (E.D. Pa. 2021); recording a private conversation without the parties' knowledge or consent, *Smith v. Unilife Corp.*, 72 F. Supp. 3d 568, 575 (E.D. Pa. 2014); and warrantless entry and search of a home by federal law enforcement, *Muhammad v. United States*, 884 F. Supp. 2d 306, 317 (E.D. Pa. 2012). Chase Bank emailing and calling Plaintiff, even unduly or persistently, does not rise to the level of an intrusion that is highly offensive to a reasonable person.

---

these factors, nor do they support the existence of this claim. *Browning v. Clinton*, 292 F.3d 235, 245–46 (D.C. Cir. 2002) involved a claim for tortious interference with a business opportunity under District of Columbia law. *Weatherford v. Bursey*, 429 U.S. 545 (1977) involved a government undercover agent's alleged interference with the Sixth Amendment right in a criminal case.

[9] Plaintiff also lists "invasion of privacy" and "violation of privacy" in Counts XI and XII. Invasion of privacy under Pennsylvania law encompasses four separate torts: (1) intrusion upon seclusion, (2) "appropriation of another's name or likeness for commercial purposes"; (3) publicity given to one's private life; and (4) publicity that unreasonably places one in false light. *Tagouma v. Investigative Consultant Servs. Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010). Because only intrusion upon seclusion is applicable based on the facts Plaintiff has alleged, the Court does not address the other separate torts.

Pennsylvania does not recognize civil claims for harassment or obstruction.[10] *Norman v. Wall*, No. 3546 EDA 2018, 2019 WL 3308342, at *5 (Pa. Super. Ct. July 23, 2019); *Ballard v. City of Phila.*, 541 F. App'x 143, 145 (3d Cir. 2013).

Because none of the above claims provide a viable cause of action, Counts XI and XII are dismissed with prejudice.

**B. Claims against the City**

**1. Count X-A: Municipal Liability**

The City argues that Plaintiff's § 1983 claims against it (Counts III, V, VIII, IX, and X-A) must be dismissed for failure to identify a policy or custom to establish municipal liability. (ECF No. 30 at 11.) In *Monell v. Department of Social Services*, the Supreme Court held that a municipality is only liable under § 1983 when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation, or decision, either formally adopted or informally adopted through custom, actually caused the alleged constitutional violation. *See* 436 U.S. 658, 690–92 (1978). To appropriately plead a *Monell* claim, Plaintiff must identify a policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 675 (E.D. Pa. 2017) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007)). Alternatively, a plaintiff can plead a *Monell* claim "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989).

---

[10] Plaintiff argues that "courts permit allegations of obstruction-type conduct where a defendant's actions intentionally impede legal process or frustrate lawful rights." (ECF No. 38 at 21.) He cites to *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) in support, which articulates the standard for abuse of process and misuse of process claims. Thus, to the extent Plaintiff seeks to bring an abuse of process or misuse of process claim through his label of "obstruction," such a claim is discussed *supra* III.A.6.

The first requirement of the *Monell* test is for Plaintiff to establish that "the municipality had a policy or custom that deprived the plaintiff of his constitutional rights." *Ekwunife*, 245 F. Supp. 3d at 674 (citing *Monell*, 436 U.S. at 692–94). A plaintiff "must identify [the] custom or policy, and specify what exactly the custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). For purposes of § 1983, a municipal policy is a statement, ordinance, regulation, or decision formally adopted and promulgated by a government body's officers. *Monell*, 436 U.S. at 690. A custom, on the other hand, is not formally adopted but may lead to liability if the "relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). For either a custom or policy, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). If a plaintiff proceeds under a failure to train theory, he must allege that inadequate training amounted to "deliberate indifference," which is ordinarily shown through a pattern of similar constitutional deprivations demonstrating policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct." *Donahue v. Borough of Collingdale*, 714 F. Supp. 3d 504, 516 (E.D. Pa. 2024) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Once a policy or custom is alleged, the next requirement of the *Monell* test is that the "plaintiff's injuries were caused by the identified policy or custom." *Ekwunife*, 245 F. Supp. 3d at 674 (citing *Monell*, 436 U.S. at 692–94). "A showing of causation, based on a custom, requires a plaintiff to show 'that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 439 (E.D. Pa. 2020), *aff'd*, No. 22-

1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Plaintiff does not need to plead a responsible decisionmaker nor show that the custom had the City's formal approval. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

In the Second Amended Complaint, Plaintiff offers only conclusory allegations regarding City policies, customs, and failure to train. (ECF No. 29 ¶¶ 88, 91.) The Court accepts as true Plaintiff's description of his encounter with law enforcement, but the events that happened to him are not, in and of themselves, evidence of a policy or widespread custom. While Count X-A is specifically a municipal liability claim, because Plaintiff's remaining § 1983 claims are similarly brought against the City and not against individual officers, the same analysis applies. To meet the threshold for municipal liability under *Monell*, Plaintiff must allege facts demonstrating that the City either had an affirmative policy or custom that led to the alleged constitutional violations articulated in Counts III, V, VIII, and IX. *Natale*, 318 F.3d at 584.[11] Because Plaintiff has failed to plead sufficient facts of a policy, custom, or failure to train that can lead to municipal liability, Counts III, V, VIII, and X-A[12] are dismissed without prejudice.

**2. Count IV: Conspiracy to Deprive Civil Rights**

To state a claim for conspiracy under § 1985(3), as discussed *supra*, Plaintiff must allege "specific facts to state a plausible claim that an actual agreement existed among the defendants."

---

[11] Plaintiff asserts in opposition that Counts III, V, VIII, and IX are independently actionable under § 1983 without regard to *Monell*. (ECF No. 37 at 3.) But because Plaintiff brings these counts against the City, and not the individual officers, liability can only be imposed based on a municipal policy or custom. *See Board of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*. Instead, in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.") (internal citations omitted).

[12] The Court addresses Count IX separately *infra* because Plaintiff does not specify if that claim is brought solely under § 1983.

*Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 396 F. Supp. 3d 490, 504 (E.D. Pa. 2019). Count IV fails against the City for the same reasons as it fails against Chase Bank. Count IV is dismissed without prejudice.

**3. Counts VI-B and VII: Negligence and Intentional Infliction of Emotional Distress**

The Pennsylvania Tort Claim Act ("PTCA") grants the City immunity from tort liability with nine limited exceptions of negligent acts. 42 Pa. C.S.A. §§ 8541–42; *see McShea v. City of Phila.*, 995 A.2d 334, 341 (Pa. 2010). The exceptions include: (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse. 42 Pa. C.S.A. § 8542(b)(1)–(9). Because none of Plaintiff's state law claims fall within the limited exceptions, the City is entitled to immunity.[13] Counts VI-B and VII against the City are dismissed with prejudice.

**4. Count IX: Malicious Prosecution/Abuse of Process**

Plaintiff does not specify whether he brings the above claim under § 1983 or state tort law. To state a § 1983 claim for malicious prosecution against the City, Plaintiff must meet the threshold for *Monell* liability, discussed *supra*. He has not demonstrated that the criminal proceedings

[13] Plaintiff cites to *Renk v. City of Pittsburgh*, 641 A.2d 289, 293–94 (Pa. 1994) in arguing that he has plausibly alleged non-immune conduct, and that "[w]hether such conduct falls within the scope of employment or implicates statutory exceptions" is a fact issue. (ECF No. 37 at 4.) However, Plaintiff's argument is misplaced, as *Renk* addressed the applicability of the PTCA's extension to a city's employees, not the applicability of the PTCA to a city. *Renk*, 641 A.2d at 291. The PTCA extends immunity to its employees who are found "liable for civil damages caused by acts which are within the scope of his office or duties," but that immunity does not extend to crimes, actual fraud, actual malice, or willful misconduct. *Id.* at 292. The application of the PTCA to municipal employees is not relevant in this case. Plaintiff has sued the City, and the City is entitled to immunity under the PTCA with nine limited exceptions. 42 Pa. C.S.A. § 8542. While Plaintiff suggests that discovery may reveal a statutory exception, none of the nine exceptions are relevant to this case, nor does Plaintiff suggest which statutory exception may be revealed in discovery.

initiated against him were the result of any official policy, custom, or deliberate indifference on the part of the municipality. The § 1983 malicious prosecution claim against the City is therefore dismissed without prejudice.

If Plaintiff seeks to state a claim under Pennsylvania law, the alleged actions do not meet any enumerated exception to the PTCA and the City is therefore immune. 42 Pa. C.S.A. § 8542; *Maloney v. City of Reading*, No. CIV.A. 04-5318, 2006 WL 305440 (E.D. Pa. Feb. 8, 2006), *aff'd*, 201 F. App'x 853 (3d Cir. 2006) (noting that intentional torts, including malicious prosecution, are "willful conduct" under 42 Pa. C.S. § 8542(a), and thus a municipality cannot be liable for such a claim). The state tort claims for malicious prosecution and abuse of process are dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motions to Dismiss. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**